IN THE UNITED STATES COURT OF FEDERAL CLAIMS

|  |  |  |
|---|---|---|
| STEVEN JENKINS, *et al.*, for themselves and as representatives of a class of similarly situated persons, | ) ) ) ) | Case No. 09-241L |
|  | ) | Judge Nancy B. Firestone |
| Plaintiffs. | ) ) | *Electronically filed on August 15, 2011* |
| v. | ) ) ) | |
| THE UNITED STATES OF AMERICA, | ) ) | |
| Defendant | ) ) | |

UNITED STATES' CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

&

UNITED STATES' RESPONSE
TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

## TABLE OF CONTENTS

UNITED STATES' CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT ................... 1

STATEMENT OF ISSUES PRESENTED ................................................................. 2

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNITED STATES'
        CROSS-MOTION AND IN RESPONSE TO PLAINTIFFS' MOTION .......................... 3

I.        PRELIMINARY STATEMENT ................................................................. 3

II.       STANDARD OF REVIEW ON MOTION FOR SUMMARY JUDGMENT ................... 4

III.      THE TRAILS ACT ........................................................................... 5

IV.       RELEVANT FACTUAL BACKGROUND ...................................................... 6

V.        ARGUMENT ................................................................................. 8

        A.      The construction of deeds, the analysis of the proper scope of any easements
                conveyed, and the elements and timing of extinguishment of Union Pacific's
                easements must be analyzed under Iowa law. ........................................ 8

        B.      The United States is entitled to summary judgment as to those claimants who
                did not own a property interest pertinent to this lawsuit on the date the Surface
                Transportation Board issued its Notice of Interim Trail Use ................................ 9

        C.      The United States is entitled to summary judgment as to those claimants
                whose properties do not adjoin the rail corridor. .................................. 10

        D.      The United States is entitled to summary judgment as to those claimants
                whose properties adjoin or relate to segments of the rail corridor Union Pacific
                owned in fee. ................................................................ 13

        E.      The United States is entitled to summary judgment as to the Des Moines
                Valley right-of-way deeds because those deeds are not limited to railroad
                purposes only. ................................................................ 15

                1.       The Des Moines Valley right-of-way deeds are not expressly limited to
                         railroad purposes only and trail use falls within the scope of the
                         easements those deeds convey. ............................................ 16

                2.       The authorities Plaintiffs cite to support their argument that the Des
                         Moines Valley right-of-way deeds are limited to railroad purposes
                         only recite limiting language that cannot be found in the Des Moines
                         Valley right-of-way deeds ................................................ 21

i

3.  The Iowa Supreme Court's holding that trail use falls outside the scope of condemned railroad easements cannot be applied to the Des Moines Valley right-of-way deeds......................................................................... 24

F.  The United States does not object to the entry of summary judgment that the Trails Act preempts abandonment of railroad easements that are limited to railroad purposes under Iowa law and that the United States is, therefore, liable for a taking of an easement for railroad purposes over affected segments of the rail corridor. ........................................................................................... 25

1.  The easement taken is for railroad purposes and does not include trail use. ...................................................................................................... 27

2.  Federal Circuit opinions addressing accrual of rails-to-trails taking claims underscore that the United States does not authorize non-conforming interim uses of rail corridors. ................................................. 29

3.  The Federal Circuit's decisions in *Preseault* and *Toews* do not require a finding that the Surface Transportation Board authorized a non-conforming use in this case.................................................................... 30

VI.  CONCLUSION................................................................................................. 32

TABLE OF AUTHORITIES

FEDERAL CASES

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986).................................................................................. 4, 10

*Anna F. Nordhus Family Trust v. United States*,
    98 Fed. Cl. 331 (Fed. Cl. 2011) ...................................................................... 9

*Barclay v. United States*,
    443 F.3d 1368 (Fed.Cir. 2006)........................................................... 29, 30, 32

*Biery v. United States*,
    No. 07-693, 2011 WL 2279653 (Fed. Cl. Jun. 9, 2011) ..................................... 9

*Brecht v. Abrahamson*,
    507 U.S. 619 (1993)..................................................................................... 32

*Burlington N.R.R. Co. v. Kmezich*,
    48 F.3d 1047 (8th Cir. 1995) ....................................................................... 26

*Caldwell v. United States*,
    391 F.3d 1226 (Fed. Cir. 2004)............................................................... passim

*Capreal, Inc. v. United States*,
    No. 09-186L, 2011 WL 1740543 (Fed. Cl. May 6, 2011) ................................. 9

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)...................................................................................... 4

*Chevy Chase Land Co. of Montgomery Cnty., Md. v. United States*,
    230 F.3d 1375 (Fed. Cir. 1999) (unpublished) ................................................ 9

*Chevy Chase Land Co. of Montgomery Cnty., Md. v. United States*,
    37 Fed. Cl. 545 (1997) ................................................................................. 9

*Ellamae Phillips Co. v. United States*,
    564 F.3d 1367 (Fed. Cir. 2009)........................................................... 8, 15, 22

*Glossmeyer v. United States*,
    45 Fed. Cl. 771 (2000) ................................................................................. 9

*Goos v. Interstate Commerce Comm'n.*,
    911 F.2d 1283 (8th Cir. 1990) ..................................................................... 28

*Hawk v. Rice*,
    325 N.W.2d 97 (Iowa 1982) ............................................................. 18, 21, 22

*Hendler v. United States*,
    11 Cl. Ct. 91 (1986) ............................................................................ 31

*Hendler v. United States*,
    952 F.2d 1364 (Fed. Cir. 1991)......................................................... 31

*Illig v. United States*,
    58 Fed. Cl. 619 (2003) ...................................................................... 28

*Ladd v. United States*,
    630 F.3d 1015 (Fed. Cir. 2010)............................................... 29, 30, 32

*Macy Elevator, Inc. v. United States*,
    97 Fed. Cl. 708 (2011) ........................................................................ 9

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)....................................................................... 4, 10

*McKinley v. Waterloo R.R. Co.*,
    368 N.W.2d 131 (Iowa 1985) ...................................... 21, 22, 24, 25

*Moden v. United States*,
    404 F.3d 1335 (Fed. Cir. 2005)......................................................... 27

*Preseault v. Interstate Commerce Comm'n*,
    494 U.S. 1 (1990)...................................................................... 5, 9, 24

*Preseault v. United States*,
    100 F.3d 1525 (Fed. Cir. 1996) (en banc)............................... passim

*Toews v. United States*,
    376 F.3d 1371 (Fed. Cir. 2004)................................... 19, 25, 30, 31

*Troha v. United States*,
    692 F. Supp. 2d 550 (W.D. Pa. 2010)................................................ 8

*United States v. Dow*,
    357 U.S. 17 (1958)............................................................................. 9

*W. Union Tel. v. Pa. R.R. Co.*,
    195 U.S. 540 (1904).......................................................................... 19

## STATE CASES

*Atkin v. Westfall*,
    69 N.W.2d 523 (Iowa 1955) ............................................................ 18

*Butler v. Hoover Nature Trail, Inc.*,
    530 N.W.2d 85 (Iowa App. 1994) ................................................... 26

*Chevy Chase Land Co. v. United States*,
    733 A.2d 1055 (Md. 1999) ......................................................................... 19, 20

*Estate of Rockafellow v. Lihs*,
    494 N.W.2d 734 (Iowa App. 1992) ........................................................... 21, 23

*Feilharber v. Swiler*,
    212 N.W. 417 (Iowa 1927) ............................................................................... 13

*Fencl v. City of Harpers Ferry*,
    620 N.W.2d 808 (Iowa 2000) .......................................................................... 11

*Haack v. Burlington N., Inc.*,
    309 N.W.2d 147 (Iowa App. 1981) ........................................................... 17, 18

*Iowa v. Ahitow*,
    544 N.W.2d 270 (Iowa 1996) .......................................................................... 26

*Jacobs v. Miller*,
    111 N.W.2d 673 (Iowa 1961) .......................................................................... 11

*Johnson v. Burlington N., Inc.*,
    294 N.W.2d 63 (Iowa App. 1992) ............................................................. 17, 18

*Keokuk Junction Ry. Co. v. IES Indus., Inc.*,
    618 N.W.2d 352 (Iowa 2000) .......................................................................... 19

*Lowers v. United States*,
    663 N.W.2d 408 (Iowa 2003) ................................................................ 14, 18, 23

*Macerich Real Estate Co. v. City of Ames*,
    433 N.W.2d 726 (Iowa 1988) ................................................................... passim

*Marshall Ice Co. v. La Plant*,
    111 N.W. 1016 (Iowa 1907) ........................................................................... 13

*McDonnel v. Sheets*,
    15 N.W.2d 252 (Iowa 1944) ...................................................................... 17, 21

*McGrane v. Maloney*,
    770 N.W.2d 851, No. 08-1502, 2009 WL 929048 (Iowa App. Apr. 8, 2009)
    (unpublished) .......................................................................................... 21, 23

*Milburn v. City of Cedar Rapids*,
    12 Iowa 246, 1861 WL 248 (Iowa Oct. 17, 1861) .................................... 11, 20

*Moody v. Allegheny Valley Land Trust*,
    976 A.2d 484 (Pa. 2009) ................................................................................. 19

*Notelzah, Inc. v. Destival*,
    489 N.W.2d 744 (Iowa 1992) ........................................................... 25

*Rinard v. Burlington & W. Rwy. Co.*,
    23 N.W. 914 (Iowa 1885) ............................................................... 11

*Schwartz v. Grossman*,
    173 N.W.2d 57 (Iowa 1969) ........................................................... 19

*State v. City of Polytechnic*,
    194 S.W. 1136 (Tex. App. 1917) ..................................................... 13

*Stecklein v. City of Cascade*,
    693 N.W.2d 335 (Iowa 2005) .......................................................... 11

*Thompson v. City of Osage*,
    421 N.W.2d 529 (Iowa 1988) .......................................................... 25

*Wash. Wildlife Preservation v. States*,
    329 N.W.2d 543 (Minn. 1983) ................................................... passim

*Wiegmann v. Baeier*,
    203 N.W.2d 204 (Iowa 1972) .......................................................... 17

## U.S. CONSTITUTION

U.S. Const. amend. V ............................................................................ 8

## FEDERAL STATUTES

16 U.S.C. § 1247(d) ...................................................................... passim

49 U.S.C. § 10502 ................................................................................ 5

49 U.S.C. § 10903 ................................................................................ 5

Interstate Commerce Commission Termination Act of 1995,
    Pub. L. No. 104-88, 109 Stat. 803 (1995) ........................................ 5

National Trails System Act Amendments of 1983,
    Pub. L. No. 98-11, 97 Stat. 48 § 208(d) ........................................... 5

## CODE OF FEDERAL REGULATIONS

49 C.F.R. § 1152.1 ............................................................................... 5

49 C.F.R. § 1152.20 ............................................................................. 5

49 C.F.R. § 1152.29 ............................................................................. 5

49 C.F.R. § 1152.50 ................................................................................................. 5

## FEDERAL RULES OF CIVIL PROCEDURE

Fed. R. Civ. P. 56 ................................................................................................... 4

## STATE STATUES

Iowa Code § 327G.76 ............................................................................ 11, 12, 19, 26

Iowa Code § 327G.77 ...................................................................................... passim

## RULES OF COURT

R. Ct. Fed. Cl. 5.4 .................................................................................................. 1

R. Ct. Fed. Cl. 56 ............................................................................................... 1, 4

## SURFACE TRANSPORTATION BOARD DECISIONS

*Idaho N. & Pac. R.R. Co.*,
    3 S.T.B. 50, 1998 WL 146208 (Surface Trnsp. Bd. Mar. 20, 1998) ......................... 28, 29

*Policy Statement on Rails to Trails Conversions*,
    1990 WL 287255 (Surface Transp. Bd. Jan. 29, 1990) .................................................... 28

*Union Pacific R.R. Co. Abandonment Exemption in Cerro Gordo Cnty., IA*,
    2005 WL 835611 (Surface Transp. Bd. Apr. 12, 2005) .................................................. 28

## UNITED STATES' CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

The United States of America cross-moves for partial summary judgment pursuant to Rules 5.4(a)(5) and 56 of the Rules of the Court of Federal Claims ("RCFC").  Pursuant to the direction this Court gave during the July 15, 2011, telephonic status conference, the United States limits this cross-motion to those claimants that are the subject of Plaintiffs' motion for partial summary judgment.  Pls.' Mot. (Docket Entry No. ["D.E."] 43).  Plaintiffs' motion involves claims presented by four different categories of claimants:  (1) claimants who have not shown and/or cannot show ownership of land adjoining the rail corridor on the date the Surface Transportation Board ("STB") issued its Notice of Interim Trail Use ("NITU"); (2) claimants who own property adjoining segments of the rail corridor that Union Pacific Railroad Company ("Union Pacific") owned in fee; (3) claimants who own property adjoining segments of the rail corridor over which the Des Moines Valley Railroad Company ("Des Moines Valley") acquired unlimited easements; and (4) claimants who own property adjoining segments of the rail corridor over which the railroad acquired easements by condemnation.  As to the first three categories, the United States either moves for summary judgment in its favor or opposes Plaintiffs' motion for summary judgment.  As to the fourth category, the United States does not object to the entry of summary judgment against it for the taking of an easement for railroad purposes.

The first step in the takings analysis is to determine whether a plaintiff owned the property allegedly taken on the date of taking.  Here, the United States opposes Plaintiffs' motion for summary judgment where the evidence Plaintiffs proffer does not establish that the associated claimants owned these parcels when the STB issued its NITU.  In addition, the United States moves for summary judgment as to those parcels that do not adjoin the rail corridor.  And the United States opposes Plaintiffs' motion for summary judgment where the evidence Plaintiffs proffer does not establish that the parcels adjoin the rail corridor.  The United States moves for

1

summary judgment as to those parcels that adjoin segments of the rail corridor that Union Pacific owned in fee simple absolute. *Preseault v. United States*, 100 F.3d 1525, 1533 (Fed. Cir. 1996) (en banc).  The United States moves for summary judgment as to the third category of claimants on the ground that the relevant deeded easements were not expressly limited to railroad purposes only and embrace recreational trail use.

As to the fourth category of claimants, the United States, for the reasons discussed in greater detail in the accompanying memorandum, does not object to the entry of summary judgment against it for the taking of an easement for railroad purposes.  The easement taken is not one for recreational trail use.  This distinction flows from the plain language of the Trails Act and the Federal Circuit's decisions in rails-to-trails cases.

In support of this cross-motion, the United States submits this notice of cross-motion, the accompanying memorandum of points and authorities with referenced appendices, and its proposed findings of fact with referenced exhibits.

STATEMENT OF ISSUES PRESENTED

1.    May this Court grant Plaintiffs' motion for partial summary judgment as to those claimants who proffer evidence suggesting that they may not have owned the relevant parcel on the date the STB issued its NITU?

2.    Is the United States entitled to summary judgment with respect to claimants who have failed to prove their property adjoins the rail corridor?

3.    Is the United States entitled to summary judgment with respect to claimants whose properties adjoin portions of the rail corridor that Union Pacific owned in fee simple absolute?

4.    Are Des Moines Valley's right-of-way deeds expressly limited to railroad purposes only?

5.      In those instances where the railroad acquired an easement for railroad purposes only, did the pre-emption of the extinguishment of that easement constitute the taking of an easement for railroad purposes or an easement for trail use?

<u>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNITED STATES' CROSS-MOTION AND IN RESPONSE TO PLAINTIFFS' MOTION</u>

I.      <u>PRELIMINARY STATEMENT</u>

Plaintiffs allege that the STB's issuance of a NITU amounts to a taking of their property under the Fifth Amendment.  2d Am. Compl. (Dkt. Entry No. ("D.E.") 25) ¶ 44.  Plaintiffs moved for partial summary judgment as to 144 of the 242 parcels.  Pls.' Mot. (D.E. 43) at 1-3. Plaintiffs argue that they are entitled to a liability finding as to these 144 parcels because trail use falls beyond the scope of Union Pacific's railroad easements.

Plaintiffs' motion presents the four categories of claimants the United States identified above in its notice of motion.  For the reasons summarized above and discussed in greater detail below, this Court should deny Plaintiffs motion in those instances where Plaintiffs have not proffered evidence establishing that the associated claimant owned the parcel when the claim accrued or Plaintiffs have failed to show that the parcel adjoins the rail corridor.  The United States is entitled to summary judgment as to those parcels that Plaintiffs cannot show adjoin the rail corridor and as to those parcels that adjoin segments of the rail corridor that Union Pacific owned in fee or operated under unlimited easements.  As to the fourth category of claimants, the United States does not object to the entry against it of summary judgment for the taking of an easement for railroad purposes.

The 144 parcels involved in this motion may fall into more than one of these categories (i.e., the United States may be entitled to summary judgment on multiple grounds as to some of

the claimants).  Attached as Appendices A through E to this memorandum are charts illustrating

which of the four categories apply to each of the claimants identified in Plaintiffs' motion.

II.    STANDARD OF REVIEW ON MOTION FOR SUMMARY JUDGMENT

        Summary judgment is proper "if the movant shows that there is no genuine dispute as to

any material fact and that the movant is entitled to judgment as a matter of law."  RCFC 56(a).

A material fact is one that could affect the outcome of the suit, and a genuine issue is one that

could permit a reasonable jury to enter a verdict in the non-moving party's favor.  *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The party moving for summary judgment bears

the initial burden of establishing the absence of a genuine issue of material fact and can satisfy

this burden by presenting evidence that negates an essential element of the non-moving party's

case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  Alternatively, the moving party

can demonstrate that the non-moving party cannot produce evidence to support an essential

element upon which it will bear the burden of proof at trial.  *Id.*

        Once the moving party meets its initial burden, the non-moving party may not rely

merely on allegations or denials in its own pleading.  *See* RCFC 56(c)(1).  Instead, where the

moving party's initial burden is met, the non-moving party, through affidavits or as otherwise

provided in RCFC 56, must set forth specific facts showing a genuine issue for trial.  *Celotex*

*Corp.*, 477 U.S. at 324 (applying Fed. R. Civ. P. 56).  In evaluating motions for summary

judgment, courts must draw any inferences from the underlying facts in the light most favorable

to the non-moving party and may not engage in credibility determinations or weigh the evidence.

*Anderson*, 477 U.S. at 255; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S.

574, 587 (1986).

III.     THE TRAILS ACT

Congress enacted the Trails Act in an effort to preserve railroad corridors for possible future rail use by preempting state abandonment law.  *Preseault v. Interstate Commerce Comm'n*, 494 U.S. 1, 7-8 (1990) (citing National Trails System Act Amendments of 1983, Pub. L. No. 98-11, 97 Stat. 48 § 208(d) (codified as amended at 16 U.S.C. § 1247(d))).  Pursuant to its rule-making authority, the STB[1] published regulations concerning abandonment of and discontinuance of service over rail lines, including regulations relating to railbanking pursuant to the Trails Act.  49 C.F.R. §§ 1152.1-1152.60.  To pursue regulatory abandonment of a rail line or discontinuance of service over a rail line, rail operators must file an application for abandonment or discontinuance with the STB.  49 U.S.C. § 10903; 49 C.F.R. § 1152.20 (establishing the regulatory framework for abandonment/discontinuance application).  In certain circumstances, a rail operator may initiate proceedings for exempt abandonment or discontinuance, which offers a more streamlined process.  49 C.F.R. § 1152.50 (regulatory framework for exempt abandonments and discontinuances).[2]

After a railroad initiates an exempted abandonment proceeding, a state, political subdivision, or qualified private organization may submit a petition in that proceeding indicating its interest in acquiring or using the subject rail corridor for interim use and railbanking under the Trails Act.  49 C.F.R. § 1152.29(a).  If the rail operator agrees to negotiate an interim trail use

---

[1]      When Congress enacted the Trails Act, the Interstate Commerce Commission was the administrative agency charged with the Act's implementation.  Congress abolished the Interstate Commerce Commission and replaced it with the STB.  Interstate Commerce Commission Termination Act of 1995, Pub. L. No. 104-88, 109 Stat. 803, 804, 807 §§ 101, 10501 (1995).  The STB exercises all the powers and functions relevant to this lawsuit that the former Interstate Commerce Commission exercised.  *Id.* § 10501.

[2]      Union Pacific filed a petition for exempted abandonment under 49 U.S.C. § 10502 in this case.  Pls.' Proposed Finding (D.E. 45) ¶ 149, Ex. B.

agreement with the proposed trail operator, the STB must issue a NITU.  *Id.* § 1152.29(c).  The

NITU suspends the railroad's initial proceedings and provides a 180-day window for the rail

operator and third party to negotiate an interim trail use agreement.  *Id*.  If the parties enter into

an interim trail use agreement, the abandonment proceedings are suspended and rail service is

discontinued.  Interim trail use under that agreement "shall not be treated, for purposes of any

law or rule of law, as an abandonment of the use of such rights-of-way for railroad purposes."

16 U.S.C. § 1247(d).  If no railbanking agreement is reached, the rail operator may abandon the

rail line, subject to the satisfaction of any other conditions of abandonment.  49 C.F.R.

§ 1152.29(d)(1).

IV.    RELEVANT FACTUAL BACKGROUND

    This lawsuit involves two historic lines that were constructed in Dallas County Iowa.

The first relevant segment runs northerly from Waukee, Iowa to Perry, Iowa and was constructed

by the Des Moines Valley Railroad Company.  The second relevant segment runs westerly from

Perry, Iowa to Dawson, Iowa and was constructed by the Chicago, Milwaukee, and St. Paul

Railway Company.  Plaintiffs' motion for partial summary judgment focuses on claimants whose

properties allegedly adjoin the Waukee-to-Perry segment.

    Beginning in the late 1860's, Des Moines Valley obtained property rights in conjunction

with its construction of the subject railroad corridor.  Des Moines Valley obtained its rights

through a combination of deeds and condemnation of rights-of-way.  *See, e.g.,* Pls.' Proposed

Findings (D.E. 45) ¶ 147.a, Ex. II.1 (example of relevant Des Moines Valley right-of-way deed);

*id.* ¶ 146.a, Ex. I.1 (example of relevant Commissioners' reports on condemnation proceedings).

Relevant to the segment of the line at issue in this case, Des Moines Valley used a standard form

of right-of-way deed.  That standard form of right-of-way deed stated, in pertinent part:

> [Grantors] hereby sell and convey to the Des Moines Valley Rail Road Company, a corporation duly organized under the laws of the State of Iowa, the right of way for railroad Road as the same is located said right of way to be one hundred feet in width to be used for a single or double track for said Rail Road and for any other rail road purposes or uses over and across the following described tract in the County of Dallas and State of Iowa: [legal description].

*See, e.g., id.* ¶ 146.a, Ex. II.1.  Des Moines Valley also acquired additional property rights to the relevant rail corridor—particularly in instances where it later decided to build depot grounds in the towns of Perry, Milburn, and Dallas Center.  U.S. Proposed Findings ¶¶ 1, 3, 4, 6.  These later deeds recited different language than the original right-of-way deeds, conveying tracts of land rather than rights-of-way.  *Id.*, Exs. 1-3; *see infra* Part V.D.

Union Pacific became the successor-in-interest to this rail line.  On July 6, 2004, Union Pacific filed with the STB a petition for exemption from formal abandonment proceedings.  Pls.' Proposed Findings (D.E. 45) ¶ 45, Ex. B at 8-9.  The NITU described that segment of the rail corridor lying between milepost 369.0, near Dawson, Iowa, and milepost 361.8, near Perry, Iowa, and between milepost 275.9, near Perry, Iowa to milepost 296.8, near Waukee, Iowa, a distance of 28.1 miles.  *Id.* at 8.  This segment lies in Dallas County, Iowa.  *Id.* at 7.

In response to Union Pacific's exemption petition, the Iowa Natural Heritage Foundation, on behalf of Dallas County, filed a petition with the STB indicating that it was interested in negotiating a trail use agreement with Union Pacific.  *Id.* ¶ 150, Ex. C.  Union Pacific responded that it was willing to negotiate a trail use agreement with the Council.  *Id.* ¶ 151, Ex. D.

Based on the Council's and Union Pacific's mutual interest in exploring an agreement for railbanking with interim trail use, the STB issued a NITU on October 25, 2004.  *Id.* ¶ 152, Ex. E.  By letter dated January 28, 2008, the Iowa Natural Heritage Foundation notified the STB that it and Union Pacific successfully negotiated a trail use agreement.  *Id.* ¶ 153, Ex. F.

V.     ARGUMENT

The Fifth Amendment states in pertinent part:  "nor shall private property be taken for public use, without just compensation."  U.S. Const. amend. V.  In order to prove a Fifth Amendment taking occasioned by the issuance of a NITU, Plaintiffs must prove that "state law reversionary interests are effectively eliminated in connection with a conversion of a railroad right-of-way to trail use."  *Caldwell v. United States*, 391 F.3d 1226, 1228 (Fed. Cir. 2004) (citing *Preseault*, 100 F.3d at 1543).  The Federal Circuit adopted a three-step analytic framework for analyzing takings claims under the Trails Act.  First, Plaintiffs must show that they have an ownership interest in segments of the rail corridor where the rail operator possesses an easement.  *Ellamae Phillips Co. v. United States*, 564 F.3d 1367, 1373 (Fed. Cir. 2009).  If the railroad owns the relevant segment of the rail corridor in fee, the United States has no takings liability.  *Preseault*, 100 F.3d at 1533.  Second, as to those segments of the rail corridor in which the rail operator possesses an easement, Plaintiffs must show that trail use falls outside the scope of the easement.  *Ellamae Phillips*, 564 F.3d at 1373.  If trail use falls within the scope of the easements at issue, the United States generally has no takings liability.  *See Troha v. United States*, 692 F. Supp. 2d 550, 560-64 (W.D. Pa. 2010).  Third, even if trail use falls within the scope of the railroad easements, Plaintiffs may establish a taking by showing that the railroad easement was abandoned—or, in Iowa parlance, extinguished—*before* the STB issued its NITU.  *Ellamae Phillips*, 564 F.3d at 1373.

A.     The construction of deeds, the analysis of the proper scope of any easements conveyed, and the elements and timing of extinguishment of Union Pacific's easements must be analyzed under Iowa law.

Plaintiffs insist that no Federal Circuit decision or judge on the CFC has held that railbanking or interim trail use fall within the scope of railroad easements.  Pls.' Memo. (D.E. 44) at Part VII.a.i.  This argument misapprehends takings jurisprudence under the Trails Act.

The Supreme Court noted the need to analyze the ownership interests at issue under applicable state law. *Preseault*, 494 U.S. at 16. And the Federal Circuit noted that an examination of property interests in rails-to-trails cases requires a "close examination" of the conveying instruments, read in light of the common law and the statutes of the applicable state. *Preseault*, 100 F.3d at 1534 ("Ideally that question would be decided by the State of Vermont's courts, utilizing their knowledge of and experience with their state's property law."). Thus, for example, the relevant question for this Court is not whether interim trail use falls within the scope of various railroad easements under the laws of Vermont (*Preseault*, 100 F.3d at 1529), Missouri (*Glosemeyer v. United States*, 45 Fed. Cl. 771, 772 (2000)), Indiana (*Macy Elevator, Inc. v. United States*, 97 Fed. Cl. 708, 729-31 (2011)), Kansas (*Biery v. United States*, No. 07-693, 2011 WL 2279653, at \*7-10 (Fed. Cl. Jun. 9, 2011), and *Anna F. Nordhus Family Trust v. United States*, 98 Fed. Cl. 331, 338 (Fed. Cl. 2011)), or Massachusetts (*Capreal, Inc. v. United States*, No. 09-186L, 2011 WL 1740543, at \*11-12 (Fed. Cl. May 6, 2011)); the relevant inquiry is whether trail use falls within the scope of the deeded easements relevant to Plaintiffs' lawsuit under Iowa law.[3]

> B.  The United States is entitled to summary judgment as to those claimants who did not own a property interest pertinent to this lawsuit on the date the Surface Transportation Board issued its Notice of Interim Trail Use.

Each claimant must prove that they owned the property rights allegedly taken when the takings claim accrued. *United States v. Dow*, 357 U.S. 17, 20-21 (1958). In this case Plaintiffs'

---

[3]    Plaintiffs incorrectly assert that no judge on the CFC and no Federal Circuit decision has held that trail use falls within the scope of a railroad easement. Pls.' Memo. (D.E. 44) at Part VII.A.i. Yet in *Chevy Chase Land Co. of Montgomery County, Md. v. United States*, 37 Fed. Cl. 545 (1997), Judge Merow concluded that interim trail use fell within the scope of certain railroad easements under Maryland law. *Id.* at 585-87. The Federal Circuit affirmed Judge Merow's ruling in an unpublished opinion. *Chevy Chase Land Co. of Montgomery Cnty., Md. v. United States*, 230 F.3d 1375 (Fed. Cir. 1999) (unpublished) (citing *Chevy Chase Land Co. v. United States*, 733 A.2d 1055 (Md. 1999)).

takings claims accrued when the STB issued its NITU on October 25, 2004.  Pls.' Proposed

Findings (D.E. 45) ¶ 152, Ex. E; *see Caldwell*, 391 F.3d at 1235.  There is a category of

claimants at issue in Plaintiffs' motion, however, who predicate their claim on an inference that

they owned the parcels they allege to justify their takings claims on October 25, 2004.  More

specifically, certain Plaintiffs proffer deeds pre-dating the NITU that evidence ownership of the

parcels on which they base their claims, but they also proffer Dallas County Assessor parcel

reports identifying a different owner.  Other claimants proffer an ownership deed that recites

legal descriptions that cannot be reconciled with the legal description recited in the associated

Assessor parcel report.  These claimants and the relevant parcels are identified in the attached

Appendix A.  If these claimants conveyed their properties to third parties *after* the NITU date,

then their claims are valid.  But if these claimants conveyed their properties to third parties

*before* the NITU date, then they lack standing under *Dow*.  Plaintiffs seek an inference drawn in

their favor that the claimants identified in Appendix A deeded their properties to third parties

after the NITU date or that the parcel described in the ownership deed is the same as that parcel

described in the associated Assessor parcel report.  But all reasonable inferences must be drawn

in the United States' favor.  *Anderson*, 477 U.S. at 255; *Matsushita*, 475 U.S. at 574.

Accordingly, this Court must deny Plaintiffs' motion as to those claimants and parcels identified

in Appendix A.

> C.    <u>The United States is entitled to summary judgment as to those claimants whose
> properties do not adjoin the rail corridor.</u>

There is a category of claimants who lack standing because they cannot and/or have not

shown that the parcels on which they base their claims do not adjoin the rail corridor.  These

claimants are identified in the attached Appendix B.

Under Iowa law, plaintiffs who wish to establish ownership in a rail corridor must determine whether the rail operator possessed a fee or an easement in the relevant segment of the corridor.  Where the railroad company owns a fee interest in the rail corridor, Plaintiffs must show that they hold some enforceable reversionary or executory interest in the railroad line. *Jacobs v. Miller*, 111 N.W.2d 673, 675-76 (Iowa 1961).[4]  Where the railroad company possesses an easement for railroad purposes only, extinguishment is governed by Iowa statute and adjoining landowners obtain title to the corridor once the easement is extinguished.  *Macerich Real Estate Co. v. City of Ames*, 433 N.W.2d 726, 729-30 (Iowa 1988) (citing Iowa Code §§ 327G.76, 327G.77).

Owners of subdivided lots own title to their lots only.  *Milburn v. City of Cedar Rapids*, 12 Iowa 246, 1861 WL 248, at *4 (Iowa Oct. 17, 1861) ("[T]here is no room to indulge the presumption that the purchaser takes any more land than is contained within the defined lines of his lot").  Their title does not extend to other lands beyond the lots identified in their subdivision maps.  *See Rinard v. Burlington & W. Rwy. Co.*, 23 N.W. 914, 915 (Iowa 1885) (holding that lot owner had no claim for damages from railroad placing debris in street abutting owner's lot because the owner "is not invested with the title to the land dedicated for a street").  Incorporated towns and cities own fee title to streets, roads, and alleys dedicated in subdivision maps that fall within the town or city limits, even if those streets, roads, and alleys are never opened.  *Stecklein v. City of Cascade*, 693 N.W.2d 335, 339-41 (Iowa 2005).  Further, property owners cannot adversely possess property owned by governmental entities.  *Id.* at 340 (quoting *Fencl v. City of Harpers Ferry*, 620 N.W.2d 808, 816 n.5 (Iowa 2000)).

---

[4]     *But see McKinley v. Waterloo R.R. Co.*, 368 N.W.2d 131, 138 (Iowa 1985) (holding that reversionary interests were extinguished by operation of Iowa's stale-uses statute unless those claiming reversionary interests recorded a verified claim with the county recorder by July 5, 1966).

The claims asserted by virtue of those parcels identified in Appendix B are based largely on subdivided lots in the towns of Perry, Minburn, and Dallas Center.  Several of the parcels associated with these claimants are separated from the rail corridor by strips of land, typically platted for streets and alleys.  U.S. Proposed Findings ¶¶ 13-19, 22, 25, 27-31, 33.  Other parcels are separated from the rail corridor by another parcel of property.  *Id.* ¶¶ 20, 35.  Accordingly, these claimants can assert no interest in that corridor even assuming *arguendo* that the segments of the rail corridor in the general vicinity of these parcels are extinguished easements under Iowa Code § 327G.76.  *See* Iowa Code § 327G.77(1) (stating that where rail road easement rights extinguish, "the property shall pass to the owners of the *adjacent* property at the time of abandonment") (emphasis added).[5]

In addition to being separated by a street, alley, or other strip of land, seven of the properties do not adjoin the original 100-foot wide rail corridor Plaintiffs point to in their proposed findings.  U.S. Proposed Findings ¶ 11 (portion), 16 (portion), 17-20, 22, 25 (portion), 33.  Instead, these parcels adjoin the later conveyed (and larger) depot grounds.  *Id.*  Plaintiffs, however, do not provide a deed for the depot grounds, they point instead to a deed for the original 100-foot wide rail corridor.  Pls.' Proposed Findings (D.E. 45) ¶ 146.k, Ex. I.11.  Because the parcels associated with claimants 25, 26C, 28, and 58 and a portion of the parcels associated with claimants 15B, 24 and 30 do not adjoin the original right-of-way corridor described in the condemnation report Plaintiffs proffer, these parcels do not have any claim to the rail corridor under Iowa Code § 327G.77.

---

[5]     *But see infra* Part V.C (explaining that Union Pacific owned fee title to the depot grounds in the towns of Perry, Minburn, and Dallas Center in the vicinity of many of these claimants' properties).

Finally, there is one parcel—Pls.' Proposed Findings (D.E. 45) ¶ 17, Ex. 10B—that touches the rail corridor at a point, but does not have a border that runs along the rail corridor. *See* U.S. Proposed Findings ¶ 10, Ex. 5.  Even if a line is drawn from this point to the center of the rail corridor, there is no resulting area because there is only a single line.  *See State v. City of Polytechnic*, 194 S.W. 1136, 1140 (Tex. App. 1917) ("In geometry, 'area' means the superficial contents of any figure; the surface included within any given *lines*.") (emphasis added).  Because Iowa Code § 327G.77 vests title in adjoining property owners to the center line of the rail corridor, the parcel associated with Exhibit 10C to Plaintiffs' proposed findings cannot give rise to a taking claim based on a singular point abutting the rail corridor.

     D.     The United States is entitled to summary judgment as to those claimants whose properties adjoin or relate to segments of the rail corridor Union Pacific owned in fee.

Plaintiffs assert that they hold property rights in segments of the rail corridor passing through the towns of Perry, Dallas Center, and Minburn, Iowa.  *See, e.g.,* Pls.' Proposed Findings (D.E. 45) ¶¶ 44, 45, 46, 47, Exs. 27, 28, 29, 30.  Plaintiffs point to various deeded easements and condemnations in support of their claims.  *See, e.g., id.* ¶ 146.l, Exs. I.12.  But these original conveyances and condemnations were superseded by subsequent fee conveyances to Union Pacific's predecessors-in-interest.  *See Marshall Ice Co. v. La Plant,* 111 N.W. 1016, 1019 (Iowa 1907) ("No easement exists so long as there is a unity of ownership, because the owner of the whole may, at any time, rearrange the qualities of the several parts."), *quoted in Feilharber v. Swiler*, 212 N.W. 417, 418 (Iowa 1927).  When the railroad decided to build depot grounds in Perry, Dallas Center, and Minburn, it obtained additional conveyances.  U.S. Proposed Findings ¶¶ 1, 3, 4, 6, Exs. 1-3.  These conveyances did not track the language of the right-of-way deeds.  Instead, they recited language that conveyed fee title to the railroad.  The Supreme Court and the Federal Circuit have held that a NITU does not amount to a taking of property where the railroad

held a fee simple absolute property interest. *Preseault*, 100 F.3d at 1533. Hence, the claims associated with the parcels identified in attached Appendix C are invalid because they are based on assertion of ownership in segments of the rail corridor that Union Pacific owned in fee.

The Iowa Supreme Court, in answering questions certified to it by the United States District Court for the Southern District of Iowa in a rails-to-trails case, established the criteria by which railroad deeds are construed either as fee conveyances or as easements. *Lowers v. United States*, 663 N.W.2d 408, 410-11 (Iowa 2003). *Lowers* held that deeds to railroads that "grant[] a specified tract of land without limitation or qualification" convey fee and not an easement. *Id.* at 411. This was so even though the deed at issue in *Lowers* was titled "Rt. of Way Deed." *Id.* To establish an easement, "there must be some reference to right-of-way in the language defining the interest being conveyed." *Id.*

The relevant conveyances to Union Pacific's predecessor-in-interest are based on a similar form of conveyance that recites the following granting clause: "That [grantors] . . . do hereby sell and convey unto the [railroad company] the following described premises, situated in the County of Dallas and State of Iowa, to-wit: [legal description]." U.S. Proposed Findings ¶¶ 1, 3,[6] 4, 6.[7] Because these deeds convey "premises" and do not recite "right-of-way" in the interesting being conveyed, the deeds conveyed a fee interest to Union Pacific's predecessor-in-interest. *Lowers*, 663 N.W.2d at 411.

---

[6]    Plaintiffs mistakenly characterize this deed as a condemnation report in their proposed findings. U.S. Response to Pls.' Proposed Findings (D.E. 45) ¶ 146.y, Ex. I.25.

[7]    In addition to these four deeds, all recorded in Book S of the records of the Dallas County Recorder, Union Pacific owned in fee, U.S. Proposed Finding ¶ 8, Ex. 4, a strip of land adjoining the rail corridor in the northeast quarter of the northeast quarter of section 28, Township 80, Range 27, *id.* ¶ 9, Ex. 4. This parcel separates a portion of the parcel associated with claimant 47G from the rail corridor, although part of the parcel associated with claimant 47G adjoins the rail corridor.

The deed recorded at book S, page 235 applies to the depot grounds in Perry, Iowa.  U.S.

Proposed Findings ¶ 7.  The deeds recorded at book S, page 233 and at book S, page 234 apply

to the depot grounds in Minburn, Iowa.  *Id.* ¶ 5; U.S. Response to Pls.' Proposed Findings (D.E.

45) ¶ 146.y, Ex. I.25.  And the deed recorded at S, page 232 applies to those parcels lying in

Dallas Center, Iowa.  U.S. Proposed Findings ¶ 2.[8]  The attached Appendix C identifies which of

the above-listed deeds applies to parcels identified in Plaintiffs' motion.

E.      The United States is entitled to summary judgment as to the Des Moines Valley
        right-of-way deeds because those deeds are not limited to railroad purposes only.

The second step of analyzing takings claims under the Trails Act requires this Court to

determine whether, under Iowa law, trail use falls within the scope of the relevant railroad

easements.  *Ellamae Phillips*, 564 F.3d at 1373.  Plaintiffs' lawsuit presents two general

categories of easements.  The first category involves easements to Des Moines Valley that do not

recite express limitations for railroad purposes only.  *Infra* Part E.1.  The claims associated with

the parcels identified in attached Appendix D fall within this category.[9]

---

[8]      The United States notes that the deed conveying the depot grounds in Dallas Center
describes the depot grounds lying in the northwest quarter and the northeast quarter of section 2,
Township 79, Range 27, but the conveyance appears to be limited to the northwest quarter of
section 2.  U.S. Proposed Findings ¶ 2.  The United States continues to search for the conveyance
to Union Pacific's predecessors-in-interest for the depot grounds in the northeast quarter of
section 2.  The United States notes that Union Pacific's predecessors-in-interest conveyed fee
title from the depot grounds, including area within the original 100-foot-wide right-of-way, to
third parties (some of whom are now claimants in this lawsuit).  *Id.* ¶ 43.  Further, the United
States notes that the city of Dallas Center played a role in the request to have the Surface
Transportation Board issue the Notice of Interim Trail Use at issue in this lawsuit.  *Id.* ¶ 44.
Accordingly, and pursuant to RCFC 56(d), the United States requests that the Court not grant
summary judgment as to the Dallas Center depot grounds in the northeast quarter of section 2 or
in favor of the city of Dallas Center as a claimant in this lawsuit until the title to Dallas Center
depot grounds and the city's role in the railbanking request is fully researched.

[9]      The second category of easements—those acquired by condemnation—are discussed in
Part V.F of this brief.

Plaintiffs assert that the Des Moines Valley easements are for railroad purposes only based on a number of Iowa court decisions that construed certain deeded railroad easements as so limited.  Pls.' Memo. (D.E. 44) at 18-20, 28-30.  But, with the exception of the deeds at issue in *Macerich*, 433 N.W.2d at 727-28 (discussed below), the deeds at issue in those court decisions recited (1) express limitations on the use of the easement or (2) reverters in the event of permanent non-user as a railroad.  *See infra* Part D.2.  The Des Moines Valley right-of-way deeds at issue here contain no such specific limitations or reverters, nor do they even state a descriptive purpose for the easement.  Instead the Des Moines Valley right-of-way deeds convey an unlimited easement under Iowa law.

Having incorrectly concluded that the Des Moines Valley right-of-way deeds are easements limited to railroad purposes only, Plaintiffs primarily rely on the Iowa Supreme Court's decision in *McKinley*, 368 N.W.2d at 134-35, in arguing that trail use falls outside the scope of the Iowa easements.  Pls.' Memo. (D.E. 44) at VII.A.ii.  But *McKinley* involved a condemned railroad easement and distinguished condemned railroad easements from deeded easements that were not for railroad purposes only.  *See infra* Part D.3.

> 1.  <u>The Des Moines Valley right-of-way deeds are not expressly limited to railroad purposes only and trail use falls within the scope of the easements those deeds convey</u>.

Under Iowa law, there are three reasons the Des Moines Valley right-of-way deeds provided general easements that are not limited to railroad purposes only.  First, there is no express limitation recited in the Des Moines Valley right-of-way deeds that limits the deeds to railroad purposes only.  Consequently, the Des Moines Valley right-of-way deeds are unlimited easements under Iowa law.  Second, trail use falls within the scope of these unlimited easements under Iowa law because the Iowa courts would conclude that trail use does not impose a greater burden on the servient estate than rail use.  Third, the Iowa Supreme Court's opinion in

16

*McKinley* supports the conclusion that trail use falls within the scope of the Des Moines Valley right-of-way deeds.

A deeded right-of-way "may be used for any purpose to which the land accommodated thereby may reasonably be devoted unless the grant contains specific limitations . . . ." *McDonnel v. Sheets*, 15 N.W.2d 252, 255 (Iowa 1944). *McDonnel* involved a deeded grant of "the privilege of ingress and [egress] to the rear of [grantee's] property, with team and wagon . . . ." *Id.* at 253, 255. The Iowa Supreme Court held that the reference to "team and wagon" did not limit the type of vehicle that could traverse the right-of-way. *Id.* at 255 (describing the grant of easement as "unlimited"). *See also Wiegmann v. Baeier*, 203 N.W.2d 204, 208-09 (Iowa 1972) (holding that the phrase "in the same manner as the [easement] has been heretofore used" were "words of description and not of limitation"). Here, the Des Moines Valley right-of-way deeds do not expressly limit the permissible use of the easement to railroad purposes only. The absence of language expressly limiting the easements conveyed to Des Moines Valley to railroad purposes only distinguishes this case from other Iowa cases where right-of-way deeds were held to be so limited. *See Haack v. Burlington N., Inc.*, 309 N.W.2d 147, 150 (Iowa App. 1981) (quoting the right-of-way deed at issue as reciting "that the conveyance was 'for said railroad *and for railroad purposes only*'") (emphasis added); *Johnson v. Burlington N., Inc.*, 294 N.W.2d 63, 64 (Iowa App. 1992) (involving a right-of-way deed that conveyed an easement "for said railroad *and for railroad purposes only . . . .*") (emphasis added).

The clause in the Des Moines Valley right-of-way deeds that the conveyance was made "for said rail road . . . to be used for a single or double track for said rail road, and for any other railroad purposes or uses," *see, e.g.,* Pls.' Proposed Findings (D.E. 45) ¶ 147.a, Ex. II.1, does not render the easements limited to railroad purposes only. In *Lowers*, the Iowa Supreme Court

rejected the notion that a deed conveying property to a railroad "for the construction of said Railroad in said Cass County" should be construed based on the railroad's intended use.  663 N.W.2d at 410.  *Lowers* reasoned that "[d]etermining the nature of the interest conveyed by reference to the intended use by the grantee seems frivolous in matters involving narrow tracts of land acquired by railroad companies."  *Id.*  The grantors to the Des Moines Valley right-of-way deeds could have inserted limitations in their deeds that would have limited the railroad easement to railroad purposes only.  *See infra* Part V.D.2 (discussing examples of deeded easements with express limitations recited in the deeds).  *See also Haack*, 309 N.W.2d at 150; *Johnson*, 294 N.W.2d at 64.  They did not do so.

The Iowa Supreme Court's decision in *Macerich* does not lead to the conclusion that the Des Moines Valley right-of-way deeds are for railroad purposes only, even though the right-of-way deed language in that case is similar to the language in this case.  *Macerich* analyzes a dispute as to whether certain deeds conveyed easements or fee title.  433 N.W.2d at 727-28.  The two deeds at issue in *Macerich* conveyed "the right-of-way 100 feet in width for a single or double railroad track."  *Id.* at 727-28.  Unlike the Des Moines Valley deeds, the *Macerich* deeds did not include the phrase "and for any other railroad purposes or uses."  *Compare id., with* Pls.' Proposed Findings (D.E. 45) ¶ 147.a, Ex. II.1.  After concluding that the deeds at issue conveyed easements, *Macerich* concluded—without analysis—that the deeds were for railroad purposes only.  *Id.* at 729.  Notably, *Macerich* was based on an interpretation of railroad deeds articulated in *Hawk v. Rice*, 325 N.W.2d 97 (Iowa 1982).  *Macerich*, 433 N.W.2d at 728 (citing *Hawk*, 325 N.W.2d at 99).  *Hawk*, in turn, relied on *Atkin v. Westfall*, 69 N.W.2d 523, 525 (Iowa 1955).  *Hawk*, 325 N.W.2d at 99 (citing *Atkin*, 69 N.W.2d at 525).  The Iowa Supreme Court abrogated *Atkin* in *Lowers*.  *Lowers,* 663 N.W.2d at 410-11 ("Determining the nature of the interest

conveyed by reference to the intended use by the grantee seems frivolous in matters involving narrow tracts of land acquired by railroad companies."). Thus, *Macerich* does not limit the Des Moines Valley right-of-way deeds to railroad purposes only because (1) *Macerich* does not analyze the scope of easement issue (it analyzes whether the conveyance was in fee or an easement), and (2) *Macerich* is based on a restrictive reading of railroad deeds—embraced in *Atkins* and, in turn, *Hawk*—that the Iowa Supreme Court rejected in *Lowers*.

With respect to unlimited easements under Iowa law, "mere non-user does not work an abandonment of an easement created by specific grant or reservation." *Schwartz v. Grossman*, 173 N.W.2d 57, 60 (Iowa 1969).[10]  In addition, trail use falls within the scope of the Des Moines Valley right-of-way deeds, because (1) trail use is not more burdensome on the servient estate than rail service and (2) trail use, like rail use, furthers the easement purpose as a passage way. A party's use of an easement must not place a greater burden on the servient estate than was contemplated at the time of the formation of the easement. *Keokuk Junction Ry. Co. v. IES Indus., Inc.*, 618 N.W.2d 352, 355 (Iowa 2000). Railroad easements impose substantial burdens on the servient estate. *See W. Union Tel. v. Pa. R.R. Co.*, 195 U.S. 540, 570 (1904). The United States submits that the Iowa courts would agree with the courts of Maryland, Pennsylvania and others in holding that "[b]ikers and walkers, even in large groups, simply cannot be said to be more burdensome than locomotive engines pulling truck-sized rail cars through the corridor." *Chevy Chase*, 733 A.2d at 1078. *See also Moody v. Allegheny Valley Land Trust*, 976 A.2d 484, 491 (Pa. 2009) ("Subsequent holders of the easement may not transgress its boundaries, but they do not transgress the use for which it was granted when they use it for hiking and biking."). *But see Toews v. United States*, 376 F.3d 1371, 1376 (Fed. Cir. 2004) (applying California law and

---

[10]    This rule does not apply to easements for railroad purposes only. *See infra* Part V.F (discussing Iowa Code §§ 327G.76 and 327G.77).

holding that "it appears beyond cavil that use of these easements for a recreational trail—for walking, hiking, biking, picnicking, frisbee playing, with newly-added tarmac pavement, park benches, occasional billboards, and fences to enclose the trailway—is not the same use made by a railroad, involving tracks, depots, and the running of trains"); *Preseault*, 100 F.3d at 1542 (applying Vermont law and holding "[a]lthough a public recreational trail could be described as a roadway for the transportation of persons, the nature of the usage is clearly different").

Notably, the Iowa Supreme Court held that the use of a public street includes the right to construct and operate a railway on that street, reasoning that "the laying down and operating a railway track over a part of a street is not an unreasonable obstruction of its free use, nor incompatible with its original dedication, but rather a new and improved method of using the same, germain [sic] to their [sic] principal object, as a passage-way." *Milburn*, 12 Iowa 246, 1861 WL 248, at *8 (Iowa Oct. 17, 1861). If a railway is a permissible use of a public street on the basis that both have the principal purpose of being a passage way, then an unlimited easement to a railroad can embrace trail use for that same reason. *See Wash. Wildlife Preservation v. Minnesota*, 329 N.W.2d 543, 547 (Minn. 1983) ("Recreational trail use of the land is compatible and consistent with its prior use as a rail line, and imposes no greater burden on the servient estates."), *quoted in McKinley*, 368 N.W.2d at 135; *accord Chevy Chase*, 733 A.2d at 1074-77.

Finally, the Iowa Supreme Court's analysis in *McKinley* supports the conclusion that trail use falls within the scope of the Des Moines Valley right-of-way deeds. If, as Plaintiffs argue, Iowa law is clear that trail use *never* falls within the scope of any easements to railroad companies, Pls.' Memo. (D.E. 44) at Part VII.B, the Iowa Supreme Court could have so held in *McKinley*. But it did not. Instead, the Iowa Supreme Court quoted the Minnesota Supreme

Court's reason for finding that trail use fell within the scope of certain deeded railroad easements and then distinguished that case on grounds unrelated to the merit of the Minnesota Supreme Court's holding. *McKinley*, 368 N.W.2d at 135 (distinguishing *Washington Wildlife* on the basis that it involved deeded railroad easements and not condemned railroad easements). Given its basis for distinguishing the Minnesota Supreme Court's holding, it is reasonable to conclude that the Iowa Supreme Court similarly agreed that trail use may fall within the scope of a deeded railroad easement. *Id.* (explaining that a right-of-way deed "is in essence a contract"). Like the deeds at issue in *Washington Wildlife*, the Des Moines Valley right-of-way deeds at issue here do not "expressly limit the easement to railroad purposes, provide that the interest conveyed terminates if use for railroad purposes ceases, or provide that the easement would exist only for so long as the right-of-way was used for railroad purposes." *Wash. Wildlife*, 329 N.W.2d at 546. Because the Des Moines Valley right-of-way deeds—like the deeds at issue in *Washington Wildlife*—do not recite specific limitations on the use of the easement, trail use falls within the scope of the Des Moines Valley right-of-way deeds. *Id.*, *quoted in McKinley*, 368 N.W.2d at 135.

> 2.    <u>The authorities Plaintiffs cite to support their argument that the Des Moines Valley right-of-way deeds are limited to railroad purposes only recite limiting language that cannot be found in the Des Moines Valley right-of-way deeds</u>.

Plaintiffs cite five Iowa state cases in support of their argument that trail use does not fall within the scope of the easements conveyed through the Des Moines Valley right-of-way deeds: (1) *McKinely*, 368 N.W.2d 131; (2) *Hawk*, 325 N.W.2d 97; (3) *Macerich*, 433 N.W.2d 726 (4) *Estate of Rockafellow v. Lihs*, 494 N.W.2d 734 (Iowa App. 1992); and (5) *McGrane v. Maloney*, 770 N.W.2d 851, No. 08-1502, 2009 WL 929048 (Iowa App. Apr. 8, 2009) (unpublished). Pls.' Memo. (D.E. 44) at 18-20, 25-28. *McKinley* is inapposite because it involved a condemned

railroad easements, not a deeded easement.  *Hawk* and *Macerich* do not analyze the scope of easement issue.  The other two cases do not support Plaintiffs' argument because the deeds at issue in those cases recite specific limitations not found in the relevant Des Moines Valley right-of-way deeds.

Plaintiffs erroneously argue that the Des Moines Valley right-of-way deeds at issue in this case are "just like the deeds in *McKinley*."  Pls.' Memo. (D.E. 44) at 27.  There were no deeded easements in *McKinley*.  *McKinley* involved a condemned railroad easement, not a deeded railroad easement.  *Supra* Part V.E.1; *infra* Part V.E.3.  In fact, *McKinley* distinguished the condemned railroad easement it was evaluating from deeded railroad easements.  368 N.W.2d at 135.

Plaintiffs' reliance on *Hawk* is misplaced because *Hawk* does not analyze the scope of deeded railroad easements.  Instead, *Hawk* evaluates "whether a deed of right of way for a railroad conveyed a determinable fee or an easement."  325 N.W.2d at 98.  This is a "first step" title issue under the rails-to-trails takings analysis.  *Ellamae Phillips*, 564 F.3d at 1373.  *Hawk* does not analyze whether the Des Moines Valley right-of-way deeds are expressly limited to railroad purposes only.  *See supra* Part V.E.1.  In addition, the deed in *Hawk* recited a reverter clause should the rail operator not construct a rail line, cease using the rail line, or relocate the line.  325 N.W.2d at 98.  Yet a reverter was not included in the Des Moines Valley right-of-way deeds.  *See, e.g.,* Pls.' Proposed Findings (D.E. 45) ¶ 147.a, Ex. II.1.  *See also Wash.Wildlife*, 329 N.W.2d at 546 (noting that the deeds at issue did not "provide that the interest conveyed terminates if use for railroad purposes ceases, or provide that the easement would exist only for so long as the right-of-way was used for railroad purposes").

*Macerich*, like *Hawk*, focused on whether the deeds at issue conveyed a fee interest or an easement and held, without analysis, that the easements at issue were for railroad purposes only. 433 N.W.2d at 727-29.   Moreover, as discussed in the previous section, *Macerich* is based on a restrictive reading of railroad deeds—embraced in *Atkin* and, in turn, *Hawk*—that the Iowa Supreme Court rejected in *Lowers*.   *Lowers,* 663 N.W.2d at 410-11 ("Determining the nature of the interest conveyed by reference to the intended use by the grantee seems frivolous in matters involving narrow tracts of land acquired by railroad companies.").

Plaintiffs' reliance on *Rockafellow*, Pls.' Memo. (D.E. 44) at 26-27, is also misplaced. The deeded railroad easement at issue in *Rockafellow* included a reverter clause that was triggered "if said railway company or their assigns shall at any time hereafter cease permanently to use said road and the same shall at any time be abandoned or the route thereof be changed so as to not be continued over the said premises."   494 N.W.2d at 735.   There is no similar reverter clause in the Des Moines Valley right-of-way deeds relevant to Plaintiffs' motion.   *See* Pls.' Proposed Findings (D.E. 45) ¶ 147.a, Ex. II.1. The absence of such a reverter renders the Des Moines Valley deeds more like the deeds at issue in *Washington Wildlife*.   329 N.W.2d at 546.

*McGrane* is inapplicable because the deed at issue in *McGrane* authorized use of an access easement "'for all lawful purposes connected with the use and enjoyment of said premises of the second party as farm land, *but for no other purposes*.'"   770 N.W.2d 851, 2009 WL 929048, at *1 (emphasis added).   The Des Moines Valley right-of-way deeds do not state that the easement was for "no other purposes" than rail service.   *See, e.g.,* Pls.' Proposed Findings ¶ 147.a, Ex. II.1.

In sum, the grantors in the Des Moines Valley right-of-way deeds could have included the express limitations found in *McGrane*, or the reverter upon permanent abandonment found in

23

*Hawk* and *Rockafellow*.  But the grantors to Des Moines Valley did not do so.  Instead, the Des Moines Valley right-of-way deeds—like the deeds at issue in *Washington Wildlife*—do not "expressly limit the easement to railroad purposes, provide that the interest conveyed terminates if use for railroad purposes ceases, or provide that the easement would exist only for so long as the right-of-way was used for railroad purposes."  *Wash. Wildlife*, 329 N.W.2d at 546, *quoted in McKinley*, 368 N.W.2d at 135.

> 3.     <u>The Iowa Supreme Court's holding that trail use falls outside the scope of condemned railroad easements cannot be applied to the Des Moines Valley right-of-way deeds.</u>

The Iowa Supreme Court held in *McKinley* that recreational trail use exceeds the scope of a railroad easement obtained through condemnation.  368 N.W.2d at 134-35.  Plaintiffs erroneously attempt to extend the holding of *McKinley* to the Des Moines Valley right-of-way deeds.  But *McKinley* expressly limited itself to condemned easements.

*McKinley* cannot be extended to the Des Moines Valley right-of-way deeds.  In holding that recreational trail use exceeds the scope of condemned railroad easements under Iowa law, the Iowa Supreme Court distinguished the Minnesota Supreme Court's decision in *Washington Wildlife*.  *McKinley*, 368 N.W.2d at 135.  *Washington Wildlife* held that recreational trail use fell within the scope of certain deeded railroad easements, because none of those railroad deeds "expressly limit[ed] the easement to railroad purposes, provide[d] that the interest conveyed terminates if use for railroad purposes ceases, or provide[d] that the easement would exist only for so long as the right-of-way was used for railroad purposes."  329 N.W.2d at 545-46, *cited in Preseault*, 494 U.S. at 16 n.9.  The Iowa Supreme Court quoted and did not dispute *Washington Wildlife's* observations that "'the holder of an easement is not limited to the particular method of use in vogue when the easement was acquired'" and "'other methods of use in aid of the *general purpose* for which the easement was acquired are permissible.'"  *McKinley*, 368 N.W.2d at 135

(quoting *Wash. Wildlife*, 329 N.W.2d at 546) (emphasis in original).  But *McKinley* distinguished *Washington Wildlife* on the ground that the easement at issue in *McKinley* "was created by condemnation, a statutory creature, and not by deed, which is in essence a contract."  *McKinley*, 368 N.W.2d at 135; *see Thompson v. City of Osage*, 421 N.W.2d 529, 532 (Iowa 1988) (holding that "a condemnor takes only the estate or interest in the property condemned that is necessary for the purpose of condemnation").  Accordingly, *McKinley* does not establish that trail use falls outside the scope of the Des Moines Valley right-of-way deeds because *McKinley* limited its holding to condemned easements.

> F.  <u>The United States does not object to the entry of summary judgment that the Trails Act preempts abandonment of railroad easements that are limited to railroad purposes under Iowa law and that the United States is, therefore, liable for a taking of an easement for railroad purposes over affected segments of the rail corridor.</u>

The issues discussed above deal with title disputes or the scope of certain deeded easements based on the language recited in those deeds.  These issues do not account for all of the claimants in this lawsuit.  The remaining claimants—identified in Appendix E—own parcels of property adjoining segments of the rail corridor that Union Pacific operated by easement obtained through condemnation.

As to this final category of properties, the United States is liable for a Fifth Amendment taking under the Trails Act where "state law reversionary property interests that would otherwise vest in the adjacent landowners are blocked from so vesting."  *Caldwell*, 391 F.3d at 1233 (citing *Preseault*, 100 F.3d at 1552, and *Toews*, 376 F.3d at 1376).

"Through the years, Iowa has adopted different statutes dealing with conflicting rights in abandoned railroad property."  *Notelzah, Inc. v. Destival*, 489 N.W.2d 744, 747 (Iowa 1992).  For purposes of Plaintiffs' lawsuit, the operative statute stated in pertinent part that "[r]ailroad property rights which are extinguished upon cessation of service by the railroad divest when the

department of transportation or the railroad, having obtained authority to abandon the rail line," removes the track materials to the right-of-way."  Iowa Code § 327G.76 (2003).  Once railroad easements extinguish under section 327G.76, title to the former rail corridor vests in the landowners of the parcels that adjoin the corridor.  Iowa Code § 327G.77 (2003); *Macerich*, 433 N.W.2d at 730.[11]

In *Macerich*, the Iowa Supreme Court held that section 327G.76 extinguishes railroad easements upon cessation of service.  433 N.W.2d at 729.  In so holding, *Macerich* concluded that a railroad easement was extinguished sometime *before* the Interstate Commerce Commission ordered abandonment.  *Id.* at 729-30, *discussed in Burlington N.R.R. Co. v. Kmezich*, 48 F.3d 1047, 1050 (8th Cir. 1995).  The United States notes that *Macerich* writes out the phrase "authority to abandon the rail line" as an element of extinguishment under section 327G.76, in contravention of standard rules of statutory construction.  *Compare Macerich*, 433 N.W.2d at 729 (omitting from its quotation of section 327G.76 the phrase "having obtained authority to abandon the rail line" and holding that section 327G.76 extinguishes railroad easements absent an order of abandonment), *with Iowa v. Ahitow*, 544 N.W.2d 270, 273 (Iowa 1996) (stating that Iowa courts do not interpret statutes so as to render any portion irrelevant).  Nevertheless, based on the accrual of their cause of action set forth in *Caldwell*, 391 F.3d at 1235, the United States recognizes that the Trails Act preempts extinguishment of the easements for railroad purposes only that would otherwise occur under section 327G.76 of the Iowa Code (as construed in *Macerich*).

---

[11]  "The statutory revisionary provisions [of Iowa Code §§ 327G.76 and 327G.77] are inapplicable when a railroad has acquired a fee simple in the right-of-way."  *Butler v. Hoover Nature Trail, Inc.*, 530 N.W.2d 85, 89 (Iowa App. 1994).

The easement taken under the Trails Act is one for railroad purposes only.  The easement is not one for recreational trail use.  This distinction flows from the plain language of the Trails Act and the Federal Circuit's recent decisions in rails-to-trails cases.

1.     The easement taken is for railroad purposes and does not include trail use.

To prevail on their takings claim, Plaintiffs must make a showing of causation between the government action and the alleged deprivation.  *Moden v. United States*, 404 F.3d 1335, 1343 (Fed. Cir. 2005).  The government action at issue in this case is the STB's issuance of the NITU. *Caldwell*, 391 F.3d at 1233-34 ("The issuance of the NITU is the only *government* action in the railbanking process that operates to prevent abandonment of the corridor and to preclude the vesting of state law reversionary interests in the right-of-way.") (emphasis in original).  That action does not mandate trail use, it merely preserves the railroad easement by preempting abandonment of the rail corridor.

The plain language of 16 U.S.C. § 1247(d) establishes (1) that the Trail Act preempts the abandonment of a railroad right-of-way that would be triggered through an incompatible interim use, but (2) that the Trails Act does not purport to give an interim user authority to maintain any specific interim use.  More specifically, the Trails Act states: "[I]n the case of interim use of any established railroad rights-of-way pursuant to donation, transfer, lease, sale, or otherwise in a manner consistent with this chapter, if such interim use is subject to restoration or reconstruction for railroad purposes, such interim use shall not be treated, for purposes of any law or rule of law, as an abandonment of the use of such rights-of-way for railroad purposes."  16 U.S.C. § 1247(d).   This provision does not state that the Trails Act authorizes any specific type of interim use, nor does it expand the scope of the railroad right-of-way; the provision merely states that any interim use cannot be deemed "an abandonment of the use of [the railroad] rights-of-way *for railroad purposes*."  *Id.* (emphasis added); *Illig v. United States*, 58 Fed. Cl. 619, 631

27

(2003) ("What was imposed on plaintiffs' land was a new easement which purported to preserve railroad use.").  To underscore this point, the Trails Act assigns to the interim user the obligation "to assume full responsibility for management of such rights-of-way *and for any legal liability arising out of such transfer or use*."  16 U.S.C. § 1247(d) (emphasis added).  Thus it is the interim user, and not the United States, who assumes responsibility for any legal liability arising from the specific interim use employed; the Trails Act merely insures that whatever interim use is employed, that interim use cannot result in the abandonment of the right-of-way "*for railroad purposes*."  16 U.S.C. § 1247(d).

The NITU does not authorize an interim use beyond the scope of underlying easements because the STB does not "analyze, approve, or set the terms for the interim trails use arrangement."  *Policy Statement on Rails to Trails Conversions*, 1990 WL 287255, at *3 (Surface Transp. Bd. Jan. 29, 1990); *Union Pacific R.R. Co. Abandonment Exemption in Cerro Gordo Cnty., IA*, 2005 WL 835611, at *3 (Surface Transp. Bd. Apr. 12, 2005) ("The Board has no involvement in the negotiations and does not analyze, approve, or set the terms of trail use agreements.  The Board is not authorized to regulate activities over the actual trail."); *Goos v. Interstate Commerce Comm'n.*, 911 F.2d 1283, 1295 (8th Cir. 1990) (noting the STB's position that it has "no power to compel a conversion between unwilling parties, and, conversely, no discretion to refuse one if voluntarily negotiated").  In this case, the STB issued a NITU because the requirements of the Trails Act regarding financial responsibilities and railbanking were met.  Pls.' Proposed Findings (D.E. 45) ¶ 152, Ex. E at 3-4.  In doing so, the STB does not purport to authorize any use inconsistent with the original railroad grant.  Nor does the STB manage any interim trail on the corridor.  *See Idaho N. & Pac. R.R. Co.*, 3 S.T.B. 50, 1998 WL 146208, at *7 (Surface Transp. Bd. Mar. 20, 1998) ("[T]he Trails Act does not require the trail to be

28

'developed' in any particular way"). The STB's "chief concern, once a trail condition has been imposed, is that the statutory railbanking condition not be compromised, and that nothing occur that would preclude a railroad's right to reassert control over the right-of-way at some future time to revive active service." *Id.* Hence, the STB cannot be held to have intended to impose an interim use that exceeds the scope of permissible uses under Iowa law.

2.     <u>Federal Circuit opinions addressing accrual of rails-to-trails taking claims</u> <u>underscore that the United States does not authorize non-conforming</u> <u>interim uses of rail corridors.</u>

Federal Circuit decisions regarding the accrual of takings claims under the Trails Act confirm that the United States preserves railroad corridors for railroad purposes and does not impose an easement for recreational trail use. *Caldwell* held that the taking occurs, if at all, "when state law reversionary property interests that would otherwise vest in the adjacent landowners are blocked from so vesting." 391 F.3d at 1233. *Barclay v. United States*, 443 F.3d 1368, 1373 (Fed. Cir. 2006), held that the Trails Act exposes the United States to potential takings liability by "prevent[ing] abandonment of the corridor and [] preclude[ing] the vesting of state law reversionary interests in the right of way." And *Ladd v. United States*, 630 F.3d 1015, 1024 (Fed. Cir. 2010), held that events arising after issuance of the NITU, including the conversion of a rail corridor to a recreational trail, cannot be elements of a taking claim under the Trails Act. These cases establish that Trails Act takings claims against the United States accrue when "railroad abandonment proceedings are suspended by the STB's issuance of a NITU," *Barclay*, 443 F.3d at 1371, not when some use inconsistent with the original railroad grant begins. *See also id.* at 1374 ("The barrier to reversion is the NITU, not physical ouster from possession."), *quoted in Ladd*, 630 F.3d at 1023.

As the Federal Circuit observed, the STB issues its NITU before an interim use agreement is reached. *Caldwell*, 391 F.3d at 1233-34; *Ladd,* 630 F.3d at 1023-24. The issuance

of the NITU is the only government action at issue that could give rise to a takings claim.

*Caldwell*, at 391 F.3d at 1233-34, *cited in Barclay*, 443 F.3d at 1373, *and Ladd*, 630 F.3d at

1020. Plaintiffs must prove that the elements of their takings claims exist as of the time the

NITU is issued. *Ladd,* 630 F.3d at 1024. Here, no specific interim use was finalized at the time

the NITU was issued on September 23, 2003—there was only the possibility of a future

agreement that would involve interim trail use, but with respect to which the STB had no control

or involvement. *See* Pls.' Proposed Findings (D.E. 45) ¶ 152, Ex. E at 5 (¶ 6). Accordingly, the

United States can only be liable for a taking of an easement for railroad purposes.

3.    <u>The Federal Circuit's decisions in *Preseault* and *Toews* do not require a finding that the Surface Transportation Board authorized a non-conforming use in this case</u>.

The United States' argument that neither the Trails Act nor the NITU issued in this case

authorizes any specific interim use, including trail use, is not inconsistent with the Federal

Circuit's rejection of the United States' argument in *Preseault* that "since it was the City that

actually established the trail, the United States should not be considered the responsible actor."

100 F.3d at 1551. *See also Toews*, 376 F.3d at 1381. The situations evaluated in *Preseault* and

*Toews* are distinguishable.

In *Preseault*, "[b]oth the State and the Federal Governments were fully invested in the

effort to create this public trail." 100 F.3d at 1551. *Preseault* concluded that "when the Federal

Government puts into play a series of events which result in a taking of private property, the fact

that the Government acts through a state agent does not absolve it from the responsibility, and

the consequences, of its actions." *Id.*, *quoted in Toews*, 376 F.3d at 1381-83. That conclusion

cannot be reached here, because Plaintiff cannot present evidence that the United States, or some

agent of the United States, was "fully invested in the effort to create this public trail," as was the

case in *Preseault*, 100 F.3d at 1551.

In rejecting the United States' argument that it is the third-party trail sponsor and not the United States that is responsible for trail use, *Preseault* and *Toews* relied upon *Hendler v. United States*, 952 F.2d 1364, 1378-79 (Fed. Cir. 1991).  *Preseault*, 100 F.3d at 1551; *Toews*, 376 F.3d at 1381-82.  *Hendler* held the United States responsible for state actions because the state and the federal government entered into a formal cooperative agreement and an EPA order specifically directed plaintiffs to provide access to "EPA officials and other authorized personnel, including state officials."  952 F.2d at 1379; *id.* at 1378 (holding that the "activities of EPA and of California were two coordinate and coordinated parts of the same undertaking"); *see Hendler v. United States*, 11 Cl. Ct. 91, 93 (1986), *aff'd in part and rev'd in part,* 952 F.2d 1364 (quoting the access order, which ordered plaintiffs "not to interfere in any manner with EPA/State activity" on plaintiffs' property).  No such coordination is evident here between the STB and either Union Pacific or the Iowa Natural Heritage Foundation.  Unlike *Hendler*, the STB did not enter into a cooperative agreement with either of these parties, nor did the STB order landowners abutting the corridor to provide access to any third party.

To the contrary, the Heritage Foundation stated its willingness to assume financial responsibility pursuant to the Trails Act.  Pls.' Proposed Findings (D.E. 45) ¶ 150, Ex. C at 2. The NITU ensured the continued existence of the railroad's easement by prohibiting the rail operator from abandoning its rail corridor.  *Id.* ¶ 152, Ex. E at 4-5 (¶ 1); 16 U.S.C. § 1247(d). Neither the NITU nor any other federal action purported to specifically authorize a use inconsistent with the original railroad grant.

More important, the Federal Circuit's jurisprudence following *Preseault* and *Toews* explains that it is the Trails Act's interference with reversionary state law property rights, and not the physical use of the corridor as a recreational trail, that establishes the federal government's

liability, if any.  *Barclay*, 443 F.3d at 1373 (re-affirming that accrual of a takings claim "is not delayed until a trail use agreement is executed or the trail operator takes physical possession of the right-of-way"); *Ladd*, 630 F.3d at 1024 (holding that entering into a trail use agreement and converting the railway into a recreational trail are not elements of a taking claim filed under the Trails Act).  Because neither *Preseault* nor *Toews* considered the accrual of plaintiffs' taking claim, neither *Preseault* nor *Toews* addressed whether the United States is liable for third-party uses made after the elements of a taking are satisfied (i.e., after the issuance of the NITU) that exceed the scope of the railroad's underlying easement; and no Federal Circuit decision has so held in rails-to-trails cases following *Preseault* and *Toews*.  *See Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993) (stating that if a decision does not "squarely address[] [an] issue," a court remains "free to address the issue on the merits" in a subsequent case).  Because the takings claim "accrues on the date that a NITU issues" and interim trail use "cannot be [a] necessary element[] of the claim," *Ladd*, 630 F.3d at 1024, the United States cannot be held liable for the taking of a recreational trail without a showing of coordination akin to that of *Hendler*.

VI.   <u>CONCLUSION</u>

The United States is entitled to summary judgment in its favor as to three of the four categories of claimants discussed in this motion for the reasons specified in this motion.  To recap:

- With respect to the claims identified in Appendix A, this Court must deny Plaintiffs' motion for partial summary judgment because this Court can draw a reasonable inference from the evidence Plaintiffs submit that these claimants conveyed their interests in their properties before October 25, 2004.

- With respect to the claims identified in Appendix B, the United States is entitled to summary judgment as to those parcels that do not adjoin the rail corridor and, therefore, have no rights upon abandonment of that corridor under Iowa Code § 327G.77.  In addition, this Court must deny Plaintiffs' motion as to those parcels where Plaintiffs have not proffered evidence establishing the parcels' adjacency to the rail corridor.

- With respect to the claims identified in Appendix C, the United States is entitled to summary judgment because Union Pacific owned the relevant segments of the rail corridor in fee.

- With respect to the claims identified in Appendix D, the United States is entitled to summary judgment because the relevant deeded easements were not expressly limited to railroad purposes only and trail use falls within the scope of those easements.

Finally, the United States does not object to the entry of summary judgment against it as to the claims identified in Appendix E.  The scope of the easement taken as to these parcels is one for railroad purposes.

DATED:  August 15, 2011

Respectfully submitted,

IGNACIA S. MORENO
Assistant Attorney General
Environment & Natural Resources Division

By   */s/ Frank J. Singer*
FRANK J. SINGER
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
Post Office Box 603
Washington, D.C. 20044-0663
Tel: (202) 616-9409
Fax: (202) 305-0506
Email: frank.singer@usdoj.gov

ATTORNEY FOR THE UNITED STATES

# APPENDIX A

to U.S. Cross-Motion and Response to Pls.' Mot. for Partial Summary Judgment

Associated with Part V.B of United States' Cross-Motion

Claimants who do not proffer evidence or proffer contradicting evidence of their ownership of the parcels on which they base their claims.

| Claimant Name | Dallas County Assessor Parcel Number | Pls.' Proposed Findings And Related Exhibit |
|---|---|---|
| Farmer's Cooperative Company | 1102256001 | ¶ 41, Ex. 26A |
| Farmer's Cooperative Company | 1102251004 | ¶ 42, Ex. 26B |
| Farmer's Cooperative Company | 1102251001 | ¶ 43, Ex. 26C |
| Claude Shields Trust | 0735301001 | ¶ 59, Ex. 41D |
| Lois F. Peterson Trust | 0735351001 | ¶ 61, Ex. 43 |
| Larry and Denise Cornelison | 0707229008 | ¶ 102, Ex. 67 |
| Mark and Beth Erb | 0707226001 | ¶ 103, Ex. 68A |
| Birdsall Estate | 0236200003 | ¶ 110, Ex. 71 |
| Roger and Jane Dorman | 0223100006 | ¶ 121, Ex. 80 |

# APPENDIX B

to U.S. Cross-Motion and Response to Pls.' Mot. for Partial Summary Judgment

Associated with Part V.C of United States' Cross-Motion

Claimants who base their claims on properties that do not adjoin the rail corridor.

| Claimant Identifier | Dallas County Assessor Parcel Number | Evidence That Parcel Does Not Adjoin Rail Corridor |
|---|---|---|
| 10B | 1218300002 | U.S. Proposed Findings ¶ 10, Ex. 5 |
| 15B | 1102265001 | U.S. Proposed Findings ¶ 11, Ex. 6 |
| 17 | 1101300011 | U.S. Proposed Findings ¶ 13, Ex. 7 |
| 22 | 1102270001 | U.S. Proposed Findings ¶ 14, Ex. 8 |
| 23 | 1102266003 | U.S. Proposed Findings ¶ 15, Ex. 9 |
| 24 | 1102266006 | U.S. Proposed Findings ¶ 16, Ex. 10 |
| 25 | 1102259003 | U.S. Proposed Findings ¶ 17, Ex. 11 |
| 26A | Book 574, Page 547 | U.S. Proposed Findings ¶ 18, Ex. 12 |
| 26C | Book 372, Page 440 | U.S. Proposed Findings ¶ 19, Ex. 13 |
| 26C | 1102251001 | U.S. Proposed Findings ¶ 20, Ex. 14 |
| 28 | 1102142012 | U.S. Proposed Findings ¶ 22, Ex. 15 |
| 30 | 1102142004 | U.S. Proposed Findings ¶ 25, Ex. 16 |
| 32 | 1102138001 | U.S. Proposed Findings ¶ 27, Ex. 17 |
| 33 | 1102134004 | U.S. Proposed Findings ¶ 28, Ex. 18 |
| 35 | 1102132001 | U.S. Proposed Findings ¶ 29, Ex. 19 |
| 36 | 1102126005 | U.S. Proposed Findings ¶ 30, Ex. 20 |
| 39 | 1102128001 | U.S. Proposed Findings ¶ 31, Ex. 21 |
| 58 | 0708160004 | U.S. Proposed Findings ¶ 33, Ex. 22 |
| 59K | 0706400003 | U.S. Proposed Findings ¶ 35, Ex. 23 |
| 67[1] | 0707229008 | Pls.' Proposed Findings ¶ 102, Ex. 67 |
| 108 | 0706100001 | U.S. Proposed Findings ¶ 38, Ex. 24 |
| 109 | 0236400001 | U.S. Proposed Findings ¶ 39, Ex. 25 |
| 110 | 0236200003 | U.S. Proposed Findings ¶ 40, Ex. 26 |

---

[1]    Dallas County Assessor parcel number 0707229001 partially separates the subject parcel from the rail corridor.  U.S. Response to Pls.' Proposed Findings ¶ 102, Ex. 67.

Claimants who do not proffer evidence that the parcels on which they base their claims adjoin the rail corridor.

| Claimant Name | Dallas County Assessor Parcel Number | Pls.' Proposed Findings And Related Exhibit |
|---|---|---|
| Farmers Cooperative Company | 1102256001[2] | ¶ 41, Ex. 26A |
| Farmers Cooperative Company | 1102251004 | ¶ 42, Ex. 26B |
| Claude Shields Trust | 0735301001 | ¶ 59, Ex. 41D |
| Kenneth Renfrow | 0735351013 | ¶ 60, Ex. 42 |
| Minburn Cooperative Elevator | 0707230005 | ¶ 93, Ex. 59J |
| Larry and Darla Pollack | 0707229007 | ¶ 98, Ex. 63 |
| Randy and Sharon Wright | 0707226004 | ¶ 99, Ex. 64 |
| Shirley and Estate of Darrell Cornelison | 0707229009 | ¶ 100, Ex. 65 |
| Adel-Desoto-Minburn Community School District | 0707226003 | ¶ 101, Ex. 66 |
| Larry and Denise Cornelison | 0707229008 | ¶ 102, Ex. 67 |
| Mark and Beth Erb | 0707226001 | ¶ 103, Ex. 68A |
| Michael and Randa Fagen | 0215132001 | ¶ 113, Ex. 74B |
| LLT, LLC | 0226400012 | ¶ 114, Ex. 75 |
| Terrill Farms | 0209481003 | ¶ 140, Ex. 105 |
| James and Ramona Birdsell | 0209481004 | ¶ 141, Ex. 106 |

---

[2] As to the legal description of the associated Assessor parcel report.

# APPENDIX C

to U.S. Cross-Motion and Response to Pls.' Mot. for Partial Summary Judgment

Associated with Part V.D of United States' Cross-Motion

Claimants who base their claims on segments of the rail corridor
that Union Pacific owned in fee.[1]

| Railroad Deed | Affected Claimant Parcels | Supporting Evidence |
|---|---|---|
| Book S, Page 232<br>U.S. Proposed Findings ¶¶ 1-2, Ex. 1 | Pls.' Proposed Findings ¶ 30, Ex. 15D | U.S. Proposed Findings ¶ 12 |
| | Pls.' Proposed Findings ¶ 44, Ex. 27 | U.S. Proposed Findings ¶ 21 |
| | Pls.' Proposed Findings ¶ 45, Ex. 28 | U.S. Proposed Findings ¶ 23 |
| | Pls.' Proposed Findings ¶ 46, Ex. 29 | U.S. Proposed Findings ¶ 24 |
| | Pls.' Proposed Findings ¶ 47, Ex. 30 | U.S. Proposed Findings ¶ 26 |
| Book S, Page 233<br>Pls.' Proposed Findings ¶ 146y, Ex. I.25 | Pls.' Proposed Findings ¶ 93, Ex. 59J | Pls.' Proposed Findings ¶ 146.y |
| | Pls.' Proposed Findings ¶ 95, Ex. 60 | |
| Book S, Page 234<br>U.S. Proposed Findings ¶¶ 4-5, Ex. 2 | Pls.' Proposed Findings ¶ 41C, Ex. 58 | U.S. Proposed Findings ¶¶ 34 |
| Book S, Page 235<br>U.S. Proposed Findings ¶ 6-7, Ex. 3 | Pls.' Proposed Findings ¶ 140, Ex. 105 | U.S. Proposed Findings ¶ 36 |
| | Pls.' Proposed Findings ¶ 141, Ex. 106 | U.S. Proposed Findings ¶ 37 |

---

[1]  For the parcels associated with claimants 15D, 27, 28, and 30, the United States cross-moves for summary judgment as to that portion of these properties lying in the northwest quarter of section 2, Township 79, Range 27.  The United States continues to investigate the title to the remaining depot grounds in Dallas Center lying in the northeast quarter of section 2.  U.S. Cross-Mot. Part V.C note 8.

# APPENDIX D

to U.S. Cross-Motion and Response to Pls.' Mot. for Partial Summary Judgment

Associated with Part V.E of United States' Cross-Motion

| Claimant | Pls.' Proposed Finding |
|----------|----------------------|
| 1 | 147.a |
| 10A | 147.b |
| 10B | |
| 13A | 147.c |
| 13B | |
| 14C | 147.d |
| 15A | |
| 17 | |
| 44 | |
| 47A | |
| 41A | 147.e |
| 41C | 147.f |
| 41D | |
| 42 | |
| 43 | |
| 44[1] | |
| 45 | |
| 46 | |
| 47B | 146.g |
| 47C | |
| 47L | 146.h |
| 47M | 146.i |
| 71 | |
| 48 | 146.j |
| 51A | 146.k |
| 51B | 146.l |
| 59K | 146.m |
| 61C | |
| 68C | |
| 68D | |
| 69A | |
| 69B | |
| 69C | |
| 76A | 146.n |
| 76B | |
| 76D | 146.o |
| 78 | |
| 86 | 146.p |

---

[1]    Except as to the southeast quarter of the northeast quarter of section 34, Township 80, Range 27.  U.S. Response to Pls.' Proposed Findings ¶ 147.f.

| Claimant | Pls.' Proposed Finding |
|---|---|
| 91 | 146.q |
| 92 | |
| 95A | 146.r |
| 96 | |
| 95B | 146.s |
| 105 | |
| 106 | |
| 108 | |
| 109 | |
| 110 | |
| 111 | |
| 105 | 146.t |
| 106 | |

# APPENDIX E

to U.S. Cross-Motion and Response to Pls.' Mot. for Partial Summary Judgment

Associated with Part V.F of United States' Cross-Motion

| Claimant | Pls.' Uncontested Proposed Finding |
|---|---|
| 2B | 146.a |
| 2C | |
| 2D | |
| 2E | |
| 4A | |
| 4C | |
| 5C[1] | 146.b |
| 4F | 146.c |
| 4E | |
| 5B | 146.d |
| 6 | 146.e |
| 9 | |
| 6 | 146.f |
| 10C | 146.g |
| 11A | 146.h |
| 11B | |
| 11C | |
| 14.A | 146.i |
| 14B | 146.j |
| 16 | 146.k |
| 19[2] | |
| 20B | |
| 21 | |
| 47D | 146.m |
| 47E[3] | |
| 47F | |
| 47G | 146.n |
| 47H | |
| 47I | 146.o |
| 47N | 146.p |
| 47O | |

---

[1]   Except as to the southwest quarter of the northeast quarter of section 19, Township 79, Range 26.  U.S. Response to Pls.' Proposed Findings ¶ 146.b.

[2]   Except as to the northwest quarter of the southeast quarter of section 2, Township 79, Range 27.  U.S. Response to Pls.' Proposed Findings ¶ 146.k.

[3]   Except as to the northwest quarter of the southwest quarter of section 27, Township 80, Range 27.  U.S. Response to Pls.' Proposed Findings ¶ 146.m.

| Claimant | Pls.' Uncontested Proposed Finding |
|---|---|
| 49 | 146.q |
| 50A | 146.r |
| 50B | |
| 50C | |
| 52 | |
| 51C | 146.s |
| 51D | 146.t |
| 51E | |
| 51F | 146.u |
| 79A[4] | |
| 53 | 146.v |
| 56B | 146.w |
| 60 | 146.x |
| 61B | |
| 61C | |
| 70 | 146.z |
| 73 | 146.aa |
| 74A | 146.bb |
| 87 | 146.cc |
| 88 | |
| 89A | |
| 89B | |
| 90 | |
| 79B | 146.dd |
| 82 | 146.ee |
| 83B | 146.ff |
| 84A | |
| 83B | 146.gg |
| 84A | |
| 84B | |
| 85 | |

---

[4]    Except as to the northeast quarter of the southwest quarter of section 23, Township 81, Range 28.  U.S. Response to Pls.' Proposed Findings ¶ 146.u.