## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

|  |  |
|---|---|
| STEVE JENKINS, *et al.*, | ) |
|  | ) |
|  | ) No.  09-241 L |
| For Themselves and As Representatives of a | ) |
| Class of Similarly Situated Persons, | ) Judge Nancy B. Firestone |
|  | ) |
| Plaintiffs, | ) *Electronically filed on August 29, 2011* |
|  | ) |
| v. | ) |
|  | ) |
| THE UNITED STATES OF AMERICA, | ) |
|  | ) |
| Defendant. | ) |
|  | ) |

### PLAINTIFFS' REPLY IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON LIABILITY

### AND

### PLAINTIFFS' RESPONSE TO DEFENDANT'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

.3

## TABLE OF CONTENTS

I.   INTRODUCTION ....................................................................................................... 1

II.  THE DEFENDANT AGREES THAT IT IS LIABLE FOR A TAKING WHERE
     THE RAILROAD OBTAINED ITS EASEMENT BY CONDEMNATION, BUT
     DISPUTES WHAT INTEREST WAS TAKEN ................................................... 3

     A.  Defendant's Mischaracterization as to What it Took from the Plaintiffs
         Ignores Binding Precedent and the Argument Lacks Candor to the Court .................. 3

     B.  The Taking was Absolutely of the Landowner's Reversionary Interest for Use
         as an Easement for Trail Use AND Railbanking ........................................................ 12

III. THE SOURCE CONVEYANCES TO THE RAILROAD BY RIGHT-OF-WAY
     DEEDS ARE EASEMENTS AND THE SCOPE OF THOSE EASEMENTS ARE
     LIMITED TO USE FOR RAILROAD PURPOSES ........................................................ 17

     A.  All Of The Right-Of-Way Deeds are Easements and They Are Definitely For
         Railroad Purposes Only ............................................................................................. 17

         1.  It is obvious that the right-of-way deeds are for railroad purposes
             because they specifically conveyed the right-of-way for the limited
             purposes connected to railroad operations pursuant to clear and
             longstanding authority from the Iowa Supreme Court .................................... 18

         2.  Defendant's statement that *McKinley*, *Hawk*, *Macerich*, *Rockafellow*
             and *McGrane* contain language limiting the grant to railroad purposes
             not found in the Des Moines Valley Railroad's right-of-way deeds is
             ludicrous ........................................................................................................ 25

     B.  The Easements in This Case are Expressly Limited to Railroad Purposes Only
         and Authorization for Trail Use/Railbanking Exceeds the Scope of the
         Easement ..................................................................................................................... 27

         1.  Defendant's arguments that trail use falls within the scope of the Des
             Moines Valley Railroad's right-of-way deeds under Iowa law is also
             ludicrous ........................................................................................................ 28

         2.  Trail use/railbanking exceed the scope of the railroad purposes
             easements under any state law, including Iowa ............................................. 32

IV.  THE DEFENDANT'S MOSTLY NEW OBJECTIONS BASED ON
     OWNERSHIP, ADJACENCY, OR THAT THE RAILROAD OWNED THE
     UNDERLYING FEE ARE UNTIMELY, WAIVED OR OTHERWISE WITHOUT
     MERIT ......................................................................................................................... 34

A.  Defendant's Objections, That Were Made for the First Time in its Cross-Motion, Violate the Discovery Process, are Without Merit, and are Otherwise Untimely, and Should Therefore be Waived .................................................................. 38

B.  Defendant's Objections to Certain Parcels That Were Actually Made During the Discovery Process Were Resolved by Documentation Provided by Plaintiffs and are Baseless ............................................................................. 38

V.  EVEN IF THE SCOPE OF THE ORIGINAL EASEMENT WAS SOMEHOW DEEMED TO INCLUDE USE AS A PUBLIC RECREATIONAL TRAIL, THE RAILROAD ABANDONED THE EASEMENT UNDER IOWA LAW PRIOR TO THE NITU AND, BY OPERATION OF THE TRAILS ACT, A NEW EASEMENT HAS NOW BEEN CREATED AND A TAKINGS HAS OCCURRED ................................................................................................. 39

VI.  CONCLUSION ................................................................................. 40

# TABLE OF AUTHORITIES

*Anna F. Nordhus Family Trust v. United States*, Case No. 09-042L, Opinion and Order
    by Judge Wheeler, Doc. 45, filed April 12, 2011 .......................................................16, 33

*Atkin v. Westfall*, 69 N.W.2d 523 (Iowa 1955).............................................................................23

*Barclay v. United States,* 443 F.3d 1368 (Fed. Cir. 2006) ...................................................7, 8, 11

*Barlow v. Chicago, Rock Island & Pacific Railway*, 29 Iowa 276, 279 (1870)......................20-21

*Biery v. United States*, Case Nos. 07-693L and 07-675L, Opinion and Order by Judge
    Firestone, Doc. 104, filed on June 9, 2011 ........................................................................33

*Blendu v. United States*, 75 Fed. Cl. 543 (2007) .........................................................................16

*Brown v. Young*, 69 Iowa 625, 626, 29 N.W. 941 (1886) .............................................................20

*Caldwell v. United States*, 391 F.3d 1229 (Fed. Cir. 2004) ....................................................7, 11

*Capreal, Inc. v. United States*, Case No. 09-186L, Opinion and Order by Judge Wheeler,
    Doc. 69, filed on May 6, 2011.  ...........................................................................................33

*Chadek v. Alberhasky*, 111 N.W.2d 297 (Iowa 1961)............................................................34, 35

*Chevy Chase Land Co. v. United States*, 733 A.2d 1074 (Md. App. 1999).....................25, 33, 34

*Chicago & Northwestern Railway v. Sioux City Stockyards Co.*, 176 Iowa 659, 668, 158
    N.W. 769, 772 (1916).........................................................................................................20

*Ellamae Phillips Co. v. United States*, 564 F.3d 1367, (Fed. Cir. 2009) ...............................15, 33

*Estate of Rockafellow v. Larry LIHS*, 494 N.W.2d 734 (Iowa. App. 1992)....20, 22, 25, 26, 32, 34

*Farmers Cooperative Co. v. United States*, No. Case No. 09-741H, 2011 WL 2508242 at
    *7 (Fed. Cl. June 24, 2011) ................................................................................................13

*Haack v. Burlington Northern, Inc.*, 309 N.W.2d 147, 150 (Iowa Ct. App. 1981)......................21

*Hash v. United States*, 403 F.3d 1308 (Fed. Cir. 2005) ..............................................................16

*Hastings v. Burlington & M.R.R. Co.*, 38 Iowa 316, 1874 WL 305 (Iowa June 3, 1874)..............6

*Hawk v. Rice*, 325 N.W.2d 97, 98 (Iowa 1982)...................................19, 20, 21, 22, 23, 25, 26, 34

*Jenkins v. United States*, Case No. 09-241, 7/22/2011 ................................................... 11

*Keokuk County v. Reinier*, 227 Iowa 499, 503, 288 N.W. 676, 678 (1939) .................................. 20

*Ladd v. United States*, 630 F.3d 1015 (Fed. Cir. 2010) ......................................... 1, 3, 5, 8, 11, 16

*Lowers v. United States*, 663 N.W. 2d 408 (Iowa 2003) ........................................................ 23, 24

*Macerich Real Estate Co. v. City of Ames*, 433 N.W.2d 726 (Iowa 1988) ................ 20, 22, 25, 26

*Macy Elevator v. United States*, Case No. 09-515L, Opinion and Order by Judge
    Firestone, Doc. 49, filed on April 7, 2011 ...................................................... 25, 32, 33

*McDonnell v Sheets*, 15 N.W.2d 252 (Iowa 1944) ....................................................... 30

*McGrane v. Maloney*, 770 N.W.2d 851, (Iowa App. 2009) ...................................................... 32, 34

*Milburn v. City of Cedar Rapids*, 1861 WL 248 at *4 ...................................................... 29, 30, 35

*Moody v. Allegheny Valley Land Trust*, 976 A.2d 484 (Pa. 2009) ........................................... 25, 34

*Navajo Nation v. United States*, 631 F.3d 1268 No. 2010-5036, 2011 WL 62825 at *6
    (Fed. Cir. Jan. 10, 2011) ...................................................................................... 3

*Preseault v. Interstate Commerce Comm'n*, 494 U.S. 1 (1990)
    ("*Preseault I*") ...................................................................... 5, 11, 14, 15, 31

*Preseault v. United States*, 100 F.3d 1525, 1552 (Fed. Cir. 1996)
    ("*Preseault II*") ...................................................... 7, 11, 12, 15, 16, 30, 40

*Raulerson v. United States*, Case No. 10-193C, Opinion and Order by Judge Margolis,
    D.E. 45, July 7, 2011 ...................................................................... 6, 8, 9, 33

*Reichard v. Chicago, Burlington & Quincy Railroad*, 231 Iowa 563, 1 N.W.2d 721
    (1942) ...................................................................................................... 21

*Rinard v. Burlington & W. Rwy. Co.*, 23 N.W. 914 (Iowa 1885) ............................................... 35

*Schmitt v. United States*, 2003 WL21057368 at *8 (S.D. Ind. 2003) ........................................... 16

*Stecklein v. City of Cascade*, 693 N.W.2d 335 (Iowa 2005) ....................................................... 35

*Toews v. United States*, 376 F.3d 1371 (Fed. Cir. 2004) .................................................. 12, 15, 34

*Turner v. Unknown Claimants of Land*, 201 N.W. 2d 544, 546 (Iowa 1973) ............................... 24

v

*Washington Wildlife Preservation, Inc. v. State*, 329 N.W. 2d 543, 547
(Minn. 1983) ...........................................................................................25, 26, 27, 28, 29

*Wiegmann v. Baier*, 203 N.W.2d 204 (Iowa 1973) ......................................................................30

*Ybanez v. United States*, Case No. 09-172, Opinion and Order by Judge Hodges. Doc. 39,
filed on May 20, 2011 ....................................................................................................33

## I.   INTRODUCTION

For the sake of logical organization, Plaintiffs' reply and response addresses:

(1) what interest was actually taken by the Defendant through the Trails Act and the issuance of the NITU for those parcels obtained through condemnation (for which the Defendant does not dispute liability for a taking) (discussed in Section II *infra*); and

(2) the easements acquired by the Railroad through right-of-way deeds <u>are</u> easements limited to railroad purposes <u>only</u> rather than general purposes easements (thus, the Defendant is liable for a taking of the landowner's reversionary interest in their land) (discussed in Section III *infra*).

Defendant's Cross-Motion is so discombobulated, particularly the attached Appendices, and doesn't directly or completely respond in any logical fashion to the parcels at issue, that it is difficult if not impossible to respond to any specific objections raised by the Defendant.  But, after addressing what was actually taken by condemnation and the scope of the right-of-way deeds, Plaintiffs will attempt to respond to the so-called "title disputes" where Defendant lodges untimely and baseless objections (discussed in Section IV *infra).*[1]

Plaintiffs begin by noting that the Defendant agrees it is liable for a taking where the railroad obtained an easement by condemnation.  Under binding precedent, a Takings under the Trails Act is the taking of the landowner's reversionary interest in their land <u>unencumbered</u> by any easement.  That is the law.  But the Defendant argues, in a total distortion of the binding precedent set forth over 15 to 20 years of Trails Act jurisprudence, and recently affirmed by the Federal Circuit in *Ladd,*[2] that the taking is instead an "easement for railroad purposes," which is totally absurd and appears to be some kind of rephrasing of the very worn out and losing

---

[1] For this Court's convenience, after hours and hours of sorting out the Defendant's Appendices and the mess thus created, Plaintiffs have taken their original Exhibit A, which contained identification of parcels included in Category I  (right-of-way acquired by Condemnations) and identification of parcels included in Category II (right-of-way acquired by Railroad Purposes Deeds) and color-coded it with an identification as to where a reference to the parcel is contained in Defendant's Appendices—that is—if there is any reference at all.  *See* color-coded MSJ Chart attached as Exhibit A.2.

[2] *Ladd v. United States*, 630 F.3d 1015 (Fed. Cir. 2010).

argument that "railbanking is a railroad purpose."  As this Court noted during the conference held on July 22, 2011,[3] such an argument is "double speaky," and is further a total red herring, ignores binding precedent, is set forth with lack of candor to the Court, and is an attempt to misdirect this Court from the relevant issues.  In sum, it is total gamesmanship and a waste of time and resources of all involved.

The Defendant now also claims that the easements obtained by deed were not limited to railroad purposes, but are instead "general purposes easements."  Because the deeds are allegedly general purposes easement, Defendant then claims that trail use/railbanking are within the scope of those deeds.  Defendant's argument is laughable and totally without merit.  The deeds in this case are easements absolutely limited to railroad purposes and, in fact, unequivocally and expressly state that the grant is for a right-of-way for railroad purposes and uses.   Iowa law is absolutely clear that a limited easement for railroad purposes does not include authorization for trail use/railbanking.

Finally, Defendant raises for the first time many new objections to specific parcels and also raises objections to claims that were previously resolved.  Although Plaintiffs' respond to Defendant's objections in Section IV *infra*, it is Plaintiffs' position, as originally asserted in the withdrawn Motion for Sanctions, that this Court should deem waived or strike the Defendant's objections based on the Defendant's lack of meaningful participation in the discovery process.  However, if this Court does not waive or strike Defendant's objections, Plaintiffs request that so-called "title disputes" be deferred until after a ruling on liability or, in the alternative, the "title disputes" raised in Defendant's Cross-Motion be addressed in the parties' upcoming JSR due on September 19, 2011.  For instance, in Defendant's Appendix E, the Defendant identifies 64

---

[3] Relevant portions of the hearing transcript are attached as Exhibit B.

parcels which it believes were properly identified as obtained through condemnations, however, the list is inaccurate and incomplete because there are actually 103 parcels of land obtained by condemnations. Some parcels that should have been included in Appendix E appear in other Appendices and some do not appear on any list. Instead of attempting to directly respond to Defendant's ridiculous Appendices at this point, Plaintiffs offer Exhibit A.2, a color-coded chart to assist the Court in identifying the status of each parcel, as well as the Defendant's untimely and baseless objections.

## II. THE DEFENDANT AGREES THAT IT IS LIABLE FOR A TAKING WHERE THE RAILROAD OBTAINED ITS EASEMENT BY CONDEMNATION, BUT DISPUTES WHAT INTEREST WAS TAKEN

The Defendant does not dispute that, under Iowa law, condemnation of land for a railroad right-of-way expressly limits the railroad's use to railroad purposes by law, and the Defendant is therefore liable for a taking.[4] However, Defendant completely ignores binding precedent as to what was taken—the landowners' property interest that is taken under the Trails Act is their reversionary interest, which is their right to possession of their property unencumbered by any easement. *See Ladd*, 630 F.3d 1015; *Navajo Nation v. United States*, 631 F.3d 1268, No. 2010-5036, 2011 WL 62825 at *6 (Fed. Cir. Jan. 10, 2011).

### A. Defendant's Mischaracterization as to What it Took from the Plaintiffs Ignores Binding Precedent and the Argument Lacks Candor to the Court

Instead of adhering to binding precedent and acknowledging WHAT was taken from these Plaintiffs, the Defendant now asserts that the takings by condemnation is not the taking of the landowners' reversionary interest, but instead, the taking of an "easement for railroad

---

[4] *See* Def.'s Cross-Motion and Response to Plaintiffs' Motion for Summary Judgment, D.E. 58, ¶ F, p. 25. Further, Defendant's "admission" concerning parcels of land taken by condemnation is identified in Appendix E, where 64 parcels of land are listed. However, Appendix E is inaccurate and illogical. The parcels of land actually taken by condemnation are 103 parcels that were previously identified in Plaintiffs' Original Motion, Exhibit A MSJ Chart and now again in Exhibit A.2 attached to this motion, Category I.A and I.B. Plaintiffs will address the Defendant's Appendices in Section IV *infra*.

purposes," the government did not implement the trail, and, thus, is somehow not liable for a taking of the Plaintiffs' reversionary interest.   The Defendant is wrong (and this argument is really a new variation of the worn-out railbanking is a railroad purpose argument).   Binding precedent dictates that a landowners' reversionary interest – the right to the enjoyment of their land unencumbered by any easement – is the taking, period.

The following statements made by the Defendant are contrary to binding precedent and are appalling:

> The easement taken under the Trails Act is one for railroad purposes only.  The easement is not one for recreational trail use.  This distinction flows from the plain language of the Trails Act and the Federal Circuit's recent decisions in rails-to-trails cases.

 Def. Br. at 27;

> Here, no specific interim use was finalized at the time the NITU was issued on September 23, 2003 [sic][5]—there was only the possibility of a future agreement that would involve interim trail use, but with respect to  which the STB had no control or involvement (citations omitted).  **Accordingly, the United States can only be liable for a taking of an easement for railroad purposes**.  (emphasis added).

Def. Br. at 30.

As longstanding Trails Act jurisprudence dictates, it is the landowners' reversionary interest that is taken.  The Defendant's argument that the taking consists of an easement for railroad purposes violates the Constitution.  The Defendant concedes a taking but attempts to circumvent the Fifth Amendment requiring just compensation for the taking.  The Defendant concedes that the NITU blocked the Plaintiffs' reversionary interest, but then argues that because Congress preserved <u>jurisdiction</u> over the easement, just in case it ever wants to reactivate railroad use in the indefinite future, while the easement is authorized to be used for interim trail use the

---

[5] The correct date of the NITU in this case is October 25, 2004.  The date of  September 23, 2003 is actually the NITU date in the *Rhutasel* case where summary judgment briefing is now complete.

actual easement for railroad purposes has been preserved through the trail use/railbanking provision of the Trails Act.  Such an argument fails because the railroad purposes easement no longer exists, but rather, an easement for interim public use (subject to federal jurisdiction over the easement for potential and speculative reactivation of a railroad) now encumbers Plaintiffs' land.  As held in *Preseault I*, the federal government can take private property for public use, but when doing so, pursuant to the Constitution, it must pay just compensation to the landowner— here, paying the Plaintiffs for their right to use their land unencumbered by any easement. *Preseault v. Interstate Commerce Comm'n*, 494 U.S. 1 (1990) ("*Preseault I*").

The touchstone of a Trails Act takings analysis according to the United States Supreme Court is to determine "what interest petitioners would have enjoyed under [state] law, in the absence of the ICC's recent actions [*i.e.* the issuance of the NITU]." *Id.* at 21.  This test was most recently distilled down to the statement of law that the NITU, which allows trail conversion, blocks and destroys the landowner's right to **"unencumbered"** possession of their property if trail use falls outside the scope of the original easement.  *See Ladd*, 630 F.3d at 1023-24 (emphasis added).  Therefore, it is plainly the right to **"unencumbered"** land that is taken and requires just compensation for that taking.  Defendant cites no authority and totally ignores binding precedent in their argument that an easement for railroad purposes is taken rather than the property owners' reversionary interest.  Ultimately, the measure of damages for just compensation must then be the value of the land unencumbered by a railroad easement and the value of the land encumbered by a perpetual trail use easement subject to possible reactivation as a railroad.[6]

---

[6] *Raulerson v. United States*, Case No. 10-193C, Opinion and Order by Judge Margolis, D.E. 45, July 7, 2011, page 5, attached hereto as Exhibit C.

When a landowner grants a railroad purposes easement, once railroad operations cease, the railroad purposes easement is extinguished and the landowner would then possess the absolute right to possess and use the land unencumbered by <u>any</u> easement.  The landowner would not receive their land back <u>with</u> an easement for railroad purposes once train operations cease.  Defendant's argument is absurd, violates basic property law, and ignores fifteen years of Trails Act jurisprudence.  Defendant's argument is so legally flawed, it should be flatly rejected.

As the Iowa Supreme Court held long ago in *Hastings v. Burlington & M.R.R. Co.*, 38 Iowa 316, 1874 WL 305 (Iowa June 3, 1874), railroads acquire nothing more than an easement by the condemnation and the landowners hold fee title.  *Id*. at *2.  Further, this longstanding principle was later affirmed in *McKinley v. Waterloo Railroad Co.*, 368 N.W.2d 131 (Iowa 1985) (hereinafter "*McKinley*") where the court noted that under Iowa statutory authority, the railroad acquired a strip of land through the plaintiff's land by condemnation, and the "[c]ase law is clear that condemnation of land for railroad right of way creates an easement and once the easement is abandoned the land reverts to the then owner of the servient estate, subject to statutory provisions." *McKinley*, 368 N.W.2d at 133-135 (citations omitted).

The government's position—instead of paying just compensation for liability for the taking of Plaintiffs' reversionary interest (the right to their land unencumbered by a railroad easement)—is that they are only liable for the taking of the Plaintiffs' reversionary interest in an easement for railroad purposes?  How can the government "take" a *reversionary* interest in Plaintiffs' land **encumbered** by a railroad easement?  So is the government saying that the reversionary interest it took was Plaintiffs' right to the use and enjoyment of their land **encumbered** by a railroad easement?  No such reversionary interest exists!  Defendant's argument, apparently, is it took an easement by allowing <u>railbanking</u> as a railroad purpose—but

if railbanking is a railroad purpose, there would be no taking.  The argument is legally flawed and makes no sense.

The Federal Circuit has repeatedly and consistently described the taking that occurs when the fee owner's reversionary interest is blocked or destroyed.  In *Preseault II*, the Federal Circuit specifically stated that "when state-defined property rights are <u>destroyed</u> by the Federal Government's preemptive power and circumstances such as those here before us, the owner of those rights is due just compensation."  *Preseault v. United States*, 100 F.3d 1525, 1552 (Fed. Cir. 1996) ("*Preseault II*") (emphasis added).  The Federal Circuit revisited and reiterated this same property law concept in *Caldwell v. United States*, 391 F.3d 1229 (Fed. Cir. 2004) in 2004 and *Barclay v. United States*, 443 F.3d 1368 (Fed. Cir. 2006) in 2006.  In *Caldwell*, the Federal Circuit stated that "we have previously held that a Fifth Amendment taking occurs when, pursuant to the Trails Act, state law reversionary interests are <u>effectively eliminated</u> in connection with a conversion of a railroad right-of-way to trail use."  391 F.3d at 1228 (emphasis added).  In *Barclay*, the Federal Circuit relied on its holding in *Caldwell* and reiterated that a Trails Act taking "occurs when state law reversionary property interests that would otherwise vest in the adjacent landowners are <u>blocked</u> from so vesting."  443 F.3d at 1373 (emphasis added).  The facts in *Barclay* involved a trail where the railroad had not abandoned the line and was, in fact, still using the right-of-way.  The Federal Circuit concluded that "state law reversion was still delayed by the issuance of the NITU, and the claims still accrued with the issuance of the NITU."  443 F.3d at 1374.

In *Ladd*, the Federal Circuit concluded that the issuance of <u>the NITU operates to prevent abandonment</u> and thus operated to preclude the vesting of state law reversionary interests in the right-of-way that <u>amounted to a taking</u>:

7

> We determined that the limitations period began when state law reversion interests are "forestalled by operation of §8(d) of the Trails Act" and we further determined that "this occurs when the railroad and trail operator communicate to the STB their intention to negotiate a trail use agreement and the agency issues a NITU that operates to preclude abandonment under Section 8(d)." We explained that "[t]he issuance of the NITU is the only government action in the railbanking process that operates to prevent abandonment of the corridor and to preclude the vesting of state law reversionary interests in the right-of-way."

630 F.3d at 1020. In fact, although railroad use ceased prior to the NITU in *Ladd*, it makes absolutely no difference if the railroad use continued after the NITU was issued or if a trail is ever built on the corridor. *Id.*; *see also Barclay*, 443 F.3d 1368. The NITU, by blocking the reversion of state law property rights, amounts to a taking of those reversionary interests.

Judge Margolis, in *Raulerson*, recently confirmed both the law of "what" was taken and the proper methodology to determine just compensation:

> But for the Trails Act, the railbanking agreement would have effected an abandonment under South Carolina law, which would have caused the easement to revert back to plaintiffs. Plaintiffs' damages must therefore be determined by reference to the fee simple value of their properties, unencumbered by any railroad easement. Ultimately, the measure of damages for just compensation must be the difference between the value of plaintiffs' land unencumbered by a railroad easement and the value of plaintiffs' land encumbered by a perpetual trail use easement subject to possible reactivation as a railroad.

*See Raulerson*, D.E. 45, Exhibit C, footnote 9. The rule of law is clear <u>and</u> well-settled, it is the reversionary interest that is taken and there is no such reversionary interest amounting to the taking of an "easement for railroad purposes."

The Defendant's argument that they are liable for taking an "easement for railroad purposes" is incorrect legally, but is also incredibly silly from a practical standpoint. The *Raulerson* case, coupled with the DOJ's attempt to explain the taking and this Court's conclusion that it is "double speaky," illustrates the lunacy of their argument. In *Raulerson*, after agreeing

that a taking occurred, the Defendant argued that the land was still encumbered in the "before"[7] condition with the railroad purposes easement for valuation purposes and some "incremental damage" had occurred because the land was burdened in the "after" condition by an easement for public trail use and the railroad purposes easement.   Judge Margolis flatly rejected their argument.   In other pending cases, the Defendant now claims that the *Raulerson* case is distinguishable because it is an "abandonment" case.   That is absurd because abandonment was never ruled upon in *Raulerson.*  The case was based on trail use/railbanking exceeding the scope of a railroad purposes easement.  *See Raulerson*, D.E. 45, Exhibit C, footnote 9.

Now, having lost the debate on the proper "before" condition of the land for valuation purposes in *Raulerson*, Defendant now argues the land is **unencumbered** in the "before" condition but, since they only took "an easement for railroad purposes" (rather than the Plaintiffs' reversionary interest), it is now encumbered with an easement for railroad purposes in the "after" condition for valuation purposes, rather than "encumbered by a perpetual trail use easement subject to possible reactivation as a railroad," arguing that railbanking is a railroad purpose.  *See, e.g.,  Raulerson*, D.E. 45, Exhibit C, p. 5.   When pressed a little by this Court on July 22, 2011, the Defendant conceded it might not have any practical impact in the application and your Honor concluded that the Defendant's position sounded "double speaky":

> THE COURT:  All right.  So now tell me, you agree that there's been a taking of the railroad purpose easement.
>
> MR. SINGER:  Not of the easement.  We didn't take the easement.  We took the land of the landowner.
>
> THE COURT:  Right.

---

[7] The "before" condition is not literally the state of the land before the NITU/taking, but rather, the first valuation of the larger parcel with the landowner's land including the previous railroad corridor unencumbered by an easement, and the "after" valuation is the remainder parcel with the trail use/railbanking easement encumbered upon the land.

MR. SINGER:  We took was an easement for railroad purposes.

THE COURT:  Okay.

MR. SINGER:  So that is what the government's argument is in Burgess, and that's the argument we would make in this case.  And then with respect to the –

THE COURT:  Hold on.  You're going to have to go much slower.  Remember, I've had a few of these –

MR. SINGER:  No, no, no.  That's fine, Your Honor.

THE COURT:  -- so I'm not completely ignorant of the topic, but it's sounding a little **double speaky**, so go slow and tell me what you think the government took that you can agree to in Burgess and what you think the remaining dispute is.

MR. SINGER:  Okay.

THE COURT:  Now, do this with regard to the ones that were condemned.

MR. SINGER:  Okay.  So with condemnation, under Iowa law, the United States believes, and argued in Burgess, that once the trail, I'm sorry, once the rail corridor was no longer used as an active rail line, that the railroad easement extinguished.  These are the condemned easements.  That the easement extinguished, and that the Trails Act preserved the, or basically locked the extinguishment of the railroad easement so that what the United States took was an easement across the former rail corridor for railroad purposes.  And to place this in the context of –

THE COURT:  Well, actually -- wait.  That you took an easement for railroad banking purposes?

MR. SINGER:  For railroad purposes, Your Honor.  <u>That we preserved the railroad easement</u>.  It's not being used actively right now, but it could be used actively in the future.  To place in the context for just compensation, <u>what the appraisers would look at is in a before condition, the land would be unencumbered by an easement</u> –

THE COURT:  Okay.

MR. SINGER:  -- <u>and in the after condition, the land would be encumbered by an easement for railroad purposes</u>.

THE COURT:  And not for a hiking trail.

10

> MR. SINGER:  Right. … Our position is that under the Trails Act, that the Trails Act preserves an easement for railroad purposes, but it does not authorize a trail easement.

*Jenkins v. United States*, Case No. 09-241, 7/22/2011 Hearing Tr., pps. 10-12, attached as Exhibit B (emphasis added).     The reality is that the Defendant's position is simply wrong legally.  It is also devoid of law and logic from a practical standpoint.  At best, it is yet another attempt to argue that railbanking is a railroad purpose (which is contrary to their agreement that a taking occurred and would actually mean no taking could have occurred legally) and ignores the express language of the Trails Act with underlines interim trail use.  At worst, it ignores and misapplies the law and lacks candor to the Court.

Whether the Trails Act "effectively eliminates" the fee owner's reversionary interest in the land as stated in *Caldwell*, perpetually "precludes" the fee owner's reversionary interest in land as set forth in *Barclay*, or "destroys" the fee owner's reversionary interest in land as stated in *Preseault II*, the taking of the fee owner's reversionary interest occurs when the STB issues a NITU which invokes §1247(d) of the Trails Act.  The landowners' right to **unencumbered** use of his property that he holds in fee simple has thus effectively been destroyed when the Trails Act acts to eliminate the fee owner's reversionary interest in land by issuing a NITU that underlines recreational trail use.  *Preseault I*, 494 U.S. at 22; *Preseault II*, 100 F.3d at 1533; *Ladd,* 630 F.3d at 1023-24. The Federal Circuit made it quite clear that the nature of the landowners' property interests taken is **unencumbered** by a railroad easement.    The government's argument that the taking consists of a railroad purposes easement instead of a landowners' reversionary interest is, quite frankly, intellectually beyond the pale of reasonableness.  The point is this, binding precedent dictates that if the railroad held an easement for railroad purposes and a NITU is issued, the government is liable for a taking of the

landowner's reversionary interest of their right to possession of their land unencumbered by any easement.

### B.   The Taking was Absolutely of the Landowner's Reversionary Interest for Use as an Easement for Trail Use AND Railbanking

In eight pages of Defendant's brief (pages 25 through 32), the Defendant <u>intentionally</u> distorts and completely misstates the law.  Defendant not only totally ignores the Supreme Court's holding as to WHAT is taken from a landowner in a Trails Act taking, the Defendant also now tries to resurrect some old losing argument that because the federal government didn't implement the trail, a third party did, it cannot be held liable.  Incredibly, the Defendant asserts that: (1) "the easement taken is for railroad purposes and does not include trail use," (2) "the United States does not authorize non-conforming interim uses of rail corridors," and (3) "*Preseault II* and *Toews*[8] do not require a finding that the Surface Transportation Board authorized a non-conforming use in this case."  *See* Def. Br. at 27-30.  This is a completely desperate argument.

The Defendant boldly asserts to this Court that the "plain language of 16 U.S.C. §1247(d)…does not state that the Trails Act authorizes any specific type of interim use" and, through an exhausting, pasted-together and disjointed argument, then comes to the conclusion that the "Trails Act assigns to the interim trail user the obligation to assume full responsibility for management of such rights-of-way and for any legal liability arising out of such transfer or use…Thus it is the interim user, and not the United States, who assumes responsibility for any legal liability" and the STB, in issuing the NITU "does not purport to authorize any use inconsistent with the original railroad grant…nor does the STB manage any interim trail on the corridor…hence, the STB cannot be held to have intended to impose an interim use that exceeds

---

[8]  *Toews v. United States*, 376 F.3d 1371 (Fed. Cir. 2004)

the scope of permissible uses under Iowa law" so the Defendant is only liable for taking an easement "for railroad purposes." Def. Br. at 27-28. UNBELIEVABLE.

As a threshold matter, although contrary to established law, the Defendant continues to attempt to distinguish trail use from railbanking. As the courts confirm, however, interim trail use and railbanking are one in the same and "go hand-in-hand under the Trails Act." *See*, *e.g.*, *Farmers Cooperative v. United States*, Case No. 09-741H, 2011 WL 2508242 at *7, (Fed. Cl. June 24, 2011). Meaning, if a railroad wants to reap the benefits of the Trails Act and decide to enter into a trail use agreement, it must also agree to railbanking—this is compulsory. By entering into an agreement for trail use/railbanking under the Trails Act, the railroad does not show "intent" to preserve the right-of-way for railroad purposes but, rather, indicates or carries out its previously expressed intent to discontinue railroad operations (if railroad operations are not already ceased), and relinquish all interest, liability, and responsibility in the right-of-way.

If there is a taking, the Defendant is liable upon issuance of the NITU because interim trail use is AUTHORIZED by the TRAILS ACT STATUTE—specifically authorizing interim trail use by a governmental entity, **or private entity**. On page 31 of its brief, the Defendant attempts to distinguish a third-party trail user from a state or local governmental agency and such a distinction is disingenuous and contrary to the express language of the Trails Act (and actually, here, the trail user IS a local governmental agency by the way). As the Defendant correctly notes, "events arising after issuance of the NITU, including conversion of a rail corridor to a recreational trail, cannot be elements of a taking claim under the Trails Act,"[9] but this is actually because under the law, it is the mere **authorization** for such use by issuance of the NITU that amounts to the taking if the prongs of *Preseault II* are met (railroad holds an easement and trail

---

[9] Def. Br. at 29, 32.

use/railbanking exceed the scope of the easement or the easement was abandoned prior to issuance of the NITU).  *See Preseault II*, 100 F.3d at 1525.

Furthermore, the Trails Act makes no distinction whatsoever between the trail user being a state or local governmental entity or a third-party private group and specifically encourages and authorizes a qualified private group to enter into a trail use/railbanking agreement to preserve the railroad corridors and, therefore, prevent the landowners' reversionary interests from vesting. The Trails Act actually authorizes a private entity to negotiate and enter into a trail use/railbanking agreement in each and every paragraph mentioning a state or local governmental agency as a trail user.  *See* 16 U.S.C. § 1247 (a)-(d), attached hereto as Exhibit D.

The Defendant's reference to the Policy Statement on Rails to Trails Conversions is equally disingenuous, intentionally leaving out the complete policy statement made by the STB. The Policy Statement specifically states:

> Section 1247(d) permits preservation of rights-of-way that would otherwise be abandoned.  If a local government or **private organization** agrees to maintain the right-of-way for possible future railroad use (and to assume all liability in connection with the trial use and responsibility for the corridor, including paying taxes), it may use the right-of-way on an interim basis as a trail. Section 1247(d) expressly provides that "such interim use shall not be treated, for purposes of any law or rule of law, as an abandonment of the use of such rights-of-way for railroad purposes." Thus the Trails Act retains the property as a possible future rail line—this is described as "rail banking"—while **allowing it to be used in the interim as a recreational trail**.

*See* S.T.B. Policy Statement on Rails to Trails Conversions, 1990 WL 287255 at *2, attached as Exhibit E (emphasis added).  Moreover, Defendant's citations to other railroad abandonment exemptions are irrelevant here but they actually do acknowledge the same statutory language as the abandonment exemption for this rail corridor.  For instance, the abandonments cited by the Defendant state:

> Under the Trails Act and the Board's implementing procedures (49 CFR 1152.29), a state or local government **or private organization** can request a trail condition (known as a Notice of Interim Trails Use (NITU)) to begin the trail use process on a line approved for abandonment if the trail sponsor agrees to railbanking and provides a statement of willingness to assume responsibility for managing the right-of-way, for any legal liability arising out of its use, and for the payment of taxes. If the railroad agrees to negotiate, and no offer of financial assistance to continue rail freight service on the line is received, the Board imposes a NITU, which gives the rail sponsor time to negotiate an agreement with the railroad for interim trail use/railbanking.

*See* UP Abandonment Exemption, 2005 WL 835611 at *3, attached hereto as Exhibit F (emphasis added).  In another STB filing cited by the Defendant, which related to a private entity trail user, which was approved by the STB, the STB noted:

> **Congress clearly intended to preserve as many rail corridors as possible under section 1247(d).** *See Preseault v. ICC*, 494 U.S. 1, 19 (1990) (*Preseault*). Under the statute, a prospective trail sponsor may acquire the right-of-way through "donation transfer, lease, sale or otherwise" so long as the financial and rail banking requirements of the statute are met. Moreover, any **"State, political subdivision or qualified private organization"** can invoke section 1247(d). In these circumstances, we see no reason to change our longstanding practice of reading the word "qualified" in the statute to mean any private organization willing to assume responsibility for the line and agree to rail banking. (citations omitted).

*See* Abandonment and Discontinuance Exemption, 3 S.T.B. 50, 1998 WL 146208 at *5, attached hereto as Exhibit G (emphasis added).  As dictated by the Supreme Court, Congress' enactment of the Trails Act is constitutional and the government can take land, but the taking constitutionally requires the payment of just compensation to the landowners under the Fifth Amendment.

The Defendant's argument that *Preseault II* and *Toews* are distinguishable from this case is ridiculous.  Here, the trail user is actually a local governmental agency, but regardless, there is no such distinction of a taking where the trail user is a state or local governmental agency from a private trail user.  As noted by the Federal Circuit's decision in *Ellamae Phillips*, if a "state,

municipality, or private group is willing to assume financial and managerial responsibility for the right-of-way," the federal government is liable for a taking if trail use/railbanking exceeds the scope if the railroad's easement (the private group, Roaring Fork Railroad Holding Authority, was the trail user).  *Ellamae Phillips Co. v. United States*, 564 F.3d 1367, 1369, 1373-74.[10]

The point is—binding precedent dictates that there is no distinction regarding the federal government's liability for a taking based on whether the trail user is a governmental entity or a qualified private entity.   The Trails Act treats state and local governmental agencies and qualified private trail users the same.  Specifically, in this case, the FEDERAL Governmental Agency, the STB, issued the NITU under the Trails Act and blocked the vesting of the Plaintiffs' reversionary interest to use their land unencumbered by any easement and authorized the UP Railroad and Iowa Natural Heritage Foundation on behalf of Dallas County Conservation Board (a county governmental entity by the way)[11] to negotiate and enter into a trail use/railbanking agreement.  When the agreement was then reached, the line was permanently railbanked and trail use was authorized to be "**implemented**."  *See* NITU dated 10/25/2004, pps 3-5, attached hereto as Exhibit H (emphasis added).   The Defendant's argument attempting to absolve the government of liability for a private entity as the trail user is meritless and lacks candor to the Court.

---

[10] *See also Ladd*, 630 F.3d 1015 (holding the federal government liable for a taking when the trail user requesting the NITU was The Trust for Public Land (Trust), a charity supporting the conversion of abandoned rail lines to public recreational trails, noting that the trail use/railbanking agreement was not consummated and the taking was temporary); *Blendu v. United States*, Case no. 01-718 L, 2007 WL 594921 (Fed. Cl. Feb. 22, 2007) (relying on *Preseault II* and other Trails Act jurisprudence and **holding the federal government liable for a taking under the Trails Act where the trail user was a private entity**); *Hash v. United States*, Case no. CV-99-324-S-MHW, 2008 WL 818347 (U.S. Dist. Ct. Mar. 24, 2008) (on remand from the Federal Circuit 403 F.3d 1308, (Fed. Cir. 2005) (same); *Schmitt v. United States*, Case No. IP 99-1852-Y/S, 2003 WL 21057368 (S.D. Ind. Mar. 5, 2003) (same); *Anna Nordhus Family Trust v. United States*, Case No. 09-042, Opinion and Order dated 4/12/11 (D.E. 45) (same). The list of cases could go on and on.
[11] *See* Iowa Natural Heritage Foundation letter to the STB dated 7-19-04, Pls.' FOF Exhibit C.

### III.   THE SOURCE CONVEYANCES TO THE RAILROAD BY RIGHT-OF-WAY DEEDS ARE EASEMENTS AND THE SCOPE OF THOSE EASEMENTS ARE LIMITED TO USE FOR RAILROAD PURPOSES

Defendant concedes that numerous parcels adjoin the railroad's right-of-way and that the original conveyances to the railroad were easements by deed.  *See* Appendix D to Defendant's Cross-Motion.   However, all of the Plaintiffs' parcels contained in Plaintiffs' MSJ Chart (attached as Exhibit A to Plaintiffs' original motion for summary judgment) own parcels adjoining the railroad's right-of-way, by which the railroad acquired an easement limited to railroad purposes via deed.[12]   Plaintiffs are entitled to summary judgment because the right-of-way deeds are absolutely and expressly limited to railroad purposes and trail use/railbanking exceeds the scope of the easements.

### A.   All Of The Right-Of-Way Deeds are Easements and They Are Definitely For Railroad Purposes Only

After conceding that the original conveyances constituted easements under Iowa law, the Defendant attempts to argue that no taking has occurred because the "right-of-way deeds provide general easements that are not limited to railroad purposes 'only.'"  Def. Br. at 16.  In support of their laughable position, Defendant states that the deeds convey general easements because the easements to the Des Moines Valley Railroad do not recite express limitations for railroad purposes "<u>only</u>"—what?  Here, the deeds expressly state "the **right-of-way** <u>for a</u> r**ailroad** road…

---

[12]   Defendant objected to adjacency to the railroad corridor for certain Plaintiffs' parcels, some objections made earlier in the Claims Book process and some objections in their motion are new.   Regardless, the Defendant's objections are without merit as discussed in Section IV *infra*.   Additionally, Defendant claims that Plaintiff, the city of Dallas Center,  played a role in the request to have the STB issue the NITU in this lawsuit and thus, summary judgment should not be granted at this time.  However, Defendant is wrong.  The city of Dallas Center owned the underlying fee in the railroad right-of-way prior to the NITU and the NITU blocked its exclusive use and enjoyment of its land and now it merely holds an easement with authorization for a public trail.  Dallas County Conservation Board is actually the trail user, but regardless, Defendant's argument is without merit.  *See* Def. Br. fn 8, p. 15.

to be used…for said Rail Road and <u>for any</u> **other rail road purpose** <u>or</u> **uses.**[13] Then the Defendant states that in addition to the lack of the word "only," the deeds do not contain a reverter clause. Basic property law dictates, as well as Iowa law, that no reverter clause is required in order to grant a limited easement. Def. Br. at 16. Defendant's arguments are so weak, they are shameful.

> 1. **It is obvious that the right-of-way deeds are for railroad purposes because they specifically conveyed the right-of-way for the limited purposes connected to railroad operations pursuant to clear and longstanding authority from the Iowa Supreme Court**

Defendant first takes the position that the "right-of-way deeds are not limited to railroad purposes "only" even though the deeds state that the grantors conveyed to the Des Moines Valley Railroad the "**right-of-way** <u>for a</u> r**ailroad** road… to be used for a single or double track for said Rail Road and <u>for any</u> **other rail road purpose** <u>or</u> **uses** over and across the following described tract…"[14] That is a laughable position. In essence, the Defendant now argues that landowners in the late 1860's granted a narrow strip of ground through their property specifically for the railroad's right-of-way for railroad purposes and that is not a railroad purpose? The government ignores the absolute fact that the right-of-way deeds in question specifically state that they are for the "**right-of-way** <u>for a</u> r**ailroad"**… and "<u>for any</u> **other rail road purpose** <u>or</u> **uses**.[15] Obviously, the landowner's intent was clearly to convey to the railroad the "right-of-way for railroad purposes and uses" rather than some general use.

The right to acquire private land for the railroad's right-of-way was first established in Iowa by the Iowa legislature in 1853, which governs the conveyances in this case. In a statute specifically entitled "Right of Way Act", the Iowa legislature specifically stated that the railroad

---

[13] *See, e.g.,* J. Lemming, grantor, Right of Way Deed recorded in Dallas County Recorder of Deeds, Book A, Page 419, Pls.' FOF Exhibit II.I.
[14] *See id.*
[15] *See id.*

can obtain a right-of-way "as may be necessary for the location, construction, and convenient use

of their road:"

> *Be it enacted by the General Assembly of the State of Iowa:*
> Section 1.   <u>Right of way−may take and use</u>−limit−stations.   That any railroad
> corporation in this state heretofore organized, or that may be hereafter organized
> under the laws of this state, may take and hold, under the provisions contained in
> this act, <u>so much real estate as may be necessary for the location, construction,</u>
> <u>and convenient use of their road</u>.   Such corporation may also take; remove, and
> use for the construction and repair of said road and its appurtenances, any earth,
> gravel, stone, timber or other materials, on or from the land so taken: <u>provided,</u>
> <u>that the land so taken otherwise than by the consent of the owners, shall not</u>
> <u>exceed one hundred feet in width</u>, expect for wood and water stations, unless
> where greater width is necessary for excavation, embankment, or depositing waste
> earth.

Code of Iowa, 1853, Chapter 31, Section 1 (emphasis added) (attached hereto as Exhibit I).   The

important point is that the railroad can only acquire the right-of-way "for the location,

construction, and convenient use of their road."   That is a railroad purpose and only a railroad

purpose.

All of the right-of-way deeds at issue in this case are basically the same.   Defendant has

already conceded that all of the right-of-way deeds are easements.   It is obvious that the right-of-

way deeds at issue in this case are for railroad purposes pursuant to very basic property law.

Under Iowa law, an "easement is a liberty, privilege or advantage in land without profit, existing

distinct from ownership." *Hawk v. Rice*, 325 N.W. 2d 97, 98 (Iowa 1982) (hereinafter "*Hawk*").

Every "conveyance of real estate passes all of the grantor's interest unless a contrary intent

<u>reasonably</u> can be inferred from the language used," such as language describing the conveyance

as a right-of-way for the railroad's operations, thereby limiting the grant to an easement for

railroad purposes only. *Id* at 99.   The grantor's intent controls and is "ascertained by applying

general contract principles." *Id*.   Thus, it was clearly the grantors' intent to allow the railroad to

operate its trains across their property and that is the <u>only</u> purpose of the original grant.

19

Under longstanding precedent from the Iowa Supreme Court, a conveyance to the railroad through a deed granting a strip of land for the railroad's right-of-way for the purpose of constructing a railroad only conveys an easement for railroad purposes, and nothing more. *Hawk*, 325 N.W.2d at 99 (holding that a grant conveying a right-of-way for the purpose of constructing a railroad and purposes connected with the use of the railroad conveyed only an easement for railroad purposes); *Macerich Real Estate Co. v. City of Ames*, 433 N.W.2d 726 (Iowa 1988) (hereinafter "*Macerich*") (same); *Estate of Rockafellow v. Larry LIHS*, 494 N.W.2d 734 (Iowa App. 1992) (hereinafter "*Rockafellow*") (same). Defendant's attempts to distinguish the clear holdings in these three cases are disingenuous at best.

In *Hawk*, the Iowa Supreme Court determined that an easement for railroad purposes was conveyed based on this granting clause:

> [g]rant, sell and convey to the said Toledo and Northwestern Railway, its successors and assigns, <u>for the purpose of constructing a Railroad thereon,</u> and for <u>all uses and purposes connected with the construction and use of said Railroad,</u> <u>the right of way for the said Railroad</u> over and through the [ described tract]...."

*Hawk*, 325 N.W.2d at 98 (emphasis added).

After generally stating that the "grantor's intent is controlling" and "general contract principles" control the interpretation of a deed, the Iowa Supreme Court easily concluded that a grant of a "right-of-way for construction and operation of a railroad" is an easement:

> <u>The granting clause expressly described the conveyance in this case as a right-of-way for construction and operation of a railroad.</u> The habendum clause added that the railroad was to have, hold and enjoy it 'for any and all uses and purposes in any way connected with the construction, preservation, occupation and enjoyment' of the railroad. Similar language has been held in a long line of cases to convey an easement only.[16]

---

[16] *Citing Keokuk County v. Reinier*, 227 Iowa 499, 503, 288 N.W. 676, 678 (1939) (similar language in habendum clause – deed conveyed only a right-of-way subject to statutory reverter); . . . *Chicago & Northwestern Railway v. Sioux City Stockyards Co.*, 176 Iowa 659, 668, 158 N.W. 769, 772 (1916); ("[A] grant or gift of ground for a right-of-way is presumed to be of an easement therein only."); *Brown v. Young*, 69 Iowa 625, 626, 29 N.W. 941 (1886) (right-of-way conveyed – "a mere right-of-way over land is, we believe, always regarded as an easement."); *Barlow*

325 N.W.2d at 99 (citations omitted) (emphasis added).

The Iowa Supreme Court went further and distinguished cases that granted a fee or a determinable fee rather than an easement. One such case was *Reichard v. Chicago, Burlington & Quincy Railroad*, 231 Iowa 563, 1 N.W.2d 721 (1942). Although the primary focus by the Iowa Supreme Court was on the issue of easement or fee (largely because it was so obvious that the grant was for railroad purposes), the distinguishment of *Reichard* to reach the conclusion that the grant was not only an easement but an easement limited to railroad purposes, is significant:

> That case is distinguishable, however, on two bases. First, the parties in *Reichard* agreed the conveyance was of a determinable fee so that nature of the conveyance was not an issue in the case. Second, unlike the deed in the present case and other easement cases, <u>the *Reichard* deed did not contain the language characterizing the conveyance as one of right-of-way, **or** for construction and operation of a railroad or for railroad purposes</u>.

325 N.W.2d at 99 (emphasis added).

Defendant's attempt to distinguish *Hawk* is disingenuous at best. Defendant states that "*Hawk* analyzes and resolves a title issue that is not disputed for purposes of Plaintiffs' Partial Motion for Summary Judgment." Def. Br. at 22. *Hawk* absolutely applies to the issues in this case. The Iowa Supreme Court stated in *Hawk* that a deed is an easement when it "contains language characterizing the conveyance as one of right-of-way", <u>or</u> when the deed is "for construction and operation of the railroad", <u>or</u> when it contains language "for railroad purposes." The deeds at issue in this case are not only for the "right-of-way" but are also "for any other railroad purpose or uses." Defendant's attempt to mischaracterize these deeds as general easement deeds because they do not specifically have the word "only" after language "for

---

*v. Chicago, Rock Island & Pacific Railway*, 29 Iowa 276, 279 (1870) (conveyance "for the construction of the second division of said railroad" was conveyance of right-of-way only); *see also Haack v. Burlington Northern, Inc.*, 309 N.W.2d 147, 150 (Iowa Ct. App. 1981) (conveyance "for said railroad and for railroad purposes only" was of easement only); . . .

railroad purposes" should not be accepted or tolerated.  As dictated by the Iowa Supreme Court, even a grant of a "right of way" is an easement for railroad purposes only!

Two separate deeds containing identical granting clauses were reviewed by the Iowa Supreme Court in *Macerich*.  The Iowa Supreme Court determined that an easement for railroad purposes only was conveyed based on the following language:

> Hereby sell and convey to the Iowa & Minnesota Railway Company the <u>right of way 100 feet in width for a single or double railroad track,</u> as the same is located through the following lands…

422 N.W.2d at 729 (Iowa 1988) (emphasis added).

The Iowa Supreme Court, even though the deeds did not specifically say "for railroad purposes," held that the deeds clearly conveyed a "right-of-way" and that the deeds conveyed to the railroad "**<u>only an easement for railroad purposes.</u>**"   433 N.W.2d at 728-729 (citations omitted) (emphasis added).   *Macerich* clearly finds that a grant of a "right-of-way" is an easement <u>and</u> that easement is <u>only</u> "for railroad purposes."  Not only is that the logical and only conclusion that can be reached, it is binding on the Defendant in this case.

Again, relying on *Hawk* and *Macerich*, the Iowa Court of Appeals reached the exact same conclusion in *Rockafellow*.  The granting clause in the deed at issue was as follows:

> Give, remise, release, convey and quitclaim to the said Burlington, Cedar Rapids and Minnesota Railway Company <u>for the purpose of constructing a railroad thereon</u> and for all purposes connected with the construction and use of the said railroad <u>the right-of-way for the said tract</u> over and through. . . described tract. . .

494 N.W.2d at 735 (emphasis added).

After reviewing a long line of cases in Iowa, including *Hawk* and *Macerich*, the Court of Appeals concluded that the grant was for an easement only since it conveyed a "right-of-way" <u>and</u> that the deed conveyed to the railroad "an easement for railroad purposes <u>only</u>":

> In applying this interpretation of the deed language to the deed in this case, <u>we determine the language creates only an easement</u>.   We adopt as our own the following findings of the trial court:  [the] granting clause conveyed a 'right-of-way' for the purpose of 'constructing a railroad thereon and for all purposes connected with the construction and use of said railroad.'   Such language. . . conveyed to the railroad only an easement for railroad purposes. . .
> <u>We conclude the deed in this case conveyed to the railroad an easement for railroad purposes only</u>.

494 N.W.2d at 736 (emphasis added).

There can be no mistake, the deeds in this case specifically express that the grant is for the railroad's <u>right-of-way</u> for "railroad purposes" and railroad "uses" and, thus, clearly granted the railroad an easement for railroad purposes <u>only</u>.  Iowa law is clear that by expressly limiting the grant to the railroad's right-of-way, <u>only</u> a railroad purposes easement is acquired by the railroad and further expressing that the easement is for railroad purposes and uses makes the grantor's intent perfectly clear.  Thus, under Iowa law, all of the right-of-way deeds at issue in this case create easements, as conceded to by the Defendant, for the right-of-way and limit the grant to railroad purposes **only** as stated repeatedly by the Iowa courts.

Defendant attempts to somehow buttress this misguided "general purpose easement argument" by citing *Lowers v. United States*, 663 N.W. 2d 408 (Iowa 2003).  First, Defendant misstates that *Lowers* rejected *Atkin*,[17] and, in turn, *Hawk*.[18]  That is simply not true.  The Iowa Supreme Court in *Lowers* held that a deed titled "Right of Way" did not necessarily convey an easement <u>without</u> some reference to a right-of-way in the language defining the interest conveyed.  663 N.W.2d at 411.  That is the law in Iowa.  Here, all the deeds at issue <u>do</u> contain a reference to a right-of-way in the language defining the interest and further define the interest expressly as limited to railroad purposes!!

---

[17] *Atkin v. Westfall*, 69 N.W.2d 523 (Iowa 1955).
[18] *Hawk*, 325 N.W.2d 97.

Defendant also lifts a quote from *Lowers* without giving the Court the entire quote. Defendant states that "the Iowa Supreme Court rejected the notion that a deed conveying property to a railroad 'for the construction of said Railroad in said Cass County' should be construed based on the railroad's intended use" and that *Lowers* reasoned that "determining the nature of the interest conveyed by reference to the intended use by the grantee seems frivolous in matters involving narrow tracts of land acquired by railroad companies."  Def. Br. at 20.  The entire quotation from the Iowa Supreme Court is as follows:

> Determining the nature of the interest conveyed by reference to the intended use by the grantee seems frivolous in matters involving narrow tracts of land acquired by railroad companies.  <u>There is but one single reason for all such conveyances irrespective of whether the deed conveys a fee or an easement</u>.  As we stated in *Turner v. Unknown Claimants of Land*, 201 N.W. 2d 544, 546 (Iowa 1973), "<u>[o]rdinarily the parties know the tract will be used for a railway; for what other purpose would a railroad purchase a strip of land across a farm</u>."

663 N.W. 2d at 410-411 (emphasis added).

Precisely!! It is indeed frivolous, as stated by the Iowa Supreme Court, whether the railroad obtains a fee or an easement, to haggle over the intended use of a narrow strip of land running through a farm.  As the Iowa Supreme Court stated, "the parties know the tract will be used for a railway" and "for what other purpose would a railroad" possibly purchase a strip of land across a farm.  *Id.* at 411.  **IT IS FOR THE RAILROAD'S PURPOSE AND USE ONLY**.

The Iowa Supreme Court also cited and approved a number of cases that granted an easement limited to railroad purposes only when "some reference to right-of-way" is made in the body of the deed.  <u>That is precisely what we have in every deed at issue in this case</u> – <u>a reference to the railroad's right-of-way in the body of the deed, as well as expressly limiting the use to railroad purposes</u>.  That is why the conveyances are easements, as stipulated to by the Defendant,

and that is why all of the conveyances are <u>for railroad purposes only</u> as stated by the Iowa Supreme Court.

Defendant tirelessly cites and relies on *Moody v. Allegheny Valley Land Trust*, 976 A.2d 484 (Pa. 2009), *Chevy Chase Land Co. v. United States*, 733 A.2d 1074 (Md. App. 1999), and *Washington Wildlife Preservation, Inc. v. Minnesota*, 329 N.W.2d 543, 547 (Minn. 1983)—none of which have anything to do with Iowa law.   The Defendant has paraded out the same cases once again.   Def. Br. at 19-21.   Defendant's reliance on *Moody, Chevy Chase*, and *Washington Wildlife* is seriously misplaced because the easements in those cases <u>were</u> general purposes easements, and <u>not railroad purposes easements</u>.   By point of clarification, the *Chevy Chase* court itself distinguished contrary authority on the grounds that those other courts considered <u>railroad purpose easements</u>.   This Court has already ruled upon this issue in its April 7, 2011 opinion in *Macy Elevator*.   Your Honor affirmed that the easements at issue in *Chevy Chase* and *Moody* were broader purpose easements and not easements limited to railroad purposes. [19]   Thus, neither *Moody*, *Chevy Chase*, or *Washington Wildlife* are relevant or applicable here.   There can be no mistake that all the deeds here are easements limited to railroad purposes <u>only</u>.

    **2.   Defendant's statement that *McKinley*, *Hawk*, *Macerich*, *Rockafellow* and *McGrane* contain language limiting the grant to railroad purposes not found in the Des Moines Valley Railroad's right-of-way deeds is ludicrous**

Defendant desperately attempts to distinguish Iowa law's binding precedent from the deeds applicable in this case.   However, Defendant's arguments miserably fail.   For instance, Defendant weakly attempts to distinguish *Macerich* and *Hawk* by stating that the holding was limited to whether the deed was fee or easement and thus cannot be applied to this case regarding the **limitation** on the easement.   In actuality, in both *Macerich* and *Hawk*, the court not only

---

[19]   *Macy Elevator* opinion by Judge Firestone, April 7, 2011, footnote 13 (citing *Preseault II* at 1547).

analyzes whether the deed conveyed a fee or easement, but also analyzes and denotes that language granting a right-of-way with express limitations for railroad purposes specifically grants an easement limited to railroad purposes.  Specifically, in *Macerich*, the Iowa Supreme Court stated that "a long line of Iowa cases had held that similar language conveys <u>only</u> an easement for railroad purposes, not a fee" and "conclude[d] that the deeds in this case **conveyed to the railroad <u>only</u> an easement for railroad purposes**."  433 N.W.2d at 728-29.

Further, Defendant attempts to distinguish *Hawk* and *Rockafellow* by arguing that "the deed in *Hawk* recited a reverter clause should the rail operator not construct a rail line, cease using the rail line, or relocate the line."  Def. Br. at 22-23.  Whether a limited easement deed contains a reverter clause is totally irrelevant to the obvious conclusion reached by the Iowa courts that a deed for the railroad's right-of-way "**IS AN EASEMENT FOR RAILROAD PURPOSES <u>ONLY</u>**."  Defendant's attempt to distinguish *Hawk* and *Rockafellow,* just like the conclusions reached by the Iowa Supreme Court in *Hawk* and *Macerich*, ignores the grantor's clear intent, the clear language of the deeds at issue, and the clear rulings of the Iowa Supreme Court.  Then, the Defendant incredibly states that without a reverter clause, the Des Moines Valley Railroad deeds are more like the deeds at issue in *Washington Wildlife*—deeds granting general easements without any language limiting the grant to railroad purposes.  Def. Br. at 23.  However, as the Iowa Supreme Court dictates, a reverter clause "has nothing to do with…defining the interest that is subject to reverter."  *Hawk*, 325 N.W.2d at 99.

Defendant also attempts to rely on *Washington Wildlife* for the proposition that the easements in this case are general purpose easements.  That argument was specifically rejected by the Supreme Court of Iowa in *McKinley:*

> *Washington Wildlife* differs substantially from the case at bar.  <u>In this case the</u> <u>easement was for railroad purposes</u>.  It was created by condemnation, a statutory

creature, and not by deed, which is in essence a contract. In contrast, the Minnesota Supreme Court specifically stated that none of the deeds were limited to railroad uses: Significantly, however, none of the deeds expressly limit the easement to railroad purposes, provide that the interest conveyed terminates if use for railroad purposes ceases, or provide that the easement would only exist only for so long as the right-of-way was used for railroad purposes. While the grantors were undoubtedly aware that a railroad would be constructed on the land, none of the deeds limit the use to railroad purposes. We hold that *Washington Wildlife* is not applicable here.

368 N.W. 2d at 135 (emphasis added).

As the *McKinley* court held, the deeds in *Washington Wildlife* were not easements limited to railroad purposes and were therefore unlike and distinguishable from the easements conveyed in *McKinley*. Here, the deeds expressly state that the use is for the railroad for railroad purposes. The grant does not say for railroad purposes and any other non-railroad use. To read the lack of the word "only" as a means to disregard all of the grantor's language limiting the permission to railroad purposes would deprive words of all their ordinary meaning. Defendant's weak attempts to distinguish controlling Iowa binding precedent fails. Clearly, the deeds are not easements for "general purposes," but rather, easements limited to railroad purposes only.

**B. The Easements in This Case are Expressly Limited to Railroad Purposes Only and Authorization for Trail Use/Railbanking Exceeds the Scope of the Easement**

Even though it is clear that the deeds in this case are easements expressly limited to railroad purposes only, the Defendant attempts to argue that trail use is within the scope of the railroad's easement because: (1) trail use is not more burdensome on the servient estate than rail service; (2) trail use, like rail use, furthers the easement purpose as a passageway; and (3) the Iowa Supreme Court's opinion in *McKinley* somehow supports the conclusion that trail use falls within the scope of the right-of-way deeds. Def. Br. at 16-17. The government's position is wrong, wrong, and wrong and is totally devoid of common sense, logic, and law.

27

1.  **Defendant's argument that trail use falls within the scope of the Des
    Moines Valley Railroad's right-of-way deeds under Iowa law is also
    ludicrous**

It is clear in this case that the railroad's easement was limited to use for railroad purposes

and the issuance of the NITU authorizing conversion of the railroad right-of-way for use as a

public recreational trail is beyond the original scope of the easement.   Defendant makes the

incredible statement that even though the Iowa Supreme Court held trail use exceeds the scope of

a railroad purpose easement in *McKinley*, the holding cannot be applied here because *McKinley*

involved condemnation and is not applicable to easements by deed.   Def. Br. at 24.   Defendant

attempts to extrapolate from a faulty foundation that the easements are general purpose

easements to form a conclusion that "trail use is not more burdensome on the servient estate than

rail service" and "trail use, like rail use, furthers the easement purpose as a passage way."   Def.

Br. at 19.

Defendant first states that the Iowa Supreme Court in *McKinley* distinguished

*Washington Wildlife* on the basis that it involved "deeded railroad easements and not condemned

railroad easements" (Def. Br. at 20-21), which is not true.   The fact that the deeds in *Washington*

*Wildlife* were not condemnations was irrelevant to the Iowa Supreme Court in *McKinley*—the

determining factor was that the deeds in *Washington Wildlife* were general purpose easements

and not railroad purposes easements.

The Defendant states that "Like the deeds at issue in *Washington Wildlife*, the Des

Moines Valley right-of-way deeds at issue here do not 'expressly limit the easement to railroad

purposes, provide that the interest conveyed terminates if use for railroad purposes ceases, or

provide that he easement would exist only for so long as the right-of-way was used for railroad

purposes."   And thus, "because the Des Moines Valley deeds—like the deeds at issue in

*Washington Wildlife*—do not recite specific limitations on the use of the easement, trail use falls within the scope of the Des Moines Valley right-of-way deeds." Def. Br. at 21.  Defendant's assertions are inaccurate.  Here, the deeds actually do specify express limitations which limit the grant to railroad purposes—only.

Defendant attempts to argue that *McKinley* can be distinguished from this case because *McKinley* involved a condemnation.  There is, however, a very important point to be made – *McKinley* applies to all <u>easements</u> for the railroad's right-of-way whether by condemnation or right-of-way deed.  An easement for railroad purposes is an easement for railroad purposes—it makes no difference whether the easement was obtained by deed or condemnation—the permission the railroad received, either way, was the right to use the land for railroad purposes!! The Iowa Supreme Court in *McKinley* found that recreational trail use is beyond the scope of any easement for the railroad, not just limited to condemnations.  Has the defendant once again forgotten that they have conceded that the deeds at issue in this case are easements?  *McKinley* is absolutely on point and totally supports the conclusion that recreational trail use is beyond the <u>easement</u> for the railroad's right-of-way for railroad purposes only.

Further, Defendant states that under Iowa law, the use of a public street includes the right to construct and operate a railway on that street, and that "if a railway is a permissible use of a public street on the basis that both have the principal purpose of being a passage way, then an unlimited easement to a railroad can embrace trail use for that same reason.  Citing *Milburn v. City of Cedar Rapids*, 1861 WL 248 at *4; *Washington Wildlife*, 329 N.W.2d at 547.  Def. Br. at 20.   Such a statement of Iowa law is inaccurate and Defendant displays a total lack of candor with this line of argument.  The short story is that *Milburn* holds that, prior to 1873, a railroad could use a public street, <u>owned by a city or town in fee</u>, to operate a railway on the street.

However, a new statute was passed in 1873, and it was then up to the fee owner of the street to allow or prohibit the railroad's use of a street owned by a city.  Regardless, this argument is a red herring and has nothing to do with authorization for trail use exceeding an easement limited to railroad purposes.

The Defendant cites non-railroad cases in Iowa for the proposition that the easements are general purpose easements and, thus, trail use falls within the scope of the easement.  Def. Br. at 17.  The argument is absurd.  Defendant's reliance on *McDonnell v Sheets*, 15 N.W.2d 252 (Iowa 1944) and *Wiegmann v. Baier*, 203 N.W.2d 204 (Iowa 1973) are misplaced.  Both cases deal with easements for ingress and egress for vehicles and in essence apply the shifting use doctrine to allow the easement to adjust in the face of changing times.  As the Iowa Supreme Court noted in *Weigmann*, "it is the general rule that where a right of way is granted it may be used for any purpose which the land accommodated thereby may reasonably be devoted…and the grantee can avail himself of modern inventions, if by so doing he can more fully exercise and enjoy or carry out <u>the object for which the easement was granted</u>."  *Weigmann*, 203 N.W.2d at 208 (emphasis added).  The easements are not "unlimited easements," for any kind of travel, (such as a train), but rather do not limit the easement to a "team and wagon" or the type of cargo carried, and allows the travel over the easement by the modern invention of a motor vehicle in order to accommodate the object for which the easement was granted!  *See McDonnell*, 15 N.W.2d at 1154-1155.

Just as in *Preseault II*, where the Federal Circuit rejected the federal government's argument that the scope of the easement was subject to adjustment in the face of changing times and could then include use as a public recreational trail, the argument should be rejected here under Iowa law.  The Court noted that "the general rule does not preclude the scope of an

easement being adjusted in the face of changing times to serve the original purpose, so long as the change is consistent with the terms of the original grant." 100 F.3d at 1542, (citing Richard R. Powell, 3 Powell on Real Property § 34.12[2] (Patrick J. Rohan ed. 1996)).  The easements here are for railroad purposes, and the original purpose was to allow travel over the easement by trains to haul cargo or passengers, period.  Defendant's quantum leap in logic and improper legal arguments stating that the deeds at issue in this case do not limit the easement and trail use falls within the scope of the right-of-way deeds is based on improper statements and faulty foundations and should not be tolerated.

The Supreme Court of Iowa in *McKinley*, just as in *Preseault I*, specifically rejected the notion that an abandoned right-of-way as a recreational trail is consistent with an original easement for railroad purposes.  The Iowa Supreme Court specifically held that an easement created by condemnation of land is an easement for railroad purposes and does not include an easement for use of the land as a public trail.  The Court in *McKinley* addressed and specifically rejected the government's contention that the easement was not abandoned but merely changed from an easement for railroad purposes, a form of public transportation, to other forms of public transportation such as hiking and biking.

Plaintiffs' Memorandum in Support of Partial Summary Judgment contained a detailed analysis concerning the scope of the original easement to the railroad.[20]  That analysis will not be repeated now.  Defendant's attempted use of *McKinley* for that purpose, besides being wrong, ignores other significant authority from Iowa like *Rockafellow* and *McGrane*, and is disingenuous at best.[21]

---

[20]  *See* Section VII of Plaintiffs' Memorandum in Support of Motion for Partial Summary Judgment on Liability, D.E. 59, pages 22-39.

[21]  The argument advanced by the government here is so attenuated and specious and more importantly so vastly contrary to the unmistakable messages from the Federal Circuit and the Supreme Court of Iowa in these rails-to-

### 2. Trail use/railbanking exceed the scope of the railroad purposes easements under any state law, including Iowa

Defendant's purported argument that "trail use falls within the scope of the Des Moines Valley right-of-way deeds" is nothing more than a different verse of the same song called "railbanking." Def. Br. at 20. That argument has already been rejected under Iowa law by the Iowa Supreme Court in *McKinley*. Further, Defendant does not even attempt to controvert the fact that no Federal Circuit or Court of Federal Claim decision has ever accepted the government's argument that public recreational use of land by a non-railroad is within an easement for railroad purposes. Instead, Defendant now attempts to argue that twenty years of Federal Circuit jurisprudence on this exact subject is irrelevant because the easements in question here are not easements for railroad purposes. It has clearly and specifically been held by the Federal Circuit on numerous occasions that "railbanking" under the Trails Act **IS NOT** a railroad purpose and exceeds the scope of an easement granted for railroad purposes. In fact, your Honor specifically rejected the government's tired refrain related to railbanking and held that binding precedent dictates that railbanking is "irrelevant to the question of whether a taking has occurred: the fact that restoration of [a] portion of the line would be technically feasible tells us little. The question is not what is technically possible to do in the future, but what was done in the past."[22]

To be clear on this subject, just as this Court has confirmed that trail use exceeds a railroad purposes easement TWO times just this year, other judges in this Court have agreed SIX additional times for a total of EIGHT rulings on this issue (under Indiana, Kansas, Massachusetts, Colorado and South Carolina law). *See Macy Elevator* and *Biery* decided by

---

trails cases, that a reasonable party would justifiably fear asserting such a clear misreading of authority for fear of having sanctions entered against it by the trial court.

[22] *Macy Elevator* opinion by Judge Firestone, April 7, 2011, footnote 13 (citing *Preseault II* at 1547).

Judge Firestone, *Capreal* and *Anna Nordhaus Family Trust* decided by Judge Wheeler, *Ybanez* decided by Judge Hodges, *Ellamae Phillips* decided by Judge Baskir, *Farmers Cooperative* decided by Judge Damich, and *Raulerson* decided by Judge Margolis.[23]  It is a fact that no Federal Circuit case or Court of Federal Claims case has ever accepted the government's tired argument that public recreational use of land by a non-railroad is within an easement for railroad purposes.[24]  Said another way, a public recreational trail is always outside the scope of the easement when the original deed to the railroad grants an easement limited to railroad purposes. No state court has ever accepted the government's argument either when dealing with a deed for railroad purposes.  The law of Iowa is absolutely consistent with all of the law addressing the scope of the easement issue.  Regardless of how many times this argument has been rejected by the Federal Circuit and Court of Claims, not to mention the ultimate rejection by the United States Supreme Court, Defendant continues to boldly assert such a losing argument.

Defendant then cites *Toews* as contrary authority from the Federal Circuit after citing *Chevy Chase* and *Moody*.  The Federal Circuit in *Toews*, applying California law, specifically

---

[23] In addition to numerous cases holding Trails Act takings, this Court very recently affirmed Trails Act takings in numerous cases including *Biery v. United States,* 07-693L and 07-675L, Opinion and Order by Judge Firestone, D.E. 104, dated June 9, 2011; *Macy Elevator v. United States,* 09-515L, Opinion and Order by Judge Firestone, D.E. 49, dated April 7, 2011; *Capreal Inc. v. United States,* 09-186L, Opinion and Order by Judge Wheeler, D.E. 69, dated May 6, 2011; *Anna Nordhus Family Trust, et al., v. United States,* 09-042L, Opinion and Order by Judge Wheeler, D.E. 45, dated April 12, 2011; *Ybanez v. United States,* No. 09-172, Opinion and Order by Judge Hodges. D.E. 39, dated May 20, 2011; *Ellamae Phillips Co., v. United States*, No. 04-1544L, Opinion and Order by Judge Baskir, D.E. 151, dated June 21, 2011; *Farmers Cooperative Company v. United States,* No. 09-741H, Opinion and Order by Judge Damich, D.E. 43, dated June 24, 2011 and *Raulerson v. United States*, No. 10-193C, Opinion and Order by Judge Margolis, D.E. 45, July 7, 2011, attached hereto as Exhibit C, footnote 6 herein.  Defendant says "Plaintiffs' discussion of takings analysis under the other states' laws is inapposite given Iowa's unique statutory handling of the divestiture of railroad easements."  Def.'s Br. at 9, note 3.  Surely, Defendant does not believe these 8 cases are inapposite on the non-state law issues, like the prerequisites for a taking, what was taken, the irrelevance of railbanking, and the totally empty abandonment argument that the government persistently makes and, more importantly, Iowa's "unique statutory handling of the divestiture of railroad easements" has absolutely nothing to do with the issues now before the Court.

[24] Defendant also states that "Plaintiffs also incorrectly assert that no judge on the Court of Federal Claims and no Federal Circuit decision has held that trail use falls within the scope of a railroad easement" and cites to an opinion by Judge Merow in *Chevy Chase*.  Def.'s Br. at 9, note 3.  It is unclear whether Defendant is playing word games or simply doesn't understand the difference between a general easement and a railroad purposes easement but the easement in *Chevy Chase* was a general purposes easement and not an easement for railroad purposes under Maryland law.

held that "it appears beyond cavil that use of these easements for a recreational trail – for walking, hiking, biking, picnicking, Frisbee playing, with newly added tarmac pavement, park benches, occasional billboards, and fences to enclose the trailway – is not the same use made by a railroad, involving tracks, depots, and the running of trains."  376 F.3d at 1376.  Amazingly, the Defendant did not even bother to discuss *McKinley*, *Rockafellow*, *Hawk*, or *McGrane v Maloney*, 770 N.W.2d 851 (Iowa App. 2009) in the context of recreational trail use being beyond the scope of a railroad purposes easement under Iowa law but instead merely attempted to point out that the deeds at issue in those cases did not say "for railroad purposes only."[25]

## IV.   THE DEFENDANT'S MOSTLY NEW OBJECTIONS BASED ON OWNERSHIP, ADJACENCY, OR THAT THE RAILROAD OWNED THE UNDERLYING FEE ARE UNTIMELY, WAIVED OR OTHERWISE WITHOUT MERIT

As previously noted, the rule in Iowa is that a landowner owning a lot adjacent to a railroad corridor owns to the centerline if the railroad only held an easement.  Once it is established that the railroad holds an easement, if there are fee landowners, including owners of lots, on both sides of the right-of-way, each owns to the centerline of the railroad right-of-way under Iowa law.  *Chadek v. Alberhasky*, 111 N.W.2d 297 (Iowa 1961).  Thus, the Defendant's objections based on adjacency for lot owners is without merit.

Specifically, Defendant claims that under Iowa law, landowners of subdivided lots own title to their lots only—citing *Milburn v. City of Cedar Rapids*, 1861 WL 248 at *4, Def. Br. at 11.  *Milburn* simply stands for the holding that under Iowa law, prior to 1873, railroads had the right to construct their railroad along a public street where the <u>city</u> or <u>town</u> <u>owned</u> the <u>street</u> in

---

[25]   The deeds at issue in *Hawk* and *Rockafellow*, as well as the deeds at issue in *Macerich*, were specifically "for railroad purposes" contrary to Defendant's argument.  *See* Plaintiffs' Memorandum in Support of Motion for Summary Judgment, Section IV.B. (D.E. 59).

fee.  *See Rinard v. Burlington & W. Rwy. Co.*, 23 N.W. 914 (Iowa 1885).  A landowner owning a lot adjoining a street that a city owned in fee obviously doesn't own any fee interest in the street!

Further, the Defendant's gross misstatement citing *Rinard* is wrong and, in fact, that case nowhere near stands for the proposition that lot owners cannot own the fee in an underlying railroad easement.  *Rinard*, 23 N.W. 914, 915.  Def. Br. at 11.  *Rinard* does not hold, or even mention, that "title doesn't extend to other lands beyond the lots identified in their subdivision maps," but rather, held that if the city owns a street in fee instead of an easement, the landowner (this landowner owned a lot) has no interest in the street.

Moreover, Defendant also misstates the holding in *Stecklein v. City of Cascade*, 693 N.W.2d 335 (Iowa 2005).  Defendant states in essence that cities and towns own the fee in incorporated platted streets, roads and alleys, even if the street, road or alley is "never opened." Def. Br. at 11.  No, that is not what the case holds.  What the case actually holds is that if the city takes actions consistent with the claim of ownership (such as grading the street, or maintaining a gravel road) and does not abandon the street, THEN the city owns the fee.  If the city abandons the street or alley, a landowner can adversely possess the land—as noted by the Iowa Supreme Court—despite Defendant's gross misstatement and miscitings of case holdings.  *See Chadek*, 111 N.W.2d at 299.

Regarding the discovery process in this case (the agreed upon Claims Book process), it should be noted that the Claims Book was served with all necessary documentation evidencing Plaintiffs' claims on June 25, 2010!!! (D.E. 33).  These documents included color parcel maps of the former railroad line with each property owner and parcel marked with the Claim Number. *See* parcel maps, attached as Exhibit J.  Plaintiffs filed a motion for sanctions, later withdrawn, detailing the Defendant's lack of any meaningful participation in the discovery process.  In fact,

it is Plaintiffs' position that Defendant has waived ANY objections to any claim subject to this motion.

Plaintiffs served their Claims Book over one year ago.  Pursuant to this Court's Order, Defendant's deadline was October 15, 2010 to submit its objections to the Class Index and Claims Book and any requests for additional discovery.  *See* Order dated 7-19-10 (D.E. 35). Defendant provided objections to some of Plaintiffs' documentation of their claims on October 15, 2010.  On November 11, 2010, the parties entered into settlement negotiations. *See* D.E. 36. Plaintiffs promptly responded to Defendant's October 15 objections on November 9, 2010, providing additional documentation where necessary.

On January 5, 2011, Defendant responded to Plaintiffs' November 9, 2010 letter that provided supplemental documents attempting to resolve any remaining objections and stated that certain objections had been resolved but also maintained certain objections, such as objections that certain Plaintiffs had not established that their parcel of land was adjacent to the railroad corridor, even though Plaintiffs had provided subdivision maps obtained by the county assessor's office showing the location of the parcel adjacent to the railroad corridor.

In an effort to move this case forward, Plaintiffs once again attempted to resolve the Defendant's baseless objections and, on February 21, 2011, Plaintiffs provided further detailed responses and documentation, including providing the subdivision maps again and <u>highlighted</u> the specific parcels.  Plaintiffs continually requested a response to or an agreement with Plaintiffs' letter of February 21, 2011, but no response was provided.  In fact, Plaintiffs' counsel requested a status report or a response, in writing, on at least 6 occasions after February 21 and before the government withdrew from settlement negotiations and the government never responded.

Defendant withdrew from settlement negotiations formally on June 20, 2011 although the decision was made several days before.  Defendant then finally responded to Plaintiffs' February 21, 2011 letter on June 20, 2011, after Plaintiffs' counsel mentioned potential "discovery motions."  The Defendant's June 20th letter is non-responsive and is totally evasive, incomplete and lacks good faith (attached hereto as Exhibit K).  In fact, besides the incomplete and evasive responses pertaining to alleged adjacency issues, Defendant makes 37 references to the "Public Land Survey."  Instead of responding to Plaintiffs' request asking Defendant to explain what the Defendant meant by "Public Land Survey," Defendant incredibly directs Plaintiffs to Exhibit A in a closed case, which provides no guidance at all.[26]

Defendant now, after sitting silent during the discovery process for over a year, attempts to raise some new objection regarding 26 parcels of land (as set forth in Exhibit A.2).  Defendant is too late and any objection to those parcels have been clearly waived.  Further, Defendant raises baseless objections that have long since been resolved to an additional 28 parcels of land based on ownership, adjacency or some new claim that the railroad owns the fee because the grounds are depot grounds.   For the Court's convenience, Exhibit A.2 a color-coded chart showing the Defendant's "new" objections.  If this Court does not strike Defendant's objections or deem them waived, the Plaintiffs request that the issues raised for the parcels below be deferred until after a liability ruling, or at a minimum, be included in the parties' JSR, which is  due on September 19, 2011.

---

[26] Attached as Exhibit L to this motion is Defendant's "Exhibit A" from *Wadsworth v. United States*—Defendant's so-called guidance as to a "Public Land Survey."  It makes no sense and is nevertheless irrelevant.  Plaintiffs have established their burden of proof regarding adjacency of parcels with documents from Dallas County.

A. **Defendant's Objections, That Were Made for the First Time in its Cross-Motion, Violate the Discovery Process, are Without Merit, and are Otherwise Untimely, and Should Therefore be Waived**

Defendant, for the first time, raises completely new objections in its Cross-Motion for Summary Judgment.  Seriously, such objections are clearly untimely and waived.  Further, the Defendant does not even give any specific reason for the objections (thus, how is Plaintiff even to know why the Defendant thinks the parcel is not adjacent to the railroad corridor).  Defendant's 26 new objections are as follows:

(1) Objections to **ownership** on the date of the NITU:  Claim No. 41.D; Claim No. 43; Claim No. 67; Claim No. 68.A; Claim No. 71; Claim No. 80;

(2) Objections to **adjacency**:  Claim No. 10.B; Claim No. 17; Claim No. 42; Claim No. 59.J; Claim No. 59.K; Claim No. 69.A; Claim No. 74.B; Claim No. 75;  Claim No. 105; Claim No. 106, and;

(3) Objections stating that the **railroad held the fee** in the railroad corridor:  Claim No. 15.D; Claim No. 27; Claim No. 28; Claim No. 29; Claim No. 30; Claim No. 58; Claim No. 59.J; Claim No. 60; Claim No. 105; Claim No. 106.

B. **Defendant's Objections to Certain Parcels That Were Actually Made During the Discovery Process Were Resolved by Documentation Provided by Plaintiffs and are Otherwise Baseless**

Defendant attempts to offer 28 additional objections that are baseless.  For instance, the Defendant states that a parcel is not adjacent to the railroad corridor even though the Plaintiffs have sent the plat maps, parcel maps, assessor maps time and time again, and even highlighted the specific parcel!  Plaintiffs provided all the documentation necessary to sustain their burden of proof, but out of a desire to resolve the Defendant's baseless objections without court intervention, sent additional documentation in attempts to satisfy the Defendant.

These 28 baseless objections that Plaintiffs believe have been resolved long ago are as follows:

(1) Objections to **ownership** on the date of the NITU:  Claim No. 26.A; Claim No. 26.B; Claim No. 26.C, and;

(2) Objections to **adjacency**:  Claim No. 15.B; Claim No. 22; Claim No. 23; Claim No. 24; Claim No. 25; Claim No. 26.A; Claim No. 26.B; Claim No. 26.C; Claim No. 28; Claim No. 30; Claim No. 32; Claim No. 33; Claim No. 35; Claim No. 39; Claim No. 41.D; Claim No. 59; Claim No. 60; Claim No. 63; Claim No. 64; Claim No. 65; Claim No. 66; Claim No. 67; Claim No. 108; Claim No. 109; Claim No. 110.

Thus, Plaintiffs are entitled to summary judgment for easements obtained through condemnation and for easements obtained through right-of-way deeds granting easements limited to railroad purposes.  Defendant's objections to the claims above are baseless, without merit and should be rejected.  Even if this Court were to accept the Defendant's position that the Plaintiffs have not met their burden of proof as to ownership, adjacency, or underlying fee, such issues are factual disputes related to title issues and can be resolved after the legal issue of the Defendant's liability for a taking has been resolved, or in the alternative, in the JSR due September 19, 2011.

**V.      EVEN IF THE SCOPE OF THE ORIGINAL EASEMENT WERE DEEMED TO INCLUDE USE AS A PUBLIC RECREATIONAL TRAIL, THE RAILROAD ABANDONED THE EASEMENT UNDER IOWA LAW PRIOR TO THE NITU AND, BY OPERATION OF THE TRAILS ACT, A NEW EASEMENT HAS NOW BEEN CREATED AND A TAKINGS HAS OCCURRED**

The Defendant did not even respond to Plaintiffs' alternative argument regarding the second type of taking under the Trails Act—where the railroad abandoned the easement prior to the NITU.  *See* Pls.' Memorandum in Support of Motion for Summary Judgment, Section VIII. Although Plaintiffs have already shown that a taking occurred because, but for operation of the Trails Act, the land at issue would have reverted to them once the use of the easement went beyond the scope of the easements, a taking occurred by the second method of a taking under

*Preseault II* prongs 1 and 3 (the railroad held an easement and the easement was abandoned prior to the NITU).  *See* Plaintiffs' Motion for Partial Summary Judgment, D.E. 44, Section VIII.

## VI.    CONCLUSION

Plaintiffs have established that a taking of Plaintiffs' property occurred by showing indisputably that: (1) Plaintiffs owned the property involved, specifically the Railroad acquired only easements in the relevant property; (2) the terms of the railroad's easements were limited to use for railroad purposes, *i.e.*, recreational use went beyond the scope of the easement; and (3) even if the grants of the railroad's easements were broad enough to encompass recreational trails, these easements terminated prior to the taking so that the Plaintiffs held fee simples unencumbered by the easements, *i.e.*, the railroad abandoned the Railroad Line.  *See Preseault II*, 100 F.3d at 1533.

Accordingly, Plaintiffs request that the Court issue an Order declaring there was a compensable taking of Plaintiffs' property in the Railroad Line.

Respectfully submitted by:

BAKER STERCHI COWDEN & RICE, L.L.C.

By  Thomas S. Stewart
Thomas S. Stewart
Elizabeth McCulley
2400 Pershing Road, Suite 500
Kansas City, MO 64108
(816) 471-2121
(816) 472-0288 (facsimile)
stewart@bscr-law.com
mcculley@bscr-law.com

-and-

Brent W. Baldwin
Steven M. Wald
J. Robert Sears
1010 Market Street, Suite 950
St. Louis, MO 63102-1708
(314) 231-2925
(314) 231-4857 (facsimile)
baldwin@bscr-law.com
wald@bscr-law.com
sears@bscr-law.com
ATTORNEYS FOR PLAINTIFFS


## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing was filed with the Clerk of the Court via ECF on this 29th day of August, 2011 with a copy of the same being served via electronic mail (ECF) by the Clerk of the Court on this 29th day of August, 2011, to:

Frank James Singer
U.S. Department of Justice
P.O. Box 663
Washington, D.C.  20044-0663
(202) 616-9409
(202) 305-0506 facsimile
Frank.singer@usdoj.gov
**ATTORNEY FOR DEFENDANT**

_____/s/ Thomas S. Stewart_____
ATTORNEYS FOR PLAINTIFFS