IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| STEVE JENKINS, *et al.*, | ) | Case No. 09-241L |
| for themselves and as representatives of a | ) | |
| class of similarly situated persons, | ) | Judge Nancy B. Firestone |
| | ) | |
| Plaintiffs, | ) | *Electronically filed on September 15, 2011* |
| | ) | |
| v. | ) | |
| | ) | |
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

UNITED STATES' REPLY BRIEF
SUPPORTING CROSS-MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ...................................................................................... 1

II. ARGUMENT .................................................................................................................. 2

    A.     Plaintiffs misapprehend the United States' argument regarding the "before" condition of the taking related to easements Union Pacific acquired by condemnation. ...................................................................................................... 2

    B.     The Trails Act and the Notice of Interim Trail Use preserve the rail corridor for railroad purposes—they do not impose an easement for trail use.................... 5

    C.     The Des Moines Valley right-of-way deeds do not expressly limit the permissible use of the rail corridor to active rail service. ...................................... 9

    D.     Plaintiffs' title arguments with respect to subdivided lots are erroneous. ............ 15

    E.     The United States is not estopped from challenging Plaintiffs' proposed findings of fact. ..................................................................................................... 17

    F.     This Court should not defer ruling on the United States' cross-motion as to title issues that are adverse to Plaintiffs. ............................................................... 19

    G.     The United States responded to Plaintiffs' alternative argument that the rail corridor was abandoned before the Surface Transportation Board issued its Notice of Interim Trail Use.................................................................................... 20

III. CONCLUSION............................................................................................................... 20

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Adickes v. S.H. Kress & Co.*,
    398 U.S. 144 (1969)........................................................................................ 17

*Barclay v. United States*,
    443 F.3d 1368 (Fed. Cir. 2006)....................................................................... 4

*Broomall Indus., Inc. v. Data Design Logic*,
    786 F.2d 401 (Fed. Cir. 1986)......................................................................... 17

*Caldwell v. United States*,
    391 F.3d 1206 (Fed. Cir. 2004)....................................................................... 4

*Hendler v. United States*,
    952 F.2d 1364 (Fed. Cir. 1991)....................................................................... 9

*Illig v. United States*,
    58 Fed. Cl. 619 (2003) ................................................................................. 4, 6

*Jones v. United States*,
    49 Fed. Cl. 516 (2001) ................................................................................... 19

*Ladd v. United States*,
    630 F.3d 1015 (Fed. Cir. 2010)....................................................................... 4

*Loesch v. United States*,
    227 Ct. Cl. 34, 645 F.2d 905 (Fed. Cir. 1981) ............................................... 17

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)........................................................................................ 19

*Nat'l Wildlife Fed'n v. Interstate Commerce Comm'n*,
    850 F.2d 694 (D.C. Cir. 1988) ........................................................................ 6

*Preseault v. Interstate Commerce Comm'n*,
    494 U.S. 1 (1990)........................................................................................ 5, 6

*Preseault v. United States*,
    100 F.3d 1525 (Fed. Cir. 1996) (en banc)........................................................ 9

*Raulerson v. United States*,
    99 Fed. Cl. 9 (2011) ................................................................................. 5, 7, 8

*Scogin v. United States*,
    33 Fed. Cl. 568 (1995) ................................................................ 19

*Toews v. United States*,
    376 F.3d 1371 (Fed. Cir. 2004).................................................... 9

*Troha v. United States*,
    692 F. Supp. 2d 550 (W.D. Pa. 2010)........................................... 4

*United States v. Bd. of Educ. of Chicago*,
    799 F.2d 281 (7th Cir. 1986) ....................................................... 8

*VNA Plus, Inc. v. Apria Healthcare Grp., Inc.*,
    No. 98-2138, 1999 WL 386949 (D. Kan. Jun. 8, 1999) ................. 18

*Zenith Elec. Corp. v. PDI Commc'n Sys., Inc.*,
    522 F.3d 1348 (Fed. Cir. 2008).................................................... 18

## <u>STATE CASES</u>

*Atkin v. Westfall*,
    69 N.W.2d 523 (Iowa 1955) ........................................................ 11

*Chevy Chase Land Co. v. United States*,
    733 A.2d 1055 (Md. 1999) .......................................................... 12

*Chicago, Newton & Sw. R.R. Co. v. Town of Newton*,
    36 Iowa 299, 1873 WL 219 (Iowa 1873)....................................... 13

*Estate of Rockafellow v. Lihs*,
    494 N.W.2d 734 (Iowa Ct. App. 1992).......................................... 13

*Haack v. Burlington N., Inc.*,
    309 N.W.2d 147 (Iowa Ct. App. 1981)........................................... 11

*Harrington v. Kessler*,
    77 N.W.2d 633 (Iowa 1956) ........................................................ 15

*Hawk v. Rice*,
    325 N.W.2d 97 (Iowa 1982) ........................................................ 12

*Holbert v. St. Louis, Kansas City, & N. R. Co.*,
    45 Iowa 23, 1876 WL 833 (Iowa 1876)......................................... 13

*Levine v. Chinitz*,
    8 N.W.2d 735 (Iowa 1943) .......................................................... 15

*Lowers v. United States*,
  663 N.W.2d 408 (Iowa 2003) ...................................................................... 11, 14

*Macerich Real Estate Co. v. City of Ames*,
  433 N.W.2d 726 (Iowa 1988) ............................................................................ 13

*Mattice v. Chi. Great W. Ry. Co.*,
  107 N.W. 949 (Iowa 1906) ................................................................................ 14

*McDonnell v. Sheets*,
  15 N.W.2d 252 (Iowa 1944) .............................................................................. 10

*McKinley v. Waterloo R. Co.*,
  368 N.W.2d 131 (Iowa 1985) ......................................................... 6, 12, 13, 14

*Milburn v. City of Cedar Rapids*,
  12 Iowa 246, 1861 WL 248 (Iowa 1861)...................................................... 15, 16

*Moody v. Allegheny Valley Land Trust*,
  976 A.2d 484 (Pa. 2009) ................................................................................... 12

*Rinard v. Burlington & W. Ry. Co.*,
  23 N.W. 914 (Iowa 1885) ............................................................................ 15, 16

*Stecklein v. City of Cascade*,
  693 N.W.2d 335 (Iowa 2005) ....................................................................... 15, 16

*Wash. Wildlife Pres. v. State*,
  329 N.W.2d 543 (Minn. 1983)............................................................................. 11

*Watkins v. Iowa Cent. Ry. Co.*,
  98 N.W. 910 (1904) ........................................................................................... 14

*Wiegmann v. Baier*,
  203 N.W.2d 204 (Iowa 1972) ............................................................................ 10

## FEDERAL STATUTES

16 U.S.C. § 1247.......................................................................................... 4, 6, 7

## STATE STATUES

Iowa Code § 327G.76 ............................................................................... 4, 10, 14

Iowa Code § 327G.77 ................................................................................... 15, 17

## RULES OF COURT

RCFC 56(d)................................................................................................................................... 19

## MISCELLANEOUS AUTHORITIES

H.R. Rep. No. 98-28 (1983)............................................................................................................ 6

S. Rep. No. 98-1 (1983) ................................................................................................................. 6

I.      <u>PRELIMINARY STATEMENT</u>

Plaintiffs' response to the United States' cross-motion for summary judgment offers no competent evidence and, therefore, fails to create a genuine dispute of material fact.  In addition, Plaintiffs' legal arguments either lack authority or contradict controlling authority.  Because neither invective nor emphatic punctuation creates genuine disputes of material fact nor demonstrates an entitlement to judgment as a matter of law, the United States is entitled to summary judgment on the terms set forth in its cross-motion.  In reply to Plaintiffs' response, the United States makes four general points.

First, Plaintiffs misapprehend the United States' argument with respect to the condemned easements in this case and offer no competent authority that the Trails Act, in conjunction with Iowa law, does anything more than preserves the railroad easement for railroad purposes. Plaintiffs misconstrue the United States' argument with respect to the taking that occurred in this case as to condemned easements.  Looking forward to the just compensation phase of this lawsuit, there is no dispute as to whether the appraisers should assume that a railroad easement encumbers the rail corridor in the "before" scenario.  Based on the facts and law application to this case, there is no such encumbrance in the "before" scenario.  Rather, the parties dispute what easement encumbers the property in the "after" scenario.  As the United States explained in its cross-motion, the Trails Act preempts the abandonment of an easement for railroad purposes. The Act does not purport to extract an easement for trail use.  And the Federal Circuit has held that trail use is not an element of a takings claim under the Trails Act.  Plaintiffs' argument that the Trails Act and the Notice of Interim Trail Use ("NITU") authorize trail use is incorrect.

Second, Plaintiffs' argument that the Des Moines Valley right-of-way deeds are limited solely to railroad purposes is contrary to Iowa law governing the construction of deeds.  There is

no express limitation recited in the Des Moines Valley right-of-way deeds that restricts the scope of the easements conveyed to railroad purposes only.

Third, there is no merit to Plaintiffs' miscellaneous responses to the United States' affirmative cross-motion.  Plaintiffs' attempts to distinguish the authorities on which the United States relies in its cross-motion are erroneous.  Plaintiffs' demand that the Court deem waived the title defects in some of the claimants' claims is an invitation for reversible error.  Claimants who do not have a property interest affected by the NITU have no standing to participate in this lawsuit.  Standing cannot be waived.  Moreover, Plaintiffs offer no specific, competent evidence creating disputed issues of material fact with respect to the United States' cross-motion for summary judgment.

Fourth, Plaintiffs are mistaken in arguing that the United States did not address their alternative argument that Union Pacific abandoned the rail corridor before the STB issued its NITU.  The United States explained in its cross-motion that (1) there are some claimants whose properties adjoin segments of the rail corridor Union Pacific owned in fee, which is not susceptible to extinguishment, (2) the segments of the rail corridor operated under easements obtained by deed have not extinguished, and (3), in conjunction with Iowa law, the Trails Act preempted the extinguishment of those segments of the rail corridor Union Pacific operated by condemned easement.

II.    ARGUMENT

   A.    Plaintiffs misapprehend the United States' argument regarding the "before"
         condition of the taking related to easements Union Pacific acquired by
         condemnation.

The United States explained in its cross-motion that under sections 327G.76 and 327G.77 of the Iowa Code, the Trails Act blocked the extinguishment of the condemned railroad

easements at issue in this lawsuit.  U.S. Cross-Mot. (D.E. 58) Part V.F.  Accordingly, the United

States stated that it does not object to the entry of summary judgment against it for the taking of

an easement for railroad purposes as to those segments of the rail corridor that Union Pacific

operated by easements acquired through condemnation.  *Id.*  Plaintiffs construe this argument as

meaning (1) that the property is encumbered with an easement in the "before" condition and (2)

that railbanking is a railroad purpose.  Pls.' Response (D.E. 61) Part II.A.  So construed,

Plaintiffs argue that the United States' position is erroneous because the United States took

Plaintiffs' reversion, not an easement.  *Id.* at 4, 8, 11-12.  Plaintiffs' construction of the United

States' argument is mistaken.  And their argument that the United States took the adjoining

landowners' reversionary rights is wrong.

First, the United States explained in its cross-motion that "the Trails Act preempts

extinguishment of the easements for railroad purposes only that would otherwise occur under

section 327G.76 of the Iowa Code."  U.S. Cross-Mot. (D.E. 58) at 26.  Hence, as the condemned

easements move into the just compensation phase of this lawsuit, the United States recognizes

that the land in the "before" condition will not be encumbered by a railroad easement.  While

there is a dispute as to the "after" condition for purposes of just compensation, *see infra* Part

II.B, there is no dispute between the parties as to the "before" condition of the forthcoming

appraisal with respect to the railroad easement.[1]

Second, Plaintiffs are incorrect in arguing that the United States is engaging in "yet

another attempt to argue that railbanking is a railroad purpose."  Pls.' Response (D.E. 61) at 11;

*see id.* at 4.  Had the United States argued that railbanking was a railroad purpose under Iowa

---

[1]     The United States notes that there will need to be a period of discovery into the
characteristics of each parcel.

law, the United States would have moved for summary judgment in its favor and avoided liability altogether. *See Troha v. United States*, 692 F. Supp. 2d 550, 558-60 (W.D. Pa. 2010). Here, the United States does not argue that—absent the Trails Act—railbanking suspends extinguishment under Iowa Code § 327G.76.[2]  To the contrary, the United States explained in its cross-motion that the Trails Act preempts extinguishment of the condemned easements that would otherwise occur under section 327G.76.  U.S. Cross-Mot. (D.E. 58) at 26.  Where the parties disagree is in determining what was taken:  either (1) an easement for railroad purposes or (2) an easement for interim trail use and railroad purposes.  *See infra* Part II.B.

Third, Plaintiffs insist that "it is the landowners' reversionary interest that is taken."  Pls.' Response (D.E. 61) at 4; *id.* at 11-12.  Not so.  The United States does not possess a reversionary interest in the rail corridor, nor has the Federal Circuit or any other authority held that the Trails Act vests the United States with a reversionary interest in the rail corridor.  Instead, the Trails Act gives rise to a takings claim where property rights to land unencumbered by an easement are "blocked," *Caldwell v. United States*, 391 F.3d 1206, 1226 (Fed. Cir. 2004), "preclude[d]," *Barclay v. United States*, 443 F.3d 1368, 1373 (Fed. Cir. 2006), or "forestalled," *Ladd v. United States*, 630 F.3d 1015, 1020 (Fed. Cir. 2010).  The Trails Act preempts extinguishment of the railroad's easement by dictating that interim use of the rail corridor cannot be deemed "an abandonment of the use of [the railroad] rights-of-way for railroad purposes."  16 U.S.C. § 1247(d).  "What was imposed on plaintiffs' land was a new easement which purported to preserve railroad use."  *Illig v. United States*, 58 Fed. Cl. 619, 631 (2003).  Thus, what is taken is

---

[2]     The United States' position on railbanking here is specific to Iowa law.  The United States believes that railbanking is a railroad purpose under other states' laws.

4

an easement.   This Court must decide whether the Trails Act effects a taking for anything other than an easement for railroad purposes.

      B.    <u>The Trails Act and the Notice of Interim Trail Use preserve the rail corridor for railroad purposes—they do not impose an easement for trail use</u>.

The United States explained in its cross-motion that under the Trails Act and pursuant to the extinguishment of condemned railroad easements under Iowa law, the United States is liable for the taking of an easement for railroad purposes.   U.S. Cross-Mot. (D.E. 58) at Part F.1.   The United States further explained that it is not liable for the taking of an easement for recreational trail use.   *Id.*   at 27-32.   Plaintiffs' response is four-fold.   First, Plaintiffs respond that the Trails Act and the NITU authorize trail use.   Pls.' Response (D.E. 61) at 13.   But neither Congress through the Trails Act nor the STB through its NITU requires servient estate owners to abide interim trail use of the rail corridor.   Second, Plaintiffs argue that the United States' position is contrary to Judge Margolis' recent decision in *Raulerson v. United States*, 99 Fed. Cl. 9 (2011).   Pls.' Response (D.E. 61) at 8-9.   But *Raulerson* focused on abandonment—an issue not contested with respect to the condemned easements.   Third, Plaintiffs attempt to assign significance to a comment this Court made during the July 22, 2011, status conference.   *Id.* at 9-11.   And finally, Plaintiffs misconstrue the United States' distinguishing of the Federal Circuit's decisions in *Preseault* and *Toews,* focusing on some phantom distinction between private trail operators and governmental trail operators.   Pls.' Response (D.E. 61) at 13-16.

First, neither the Trails Act nor the NITU authorizes trail use.   As the Supreme Court explained, the Trails Act was the culmination of Congress' attempts to thwart the shrinking of the nation's rail corridors.   *Preseault v. Interstate Commerce Comm'n*, 494 U.S. 1, 5-9 (1990).   Initially, Congress directed the Interstate Commerce Commission ("ICC") to encourage

5

conversion of abandoned rights-of-way to recreational and conservation uses.  *Id.* at 5-6.  This

effort did not preserve the rail corridors, however, because under some states' laws the easement

underlying the rail corridor extinguished notwithstanding its continued interim use as a trail.  *Id.*

at 6 (citing H.R. Rep. No. 98-28, at 8 (1983)); *see, e.g., McKinley v. Waterloo R. Co.*, 368

N.W.2d 131, 134 (Iowa 1985) (holding that the pre-cursor to the Trails Act did not preempt Iowa

title law).  In response, Congress enacted the Trails Act, which stated that interim trail use of the

rail corridor "shall not be treated, for purposes of any law or rule of law, as abandonment of the

use of such rights-of-way for railroad purposes."  *Preseault*, 494 U.S. at 8 (quoting 16 U.S.C.

§ 1247(d)).  As the Supreme Court noted, Congress could have enacted a statute that

affirmatively condemned the former rail corridors for recreational trail use.  *Id.* at 15-16.  But

Congress did not do so.  Instead, Congress enacted a statute that preempted the extinguishment

of the easement for railroad purposes.  16 U.S.C. § 1247(d).  While Congress and, later, the STB

tethered this preemption to a willingness on the part of the railroad company and a qualified third

party to explore trail use, *see Nat'l Wildlife Fed'n v. Interstate Commerce Comm'n*, 850 F.2d

694, 699-700 (D.C. Cir. 1988), Congress did not require servient estate owners to allow any

interim uses of the rail corridor.  Nor does the STB state in its NITU that servient estate owners

must allow any interim uses of the rail corridor.  To the contrary, Congress requires the interim

user "to assume full responsibility . . . for any legal liability arising out of such transfer or use . . .

."  16 U.S.C. § 1247(d).  In short, Congress did nothing more than preserve the railroad easement

by blocking extinguishment.  *See Preseault*, 494 U.S. at 8-9 (quoting S. Rep. No. 98-1, at 9

(1983)); *Illig*, 58 Fed. Cl. at 631 ("What was imposed on plaintiffs' land was a new easement

which purported to preserve railroad use.").  Plaintiffs offer no contrary authority.

6

Similarly, the NITU did not mandate the execution of an interim trail use agreement; rather, it acknowledged that Union Pacific might either execute an interim trail use agreement or consummate abandonment of the line if it did not reach such an agreement with a potential trail operator.  *See* Pls.' Proposed Findings (D.E. 49) ¶ 152, Ex. E at 5 ¶ 6 ("If an agreement for interim trail use/rail banking is reached by the 180th day after service of this decision and notice, interim trail use may be implemented.  If no agreement is reached by that time, UP may fully abandon the line . . .").  The NITU merely imposed conditions upon any interim trail use agreement that Union Pacific might enter, including (1) that the trail user "assume, for the term of the agreement, full responsibility for the management of, any legal liability arising out of the transfer or use of . . . , and for the payment of any and all taxes that may be levied or assessed against the right-of-way;" (2) that "interim trail use/rail banking is subject to the future restoration of rail service;" and (3) that any trail user wishing to terminate trail use notify the STB and request that the NITU be vacated on a specified date.  *Id.* at 5.  In other words, the United States did not mandate the creation of a recreational trail, accept legal liability in connection with any recreational trail that might be created, or agree to manage any recreational trail that might be created.  Instead, those responsibilities fell to the entity that successfully negotiated an interim trail use agreement with Union Pacific.  *Id.* at 5 ¶ 3; 16 U.S.C. § 1247(d).

Second, *Raulerson* focused on the issue of whether the railroad's easement was abandoned/extinguished.  99 Fed. Cl. at 12.  *Raulerson*, applying South Carolina law, held that the railroad easement had been abandoned and, therefore, the railroad corridor was not encumbered by a railroad easement in the "before" condition for purposes of appraising just compensation.  *Id.  Raulerson*'s statement that the appraisals' "after" condition would be measured by "the value of plaintiffs' land encumbered by a perpetual trail use easement subject

7

to possible reactivation as a railroad," *id.*, is dictum. *Raulerson* offers no analysis of the "after" condition. And the parties did not ask the Court to determine what the "after" condition should be; they contested what the "before" condition should be. *Id.* at 10-11 (summarizing the parties' respective positions). Here, the parties do not contest that the "before" condition for appraisal purposes will be the land unencumbered by a railroad easement. *Supra* Part II.A. Consequently, *Raulerson* is inapposite.

Third, Plaintiffs overstate the significance of this Court's statement that the United States' position on the nature of the taking under the Trails Act initially struck it as "double speaky." Pls. Response (D.E. 61) at 9-11. The transcript speaks for itself and the Court is obviously in the best position to assign significance, if any, to the statement. But the United States notes that the statement was an initial response to the United States' oral summary of an argument that had not yet been presented to this Court—the United States was summarizing the position it made to Judge Allegra in *Burgess v. United States*, Case No. 09-242 (Fed. Cl.). Once the United States further explained its position during the status conference, the Court indicated that it understood the United States' position. *See* July 22, 2011 Hr'g Tr. (Pls.' Response (D.E. 61-2) Ex. B) at 9-11, 14-17. The United States submits that Plaintiffs attach excessive significance to a preliminary statement made during a status conference regarding an argument that had not even been presented to the Court. *See United States v. Bd. of Educ. of Chi.*, 799 F.2d 281, 284 n.3 (7th Cir. 1986) ("[S]tatements made at oral argument do not determine the scope of an opinion unless explicitly incorporated into the opinion").

Fourth, Plaintiffs misunderstand the United States' discussion of the Federal Circuit's decisions in *Preseault* and *Toews*. Pls.' Response (D.E. 61) at 12-16. The United States is not, as Plaintiffs contend, distinguishing between "the trail user being a state or local governmental

entity or a third-party private group." *Id.* at 14.  Instead, the United States is distinguishing

between a situation in which the STB or another federal governmental agency is "fully invested"

in the creation of a recreational trail, *see Preseault v. United States*, 100 F.3d 1525, 1551 (Fed.

Cir. 1996) (en banc), and the situation here, where the federal government was not fully invested

in the creation of the trail.  In *Preseault*, the ICC authorized the railroad "*ex post facto* to

discontinue service" more than a decade after the corridor had been abandoned.  *Id.* at 1550.  The

ICC also "approved the agreement between the State and the City of Burlington for trail use of

the former right-of-way."  *Id.*  Plaintiffs offer no evidence of such coordinated effort with respect

to the rail corridor at issue here.  The STB did not approve the interim trail use agreement

between Union Pacific and the Iowa Natural Heritage Foundation.  *See* Pls.' Proposed Findings

(D.E. 49) ¶ 152, Ex. E at 4 ("[Union Pacific] is not required to deal exclusively with [the Iowa

Natural Heritage Foundation], but may engage in negotiations with other interested persons").

The STB has not told adjoining landowners that they must allow any specific interim use of the

rail corridor.  *Cf. Hendler v. United States*, 952 F.2d 1364 (Fed. Cir. 1991), *cited in Preseault*,

100 F.3d at 1551, *and Toews v. United States*, 376 F.3d 1371, 1381-82 (Fed. Cir. 2004).  And the

STB did not resurrect an easement that had been abandoned years earlier so that it could approve

an agreement for recreational trail use across a property no longer burdened by the railroad

easement.  *See Preseault*, 100 F.3d at 1550 (finding that the rail corridor had been abandoned

more than ten years prior to the ICC's order).

   C.   The Des Moines Valley right-of-way deeds do not expressly limit the permissible
        use of the rail corridor to active rail service.

   Plaintiffs argue that the Des Moines Valley right-of-way deeds are expressly limited to

railroad purposes only (1) because the deeds reference the use of the right-of-way for railroad

purposes, (2) because the contracting parties anticipated rail use of the corridor when they executed the right-of-way deeds, (3) because the Des Moines Valley right-of-way deeds are the same as the deeds at issue in the cases Plaintiffs cited in their original motion, and (4) because an 1853 Iowa statute applicable to railroad charters somehow limited Des Moines Valley to the acquisition of easements limited to railroad purposes only.  Pls.' Response (D.E. 61) at Part III. Each of these arguments is erroneous.  Having misconstrued the Des Moines Valley right-of-way deeds as limited to railroad purposes only, Plaintiffs then argue that trail use falls beyond the scope of the easements.  *Id.*  Plaintiffs' argument is flawed because it ignores the legal consequence of the easements not being limited to railroad purposes (i.e., that Iowa Code § 327G.76 does not apply to the Des Moines Valley right-of-way deeds).

Plaintiffs' reliance on the reference to the use of the rail corridor in the granting clause of the Des Moines Valley right-of-way deeds overreaches.  "[I]t is the general rule that where a right-of-way is granted it may be used for *any purpose* to which the land accommodated thereby may be reasonably be devoted, unless the grant contains *specific limitations . . .*"  *McDonnell v. Sheets*, 15 N.W.2d 252, 255 (Iowa 1944) (emphasis added).  The granting clause of the Des Moines Valley right-of-way deeds does not limit the scope of the easement to railroad purposes only.  *See, e.g.,* Pls.' Proposed Findings (D.E. 45) ¶ 147.a, Ex. II.1 (conveying "the right of way for said railroad as the same is located said right of way to be one hundred feet in width to be used for a single or double track for said railroad and for any other Rail Road purposes").  The reference in the granting clause that the easement is conveyed for Des Moines Valley's railroad constitutes, in Iowa jurisprudential parlance, "words of description and not of limitation." *Wiegmann v. Baier*, 203 N.W.2d 204, 208-09 (Iowa 1972).  The original grantors of the Des Moines Valley right-of-way deeds could have inserted language in their deeds that would have

expressly limited the easements conveyed to railroad purposes only.  *See, e.g., Haack v. Burlington N., Inc.*, 309 N.W.2d 147, 150 (Iowa Ct. App. 1981) (quoting right-of-way deed at issue as reciting "that the conveyance was 'for said railroad *and for railroad purposes only*'") (emphasis added), *cited in* Pls' Response (D.E. 61) at 21 n.16.  *See also* Exhibit 1 (right-of-way deed relevant to *Rasmuson v. United States*, Case No. 09-158 (Fed. Cl.), stating that the conveyance is "to have the same interest and effect as if said right of way had been obtained by condemnation of the same as provided by law").  The grantors in the Des Moines Valley deeds did not include such limitations in their conveyances to the railroad.  The deeds cannot be reformed *post hoc* so as to be limited to railroad purposes only.

The Iowa Supreme Court invalidated Plaintiffs' second argument in *Lowers v. United States*, 663 N.W.2d 408, 410-11 (Iowa 2003).  The *Lowers* plaintiffs argued, similar to Plaintiffs here, that the anticipated use of the rail corridor informs the nature of the interest conveyed.  *Id.* at 410.  *Lowers* rejected this argument, holding that "[d]etermining the nature of the interest conveyed by reference to the intended use by the grantee seems frivolous in matters involving narrow tracts of land acquired by railroad companies."  *Id.* (abrogating, *inter alia*, *Atkin v. Westfall*, 69 N.W.2d 523, 525 (Iowa 1955)); *see also Wash. Wildlife Pres. v. State*, 329 N.W.2d 543, 546 (Minn. 1983) ("While the grantors were undoubtedly aware that a railroad would be constructed on the land, none of the deeds limit[s] the use to railroad purposes.").  *Lowers* analyzed the language recited in the deed independent of the peripheral anticipated use of the land conveyed and held that the deed granted land "without limitation or qualification." 663 N.W.2d at 411.  *Lowers* so construed the deed before it notwithstanding the deed's recital that the land conveyed was described "as located by the engineer of said Railroad Company *for the construction of said Railroad*."  *Id.* (emphasis added).

*Lowers*' refusal to allow the anticipated use of the corridor to influence the construction of the recitals in the deed and *Lowers'* focus on the terms of the deed at issue comports with the Maryland Court of Appeals' decision in *Chevy Chase Land Co. v. United States*, 733 A.2d 1055 (Md. 1999), and the Pennsylvania Supreme Court's decision in *Moody v. Allegheny Valley Land Trust*, 976 A.2d 484 (Pa. 2009).  *Chevy Chase* refused to construe the right-of-way deed at issue as limited to railroad purposes only even though the right-of-way deed replaced a prior deed that was conveyed "for the purposes of a passenger and freight depot" and even though the railroad had constructed the rail line and had run trains over the corridor for nearly twenty years before the replacement right-of-way deed was executed.  733 A.2d at 1060, 1068-69, 1073.  Similarly, *Moody* involved a "railroad right-of-way" that conveyed an easement "so long as the same shall be required for the use and purposes of said Road, in as full, perfect and ample a manner as may be necessarily required for the purposes hereby intended."  976 A.2d at 490-91.  Nonetheless, *Moody* held that the easement was not limited to railroad purposes only.  *Id.* at 492.  Like *Moody*, the Des Moines Valley right-of-way deeds "contain[] no language specifying that the easement terminates upon cessation of rail service."  *Id.* at 491; *see also Wash. Wildlife*, 329 N.W.2d at 546.  In short, the surrounding circumstances in *Chevy Chase* and the language recited in the deed at issue in *Moody* more closely tether those easements to railroad purposes than the Des Moines Valley right-of-way deeds, yet neither *Chevy Chase* nor *Moody* held that the easements they analyzed were limited to railroad purposes only.

As explained in the United States' cross-motion, Plaintiffs' third argument fails because the Iowa cases Plaintiffs cite construe deeds that recite language not found in the Des Moines Valley right-of-way deeds.  U.S. Cross-Mot. (D.E. 64) Part E.2 (distinguishing *McKinley*, 368 N.W.2d 131; *Hawk v. Rice*, 325 N.W.2d 97 (Iowa 1982); *Estate of Rockafellow v. Lihs*, 494

N.W.2d 734 (Iowa Ct. App. 1992); and *McGrane v. Maloney*, 770 N.W.2d 851, No. 08-1502, 2009 WL 929048 (Iowa Ct. app. Apr. 9, 2009)).  *See also id.* at 18-19, 23 (distinguishing *Macerich Real Estate Co. v. City of Ames*, 433 N.W.2d 726 (Iowa 1988)).  Plaintiffs also cite a string of CFC decisions involving scope of easement determinations under the laws of states other than Iowa.  Pls.' Response (D.E. 61) at 33 n.23.  Because liability in this case must be analyzed under Iowa law, Plaintiffs' reliance on determinations based on other states' laws is unavailing.  *See* U.S. Cross-Mot. (D.E. 58) Part V.A.  Moreover, these cases generally start from the premise that the relevant easements were limited to railroad purposes only—a premise that is contested in this case.

Plaintiffs' fourth argument—that Chapter 31 of the laws of 1853 limits the Des Moines Valley right-of-way deeds to railroad purposes only—has no merit.  Chapter 31 "confers the power to take property for right of way, upon any railroad corporation organized in [Iowa]." *Chi., Newton & Sw. R.R. Co. v. Town of Newton*, 36 Iowa 299, 1873 WL 219, at *4 (Iowa 1873) (emphasis removed); *Holbert v. St. Louis, Kansas City, & N. R. Co.*, 45 Iowa 23, 1876 WL 833, at *2 (Iowa 1876) ("The authority to take land for the right of way for railroads is conferred by express provision of statute, and must be exercised in the manner prescribed.").  Iowa courts differentiate railroad rights-of-way obtained through condemnation from railroad rights-of-way obtained through negotiated transactions.  *See McKinley*, 368 N.W.2d at 135 (distinguishing *Washington Wildlife* on the basis that it involved deeded railroad easements and not condemned railroad easements); *id.* (holding that a right-of-way deed, unlike a condemnation, "is in essence a contract").  No case has held that Chapter 31 relegates the property rights railroad companies acquire through voluntary negotiation to the rights the railroad could have obtained through condemnation.  To the contrary, the Iowa Supreme Court rejected the argument that the railroad

13

"took no greater title through its deed from [a private party] than it would have acquired by condemnation proceedings under the statute, whereby it receives simply an easement over the land for railway purposes." *Watkins v. Iowa Cent. Ry. Co.*, 98 N.W. 910, 913 (Iowa 1904). *Watkins* "[found] no provision of law which prevents [the railroad] acquiring [fee] title by purchase." *Id.*; *accord Mattice v. Chi. Great W. Ry. Co.*, 107 N.W. 949, 950 (Iowa 1906) (analyzing the successor statute to Chapter 31 and holding that "no limitation is placed on the right to acquire by purchase such other land as may be deemed necessary to such construction or maintenance").   Consistent with *Watkins*, Iowa courts differentiate railroad rights-of-way obtained through condemnation from railroad rights-of-way obtained through negotiated transactions.   *See McKinley*, 368 N.W.2d at 135 (distinguishing *Washington Wildlife* on the basis that it involved deeded railroad easements and not condemned railroad easements); *id.* (holding that a right-of-way deed, unlike a condemnation, "is in essence a contract").   To accept Plaintiffs' argument that all conveyances to railroads be deemed condemnations would contradict those Iowa Supreme Court cases holding that certain negotiated railroad deeds conveyed fee interests to the railroad.   *See, e.g., id.* at 138; *Lowers*, 663 N.W.2d at 411.

   Finally, in arguing that trail use falls outside the scope of the easements conveyed in the Des Moines Valley right-of-way deeds, Plaintiffs misapprehend the significance of the fact that those deeds convey unlimited easements.   Because the Des Moines Valley right-of-way deeds are not expressly limited to railroad purposes, they are not subject to the extinguishment provision of Iowa Code § 327G.76.[3]   Instead, they are subject to the general rule of

---

[3]      A previous iteration of Iowa Code § 327G.76 expressly limited the effect of the statutory extinguishment and reverter to railroad easements acquired by condemnation.  Iowa Code § 327G.77 (1983) (attached as Exhibit 2).  *See* Iowa Code § 4.6(3) (stating that Iowa courts may look to legislative history in construing legislative intent behind ambiguous statutes).

14

extinguishment of easements under Iowa law: nonuse for the statutory period of limitation (ten years), during which period the owner of the servient estate puts the land to a use inconsistent with the enjoyment of the easement. *Harrington v. Kessler*, 77 N.W.2d 633, 634 (Iowa 1956); *see Levine v. Chinitz*, 8 N.W.2d 735, 739 (Iowa 1943) ("[M]ere non-user of an easement during a period of time within which there is no occasion to use it does not tend to show permanent abandonment"). The United States' cross-motion demonstrates that the servient estate has not been put to a use inconsistent with the enjoyment of the easement. U.S. Cross-Mot. (D.E. 58) at 28. Thus, the ten-year period that must lapse before the easements extinguish has not commenced and certainly has not lapsed.

      D.      <u>Plaintiffs' title arguments with respect to subdivided lots are erroneous</u>.

Plaintiffs contend that the United States mischaracterizes the Iowa Supreme Court's holdings in *Milburn v. City of Cedar Rapids*, 12 Iowa 246, 1861 WL 248 (Iowa 1861), *Rinard v. Burlington & W. Ry. Co.*, 23 N.W. 914 (Iowa 1885), and *Stecklein v. City of Cascade*, 693 N.W.2d 335 (Iowa 2005). Pls.' Response (D.E. 61) at 34-35. Plaintiffs are mistaken.

First, it is important to place the relevance of these decisions in context. Several claimants seek just compensation in this lawsuit based on claims that their subdivided lots entitled them to a statutory reversionary interest in the rail corridor under Iowa Code § 327G.77. But the lots upon which these claimants base their claims do not adjoin the rail corridor. *See* U.S. Cross-Mot. (D.E. 58), Appx. B. Accordingly, these claimants have no entitlement to the rail corridor under section 327G.77, which confers title to *adjoining* landowners.

The United States cited *Milburn*, *Rinard*, and *Stecklein* for the proposition that, under Iowa law, owners of subdivided lots own the land within their lots—they do not own land outside of their lots, including land dedicated for public streets. U.S. Cross-Mot. (D.E. 58) at 11.

In *Milburn,* the owner of a subdivided lot sought to enjoin a railroad from running a train over a street adjoining the claimant's subdivided lot.  1861 WL 248, at *2-3.  The Iowa Supreme Court affirmed the denial of an injunction against the railroad.  *Id.* at *4.  After explaining (1) that subdivided lots are based on "accurate map[s] of the plat of the town," (2) that this mapping requirement "necessarily implies a diagram that shall delineate the lines and dimensions in feet of each separately," and (3) that the "specific boundary" of each lot is "delineated upon the map," *Milburn* concluded that "there is no room to indulge the presumption that the purchaser takes any more land than is contained within the defined lines of his lot." *Id.* at *4.  Thus, where a strip of land separates a subdivided lot from the rail corridor, *Milburn* teaches that lot owners cannot claim title to the strip of land merely because they own the lot.

*Rinard* and *Stecklein* buttress *Milburn*'s holding.  *Rinard* reversed an award to the owner of a subdivided lot who claimed damages for a railroad's construction activities on a street adjoining the owner's lot.  23 N.W. at 915.  *Rinard* justified its reversal on the ground that the land owner "is not invested with the title to the land dedicated for a street."  *Id.*  Similarly, in *Stecklein*, the Iowa Supreme Court confirmed that a town acquires fee to land dedicated for streets and alleys merely by including the area embracing those dedications in the town's corporate limits.  693 N.W.2d at 339.  Neither a formal acceptance nor an actual opening of the street is required.  *Id.*

Plaintiffs' attempts to distinguish *Milburn*, *Rinard*, and *Stecklein* focus on an incorrect issue and misstate the holdings of those cases.  The United States demonstrated (1) that the lots upon which these certain claimants base their claims do not adjoin the rail corridor, *see* U.S. Cross-Mot. (D.E. 61), Appx. B (identifying citations to relevant evidence), and (2) the owners of subdivided lots own only the area within the lines of their lots, *id.* at 10-13.  Consequently,

Plaintiffs must prove that the claimants who base their claims on certain subdivided lots own fee title to the strip of land separating those lots from the rail corridor.  Iowa Code § 327G.77 (vesting title to extinguished railroad easements to *adjoining* landowners).  But focusing on what the city or town owns does not prove *claimants'* title.

    E.    <u>The United States is not estopped from challenging Plaintiffs' proposed findings of fact.</u>

There is no merit to Plaintiffs' insistence that the United States is estopped from pointing out deficiencies in certain claimants' claims.  As in all taking cases, "the burden of proof rests on plaintiffs, and not on the defendant, to establish that a taking has occurred justifying the payment of just compensation."  *Loesch v. United States*, 227 Ct. Cl. 34, 44, 645 F.2d 905, 914 (Fed. Cir. 1981).  In addition, this Court cannot grant Plaintiffs' motion for summary judgment unless and until Plaintiffs meet their burden of demonstrating that no genuine dispute exists over a material fact.  *Broomall Indus., Inc. v. Data Design Logic*, 786 F.2d 401, 405 (Fed. Cir. 1986) ("[I]f the evidentiary matter in support of the motion for summary judgment does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented") (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1969)) .  Plaintiffs' repeated complaints regarding the claim book process are unavailing because the United States has not violated a discovery order and Plaintiffs have not propounded a single discovery request.  U.S. Response to Pls.' Mot. for Sanctions (D.E. 53) Part III.B-C.[4]  In addition, there is a difference

---

[4]    Plaintiffs' attempt to excuse themselves from their burden of proof and from the burden of production under RCFC 56 is not only legally improper, it is based on a mischaracterization of the record.  *See generally* U.S. Response to Pls.' Mot. for Sanctions (D.E. 53) Part II (reciting pertinent facts relating to the claim book process and settlement negotiations).  In addition, Plaintiffs attach as Exhibit L to their response what they claim is the document the United States referred them to in response to their confusion over the meaning of the "Public Land Survey."  Pls.' Response (D.E. 61) at 37 n.26; *see* U.S. Response to Pls.' Mot. for Sanctions (D.E. 53) at

between objecting to the sufficiency of Plaintiffs' production and contesting Plaintiffs' characterization of facts in the context of a summary judgment motion. *See VNA Plus, Inc. v. Apria Healthcare Grp., Inc.*, No. 98-2138, 1999 WL 386949, at *5 (D. Kan. Jun. 8, 1999) ("Providing discovery . . . does not waive objections as to admissibility at trial").

Similarly hollow is Plaintiffs' complaint that they have no idea why the United States objects to the sufficiency of evidence proffered with their proposed findings of fact. Pls.' Response (D.E. 61) at 38. The United States articulated the specific grounds for contesting Plaintiffs' proposed findings of fact in its response to Plaintiffs' proposed findings. U.S. Response to Pls.' Proposed Findings (D.E. 59) ¶¶ 17, 33, 59, 60, 61, 93, 94, 102, 103, 106, 110, 113, 114, 121, 140, 141; U.S. Cross-Mot. (D.E. 58), Appx. C. By way of illustrative example, Plaintiffs did not include an Exhibit 41D with their motion. The United States consequently opposed Plaintiffs' proposed findings of fact based on this missing exhibit pursuant to RCFC 51(c)(1)(B). *See Zenith Elec. Corp. v. PDI Commc'n Sys., Inc.*, 522 F.3d 1348, 1363 (Fed. Cir. 2008) ("If, for example, the movant bears the burden and its motion fails to satisfy that burden, the non-movant is not required to come forward with opposing evidence") (citations and quotations omitted). The United States is not required to comb the extra-judicial record, surmise whether Plaintiffs might have been able to attach to their motion an exhibit that would support their proposed finding, and then respond to that hypothetical proffer.

Finally, Plaintiffs' arguments that this Court should disregard the United States' cross-motion with respect to the claimants identified in Part VI.B of Plaintiffs' response is unsupported

---

13. The document Plaintiffs attach as Exhibit L was a deed attached to a request for judicial notice, not the treatise on the Public Land Survey the United States provided to the Court (and Plaintiffs' counsel) in *Wadsworth v. United States*, No. 09-349 (Fed. Cl.). The correct document was filed in *Wadsworth* as docket entry 13 (Exhibit 1 to the United States' motion to dismiss).

and, therefore, does not create a genuine dispute of material fact.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (holding that were a movant meets their burden of production under Fed. R. Civ. P., the non-movant must come forward with specific facts demonstrating a genuine dispute of material fact).  Instead of offering evidence to create a genuine dispute of material fact, Plaintiffs insist that their extra-judicial communications render the United States' motion baseless.  Pls.' Response (D.E. 61) at 38.  But Plaintiffs make no citation to the record that would direct this Court to the evidence justifying their conclusion or otherwise creating a genuine issue of material fact.

 F. <u>This Court should not defer ruling on the United States' cross-motion as to title issues that are adverse to Plaintiffs.</u>

 There is no merit to Plaintiffs' alternative request that this Court defer ruling on certain title issues until some later phase of this lawsuit.  Pls.' Response (D.E. 61) at 37, 39.  Plaintiffs cannot delay summary judgment without proffering some evidence justifying a deferral.  RCFC 56(d);[5] *Jones v. United States*, 49 Fed. Cl. 516, 521 (2001) ("[S]ummary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events.") (quotations and citations omitted).

---

[5] In contrast to Plaintiffs' unsupported request to defer ruling on the United States' cross-motion, the United States made a request pursuant to RCFC 56(d) that the claims of the city of Dallas Center be deferred, pointing to specific evidence that (1) Dallas Center was part of the group of entities requesting the conversion of the rail corridor, U.S. Proposed Findings (D.E. 60 ¶ 44, Ex. 28, and (2) that Dallas Center was conveyed and currently holds fee title to the portion of the trail falling within its corporate limits, *id.* ¶ 40, Ex. 29.  *Cf. Scogin v. United States*, 33 Fed. Cl. 568, 577-78 (1995) (granting summary judgment for United States against takings claim where landowner consented to EPA's entry onto property).

G.     The United States responded to Plaintiffs' alternative argument that the rail
       corridor was abandoned before the Surface Transportation Board issued its Notice
       of Interim Trail Use.

Plaintiffs argue that the United States disregarded Plaintiffs' alternative argument that

Union Pacific abandoned the rail corridor before the Notice of Interim Trail Use was issued.  Not

so.  The United States explained that, with respect to the fee portions, there was no easement to

extinguish.  U.S. Cross-Mot. (D.E. 58) Part D.  The United States further explained that the Des

Moines Valley right-of-way deeds are not limited to active rail service and, therefore, did not

extinguish.  *Id*. Part E.1; *supra* Part II.C.  Finally, with respect to the condemned easements, the

United States explained that the Trails Act blocked extinguishment of the rail corridor.  U.S.

Cross-Mot. (D.E. 58) at 25-27.

III.    CONCLUSION

Plaintiffs' response does not create a genuine dispute of material fact with respect to the

United States' cross-motion.  Nor does their response proffer valid authority that rebuts the legal

predicate for the United States' cross-motion.  This Court should enter summary judgment based

on the terms set forth in the United States' cross-motion for summary judgment.

DATED:  September 15, 2011                      Respectfully submitted,

                                               IGNACIA S. MORENO
                                               Assistant Attorney General
                                               Environment &Natural Resources Division

                                               By  */s/ Frank J. Singer*
                                               FRANK J. SINGER
                                               United States Department of Justice
                                               Environment & Natural Resources Division
                                               Natural Resources Section
                                               Post Office Box 663
                                               Washington, D.C. 20044-0663
                                               Tel: 202.616-9409
                                               Fax: 202.305-0506

E-mail: frank.singer@usdoj.gov

ATTORNEY FOR THE UNITED STATES

Exhibit 1
to U.S. Reply Br.

# EXHIBIT 1

to United States' Reply Brief Support Cross-Motion for Summary Judgment

Right of Way Deed.
Philip Van Volkenburgh
&c  To
Mason City & Fort Dodge
Railroad Company
Filed February 13th 1888.
at 10th oclock A.M.
Lizzie J. Fitch Rec

Know all Men by these Presents: That We Philip
Van Volkenburgh and Ann S. Van Volkenburgh
his wife of New York, County and State of
New York, in consideration of the sum of
Seventy five Dollars, in hand paid the receipt
of which is hereby acknowledged, does hereby
sell grant and convey unto the Mason City
and Fort Dodge Rail Road Company the
right of way over the piece or parcel of land situate and being
in the County of Carrollgordo and State of Iowa, and described as
follows: A strip of land one hundred feet in width being fifty
feet in width on each side of the centre line of said Railroad as
the same has been located over and across the South East quarter
(¼) the South West quarter (¼) of Section No. Twenty eight (28) in
Township Ninety four (94) and Range No. Twenty two (22) to
have and to hold the said right of way with the appurtenances unto
the Mason City and Fort Dodge Railroad Company and its assigns
forever together with the right to take, remove and use for the construction
and repair of said Railroad and its appurtenances any earth, gravel
stone timber or other material on or from the land so taken, to the same
intent and effect as if said right of way had been obtained by conden-
nation of the same as provided by law. And the said Philip Van
Volkenburgh hereby releases all damages to all other lands by reason of
constructing operating and maintaining a Railroad on said strip
of land. And the said Grantor hereby covenants with the said Company
that at the time of executing and delivering these presents he is seized of
said premises in fee simple, that he has good right and lawful authority
to convey the same, that the same are free and clear from all incumbrances
whatever, and does covenant to warrant and defend the same as against
the lawful claims of all persons whomsoever. And the said Ann S.
Van Volkenburgh the wife of said Philip Van Volkenburgh hereby relinquishes
all her right of dower in and to the above described premises.
  Witness our hands this Thirty first day of January A.D. 1888
                                   Philip Van Volkenburgh
In presence of                        Ann S. Van Volkenburgh
A.S. Van Volkenburgh
State of New York } ss  Be it Remembered, That on the 31st day of January
New York County   }    A.D. 1888, before me Thomas Van Volkenburgh a
Notary Public duly appointed in and for said County personally came
Philip Van Volkenburgh and Ann S. Van Volkenburgh his wife personally
known to me to be the identical persons whose names are subscribed to the
foregoing instrument as grantors, and acknowledged the same to be
their voluntary act and deed. In Testimony Whereof I have hereunto



498

set my hand and affixed my official seal the day and year last above written.

T. S. Van Valkenburgh
Notary Public
County of New York

Exhibit 2
to U.S. Reply Br.

# EXHIBIT 2

to United States' Reply Brief Support Cross-Motion for Summary Judgment

# VOLUME II

# CODE OF IOWA

## 1983

### CONTAINING

## ALL STATUTES OF A GENERAL AND PERMANENT NATURE

To and including the Acts of a permanent nature
of the Sixty-ninth General Assembly, 1982



**SERGE GARRISON**
ACTING CODE EDITOR

**WAYNE A. FAUPEL**
CODE CONSULTANT

**PHYLLIS BARRY**
DEPUTY CODE EDITOR

PUBLISHED BY THE STATE OF IOWA UNDER AUTHORITY OF CHAPTER 14 HEREOF

1982

expense of maintaining such track and other equitable considerations. The authority may order the railroad company to discontinue service or remove the spur track, and may allocate the cost of removal between the parties in an equitable manner.

4. Any action commenced under the provisions of subsection 2 or 3 shall be completed within one year from the effective date of the authority order. The authority shall make a final determination of any action commenced under subsection 2 or 3 within one year from the date of the application. [C24, 27, 31, 35, 39, §8171; C46, 50, 54, 58, 62, 66, 71, 73, 75, §481.3; C77, 79, 81, §327G.64; 81 Acts, ch 22, §22]

**327G.65  Cost of construction.** Such railroad corporation may require the person primarily to be served thereby to pay the legitimate cost and expense of acquiring, by condemnation or purchase, the necessary right of way for such spur track and of constructing the same as shall be determined in separate items by the department. Except as in section 327G.66, the total cost thereof as ascertained by said department shall be deposited with the railroad corporation before it shall be required to incur any expense. If an agreement cannot be reached, the question shall be referred to the authority which may after hearing issue an order. [C24, 27, 31, 35, 39, §8172; C46, 50, 54, 58, 62, 66, 71, 73, 75, §481.4; C77, 79, 81, §327G.65; 81 Acts, ch 22, §22]
Referred to in §327G.68

**327G.66  Bond for construction.** When the total estimated cost has been ascertained by the department such person, firm, corporation, or association shall have the option to either deposit said amount with the railroad company or to file with such company its written election to build and construct such spur track accompanied by a good and sufficient surety bond running to such railroad company and conditioned upon the construction of such spur track in a good and workmanlike manner according to plans and specifications furnished by such railroad company and approved by the department. If such person, firm, corporation, or association so elects to build such spur track it shall only be required to deposit with such railroad company the estimated cost of the necessary right of way for such spur track as ascertained by the department, and the total amount stated in such written election. [C24, 27, 31, 35, 39, §8173; C46, 50, 54, 58, 62, 66, 71, 73, 75, §481.5; C77, 79, 81, §327G.66]
Referred to in §327G.65, 327G.68

**327G.67  Costs in excess of deposit.** In any event before the railroad company shall be required to incur any expense whatever in the construction of such spur track the person, firm, corporation, or association primarily to be served thereby shall give the railroad company a bond to be approved by the department as to form, amount, and surety, securing the railroad company against loss on account of any expense incurred beyond the amount so deposited with the railroad company. [C24, 27, 31, 35, 39, §8174; C46, 50, 54, 58, 62, 66, 71, 73, 75, §481.6; C77, 79, 81, §327G.67]
Referred to in §327G.68

**327G.68  Failure of company to act.** In case of failure, neglect, or refusal of any railroad company to comply with any of the provisions of sections 327G.65 to 327G.67, the person, firm, corporation, or association primarily to be served thereby may file a complaint with the department setting forth the facts upon which such grievance is based. The said department after reasonable notice to the railroad company shall investigate and determine all matters in controversy and make such order as the facts in relation thereto will warrant. Any such order shall have the same force and effect as other orders made by said department in other proceedings within its jurisdiction and shall be enforced in the same manner. [C24, 27, 31, 35, 39, §8175; C46, 50, 54, 58, 62, 66, 71, 73, 75, §481.7; C77, 79, 81, §327G.68]

**327G.69  Connections with original spurs.** Whenever such spur track is so connected with the main line, as provided in this chapter, at the expense of the owner of such proposed or existing mill, elevator, storehouse, dock, wharf, pier, manufacturing establishment, and any person, firm, corporation, or association shall desire a connection with such spur track, application therefor shall be made to the department, and such person, firm, corporation, or association shall be required to pay to the person, firm, corporation, or association that shall have paid or contributed to the primary cost and expense of acquiring the right of way for such original spur track, and of constructing the same, an equitable proportion thereof, to be determined by the department, upon such application and notice, to the persons, firms, corporations, or associations that have paid or contributed toward the original cost and expense of acquiring the right of way and constructing the same. [C24, 27, 31, 35, 39, §8176; C46, 50, 54, 58, 62, 66, 71, 73, 75, §481.8; C77, 79, 81, §327G.69]

**327G.70 to 327G.75**   Reserved.

DIVISION III. REVERSION TO OWNERS UPON ABANDONMENT

Formerly Chapter 473

**327G.76  Relocation of railway.** Such part of a railway right of way as is wholly abandoned for railway purposes by the relocation of the line of railway, shall revert to the persons who, at the time of the abandonment, are owners of the tract from which such abandoned right of way was taken. [C24, 27, 31, 35, 39, §7861; C46, 50, 54, 58, 62, 66, 71, 73, 75, §473.1; C77, 79, 81, §327G.76]

**327G.77  Reversion of railroad right of way.**

1. If a railroad right of way acquired by condemnation is abandoned by order of the federal interstate commerce commission or the state transportation regulation authority, that right of way shall revert to owners of the adjacent properties at the time of the abandonment. If there are different owners on each side of the right of way, each owner shall take title to the center of the right of way. The provisions of section 614.24 requiring the filing of a verified claim shall not apply to the reversionary interest granted by this subsection.