IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| STEVE JENKINS, *et al.*, | ) |
| | ) No. 09-241 L |
| For Themselves and As Representatives of a | ) |
| Class of Similarly Situated Persons, | ) Judge Nancy B. Firestone |
| | ) |
| Plaintiffs, | ) *Electronically filed on April 9, 2012* |
| | ) |
| v. | ) |
| | ) |
| THE UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## PLAINTIFS' MEMORANDUM IN SUPPORT OF MOTION FOR
## PARTIAL SUMMARY JUDGMENT ON THE REMAINING 79 PARCELS

## TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................. 1

II.   20 PARCELS WHERE THE DEFENDANT ORIGINALLY OBJECTED TO
     ADJACENCY, OWNERSHIP ON THE NITU DATE, THE APPLICABLE
     ORIGINAL SOURCE CONVEYANCE, OR SOME OTHER "TITLE"
     OBJECTION, AND PLAINTIFFS SUPPLEMENTED THEIR DOCUMENTATION
     AND DEFENDANT NEVER RESPONDED, SUCH THAT DEFENDANT'S
     OBJECTIONS HAVE ABSOLUTELY NO MERIT .......................................................... 7

III.  FOUR PARCELS IN MINBURN AND THREE PARCELS IN PERRY ARE MERE
     "PAPER" ALLEYS SUCH THAT THE CITIES ARE EQUITABLY ESTOPPED
     FROM CLAIMING OWNERSHIP OF AN INTERVENING ALLEY .......................... 13

          A.   Iowa's Law Concerning "Paper" Alleys ............................................. 14
          B.   The Four Parcels in Minburn Include a "Paper" Alley Such that the City is
               Equitably Estopped from Claiming Ownership of the Alleged Intervening
               Alley ....................................................................................................... 17
          C.   The Three Parcels in Perry Include a "Paper" Alley Such That the City is
               Equitably Estopped from Claiming Ownership of the Alleged Intervening
               Alley ....................................................................................................... 18

IV.   28 PARCELS IN MINBURN AND PERRY ARE EITHER ON THE FORMER
     DEPOT GROUNDS OR ADJACENT TO THE FORMER DEPOT GROUNDS AND
     DEFENDANT'S LIABILITY DEPENDS ON WHETHER THE RAILROAD
     ORIGINALLY RECEIVED THE DEPOT GROUNDS AS AN EASEMENT OR IN
     FEE ....................................................................................................................... 20

          A.   Iowa's Law on Whether the Railroad's Depot Grounds were Originally
               Conveyed as an Easement or in Fee ................................................... 21
          B.   The 13 Parcels in Minburn Either Part of the Former Depot Grounds or
               Adjacent to the Former Depot Grounds ............................................. 24
          C.   There are 5 Parcels in Perry Which are Part of the Former Depot Grounds, 7
               Parcels in Perry which are Adjacent to the Depot Grounds, and 3 Other
               Parcels in Perry which are Simply Adjacent to the Railroad's Right-of-Way ...... 25

V.    THERE ARE 16 PARCELS IN DALLAS CENTER, 5 PARCELS OWNED BY THE
     CITY OF DALLAS CENTER, 7 PARCELS INVOLVING AN INTERVENING
     ALLEY EITHER OWNED BY THE ADJACENT LANDOWNER OR BY THE
     CITY OF DALLAS CENTER, AND 4 PARCELS THAT ARE PART OF THE
     FORMER DEPOT GROUNDS ............................................................................... 28

          A.   The 5 Parcels Owned by the City of Dallas Center where Defendant has
               Objected that Dallas Center Became the Ultimate Trail User .............................. 28

      B.  The 7 Parcels in Dallas Center that are either Owned by the Adjacent Landowner as "Paper" Alleys Because the City is Equitably Estopped from Claiming Ownership or the City of Dallas Center Owns Them Because the City of Dallas Center Owns the Intervening Alley..............................................31

      C.  4 Parcels in Dallas Center which are Part of the Former Depot Grounds.............33

VI.     PLAINTIFFS AGREE TO DISMISS 8 ADDITIONAL PARCELS ...............................34

VII.    CONCLUSION ...........................................................................................................34

## TABLE OF AUTHORITIES

*Drake v. Chicago, R.I. and R.R. Co.,* 19 N.W. 215, 217 (Iowa 1884) .......................................... 10

*Estate of Rockafellow v. LIHS*, 494 N.W. 2d 734 (Iowa App. 1992) ............................................ 22

*Fencl v. City of Harpers Ferry*, 620 N.W.2d 808 (Iowa 2001) ......................................... 14-16, 32

*Gates v. Colfax Northern Railway Co.*, 159 N.W.158, 462 (Iowa 1916) .................................... 10

*Lowers v. United States*, 663 N.W.2d 408 (Iowa 2003) ............................................................ 24

*Macerich Real Estate Co. v. City of Ames*, 433 N.W. 2d 726, 728 (Iowa 1988) ......................... 22

*Page & Crane Lumber Co. v. City of Clear Lake,*
    208 Iowa 735, 738, 225 N.W. 841, 842 (Iowa 1929) ......................................................... 16

*Pearson v. City of Guttenberg*, 245 N.W.2d 519, 528-31 (Iowa 1976) ..................................... 16

*Preseault v. United States*, 100 F.3d 1525, 1533 (Fed. Cir. 1996)
    (hereinafter "*Preseault II*") ............................................................................................ 3

*Shimanek v. Chicago, M. & ST. P. Ry. Co.*, 152 N.W. 574 (Iowa 1915) ................................... 10

*Simplot v. City of Dubuque,* 56 Iowa 639, 640-41, 10 N.W. 221, 222 (Iowa 1881) ................... 16

*Town of Kenwood Park v. Leonard*, 158 N.W. 655 (Iowa 1916) .......................................... 14-15

## I.      INTRODUCTION

This lawsuit involves approximately 241 parcels of land adjacent to an abandoned railroad corridor in Dallas County, Iowa.  All of the Plaintiffs in this class action are landowners who claim to own a fee interest in land underlying the abandoned railroad corridor and claim that the Defendant affected a taking of their reversionary interest in the railroad right-of-way easements when the government approved the conversion of the subject rail line to a recreational trail pursuant to the Trails Act.  Plaintiffs now seek just compensation under the Takings Clause of the Fifth Amendment for the taking of their property.

This lawsuit was filed on April 20, 2009 (D.E. 1).  Following class certification and the close of the class notification period, Plaintiffs served a Claims Book on the Defendant on June 25, 2010.  The Claims Book contained copies of current deeds showing that each Plaintiff owned their property adjacent to the railroad right-of-way on the date of the NITU, October 25, 2004, county assessor sheets for each parcel showing the parcel adjacent to the right-of-way, and original source deeds and/or original condemnations demonstrating that the railroad originally acquired an easement.

Due to the commencement of settlement negotiations, the parties, by agreement, did not originally file a JSR with actual stipulations reached concerning adjacency, ownership on the NITU date, and the applicable original source conveyance.  Through the stipulation process following service of the Claims Book, however, the Defendant did not object concerning 109 parcels[1] where the parties agreed that: (1) the claimant is the proper claimant and owned the

---

[1]  There were 110 parcels listed with stipulations reached in Exhibit 1 to the JSR of December 12, 2011 (D.E. 72). However, Defendant stipulated to parcel 15.A (Plaintiffs believe mistakenly).  Plaintiffs have removed parcel 15.A from the list of 110 and it is discussed in Section V.A infra.  In addition, parcel 26.D was not properly accounted for and Plaintiffs will dismiss it, making 53 parcels where Plaintiffs have agreed to dismiss.  As a result, there are 109 parcels where liability has been determined, 53 parcels to be dismissed, and this motion pertains to 79 parcels, which all correctly total 241 parcels.

parcel on the date of the NITU; (2) the parcel is adjacent to the railroad right-of-way; and (3) the appropriate original source conveyance to the railroad was properly identified for each specific parcel, whether by condemnation or by right-of-way deed.  With respect to those 110 parcels, Plaintiffs filed their original Motion for Summary Judgment on July 1, 2011 (D.E. 43), Defendant's Cross-Motion for Summary Judgment was filed on August 15, 2011 (D.E. 58), oral argument took place in Washington, D.C. on December 8, 2011, and the Court entered its Opinion on December 20, 2011 (D.E. 73) granting Plaintiffs' Motion for Partial Summary Judgment and denying Defendant's Cross-Motion for Partial Summary Judgment.[2]

The parties filed a Joint Status Report (D.E. 76) on January 20, 2012 which contained separate proposals for further proceedings.  The Court held a status conference on February 6, 2012 and then issued an Order (D.E. 78) which stated that "Plaintiffs shall file their Motion for Summary Judgment addressing liability with respect to the 79 parcels still in dispute by April 9, 2012."

There are 79 parcels at issue in this Motion for Partial Summary Judgment because the original Motion for Summary Judgment pertained to 109 parcels and Plaintiffs also agreed to dismiss 53 parcels.  Although the original contemplated discovery process and the Claims Book procedure were designed to resolve whatever continuing "title" objections remained with respect to individual parcels, simply put, Plaintiffs repeatedly attempted to address and resolve whatever continuing objections Defendant maintained and Defendant never bothered to respond.[3]  Instead of responding, Defendant later maintained that specific continuing objections were included in

---

[2]  Plaintiffs have retained Gene Nelsen to appraise representative parcels to determine just compensation for those 109 parcels pursuant to the Court's Order on February 6, 2012 (D.E. 78).

[3]  In fact, Plaintiffs wrote an e-mail to defense counsel on September 19, 2011 and letters on October 7, 2011 and November 2, 2011 and defense counsel never responded.  The e-mail to defense counsel on September 19, 2011 and letters on October 7, 2011 and November 2, 2011 were attached as Exhibits A, B, and C to the Joint Status Report filed on January 20, 2012 (D.E. 76).

prior stipulation charts and prior letters and "reformulating those objections into a letter will not move the parties toward resolution of the liability phase promptly."  As a result of Defendant's lack of cooperation during the discovery and stipulation phase, it has been difficult for Plaintiffs, on many occasions, to even ascertain the nature of Defendant's objection or whether Defendant even continued to maintain an objection.

Plaintiffs maintain that the remaining 79 parcels can and should be basically divided into five categories.  The first category involves 20 parcels where the Defendant originally interposed an objection of one kind or another, Plaintiffs responded on one or more occasions with supplemental information or documentation or an explanation and, even though Defendant never responded, Plaintiffs believe Defendant's initial objection has been completely resolved.  In each instance, for each of the 20 parcels, Plaintiffs believe that no new or significant issue of law exists and that Plaintiffs have established that the claimant is the proper claimant and owned the parcel on the date of the NITU, the parcel is adjacent to the railroad right-of-way, and the appropriate original source conveyance to the railroad has been properly identified for each specific parcel and, whether by condemnation or by right-of-way deed, the Court has now ruled that the railroad obtained an easement for railroad purposes and trail use and railbanking is beyond the scope of the original easement (D.E. 73).[4]  Therefore, Plaintiffs' motion for summary judgment should be granted with respect to those 20 parcels.  Plaintiffs believe that the other categories of parcels do involve somewhat unique issues of law for this Court to decide.

---

[4]  Plaintiffs believe that the Court's Opinion (D.E. 73) is now "the law of the case" with respect to the first prong of *Preseault v. United States*, 100 F.3d 1525, 1533 (Fed. Cir. 1996) (hereinafter "*Preseault II*"), fee or easement, and the second prong of *Preseault II*, the scope of the easement.  The Court's Opinion is also the law of the case with respect to what interest was actually taken pursuant to the Trails Act.  As a result, the only contested issues with respect to these 79 parcels are adjacency and ownership on the NITU date and other "title" disputes.

In each remaining category, all of the parcels are in the towns of Minburn, Perry, or Dallas Center.  The second category involves 4 parcels in Minburn and 3 parcels in Perry where the original plat for the city included a 16' or 20' "paper" alley between the parcel and the abandoned corridor.  The Defendant objected that the parcels are not adjacent, however, no actual alley exists and the strip has been used by the landowners up to the edge of the right-of-way ever since the railroad was established and the landowners claim ownership of the non-existent alley and adjacency because the city is equitably estopped from claiming ownership.[5]

The third category involves 13 parcels in Minburn and 15 parcels in Perry that are either part of the former depot grounds or adjacent to the former depot grounds in each city.[6] Defendant has argued that the railroad originally received the depot grounds in fee.  Depending on this Court's ruling on easement or fee, if the depot grounds are fee, certain claims are valid and compensable because they are then clearly adjacent to the corridor and, if the depot grounds are easements, certain other claims are valid and compensable.  Basically, one or the other set of Plaintiffs have valid claims and are compensable depending on the Court's ruling regarding the nature of the conveyance for depot grounds.

The fourth category involves a variety of unique issues involving 16 parcels in Dallas Center, 5 of which pertain to parcels actually owned by Dallas Center (parcels 15.A through 15.E), 7 parcels involving "paper" alleys where Dallas Center contests ownership, and 4 parcels which are actually part of the former depot grounds.  Dallas Center, unlike Minburn and Perry, is

---

[5]  Plaintiffs have obtained 36" by 48" parcel maps for the towns of Minburn, Perry, and Dallas Center and have mapped all parcels in these towns to demonstrate the location of each parcel.  All of the other supporting documentation for each parcel, including the smaller parcel map in relation to the railroad right-of-way and photographs for most parcels, is included with the statement of uncontroverted facts for each parcel.  The larger parcel map for Minburn is Exhibit A, the larger parcel map for Perry is Exhibit B, and the larger parcel map for Dallas Center is Exhibit C.

[6]  Plaintiffs maintain that 3 of the parcels in Perry, 97.B, 97.C, and 97.D, are actually simply adjacent to the right-of-way, rather than adjacent to the former depot grounds, as discussed in Section IV.C *infra*.

a member of the Class and owns parcels adjacent to the abandoned corridor and, subsequent to the NITU and the Trail Use Agreement, became the trail operator.[7]

The fifth category pertains to 8 additional parcels that Plaintiffs now agree to dismiss. The 8 parcels consist of 3 parcels where the railroad owned the right-of-way in fee and 3 parcels in Dallas Center and 2 parcels in Perry that are not adjacent to the right-of-way.

Plaintiffs believe that the five categories of remaining parcels, which comprise the total of 79 remaining parcels without a liability determination yet having been made, can and should be classified as follows:

(1) **20 parcels**[8] where the Defendant originally maintained an objection to adjacency, ownership on the NITU date, or the identification of the applicable original source conveyance and Plaintiffs, through numerous responses and supplementation of documents, established that Defendant's objection had no merit and Defendant never bothered to respond (discussed in Section II *infra*);

(2) **7 parcels**[9] where Defendant interposed an adjacency objection based on an intervening strip or parcel (generally a 16 foot or 20 foot alley on the original plat in the towns of Minburn or Perry) that never actually existed and the Plaintiffs actually own the underlying fee and the cities are equitably estopped from claiming ownership (discussed in Section III *infra*);

---

[7]  *See* footnote 32 in Section V.A for a discussion of the quit claim deed from Dallas County to Dallas Center in February of 2009.

[8]  The 20 parcels where Defendant originally interposed an objection based on some form of a "title" issue and Plaintiffs responded and/or supplemented with additional documents disproving Defendant's continuing objection and Defendant never bothered to respond are 4.D, 8, 31.A, 31.B, 37, 38, 41.D, 42, 43, 47.K, 59.H, 59.J, 59.K, 64, 68.A, 77, 82, 83.A, 97.A, and 124.  All of these parcels are discussed in Section II *infra*.

[9]  There are 4 parcels originally platted in Minburn with a 16 foot wide intervening parcel that never existed, parcels 58, 63, 65, and 67, and there are also 3 such parcels in Perry, 108, 109, and 110.  All of these parcels are discussed in more detail in Section III *infra*.

(3) **28 parcels**[10] in the towns of Minburn or Perry that are either part of the former depot grounds or adjacent to the former depot grounds and the Court must decide if the original grant to the railroad when the depot grounds were established was an easement conveyance or a fee conveyance such that some parcels will win and some parcels will lose depending on the Court's conclusion (discussed in Section IV *infra*);

(4) **16 parcels** in Dallas Center with some unique issues of their own.  The 16 parcels involve 5 parcels[11] owned by Dallas Center, a claimant and the ultimate trail user, 7 parcels[12] involving "paper" alleys where Dallas Center, unlike Minburn and Perry, claims ownership (and unlike Minburn and Perry is a named Plaintiff) and the landowners claim that the city is equitably estopped from claiming ownership, and 4 parcels[13] that are actually part of the former depot grounds (discussed in more detail in Section V *infra*); and

(5) **8 parcels**[14] that Plaintiffs agree to dismiss based on fee ownership or lack of adjacency to the right-of-way (discussed in more detail in Section VI *infra*).

---

[10] There are 13 parcels in Minburn that are either part of the depot grounds or adjacent to the depot grounds, parcels 59.A, 59.B, 59.C, 59.D, 59.F, 59.G, 59.I, 60, 61.A, 62.A, 62.B, 62.C, and 62.D.  There are an additional 15 parcels in Perry where 5 parcels are part of the former depot grounds, 98.B, 103, 104, 105, and 106, 7 parcels are adjacent to the former depot grounds, 98.A, 99.B, 100.A, 100.B, 101.A, 101.B and 107, and 3 parcels are simply adjacent to the right-of-way, 97.B, 97.C, and 97.D.  The enlarged map of Perry is Exhibit B and all of these parcels are discussed in more detail in Section IV *infra*.

[11] The five parcels owned by Dallas Center are 15.A, 15.B, 15.C, 15.D, 15.E, discussed in Section V.A *infra*.

[12]  The seven parcels in Dallas Center involving "paper" alleys are 22, 23, 24, 30, 32, 35, and 36, discussed in Section V.B *infra*.

[13]  The four parcels in Dallas Center which are actually part of the former depot grounds are 26.A, 26.B, 27 and 29, discussed in Section V.C *infra*.

[14]  The 8 parcels Plaintiffs now agree to dismiss are 17, 25, and 28 (intervening road or street in Dallas Center), 99.A and 102.A (intervening parcel in Perry), and 113.B, 113.C and 113.D (railroad owned right-of-way in fee), as discussed in Section VI *infra*.

II.   **20 PARCELS WHERE THE DEFENDANT ORIGINALLY OBJECTED TO ADJACENCY, OWNERSHIP ON THE NITU DATE, THE APPLICABLE ORIGINAL SOURCE CONVEYANCE, OR SOME OTHER "TITLE" OBJECTION, AND PLAINTIFFS SUPPLEMENTED THEIR DOCUMENTATION AND DEFENDANT NEVER RESPONDED, SUCH THAT DEFENDANT'S OBJECTIONS HAVE ABSOLUTELY NO MERIT**

The multiple volume Claims Book was served on Defendant on June 25, 2010. The Court entered a Scheduling Order on July 19, 2010 (D.E. 35) and ordered that Defendant's objections to the Claims Book and any requests for additional discovery were due by October 15, 2010. The parties filed a Joint Motion to Stay Further Liability Proceedings Pending Settlement Negotiations on November 10, 2010 (D.E. 36) and, despite numerous efforts by the Plaintiffs to continue the stipulation process following Defendant's withdrawal from settlement negotiations on June 20, 2011 (D.E. 40), Defendant has refused to participate in any meaningful way since November of 2010.

Defendant originally interposed a variety of objections to the Claims Book materials. Defendant would, on occasion, object to ownership on the NITU date. On other occasions, Defendant would object to a legal description or to adjacency or that the original source conveyance, whether by deed or condemnation, did not match the ownership deed or the county assessor reports did not match the ownership deed. In each and every situation involving these 20 parcels, Plaintiffs responded with additional information that should have resolved whatever objection Defendant offered. It is difficult, if not impossible at this point, for Plaintiffs to state that Defendant's initial objections have been resolved, at least to Defendant's satisfaction, because Defendant has not responded. In any event, with respect to these 20 parcels, Plaintiffs believe all of the necessary information has been provided and all of Defendant's objections have been resolved, or should have been resolved to the Defendant's satisfaction, and that since the

7

Court has already ruled on the scope of the easement issue, then these Plaintiffs and these 20 parcels are entitled to summary judgment. All of the supporting documentation for each parcel is included in Plaintiffs' Statement of Uncontroverted Facts and the summary, for the Court's convenience, for each of the 20 parcels, is as follows:

**Claim No. 4.D, Parcel No. 1220300004, William Fox Farm Company**

Plaintiffs originally mistyped the parcel number for 4.D and Defendant objected. Plaintiffs identified the error, identified the correct parcel number, and attached the correct assessor parcel report. This parcel is the entire southwest quarter of Section 20 and the southwest quarter of Section 20 is covered by the source deed located at Book A, Page 478, which was previously provided to the Defendant, and is a clear condemnation that should now be covered by the Court's Opinion (D.E. 73).

**Claim No. 8, Parcel No. 1218300004, John Charles Morris, Carol Sue Hilton, Marilyn Marie Dowell, S. Suzanne Yates, and D. Merold Yates**

Defendant originally objected to ownership on the NITU date and Plaintiffs previously submitted supporting documentation regarding the proper claimants. The opt-in form was properly executed in a timely manner by Carol Sue Hilton, on behalf of all landowners, and the approved opt-in form in this case allows one landowner to sign on behalf of all landowners. The correct original source conveyance is a condemnation recorded at Book A, Page 490 and the Court's Opinion should have resolved any remaining issues with respect to this parcel.

**Claim No. 31.A, Parcel No. 1102142002, Daniel and Sandra Raitt**
**Claim No. 31.B, Parcel No. 1102142001, Daniel and Sandra Raitt**
**Claim No. 37, Parcel No. 1102128009, Terry Masengill and Katherine Willis**
**Claim No. 38, Parcel No. 1102126002, Pamela Chance**

All of these parcels are in the northwest quarter of Section 2 in Dallas Center beyond the depot grounds. Parcels 31.A and 31.B are beyond the depot grounds but they originally had an

alley or intervening street that was formally vacated in 1952. Likewise, parcel 37, on the other side of the corridor from parcels 31.A and 31.B, is also beyond the depot grounds and also originally had an intervening alley or street that was formally vacated. Finally, parcel 38, back on the other side of the corridor with parcels 31.A and 31.B, is well beyond the depot grounds and also originally had an intervening alley or street which has been vacated. The documents proving that the original alley was vacated are included in the Proposed Findings of Uncontroverted Facts for each parcel, the county assessor maps clearly establish adjacency for each parcel and the formal vacation of the alley is noted, and Exhibit C should resolve any doubt about it. The original source conveyance for all 4 parcels is the easement deed located at Book A, Page 422 and the Court's Opinion should have resolved any remaining issues related to these parcels.

**Claim 41.D, Parcel No. 0735301003, Claude Shields Trust**

Defendant originally objected to both ownership on the NITU date and adjacency and did not identify any applicable source conveyance. Claude Shields Trust owned the parcel in 2004, on the date the NITU was issued, and sold the property in 2006 to Hawbaker who in turn sold it in 2007 to the current owner, Daniel Keller. Plaintiffs previously provided documentation evidencing ownership on the NITU date. Plaintiffs also provided the plat map which clearly evidences adjacency. In addition, the applicable original source deed is an easement deed located at Book A, Page 437 and the Court's Opinion should have resolved any remaining issues related to this parcel.

**Claim 42, Parcel No. 0735351013, Kenneth J. Renfrow**
**Claim 43, Parcel No. 0735351001, Lois F. Peterson**

Defendant originally objected concerning adjacency and did not identify the original source conveyance.  Parcel 42 is within the corporate limits of Dallas Center and is clearly adjacent as depicted on the county assessor map and Exhibit C.  Parcel 43 is outside the corporate limits of Dallas Center, as shown on Exhibit C, but is also clearly adjacent as depicted on the county assessor map and Exhibit C.  These parcels are located in the west half of the southwest quarter of Section 35 and, thus, the original source deed applicable to both parcels 42 and 43 is an easement deed located at Book A, Page 437.  These parcels are clearly adjacent and the Court's Opinion should have resolved any remaining issues related to these parcels.

**Claim 47.K, Parcel No. 0601200003, Midwest Oil Seed, Inc.**
**Claim 77, Parcel No. 0226200004, Struyk's Slopes, Inc.**

Two parcels, 47.K and 77, were obtained by the railroad by neither condemnation or deed but instead were obtained through adverse possession, which amounts to a prescriptive easement under Iowa law.  Defendant originally objected that no original source conveyance document was produced and, even though the original NARA maps clearly showed that no original source conveyance documents existed, Plaintiffs went ahead and procured complete chains of title for both parcels that confirmed there was no source conveyance to the railroad.  As a result, since Iowa law is clear that the portion of the railroad's right-of-way obtained through adverse possession is a prescriptive easement, both claimants for parcels 47.K and 77 have valid claims for the taking of their land pursuant to the Trails Act.  *See Gates v. Colfax Northern Railway Co.*, 159 N.W.158, 462 (Iowa 1916); *Shimanek v. Chicago, M. & ST. P. Ry. Co.*, 152 N.W. 574 (Iowa 1915), *Drake v. Chicago, R.I. and R.R. Co.,* 19 N.W. 215, 217 (Iowa 1884).

**Claim 59.H, Parcel No. 0707279001, Minburn Cooperative Elevator**

This parcel is located in the southeast quarter of the northeast quarter of Section 7 and the northeast quarter of the northeast quarter of Section 7.  Defendant objected on adjacency grounds because this parcel was allegedly adjacent to depot grounds rather than the original right-of-way.  This parcel is actually partially adjacent to depot grounds (that portion in the southeast quarter of the northeast quarter) but is also partially <u>not</u> adjacent to depot grounds (that portion in the northeast quarter of the northeast quarter).[15]  The original source deeds for the original right-of-way are Book A, Page 430 and Book A, Page 527 and the Court's Opinion has already addressed these conveyances such that the portion of this parcel not adjacent to depot grounds should have already been resolved.  The deed for the depot grounds in this area is Book S, Page 233 and the issue of adjacency with respect to that portion of the parcel adjacent to depot grounds should be resolved by the Court's determination of the issues presented in Section IV.B *infra*.

**Claim 59.J, Parcel No. 0707278002, Minburn Cooperative Elevator**
**Claim 59.K, Parcel No. 0706400003, Minburn Cooperative Elevator**

Parcel 59.J is located in the northeast quarter of Section 7.  The Defendant objected because this parcel was allegedly adjacent to depot grounds.  However, the northeast quarter of Section 7 is clearly beyond the depot grounds and clearly beyond the platted land contained in the plat map.  The original source deed for the original right-of-way is Book A, Page 527 (and not the deed located at Book S, Page 233 applying to depot grounds) and the Court's Opinion should have already resolved any issue remaining with respect to this parcel.

---

[15]  *See* Section IV.B *infra* for a discussion of parcel 59.A, the former depot grounds, and parcels 59.B, 59.C, 59.D, 59.E, 59.F and 59.G which are adjacent to parcel 59.A.  Parcel 59.H is included in this category because that portion of parcel 59.H which is beyond the former depot grounds is entitled to summary judgment regardless of the Court's decision with respect to parcel 59.A.

11

Parcel 59.K is in Section 6, way north of any depot grounds, without any intervening alley, so adjacency is clearly established by the maps and county assessor reports. The original source deed for the original right-of-way is Book A, Page 428 and the Court's Opinion should have resolved any remaining issues with respect to this parcel.

### Claim 64, Parcel No. 0707226004, Randy and Sharon Wright

Defendant objected that this parcel was not adjacent. Plaintiffs previously provided the GIS parcel map, the original plat map, and the numbered parcel map for this parcel. The original plat map has no alley indicated such that adjacency of this parcel is clearly supported. The original source conveyance for the original right-of-way is a condemnation located at Book A, Page 527 and the Court's Opinion with respect to that original source conveyance should resolve any remaining issue.

### Claim 68.A, Parcel No. 0707226001, Mark and Beth Erb

The Defendant originally objected based on ownership on the NITU date. Plaintiffs previously provided all documentation, including the NITU deed and county assessor report, which clearly show that the Erbs owned the parcel since 1995, and Defendant never responded. The original source conveyance is the condemnation located at Book A, Page 527 and the Court's Opinion should have resolved any remaining issues with respect to this parcel.

### Claim 82, Parcel No. 0222200005, Rickie and Judy Huitt

Defendant identified the correct source conveyance as Book A, Page 546 but did not fill out the stipulation affect of the original source conveyance in its stipulation chart. The original source conveyance is located at Book A, Page 546, which is a condemnation, and the Court's Opinion should have now resolved any remaining issue related to this parcel.

**Claim 83.A, Parcel No. 0222200003, Ronald K. Bender, Joy Ann Hawbaker, and Nancy Ann Lucklow**

This parcel is located in the northeast quarter of Section 22.  The Defendant stipulated to ownership and adjacency but never did identify the applicable source conveyance.  The applicable source conveyance for this parcel is located at Book A, Page 546, which is an easement by condemnation, and the Court's Opinion with respect to parcels obtained by condemnation should resolve any remaining issue with respect to this parcel.

**Claim 97.A, Parcel No. 0215102004, Morris A. Michaelsen Estate**

This parcel is in Section 15.  The Defendant stipulated to ownership and adjacency but did not identify the original source conveyance.  The applicable source conveyance for this parcel is an easement by deed located at Book A, Page 447 and the Court's Opinion should resolve any remaining issue with respect to this parcel.

**Claim 124, Parcel No. 0226200007, Donald and Edna Arnold**

This parcel is located in the northwest quarter of the northeast quarter of Section 26 and the original source conveyance instrument is located at Book A, Page 538.  Plaintiffs previously supplemented all of the necessary information with respect to the original source conveyance for this parcel and Defendant never responded.  Plaintiffs believe this parcel is clearly an easement by condemnation and the Court's Opinion should resolve any remaining issue with respect to this parcel.

**III.   FOUR PARCELS IN MINBURN AND THREE PARCELS IN PERRY ARE MERE "PAPER" ALLEYS SUCH THAT THE CITIES ARE EQUITABLY ESTOPPED FROM CLAIMING OWNERSHIP OF AN INTERVENING ALLEY**

This trail traverses approximately 28 miles and passes through the towns of Minburn and Perry.  The Defendant objected to four parcels in Minburn and three parcels in Perry because the

13

parcels were purportedly not adjacent to the abandoned railroad corridor due to the existence of an alleged alley on the original plat that was filed in the towns of Minburn and Perry. In general, when the original plats were prepared in the late 1880's they included either a 16 foot wide or 20 foot wide strip between the parcel and the railroad right-of-way. The four parcels in Minburn and the three parcels in Perry are mere "paper" alleys because, even though they originally existed on the original plat, they never actually existed for the last 130 years.

### A. Iowa's Law Concerning "Paper" Alleys

The law concerning "paper" alleys in Iowa is not particularly in dispute. In *Town of Kenwood Park v. Leonard*, 158 N.W. 655 (Iowa 1916), the Supreme Court of Iowa specifically and thoroughly addressed the nature of the conveyance of a platted street to an unincorporated or incorporated town. Many years later, in *Fencl v. City of Harpers Ferry*, 620 N.W.2d 808 (Iowa 2001), the Supreme Court of Iowa addressed the concept of equitable estoppel when a "paper" alley was originally platted but the adjacent landowner successfully quieted title in the originally platted alley.

In *Kenwood Park*, the plat was duly filed and recorded on May 5, 1884, the town was incorporated in 1886, the city never formally accepted the street in controversy, and the owner of the adjacent land sued 30 years later to quiet title in the "paper" street. In general, the filing of a plat dedicating an alley or street to an unincorporated city only conveys an easement in the right to use the land for public purposes. 158 N.W.2d at 658. Similarly, when a city or town is incorporated at the time of the tender of the plat, the tender of the plat is in fee to the city if the municipality formally accepts the tender of the plat by an ordinance. *Id.* Generally, the tender in fee to an incorporated city continues until something has been done to specifically indicate to the public that the tender has been permanently withdrawn. *Id.* at 659.

14

The timing of the plat and the timing of the city's acceptance of the plat is an issue but is not always controlling.  The city or town has a reasonable time to make a formal acceptance and what is a reasonable time depends upon the facts and circumstances of each case.  However, as pointed out by the Supreme Court of Iowa, the timing of acceptance of the plat and the facts concerning usage are important when dealing with "a mere paper highway" or a mere "paper street":

> If the tender has continued for a reasonable time, and has never been accepted by any act of the city, and the city has never assumed jurisdiction or control over the proffered streets, and no disposition has been made of property, within the platted limits, that will be injuriously affected by the closing of the streets, the city is not in a position to complain of the act of the owner in withdrawing his offer and appropriating it to private use….  From the holding in the last case, *supra*, it appears that there is a clear distinction between a mere paper highway, a paper street, and one that has been open and used, and the use of which is essential to public convenience and welfare….  The thought runs through the decision that the right to a street may be vacated when no adverse interest has been acquired, even though a paper dedication has been made; that where there are no private interests involved, and the municipality has not accepted the tendered street, either by resolution contemplated by the statute or by taking possession and improving the street, or opening it for public travel, the paper street may be vacated.

*Kenwood Park*, 158 N.W. at 659 (emphasis added).

Even when the city receives a platted alley in fee but never uses the platted alley, the city can be equitably estopped from claiming an interest in the unused alley.  *Fencl v. City of Harpers Ferry*, 620 N.W.2d 808 (Iowa 2001).  In *Fencl*, a 20 foot strip of land was originally platted as an alley although it was never utilized as such.  Although the land was originally platted in 1854 and the Fencls acquired the land in 1962, the Fencls made various improvements to the property over time, including the tract originally designated as an alley, cleaned and maintained the property and eventually moved a trailer onto that portion of the property which was an alley, and planted grass, flowers, and trees and built a tool shed on the contested property.

15

The Supreme Court of Iowa concluded that the city was equitably estopped from claiming any interest in the platted alley. After stating generally that the doctrine of equitable estoppel is based on fair dealing and good faith, the Court set forth the specific elements of the doctrine of equitable estoppel and reviewed the history of several Iowa cases going back to 1881:

> We have said, however, that '[t]here can be no hard and fixed rule for determining when this principle should be applied.' … And, in fact, these elements have been largely ignored in our cases dealing with estoppels in the context of title disputes. *See, e.g., Pearson v. City of Guttenberg*, 245 N.W.2d 519, 528-31 (Iowa 1976) (quieting title in homeowners under theory of estoppels; traditional elements of equitable estoppel not discussed); *Page & Crane Lumber Co. v. City of Clear Lake*, 208 Iowa 735, 738, 225 N.W. 841, 842 (1929) (holding city 'estopped from asserting title' to an alley; traditional elements of equitable estoppel not discussed); *Simplot v. City of Dubuque,* 56 Iowa 639, 640-41, 10 N.W. 221, 222 (1881) (quieting title in claimant based estoppels theory and focusing on non-use of property by city and conduct of both parties indicating tract was owned by claimant).

*Fencl*, 620 N.W.2d at 815-816.

Under the test established in *Fencl*, the landowner must generally prove conduct on the part of the city indicating an abandonment of its interest and must also prove a claim of ownership through adverse possession (even though adverse possession does not technically apply against governmental entities). In addition, the Court must find that to allow the city to assert its ownership interest would unfairly damage the person claiming the property adversely to the city. 620 N.W.2d at 816. Under the facts of *Fencl*, the Supreme Court of Iowa concluded that the city had not used the property for more than 10 years, that although "mere non-use" was not enough, the non-use was coupled with affirmative evidence of a clear determination to abandon, adverse possession was clearly established because the landowner managed and cared for the property in a variety of ways, and that damage had clearly occurred.

16

In this case, in both the towns of Minburn and Perry, the "paper" alleys were never utilized over 130 years and the landowners cared for and maintained the property such that the elements of adverse possession have been clearly met.  In Minburn, all four landowners have prepared affidavits in support of their ownership of the "paper" alley and the city of Minburn itself, by and through an affidavit from the Mayor Pro Tem, acknowledges that Minburn does not claim any ownership interest in and does not contest the actual ownership of the adjacent landowners.  In Perry, one of the three landowners have prepared an affidavit in support of ownership and Perry was unwilling to prepare an affidavit by the time of filing.

**B. The Four Parcels in Minburn Include a "Paper" Alley Such that the City is Equitably Estopped from Claiming Ownership of the Alleged Intervening Alley**

The four "paper" alley parcels in Minburn are 58, 63, 65, and 67 and are clearly marked and identified on Exhibit B.  In each instance, the landowner owned the property on the NITU date and the property was adjacent to the abandoned railroad right-of-way but for the existence of an original intervening alley on the original plat.[16]  Each of the landowners has filed an affidavit clearly establishing ownership on the NITU date and adjacency because they have maintained and utilized the alley through adverse possession.  In addition, Minburn itself, by and through an affidavit from David Baccus, Mayor Pro Tem, "does not claim ownership in any purported alley" between parcels 58, 63, 65 and 67 and the former right-of-way, "does not oppose and actually agrees" that these landowners "own their land up to and abutting the former railroad right-of-way," and agrees that "there is no alley" and has "never been an alley separating" the parcels from the former right-of-way.  *See* Baccus affidavit, attached hereto as

---

[16]   The original plat for Minburn is dated April 8, 1869.  Minburn was actually incorporated on May 24, 1892.  Plaintiffs have been unable to locate any ordinance formally accepting the plat upon incorporation but have been told and do stipulate that it exists somewhere.  The issue is basically moot, however, due to the affidavits filed by the landowners and on behalf of Minburn.

17

Exhibit D.  Since the original conveyance  to the railroad was an easement, the Court's Opinion should actually resolve all remaining issues with respect to those parcels.

**Claim 58, Parcel No. 070816004, Anthony and Tammy Durnan**

The original plat had a 30-foot alley.  Plaintiffs clearly used the land up to the railroad right-of-way as evidenced in the GIS aerial parcel maps and the Durnan affidavit.[17]  In addition, the Baccus affidavit, Exhibit D, establishes that the Durnans own the intervening strip.  The original conveyance document to the railroad was Book A, Page 525, an easement by condemnation, and the Court's Opinion should resolve any remaining issues with respect to this parcel.

**Claim 63, Parcel No. 0707229007, Larry and Darla Pollock**
**Claim 65, Parcel No. 0707229009, Shirley Cornelison and the Estate of Darrell Roger Cornelison**
**Claim 67, Parcel No. 0707229008, Larry and Denise Cornelison**

The affidavits from these landowners have been included in the accompanying Proposed Findings of Uncontroverted Fact for each parcel.  In addition, the Baccus affidavit, Exhibit D, clearly establishes that the city of Minburn has no claim to ownership for the intervening strip. The original source deed for the right-of-way is Book A, Page 527, which is an easement by condemnation, and the Court's Opinion should resolve any remaining issues with respect to these parcels.

**C. The Three Parcels in Perry Include a "Paper" Alley Such That the City is Equitably Estopped From Claiming Ownership of the Alleged Intervening Alley**

The three paper alley parcels in Perry are 108, 109 and 110.  In each instance, the landowner owned the property on the NITU date and the property was adjacent to the abandoned

---

[17]  The Durnan affidavit is included in the Proposed Findings of Uncontroverted Fact for Claim 58.  Likewise, the other affidavits in support of "paper" alleys are also included for Claims 63, 65, 67, 109, 22, 23, 30, 32, 35 and 36.

railroad right-of-way but for the existence of an original 20-foot wide intervening alley on the original plat.[18]  No actual alley ever existed since 1869 and these landowners should have valid claims because they have maintained and utilized the alley through adverse possession and Perry should be equitably estopped from claiming ownership.  Since the original conveyance to the railroad was an easement, the Court's Opinion should actually resolve all remaining issues with respect to these parcels.

**Claim 108, Parcel No. 0209434004, Robert Galivan**
**Claim 109, Parcel No. 0209434003, Frog Creek, Ltc.**
**Claim 110, Parcel No. 0209434002, Karen J. McDowell**

An affidavit for Claim 109, included in the Proposed Statement of Uncontroverted Facts, demonstrates ownership through equitable estoppel of the intervening "paper" alley. Photographs of these 3 parcels are also included in the Proposed Statement of Uncontroverted Facts.  The photographs clearly demonstrate that no alley ever existed ─ in fact, the "alley" is a sharp incline from the lot up to the right-of-way and is wooded and landscaped.  In addition, as seen on the aerial photograph for parcel 108, a maintenance shed or outbuilding actually exists on the "alley" and may actually protrude onto the right-of-way.  All of these parcels are located in the northeast quarter of the southeast quarter of Section 9 and the original source deed applicable is Book A, Page 445.  The Court's Opinion should resolve any remaining issues with respect to these parcels.

---

[18]   The original plat for Perry, recorded at Book C, Page 287, is dated April 10, 1869.  Perry was actually incorporated on May 18, 1875.  Plaintiffs have been unable to locate any ordinance formally accepting the plat upon incorporation but have been told and do stipulate that it exists somewhere.

IV.    **28 PARCELS IN MINBURN AND PERRY ARE EITHER ON THE FORMER DEPOT GROUNDS OR ADJACENT TO THE FORMER DEPOT GROUNDS AND DEFENDANT'S LIABILTY DEPENDS ON WHETHER THE RAILROAD ORIGINALLY RECEIVED THE DEPOT GROUNDS AS AN EASEMENT OR IN FEE**

There are 13 disputed parcels in Minburn and 15 disputed parcels in Perry where the Defendant objected based on adjacency.  Defendant's adjacency objection seemed to be based on a conclusion that the parcels were generally adjacent to the former depot grounds rather than the abandoned corridor and since the railroad acquired the depot grounds in fee, though the original 100 foot right-of-way was an easement, those parcels adjacent to the depot grounds had no claim because there was an intervening parcel between their parcel and the right-of-way that the railroad owned in fee (the former depot grounds).

In both Minburn and Perry, the railroad originally acquired an easement for the original 100 foot right-of-way and then later obtained additional land on both sides of the original right-of-way for their depot grounds.  The parties have disputed whether the land acquired by the railroad for depot grounds was an easement for railroad purposes or whether the railroad acquired the land in fee.  In addition to the issue of whether the railroad received the depot grounds as an easement or in fee, Defendant's adjacency objection doesn't solve the entire issue even if the railroad originally acquired the depot grounds in fee because, in each municipality, some parcels are actually part of the former depot grounds rather than merely being adjacent to the former depot grounds.  A determination by this Court whether the railroad acquired the depot grounds as an easement for railroad purposes or in fee will automatically lead to a conclusion that some parcels will win and some parcels will lose depending on the Court's determination of that underlying issue.

The railroad generally abandoned the depot grounds long before they formally intended to abandon the right-of-way.  The railroad generally quit claimed the depot grounds to an adjacent landowner or even one of the municipalities.  If the depot grounds were originally an easement, the railroad's quit claim deed is invalid to transfer fee title to the landowner or one of the municipalities and the adjacent landowner to the depot grounds would own the underlying fee all the way to the centerline of the abandoned railroad corridor.  If, on the other hand, the railroad originally acquired the depot grounds in fee, the railroad's subsequent quit claim deed to a new owner or one of the municipalities would have conveyed fee in the depot grounds and the current owner of the parcel on the former depot grounds would be adjacent to the abandoned railroad corridor and would be entitled to recover.  In the circumstance where the railroad owned the depot grounds in fee and the railroad's quit claim deed conveyed fee ownership, those landowners merely adjacent to the former depot grounds but not actually part of the former depot grounds would not be adjacent to the abandoned railroad corridor and would not be entitled to recover.  Since there are parcels in both Minburn and Perry that are either part of the former railroad's depot grounds and parcels that are adjacent to the former depot grounds, the Court must determine whether the railroad originally acquired the depot grounds as an easement or in fee and, therefore, which parcels in the towns of Minburn and Perry who win or lose will be determined by that specific determination by the Court.

## A. Iowa's Law on Whether the Railroad's Depot Grounds were Originally Conveyed as an Easement or in Fee

The question of whether the railroad originally acquired an easement or fee with respect to the original 100 foot strip for the railroad's right-of-way has already been specifically answered by the Court's Opinion (D.E. 73).  The Court's conclusion that the railroad obtained a

mere easement for railroad purposes was correctly based on a long line of cases from the Iowa Courts including *Macerich Real Estate Co. v. City of Ames*, 433 N.W. 2d 726, 728 (Iowa 1988) and *Estate of Rockafellow v. LIHS*, 494 N.W. 2d 734 (Iowa App. 1992).  Although it is clear and already decided in this case that the original right-of-way was an easement, as it is in both Minburn and Perry, Plaintiffs are not aware of any specific case ruling on whether the subsequent depot grounds on either side of the original right-of-way was also an easement or was received in fee.  However, the general principles of deed construction discussed and analyzed in the Court's Opinion should apply to an analysis of the depot grounds just like the analysis concerning the original right-of-way.

The right to acquire private land for the railroad's right-of-way was first established in Iowa by the Iowa Legislature in 1853.  In a statute specifically entitled "Right of Way Act", the Iowa Legislature specifically stated that the railroad can obtain a right-of-way "as may be necessary for the location, construction and convenient use of their road":

Chapter 31.

Right of Way.

An ACT granting to railroad companies the right of way.

*Be it enacted by the General Assembly of the State of Iowa:*

Section 1.  <u>Right of way−may take and use</u>−limit−stations.  That any railroad corporation in this state heretofore organized, or that may be hereafter organized under the laws of this state, may take and hold, under the provisions contained in this act, <u>so much real estate as may be necessary for the location, construction, and convenient use of their road</u>.  Such corporation may also take; remove, and use for the construction and repair of said road and its appurtenances, any earth, gravel, stone, timber or other materials, on or from the land so taken: <u>provided, that the land so taken otherwise than by the consent of the owners, shall not exceed one hundred feet in width</u>, expect for wood and water stations, unless where greater width is necessary for excavation, embankment, or depositing waste earth.

22

Code of Iowa, 1853, Chapter 31, Section 1 (emphasis added) (attached hereto as Exhibit E).

Chapter 4.

Taking Private Property for Works of Internal Improvement.

Section 1241.  Any railway corporation organized in this state, may take and hold, under the provisions of this chapter, <u>so much real estate as may be necessary for the location, construction, and convenient use of its railway</u>, and may also take, remove, and use for the construction and repair of said railway and its arpurtenances, any earth, gravel, stone, timber, or other materials, on or from the land so taken; <u>the land so taken otherwise than by the consent of the owners, shall not exceed one hundred feet in width</u>, except for wood and water stations, unless where greater width is necessary for excavation, embankment, or depositing waste earth.

Section 1241 of Chapter 4 of Title X of the Iowa Code of 1873 (emphasis added) (attached hereto as Exhibit F).

Railroads in Iowa may acquire their right-of-way by taking a strip of land 100 feet wide through the landowners' property.  The railroad can acquire the right-of-way up to 100 feet wide with or without the consent of the landowner because, if the landowner consents, a deed for the right-of-way will be recorded and, if the landowner does not consent, the railroad can and will start condemnation proceedings.  Also, and most importantly, as set forth in the statute, the railroad can also obtain more than a strip 100 feet wide for depot or station grounds but only with the consent of the landowner.  Thus, the original right-of-way is an easement under Iowa law, as the Court has already determined, but the granting of additional land on either side of the original right-of-way in excess of the 100 foot wide strip for the right-of-way can only be accomplished by consent of the landowner.  The consent of the landowner is evidenced in a subsequent deed and it is the interpretation of that subsequent deed that is necessary in this instance.

23

In Minburn, as an example, the railroad originally acquired its right-of-way through a grant by Daniel Rogers and his wife in February of 1869.  The deed is located at Book A, Page 435 and specifically grants the right-of-way for railroad purposes.  There is no question that the original deed located at Book A, Page 435 is an easement limited to railroad purposes.  Then, in May of 1871, in a deed located at Book S, Page 234, Daniel Rogers and his wife, for consideration of one dollar, granted additional land on either side of the original right-of-way for station grounds.[19]  Defendant has steadfastly maintained that the deed for the station grounds adjacent to the right-of-way was a grant in fee.  Plaintiffs have argued that the grant to the railroad for station grounds, a clear railroad purpose, should be a grant of an easement just like the original grant of the right-of-way is the grant of an easement for railroad purposes.[20]  Either way, however, the Court must determine whether the grant of the depot grounds in Book S, Page 234 was a fee or an easement and, based on that determination, some parcels will win and some parcels will lose.

### B. The 13 Parcels in Minburn Either Part of the Former Depot Grounds or Adjacent to the Former Depot Grounds

There are 13 parcels in Minburn impacted by this issue.  But, the issue is rather straight forward.  The 13 parcels are 59.A, 59.B, 59.C, 59.D, 59.F, 59.G, 59.I, 60, 61.A, 62.A, 62.B, 62.C, and 62.D.  Claimant 59 is the Minburn Cooperative Elevator and the Minburn Cooperative Elevator received parcel 59.A in a quit claim deed from the railroad in March of 1968.  Parcel

---

[19]   The deeds for the right-of-way at Book A, Page 435 and for the station grounds at Book S, Page 234 are confusing at best.  The deed for the right-of-way at Book A, Page 435 is dated February 15, 1869, is notarized on February 15, 1869, and is then recorded on May 17, 1871.  The deed for the station grounds located at Book S, Page 234 is dated May 17, 1871, appears to be signed on April 12, 1869, and appears to be notarized on April 12, 1869.

[20]   The law in Iowa for over a century, culminating in *Lowers v. United States*, 663 N.W.2d 408 (Iowa 2003), is that a deed to the railroad for the railroad's right-of-way conveys an easement for railroad purposes if the grant is for the right-of-way in the body of the deed.  The same rationale and ultimate conclusion should be the same if the grant is for the railroad's "depot grounds" in the body of the deed.

59.A is the former depot grounds.  All of the other parcels in Minburn, including 59.B, 59.C, 59.D, 59.F, 59.G, 59.I, 60, 61.A, 62.A, 62.B, 62.C, and 62.D, are basically adjacent to 59.A.[21]

If Minburn Cooperative Elevator received the depot grounds in fee by and through the railroad's quit claim deed in March of 1968, then parcel 59.A is adjacent to the abandoned railroad corridor and 59.A has a valid claim and the other 12 parcels do not.  If, however, depot grounds are easements, then the quit claim deed in March of 1968 did not convey fee title and 59.A is not adjacent to the abandoned railroad corridor and the other 12 parcels are adjacent because they are adjacent to the former depot grounds where the railroad originally acquired an easement and they own the underlying fee to the centerline of the abandoned railroad corridor.

### C. There are 5 Parcels in Perry Which are Part of the Former Depot Grounds, 7 Parcels in Perry which are Adjacent to the Depot Grounds, and 3 Other Parcels in Perry which are Simply Adjacent to the Railroad's Right-of-Way

The issue in Perry is very similar to the issue in Minburn with a different breakdown of how the parcels should be categorized.  In Perry, there are 5 parcels that are part of the former depot grounds[22] and there are 7 other parcels which are adjacent to the depot grounds.[23]  In addition, in Perry, there are 3 parcels where the defendant has objected based on adjacency because the parcel was allegedly separated from the right-of-way by the former depot grounds,

---

[21] Plaintiffs have mapped all 13 parcels in Minburn to demonstrate their location in relationship to the former depot grounds and to each other and the color-coded map is filed simultaneously herewith as Exhibit A.  All of the supporting documentation for each parcel in this category, including the NITU deed, the county assessor report and map, the original source conveyance, and photographs are included within the Statement of Uncontroverted Facts for each parcel.

[22] The 5 parcels in Perry that are part of the former depot grounds are 98.B, 103, 104, 105, and 106.  *See* the enlarged parcel map for Perry attached hereto as Exhibit B.

[23] The 7 parcels in Perry that are adjacent to the former depot grounds are 98.A, 99.B, 100.A, 100.B, 101.A, 101.B and 107.  *See* Exhibit B.

but the Defendant is incorrect and the parcels are not adjacent to the former depot grounds but are instead simply adjacent to the right-of-way beyond the depot grounds.[24]

Although the original right-of-way through Perry was an easement,[25] grantor Willis granted "depot grounds" to the railroad in the deed located at Book S, Page 235 on May 17, 1871. The deed located at Book S, Page 235 specifically states that "it is the intention of the above description to cover and of the above instrument to convey, that part of the town plat of the Town of Perry, known, occupied, and recorded as the Depot Grounds of the Des Moines Valley Railroad and indicated as such on the recorded plat of said town." The consideration for the deed was five dollars.

There are 5 parcels in Perry which are part of the former depot grounds: 98.B, 103, 104, 105 and 106. If the railroad originally obtained the depot grounds in fee, the current landowners then also subsequently obtained the land on the former depot grounds in fee and the 5 parcels which are part of the former depot grounds are adjacent to the abandoned right-of-way and have valid claims.

There are 7 parcels in Perry that are adjacent to the former depot grounds: 98.A, 99.B, 100.A, 100.B, 101.A, 101.B and 107. If the railroad originally obtained the land utilized for the former depot grounds as an easement, rather than a fee, then the 7 parcels adjacent to the former

---

[24] The 3 parcels in Perry, objected to by the Defendant based on adjacency grounds that are actually simply adjacent to the right-of-way, are 97.B, 97.C, and 97.D. *See* Exhibit B.

[25] Plaintiffs have maintained that the original railroad right-of-way was an easement for railroad purposes in the town of Perry. Through exhaustive searches, Plaintiffs were able to provide a right-of-way deed for section 9 in the town of Perry but could not find a deed for Section 10. Finally, after many calls with the Dallas County Recorder's Office over the past few years, Plaintiffs' counsel personally went to the Recorder's Office and searched the land records. It turns out that there is an explanation for why no deeds were located for Section 10 – one book, and several pages of another book (for deed Misc-451) are gone from the Recorder's office!! So, in an effort to provide evidence that the original right-of-way was an easement, Plaintiffs provide the grantor/grantee indexes showing that not only was the whole town of Perry subject to Condemnation proceedings recorded at Book F, Page 123 (Exhibit G) (book missing), but for Section 10 specifically, grantor Willis granted an easement through a "right of way" deed dated December 5, 1868, recorded at Book Misc, Page 451 (Exhibit H) (specific pages from book missing).

26

depot grounds actually own the underlying fee to the centerline of the railroad and they then have valid claims.  For example, parcel 98.A is separated from the trail corridor by parcel 98.B.  If parcel 98.B, which is part of the former depot grounds, was received in fee, parcel 98.A would not be adjacent.  If, on the other hand, the depot grounds were an easement, parcel 98.B would be an easement and parcel 98.A would be a valid claim.  Parcels 99.B, 100.A, 100.B, 101.A, 101.B and 107 are either adjacent to the former depot grounds or both adjacent to and part of the former depot grounds,[26] and even have another intervening parcel separating the land from the corridor but, if the depot grounds were an easement, they would still have valid claims based on adjacency.

There are 3 additional parcels in Perry that are simply adjacent to the railroad's original right-of-way beyond the depot grounds:  97.B, 97.C, and 97.D.  Although the Defendant objected to these 3 parcels on adjacency grounds, ostensibly because they were either part of the former depot grounds or adjacent to the former depot grounds, they are actually adjacent to the right-of-way rather than being adjacent to the former depot grounds.  As a result, these 3 parcels are adjacent and the Court's Opinion should have resolved any remaining issues with respect to these parcels.

---

[26]   Parcels 100.A, 100.B, and 101.A are both part of the former depot grounds and adjacent to the former depot grounds.

V.      **THERE ARE 16 PARCELS IN DALLAS CENTER, 5 PARCELS OWNED BY THE CITY OF DALLAS CENTER, 7 PARCELS INVOLVING AN INTERVENING ALLEY EITHER OWNED BY THE ADJACENT LANDOWNER OR BY THE CITY OF DALLAS CENTER, AND 4 PARCELS THAT ARE PART OF THE FORMER DEPOT GROUNDS**

The 16 parcels located in Dallas Center present some rather unique legal issues.  First, Dallas Center is a class member who owns 5 parcels[27] and Dallas Center is the ultimate trail user. Second, there are 7 parcels[28] where the Defendant has objected because of an alleged intervening "paper" alley but, since Dallas Center is a class member unlike the parcels in Minburn and Perry, Dallas Center would own the intervening "paper" alley adjacent to the corridor instead of the other class members if the other landowners' claims of equitable estoppel fail so, unlike Minburn and Perry, Dallas Center contests the equitable estoppel arguments presented by the adjoining landowners.  Third, there are 4 parcels[29] that are part of the former depot grounds and their ownership and adjacency issues will be resolved by the Court's determination as to whether the railroad originally received the depot grounds as an easement or in fee, just like the issue presented in Minburn and Perry.

A.    **The 5 Parcels Owned by the City of Dallas Center where Defendant has Objected that Dallas Center Became the Ultimate Trail User**

The City of Dallas Center is a Class Member who owns parcels 15.A, 15.B, 15.C, 15.D, and 15.E.  Although the 5 parcels do have some unique characteristics, it is clear that Dallas Center owned the parcels on the NITU date and the parcels generally adjoin the abandoned

---

[27]  The City of Dallas Center owns parcels 15.A, 15.B, 15.C, 15.D, and 15.E and ultimately became the trail user as discussed in Section V.A *infra*.

[28]  The parcels where the landowners claim ownership and adjacency to the abandoned railroad corridor because of the existence of a "paper" alley and Dallas Center claims ownership of the alley as a class member are 22, 23, 24, 30, 32, 35, and 36 as discussed further in Section V.B *infra*.

[29]  The 4 parcels where the Defendant has objected and the parcels are part of the former depot grounds are 26.A, 26.B, 27 and 29 as discussed further in Section V.C *infra*.

railroad corridor.[30]  The Defendant has generally objected that Dallas Center cannot recover for the 5 parcels they owned on the NITU date because they ultimately became the trail user. However, Plaintiffs believe Dallas Center has a viable claim for all 5 parcels both factually and legally.

The Court's Opinion (D.E. 73) discussed the issuance of the NITU on July 7, 2004, at the request of the Iowa Natural Heritage Foundation ("Foundation"), and the ultimate notification by the Foundation that a Trail Use Agreement had been reached on January 28, 2008.[31]  Subsequent to the execution of the Trail Use Agreement, Dallas County conveyed a portion of the corridor to Dallas Center.[32]  As a result, Dallas Center did not request the NITU, the federal action by the STB that took their land, and did not negotiate the Trail Use Agreement with the Union Pacific. After the corridor was railbanked and the Trail Use Agreement was signed in January of 2008, the corridor was then subsequently conveyed to Dallas Center in February of 2009 so that Dallas Center could operate a trail.  At that point in time, Dallas Center basically had two options:  (1) allow their land to be taken pursuant to the Trails Act with no control over the ultimate trail; or (2) allow their land to be taken pursuant to the Trails Act and exercise some control over the corridor that runs through their town.   Dallas Center opted for the second option, but that

---

[30]  Parcel 15.D is a library that is actually part of the former depot grounds.  The discussion concerning whether the railroad originally acquired the depot grounds in fee or as an easement is discussed in Section IV *supra*.  Parcel 15.D could have been moved to Section IV for discussion purposes, along with parcels in Minburn and Perry, but Plaintiffs opted to keep it in Section V along with all other parcels in Dallas Center and Plaintiffs actually identify and discuss the parcels in Dallas Center which are part of the former depot grounds in Section V.C *infra*.

[31]  *See* the Court's Opinion, D.E. 73, at page 5.

[32]   Dallas Center passed Resolution No. 2009-1 on January 27, 2009 which authorized the city to enter into an Assignment and Assumption Agreement and to accept a quit claim deed from Dallas County for that portion of the trail located within the corporate limits of Dallas Center.  The quit claim deed from Dallas County to Dallas Center was executed on February 17, 2009.  The quit claim deed specifically provides that the trail "is subject to terms and conditions of the National Trails System Act" and that Dallas Center "shall maintain, or cause to be maintained for the intended public use,…" the improvement for 20 years.  The consideration for the quit claim deed was $69,287. The documents concerning Resolution No. 2009-01 and the quit claim deed from Dallas County to Dallas Center on February 17, 2009 are attached hereto as Exhibit I.

decision should not impact the Defendant's responsibility or liability for the taking.  The federal government still maintains jurisdiction over the right-of-way.  Defendant has not articulated with any precision the nature of their objection but Plaintiffs are not aware of any reason or law that would refute the fact that their land was taken pursuant to the Trails Act.

The 5 parcels owned by Dallas Center with a brief description of the nature of the parcel, pursuant to the Statement of Uncontroverted Facts, are as follows:

**Claim 15.A, Parcel No. 1112100003, City of Dallas Center**

This is a wastewater facility outside the City which is clearly adjacent to the abandoned corridor.  The original source conveyance to the railroad is an easement deed located at Book A, Page 434 and the Court's Opinion should have resolved any remaining issues with respect to this parcel.

**Claim 15.B, Parcel No. 1102265001, City of Dallas Center**

This is the city swimming pool which is separated from the abandoned corridor by an alleged intervening alley but, whether the alley existed or not, the city would have owned the intervening alley and would be adjacent to the abandoned corridor.  The correct original source conveyance document is Book A, Page 492 and the Court's Opinion should have resolved any remaining issues with respect to this parcel.

**Claim 15.C, Parcel No. 1102260001, City of Dallas Center**

Part of this parcel is part of the former depot grounds and part is not.  It is bare ground that has an underground sewer installation.  The original correct source conveyance document is Book A, Page 422 and the Court's prior Opinion should have resolved any remaining issues with respect to this parcel.

### Claim 15.D, Parcel No. 1102180001, City of Dallas Center

This is the library located on the former depot grounds.  Dallas Center received this parcel from the railroad in a quit claim deed.  If the depot grounds were obtained in fee by the railroad, this parcel is adjacent and is valid.  The correct original source conveyance document for the original right-of-way is again Book A, Page 492, there is no intervening alley for this parcel, and the Court's Opinion should have resolved any remaining issues with respect to this parcel.

### Claim 15.E, Parcel No. 1102127001, City of Dallas Center

This parcel is further north, beyond the depot grounds, and is clearly adjacent with no alley.  The correct original source conveyance is Book A, Page 422 and the Court's Opinion should have resolved any remaining issues with respect to this parcel.

**B. The 7 Parcels in Dallas Center that are either Owned by the Adjacent Landowner as "Paper" Alleys Because the City is Equitably Estopped from Claiming Ownership or the City of Dallas Center Owns Them Because the City of Dallas Center Owns the Intervening Alley**

There are 7 parcels in Dallas Center where the Defendant has objected on adjacency grounds because of an alleged intervening strip between the parcel and the abandoned railroad corridor.  Like the similar landowners in Minburn and Perry, the landowners in Dallas Center claim that the city is equitably estopped from claiming ownership of the intervening strip because, even though the intervening strip is shown on the original plat for Dallas Center, no alley has ever actually existed adjacent to the abandoned railroad corridor for 130 years.  Dallas Center, however, unlike Minburn and Perry, claims ownership of the "paper" alley and argues that they are not equitably estopped from claiming their ownership that evolves from the original plat.  Unlike the towns of Minburn and Perry, however, Dallas Center is a class member and, if

Dallas Center is not equitably estopped from ownership such that the adjacent landowners claim ownership in the intervening strip of ground, then Dallas Center is the owner of the intervening strip rather than the adjacent landowner and Dallas Center owns to the centerline of the abandoned railroad corridor.

The Court must decide if the adjacent landowners can successfully claim ownership through the doctrine of equitable estoppel under the *Fencl* opinion.  If not, then Dallas Center can claim ownership of the intervening alley and should be allowed to amend its claim through substitution for all of the alleys that are adjacent to the abandoned corridor for these 7 parcels. The 7 parcels where the adjacent landowners in Dallas Center claim that the city is equitably estopped from claiming ownership of the "paper" alley are as follows:

> **Claim 22, Parcel No. 1102270001, David and Brenda Jermier**
> **Claim 23, Parcel No. 1102266003, Ronald and Dixie Jarboe**
> **Claim 24, Parcel No. 1102266006, Michael and Gwendolyn Needles**
> **Claim 30, Parcel No. 1102142004, Ronald Jarboe and Eugene Bertrand**
> **Claim 32, Parcel No. 1102138001, Dale and Wynona Shelley**
> **Claim 35, Parcel No. 1102132001, Darwin and Norene Pittman**
> **Claim 36, Parcel No. 1102126005, Mitchell and Cynthia Price**

Plaintiffs have previously provided the GIS parcel maps, the original plat map, the numbered parcel maps, and the highlighted plat maps for these parcels.  The original plat map indicated a 16 foot alley for each of these parcels and the landowners, through their Affidavits,[33] claim that the alley never existed and that Dallas Center should be equitably estopped from claiming ownership.  It is these class members' position that they now own the 16 foot strip and that the City of Dallas Center is equitably estopped from claiming ownership under Iowa law. The original applicable source conveyance document for these documents is either Book A, Page

---

[33] Affidavits from the landowners are included in the accompanying Proposed Findings of Uncontroverted Facts for claims 22, 23, 30, 32, 35, and 36.

492 or Book A, Page 422 and, either way, the Court's Opinion should have resolved any remaining issues with respect to easement and scope of the easement.

### C.  4 Parcels in Dallas Center which are Part of the Former Depot Grounds

There are 4 parcels in Dallas Center, 26.A, 26.B, 27 and 29, that are part of the original depot grounds.[34]  This issue, like the issue in Minburn and Perry, will be decided by what the Court determines as to whether the railroad originally received the depot grounds as an easement or in fee.  The 4 parcels which are clearly part of the former depot grounds are:

**Claim No. 26.A, Parcel No. 1102256001, Farmers Cooperative Company**
**Claim No. 26.B, Parcel No. 1102251004, Farmers Cooperative Company**

Defendant originally objected to ownership on the NITU date and adjacency based on an intervening strip or road, Railroad Street.  Plaintiffs provided documentation of ownership on the NITU date and also provided documentation that Railroad Street was formerly vacated by the deed located at Book 532, Page 162, such that Defendant's adjacency objection had no merit. The original source deed for the original right-of-way is Book A, Page 492 and the Court has already determined liability with respect to this source conveyance.

**Claim 27, Parcel No. 1102195001, James B. Fox**
**Claim 29, Parcel No. 1102143003, Steve Jenkins**

Defendant has stipulated to ownership on the NITU date and adjacency (partial) on Claim 27 but did not identify the original source conveyance.  This parcel is located in Section 2 and crosses over from the northeast quarter to the northwest quarter of section 2.  The original source deed for the original right-of-way was Book A, Page 422 pertaining to the northwest quarter and Book A, Page 492 pertaining to the northeast quarter.  The deed for the depot grounds is Book S,

---

[34]  Parcel 15.D is also part of the former depot grounds and part of parcel 15.C is part of the former depot grounds and part is not.

Page 232 and pertains to the northwest quarter.  Claim 27 is clearly adjacent and should clearly win under the Court's Opinion for the northeast quarter of section 2 and, for the northwest quarter of section 2, if the railroad obtained the depot grounds in fee then James Fox obtained this parcel in fee and if the railroad originally received an easement then the railroad's quit claim deed merely convened an easement and James Fox will lose for the northwest quarter of section 2.  Parcel 29 is also part of the former depot grounds and is entirely in the northwest quarter of section 2.  The original conveyance to the railroad for the abandoned corridor is Book A, Page 422 and the deed for the depot grounds in the northwest quarter of Section 2 is Book S, Page 232.

## VI.    PLAINTIFFS AGREE TO DISMISS 8 ADDITIONAL PARCELS

The 8 additional parcels Plaintiffs now agree to dismiss consist of 3 parcels where the railroad owned the right-of-way in fee and 5 parcels that are not adjacent to the right-of-way due to an intervening road or street or parcel.  The 8 parcels, with a brief description of status, are as follows:

**Parcels 17, 25 and 28** ─ not adjacent due to intervening road in Dallas Center.

**Parcels 99.A and 102.A** ─ not adjacent, even through part of former depot grounds, due to intervening parcel in Perry.

**Parcels 113.B, 113.C, and 113.D** ─ the railroad, on that portion of the abandoned corridor between Perry and Dawson, originally obtained the right-of-way in fee.

## VI.    CONCLUSION

Plaintiffs have conclusively established that a taking of Plaintiffs' property has occurred for the 20 parcels discussed in Section II where all original objections advanced by the Defendant have been resolved and for all 7 parcels discussed in Section III involving "paper"

alleys in either Minburn or Perry.   Similarly, Plaintiffs have established that a taking of Plaintiffs' property has occurred for those parcels discussed in Section IV involving parcels either part of the former depot grounds or adjacent to the former depot grounds in Minburn and Perry, depending on whether the Court determines the original grant to the railroad for the depot grounds conveyed an easement or fee.   Finally, Plaintiffs have established, for all of the parcels in Dallas Center discussed in Section V, that Dallas Center has a valid claim for the parcels owned by Dallas Center, that either the adjoining landowners or Dallas Center has a valid claim for parcels separated by an alley in the original plat, and parcels that are part of the former depot grounds have valid claims depending on the Court's ruling on the easement or fee issue. Accordingly, Plaintiffs request the Court issue an Order declaring that there was a compensable taking of Plaintiffs' property pursuant to the Trails Act.

Respectfully submitted by:

BAKER STERCHI COWDEN & RICE, L.L.C.

By____/s/ Thomas S. Stewart_____
Thomas S. Stewart
Elizabeth McCulley
2400 Pershing Road, Suite 500
Kansas City, MO 64108
(816) 471-2121
(816) 472-0288 (facsimile)
stewart@bscr-law.com
mcculley@bscr-law.com

35

-and-

Steven M. Wald
J. Robert Sears
1010 Market Street, Suite 950
St. Louis, MO 63102-1708
(314) 231-2925
(314) 231-4857 (facsimile)
wald@bscr-law.com
sears@bscr-law.com
ATTORNEYS FOR PLAINTIFFS

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing was filed with the Clerk of the Court via ECF on this 9th day of April, 2012 with a copy of the same being served via electronic mail (ECF) by the Clerk of the Court on this 9th day of April, 2012, to:

Frank James Singer
U.S. Department of Justice
P.O. Box 663
Washington, D.C.  20044-0663
(202) 616-9409
(202) 305-0506 facsimile
Frank.singer@usdoj.gov

ATTORNEY FOR DEFENDANT

                    *s/ Thomas S. Stewart*
ATTORNEYS FOR PLAINTIFFS

36