IN THE UNITED STATES COURT OF FEDERAL CLAIMS

|  |  |  |
|---|---|---|
| STEVE JENKINS, *et al.*,<br>for themselves and as representatives of a<br>class of similarly situated persons,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 09-241L<br><br>Judge Nancy B. Firestone<br><br>*Electronically filed on July 6, 2012* |

UNITED STATES' SECOND CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

&

RESPONSE TO PLAINTIFFS' SECOND CROSS-MOTION
FOR PARTIAL SUMMARY JUDGMENT

## TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT ........................................................................... 3

II.     ARGUMENT ..................................................................................................... 4

      A.    The United States is entitled to summary judgment as to those parcels that adjoin segments of the rail corridor Union Pacific owned in fee. .............. 4

           1.    Union Pacific owned the westerly depot grounds in Dallas Center in fee............................................................................................. 5

           2.    Union Pacific owned the depot grounds in Perry in fee. ................ 7

           3.    Union Pacific owned the depot grounds in Minburn flanking both sides of the original rail corridor in fee.......................................... 9

           4.    Union Pacific owned a strip of land separating a portion of claim 47.G from the original rail corridor in fee. ................................... 10

      B.    The United States is entitled to summary judgment as to those parcels that do not adjoin the rail corridor. ................................................................. 10

      C.    The United States is entitled to summary judgment as to those parcels for which Plaintiffs proffer no evidence of Union Pacific's ownership interest. .................................................................................................... 11

      D.    The United States' liability with respect to claim 8 is limited to the one-sixth interest of S. Suzanne Yates........................................................... 13

      E.    The city of Dallas Center cannot sue the United States for a taking because it is the successor-in-interest to Union Pacific and because it worked cooperatively with Dallas County in requesting the railbanking of the subject corridor. .................................................................................. 14

           1.    Dallas Center is not a proper claimant in this lawsuit because it is a successor-in-interest to Union Pacific and because it is the current trail operator............................................................................... 15

           2.    A before-and-after appraisal of Dallas Center's property interests in this case will differ substantially from the appraisals of other class members. ........................................................................... 17

III.    CONCLUSION................................................................................................. 18

i

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Caldwell v. United States*,
  391 F.3d 1226 (Fed. Cir. 2004) ....................................................................... 13

*Ga. Pac. Corp. v. United States*,
  640 F.2d 328 (Ct. Cl. 1980). ........................................................................... 17

*Gemtron Corp. v. Saint-Gobain Corp.*,
  572 F.3d 1371 (Fed. Cir. 2009) ....................................................................... 16

*Jenkins v. United States*,
  102 Fed. Cl. 598 (2011) .......................................................................... 3, 8, 17

*Ladd v. United States*,
  630 F.3d 1015 (Fed. Cir. 2010) ....................................................................... 11

*Preseault v. United States*,
  100 F.3d 1525 (Fed. Cir. 1996) (en banc) ................................................... 4, 6, 7

*United States v. Dow*,
  357 U.S. 17 (1958) .......................................................................................... 13

### STATE CASES

*Drake v. Chicago, Rock Island and R.R. Co.*,
  19 N.W. 215 (Iowa 1884) ................................................................................ 12

*Feilharber v. Swiler*,
  212 N.W. 417 (Iowa 1927) ................................................................................ 5

*Gates v. Colfax N. Ry. Co.*,
  159 N.W. 458 (Iowa 1916) .......................................................................... 12, 13

*Lowers v. United States*,
  663 N.W.2d 408 (Iowa 2003) .................................................................... passim

*Macerich Real Estate Co. v. City of Ames*,
  433 N.W.2d 726 (Iowa 1988) ........................................................................... 10

*Marshall Ice Co. v. La Plant*,
  111 N.W. 1016 (Iowa 1907) ........................................................................... 5, 9

*McKinley v. Waterloo R.R. Co.*,
    368 N.W.2d 131 (Iowa 1985) ........................................................................................ 8

*Shimanek v. Chicago M & St. P. Ry. Co.*,
    152 N.W. 574 (Iowa 1915) ......................................................................................... 12

## FEDERAL STATUTES

16 U.S.C. § 1247 .......................................................................................................... 3, 17

## STATE STATUES

Iowa Code § 327G.77 .................................................................................................. 10, 11

Iowa Code § 557.3 ..................................................................................................... 5, 7, 10

UNITED STATES' SECOND CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

The United States of America cross-moves for partial summary judgment pursuant to Rules 5.4(a)(5) and 56 of the Rules of the Court of Federal Claims ("RCFC").  The purpose of this cross-motion is to resolve outstanding title defects in certain claims that were not addressed in this Court's December 20, 2011, order on the parties' earlier round of cross-motions for partial summary judgment.  *See* Oct. 26, 2011, Order 4-5 (ECF No. 68).  Accordingly, this cross-motion does not involve claims timely filed by proper owners whose properties adjoin segments of the rail corridor that Union Pacific operated by deeded easement or condemned easement.  Instead, the United States cross-moves for summary judgment in its favor as to non-dismissed claims that are subject to one or more of four "title" issues.  *Id.* at 2-3.  First, the United States cross-moves for summary judgment in its favor as to claims that adjoin segments of the rail corridor that Union Pacific owned in fee.  Second, the United States cross-moves for summary judgment as to claims that do not adjoin the rail corridor.  Third, the United States cross-moves for summary judgment as to claims that adjoin segments of the rail corridor for which Plaintiffs do not proffer evidence of the nature of Union Pacific's ownership.  And fourth, the United States cross-moves to limit its liability as to one claim to the evinced one-sixth interest of S. Suzanne Yates.

In addition, the United States cross-moves for summary judgment as to the claims of Dallas Center.  Dallas Center seeks an award of just compensation even though it is the successor-in-interest to Union Pacific, it currently holds legal title to the property, and it is currently the trail operator for the portion of the rail corridor that it claims was taken from it.

The United States does not cross-move for summary judgment in its favor as to all the parcels identified in Plaintiffs' second cross-motion (ECF No. 83).  The United States agrees, in light of the additional evidence Plaintiffs proffer with their April 2012 motion for partial

summary judgment, that the following claims fall within the scope of this Court's December 20, 2011, order:  4.D, 8 (as to the one-sixth interest of S. Suzanne Yates), 26.A (south of Sycamore Street in Dallas Center), 27 (in the northeast quarter of section 2), 30, 31.A, 31.B, 37, 38, 41.D, 42, 43, 59.A, 59.H (northerly portion), 64, 68.A, 82, 105, 106, and 124 (as to section 26).

Finally, the United States notes that the parties' May 24, 2012, stipulation (ECF no. 91) negates or moots a primary argument set forth in Plaintiffs' April 2012 cross motion—that the cities of Dallas Center, Minburn, and Perry are equitably estopped from asserting title to the rail corridor within their incorporated limits.  In its original cross-motion, the United States established that several parcels are separated from the rail corridor/depot grounds by streets or alleys in these three cities.  *See* U.S. Proposed Findings ¶¶ 11, 13-19, 22, 25, 27-31, 33, 38-40, Exs. 6-13, 15-22, 24-26 (ECF No. 60).  Plaintiffs' April 2012 motion for partial summary judgment asserted that the cities of Perry, Dallas Center, and Minburn were equitably estopped from asserting title to these streets and alleys. Pls.' 2d Memo Parts III.B, III.C, V.B (ECF No. 84).  Plaintiffs later recanted this position with respect to the cities of Dallas Center and Perry. Stipulation ¶¶ 1, 2 (ECF No. 91).  And Plaintiffs' equitable estoppel argument was rendered moot in the city of Minburn, because, in addition to a street or alley, another parcel (claim 59.A) separates the Minburn parcels from the rail corridor.  *Id.* ¶¶ 7-8.

In support of this cross-motion, the United States submits this notice of cross-motion, the accompanying memorandum of points and authorities with referenced appendices, and its proposed findings of fact with referenced exhibits.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   PRELIMINARY STATEMENT

The parties previously briefed liability for several of the parcels involved in this lawsuit. This Court ruled on two of the issues raised in that initial round of briefing:  (1) whether the Des Moines Valley right-of-way deeds were limited to railroad purposes only, and (2) the scope of the taking 16 U.S.C. § 1247(d) effects.  *Jenkins v. United States*, 102 Fed. Cl. 598, 612, 619 (2011).  This Court deferred ruling on the additional title defects raised in the first round of briefing.  Oct. 26, 2011, Order 4-5 (ECF No. 68).

In the wake of the initial round of summary judgment briefing, Plaintiffs supplemented their production of evidence supporting their claims.  In some instances, claims have been categorized as falling within the scope of the parties' initial briefing and, consequently, this Court's December 2011 summary judgment order.  Dec. 12, 2011, Joint Status Report, Ex. 1 (ECF No. 72).  In other instances, claims have been dismissed.  *Id.*; May 24, 2012, Stipulation ¶¶ 2, 7-8 (ECF No. 91).  The purpose of this second cross-motion for partial summary judgment is to resolve those claims where the parties continue to contest liability on grounds that were not addressed in this Court's December 2011 order.

The United States' instant cross-motion is premised on four general objections to liability.  First, the United States moves for summary judgment in its favor as to those parcels that adjoin segments of the rail corridor Union Pacific owned in fee, primarily depot grounds in the cities of Dallas Center and Perry.  Second, the United States moves for summary judgment in its favor as to those parcels that do not adjoin the rail corridor.  Third, the United States moves for summary judgment in its favor as to claims that adjoin segments of the rail corridor for which Plaintiffs proffer no evidence as to the nature of Union Pacific's ownership interest.  And fourth,

3

the United States moves to limits its liability as to one parcel to the one-sixth interest of the enrolled claimant who owned the qualifying property when the NITU issued.

In addition to these four general objections to liability, the United States moves for summary judgment in its favor as the city of Dallas Center's claims. Dallas Center is a successor-in-interest to Union Pacific. Accordingly, Dallas Center falls outside this Court's bounds for class enrollment.

II.    ARGUMENT

    A.    The United States is entitled to summary judgment as to those parcels that adjoin segments of the rail corridor Union Pacific owned in fee.

Plaintiffs assert that they hold property rights in segments of the rail corridor passing through the towns of Perry and Dallas Center. *See* Pls.' Memo. Parts IV.C, V (ECF No. 84). In Dallas Center, Plaintiffs point to a right-of-way deed that conveyed the original 100-foot wide rail corridor, Pls.' 2d Proposed Findings ¶ 18, Ex. 29.5 (ECF No. 85) (citing book A, page 422), but ignore the subsequent deed to the railroad conveying fee title to that land and the surrounding depot grounds, U.S. Proposed Findings ¶¶ 1-2, Ex. 1 (ECF No. 60). In Perry, Plaintiffs point to the only conveyance—the warranty deed for the depot grounds—but insist that this fee deed be demoted to an easement for railroad purposes. Pls.' Memo. Part IV.A (ECF No. 84).

Where the railroad owns the relevant segments of the rail corridor in fee, the United States has no takings liability. *Preseault v. United States*, 100 F.3d 1525, 1533 (Fed. Cir. 1996) (en banc). The Iowa Supreme Court, in answering questions certified to it in a rails-to-trails case, established the criteria by which railroad deeds are construed either as fee conveyances or as easements. *Lowers v. United States*, 663 N.W.2d 408, 410-11 (Iowa 2003). *Lowers* held that deeds to railroads that "grant[] a specified tract of land without limitation or qualification"

4

convey fee and not an easement.  *Id.* at 411.  This was so even though the deed at issue in *Lowers*

was titled "Rt. of Way Deed."  *Id.*  To establish an easement, "there must be some reference to

right-of-way in the language defining the interest being conveyed."  *Id.*

Plaintiffs' reliance on original right-of-way grants that were followed by fee deeds to

Union Pacific's predecessors-in-interest is unavailing.  "No easement exists so long as there is

unity of ownership, because the owner of the whole may, at any time, rearrange the qualities of

the several parts."  *Marshall Ice Co. v. La Plant*, 111 N.W. 1016, 1019 (Iowa 1907), *quoted in*

*Feilharber v. Swiler*, 212 N.W. 417, 418 (Iowa 1927).  Consequently, any prior easements that

were granted before the fee conveyances for depot grounds merged into the railroad's fee

ownership.

      1.     <u>Union Pacific owned the westerly depot grounds in Dallas Center in fee</u>.

The deed recorded at book A, page 422 conveyed an easement for the original 100-foot-

wide rail corridor through a portion of Dallas Center (i.e., a portion of the northwest quarter of

section 2).  Pls.' 2d Proposed Findings ¶ 18, Ex. 29.5 (ECF No. 85).  Following that conveyance,

the railroad received a conveyance recorded at book S, page 232 that conveyed title to the depot

grounds in the northwest quarter of section 2.  U.S. Proposed Findings ¶¶ 1-2, Ex. 1 (ECF No.

60).

Book S, page 232 conveys to Union Pacific's predecessor-in-interest "the following

described premises."  U.S. Proposed Findings ¶ 1, Ex. 1 (ECF No. 60).  This recital conveys fee

title under *Lowers* because it grants "premises" and does not recite "right-of-way" in the

language defining the interest being conveyed.  663 N.W2d at 411 (citing Iowa Code § 557.3).

The deed describes the depot grounds, including the original right-of-way, in both the northwest

quarter and the northeast quarter of section 2, township 79, range 27.  *Id.* ¶ 2, Ex. 1.  But after

5

describing the property in the northwest quarter and the northeast quarter, the deed states: "It is the intention of the above description to cover and of the above instrument to convey that part of the town plat of Dallas Center lying in the North West quarter of Section 2-79-27." *Id.*, Ex. 1.

The fee conveyance of depot grounds in the northwest quarter of section 2 entirely frustrates one parcel and largely frustrates two others. Parcel 29 adjoins the depot grounds in Dallas Center in the northwest quarter of section 2. *Id.* ¶ 24. And a portion (i.e., the majority) of parcels 15.D and 27 adjoin the depot grounds in Dallas Center in the northwest quarter of section 2. *Id.* ¶¶ 12, 21. Hence, Union Pacific, through book S, page 232, owned fee title to the corridor adjoining those portions of claims 15.D and 27 in the northwest quarter of section 2 and the United States is entitled to summary judgment as to those portions. *Preseault*, 100 F.3d at 1533.

With respect to the northeast quarter of section 2, no deed has been identified conveying title in the depot grounds to Union Pacific's predecessors-in-interest. The only deed of record is the condemned easement recorded at book A, page 492 for the original 100-foot-wide rail corridor. *See, e.g.,* Pls.' Ex. 26.A.5. The parcels in the northwest quarter of section 2 that adjoin the 100-foot right-of-way include (1) that portion of claim 26.A south of Sycamore Street, (2) claim 15.C, (3) a portion of claim 15.D, and (4) a portion of claim 27.

In sum, Union Pacific owned fee title to the depot grounds in the northwest quarter of section 2. This entirely frustrates claim 29 and frustrates most of claims 15.D and 27. The only deed for the railroad's depot grounds in the northeast quarter of section 2 is the railroad easement for the original rail corridor. A portion of claim 26.A (that portion south of Sycamore Street),[1] claim 15.C, a portion of claim 15.D, and a portion of claim 27 adjoin this original rail corridor.

---

[1] The portion of claim 26.A north of Sycamore is discussed below in part II.B of this brief.

But the United States contests liability as to Dallas Center (the owner of claims 15.C and 15.D) as discussed below in Part II.E.

> 2.   Union Pacific owned the depot grounds in Perry in fee.

The depot grounds, including the rail corridor, in Perry were conveyed by deed recorded at book S, page 235.  U.S. Proposed Findings ¶ 6-7, Ex. 3 (ECF No. 60).  Book S, page 235 conveys "the following described premises."  U.S. Proposed Findings ¶ 6, Ex. 3 (ECF No. 60).  This recital conveys fee title under *Lowers* because it grants "premises" and does not recite "right-of-way" in the language defining the interest being conveyed.  663 N.W2d at 411 (citing Iowa Code § 557.3).  The parties stipulated that this deed applies to the following claimants: 97.B, 97.C, 97.D, 98.A, 98.B, 99.B, 100.A, 100.B, 101.A, 101.B, 103, 104, and 107.  Dec. 12, 2012, Joint Status Report, Ex. 1 (ECF No. 72).  And it is uncontested that this deed applies to claimant 97.A.  U.S. Resp. to Pls.' 2d Proposed Findings ¶ 56.  Accordingly, Union Pacific's fee ownership manifest in book S, page 235 frustrates these claims.  *Preseault*, 100 F.3d at 1533.

Plaintiffs make two arguments in an attempt to demote the fee conveyance of book S, page 235 to an easement.  Pls.' Memo. VI.A (ECF No. 84).  First, they argue that a depot ground is a railroad purpose and, therefore, an easement.  *Id.* at 24.  This argument is without merit.  The Iowa Supreme Court recognized that the purpose of the conveyance at issue in *Lowers* was for a railroad.  663 N.W.2d at 410-11.  Nevertheless, *Lowers* held that the anticipated use of the property for railroad purposes "does not diminish the conveyance of all right, title, and interest of the grantor."  *Id.* at 411 (citing Iowa Code § 557.3).  So too here.  Book S, page 235 conveys "premises," coupled with a covenant that the grantors have "good and perfect title" "free and clear of all liens and incumbrances [sic] whatsoever," such that the grantors covenanted to

warrant and defend the conveyed premises against the lawful claims of all persons whomsoever. U.S. Proposed Findings ¶¶ 6-7, Ex. 3 (ECF No. 60).

Second, Plaintiffs invoke Iowa's condemnation statute as a justification for demoting the fee conveyance of book S, page 235 to an easement. *Id.* at 22-23.  But Union Pacific's predecessors-in-interest acquired property rights to the depot grounds through deed, not through condemnation.  U.S. Proposed Findings ¶¶ 6-7, Ex. 3 (ECF No. 60).  The Iowa Supreme Court distinguishes easements conveyed by deed from easements created by condemnation, characterizing the former as "in essence a contract." *McKinley v. Waterloo R.R. Co.*, 368 N.W.2d 131, 135 (Iowa 1985).  This recognized distinction between deeded conveyances and condemnation refutes Plaintiffs' attempt to demote fee deeds by invoking Iowa's condemnation statutes.  Indeed, this Court rejected Plaintiffs' same argument in interpreting the deeded easements to Union Pacific's predecessors-in-interest. *Jenkins*, 102 Fed. Cl. at 606 n.10 ("Therefore, contrary to plaintiffs' argument, the court's interpretation of the deeded easements will not be informed by the 1860 Iowa condemnation statute.") (citations omitted).

Finally, Plaintiffs cite to two grantor-grantee indexes in an attempt to create what they believe is a governing easement limited to railroad purposes that overcomes the fee conveyance recited in book S, page 235.  Pls.' Memo. 26 n.25 (ECF No. 84) (citing Pls.' Exs. G, H).  Exhibit G is an index indicating the sale of property to the railroad by Sheriff's Deed.  Pls.' Ex. G.  The summary legal description includes lots 1 and 3 in block 2 and a combination of lots 1 through 19 in block 18 of an unidentified plat. *Id.*  This summary index does not provide a basis for concluding that the original rail corridor in Perry was operated by an easement for railroad purposes.  Exhibit H in an index indicating a "Right of Way Deed" conveyed to Des Moines Valley Railroad dated December 5, 1868.  Pls.' Ex. H.  But this summary entry does not justify

the conclusion that the referenced right-of-way deed conveyed an easement limited to railroad purposes.  Again, *Lowers* held that a deed to a railroad titled "Rt. of Way Deed" nevertheless conveyed fee title.  663 N.W.2d at 411.  And in this case, one of the source deeds recited the typical right-of-way conveyance only to clarify in the same deed that the conveyance was made "to have and to hold the same in fee simple absolute."  U.S. 2d Proposed Findings ¶ 13, Ex. 42 (book 54, page 631).  This additional term recited in what otherwise would appear to be a right-of-way deed typical of others in this case, compelled Plaintiffs to voluntarily dismiss claim 113.B.  *Compare* Dec. 12, 2011, Joint Status Report, Ex. 1 (claimant 113.B), *with* Pls.' 2d Proposed Findings ¶ 77 (ECF No. 85).  In light of these fee determinations despite references to "right-of-way," it would be improper for this Court to assume away Plaintiffs' burden of establishing that Union Pacific operated the segments of the rail corridor adjoining these segments by easement for railroad purposes only.  And in any event, any prior easement would have extinguished and merged into the later fee conveyance made to Union Pacific's predecessor-in-interest on January 22, 1870.  U.S. Proposed Findings ¶¶ 6-7, Ex. 3 (ECF No. 60); *see Marshall Ice Co.*, 111 N.W. at 1019.

>        3.    <u>Union Pacific owned the depot grounds in Minburn flanking both sides of the original rail corridor in fee.</u>

In addition to being separated from the rail corridor by parcel 59.A (*see infra* Part II.B), the southerly portion of claim 59.H adjoins land that Union Pacific owned in fee.  Dec. 12, 2012, Joint Status Report, Ex. 1 (claimant 59.H) (ECF No. 72); Pls.' 2d Proposed Findings ¶ 38, Ex. 59.H.5 (book S, page 233).  These former depot grounds were conveyed to Union Pacific's predecessor-in-interest by deed recorded at book S, page 233.  Pls.' Proposed Findings ¶ 146y, Ex. I.25 (ECF No. 49-7).  Book S, page 233 deeded to Union Pacific's predecessor-in-interest

9

"the following described premises."  *Id.*  This recital conveys fee title under *Lowers* because it grants "premises" and does not recite "right-of-way" in the language defining the interest being conveyed.  663 N.W2d at 411 (citing Iowa Code § 557.3).  Accordingly, the United States is entitled to summary judgment as to the southerly portion of claim 59.H.  Moreover, Plaintiffs stipulated that book S, page 233 applies to claim 59.J.  Dec. 12, 2012, Joint Status Report, Ex. 1 (claimant 59.J) (ECF No. 72).  *See also* Pls.' 2d Proposed Findings ¶ 40, Ex. 59.J.5.

4.   <u>Union Pacific owned a strip of land separating a portion of claim 47.G from the original rail corridor in fee.</u>

The deed recorded at book 125, page 276 describes a 580-foot by 276-foot area adjoining the westerly side of the rail corridor in the northeast quarter of the northeast quarter of section 28, township 80, range 27.  U.S. Proposed Findings ¶ 9, Ex. 4 (ECF No. 60).  This warranty deed conveys "the following real estate."  *Id.* ¶ 8.  This recital conveys fee title under *Lowers* because it grants "real estate" and does not recite "right-of-way" in the language defining the interest being conveyed.  663 N.W2d at 411 (citing Iowa Code § 557.3).  This area separates the northerly portion of claimant 47.G's property from the rail corridor.  U.S. 2d Proposed Findings ¶ 12, Ex. 41.  (The parties stipulated that the southerly portion of claim 47.G adjoins an easement by condemnation, Dec. 12, 2011, Joint Status Report, Ex. 1 (claimant 47.G) (ECF No. 72), such that the southerly portion falls under the scope of this Court's December 20, 2011, order.)

B.   <u>The United States is entitled to summary judgment as to those parcels that do not adjoin the rail corridor.</u>

Where the railroad company possesses an easement for railroad purposes only, extinguishment is governed by Iowa statute.  *Macerich Real Estate Co. v. City of Ames*, 433 N.W.2d 726, 729-30 (Iowa 1988).  Iowa Code § 327G.77 states that where railroad easement

10

rights extinguish, "the property shall pass to the owners of the *adjacent* property at the time of abandonment") (emphasis added).

Nine of the non-dismissed claims in this lawsuit do not adjoin the rail corridor. These claims include: 15.B, 26.B, 59.K, 99.B, 100.A, 100.B, 101.A, 101.B, and 107. U.S. 2d Proposed Findings ¶¶ 1-9, Exs. 30-38. Because these parcels are not adjacent to the rail corridor, they do not have an ownership interest in the rail corridor under Iowa Code § 327G.77, and the Court should grant summary judgment to the United States with respect to these claims.

Moreover, a portion of claims 26.A, 59.H and 47.G do not adjoin the rail corridor. The portion of claim 26.A north of Sycamore Street in Dallas Center is separated from the rail corridor by a strip of land and by Assessor parcel number 11-02-195-001 (claim 27). U.S. 2d Proposed Findings ¶ 10, Ex. 39. The southerly portion of claim 59.H (i.e., the former depot grounds) is separated from the rail corridor by claim 59.A (i.e., Dallas County Assessor parcel number 07-08-157-002). *Id.* ¶ 11, Ex. 40. And the fee conveyance to Union Pacific's predecessor-in-interest recorded at book 125, page 276 separates a portion of claim 47.G from the original rail corridor. *Id.* ¶ 12, Ex. 41. The Court should grant partial summary judgment to the United States with respect to these claims.

C.     The United States is entitled to summary judgment as to those parcels for which Plaintiffs proffer no evidence of Union Pacific's ownership interest.

To establish a taking, each claimant must show that 16 U.S.C. § 1247(d) blocked extinguishment of the railroad's property interest adjoining the claimant's property. *Ladd v. United States*, 630 F.3d 1015, 1023 (Fed. Cir. 2010). But Plaintiffs proffer no competent evidence of Union Pacific's ownership interest in the segment of the rail corridor adjoining four claims. Instead, Plaintiffs proffer deeds and instruments that describe other segments of the rail

11

corridor that do not adjoin these four parcels,[2] or they provide no deed or instrument at all.  In

one of these four instances (claim 83.A), Plaintiffs proffer an incorrect source deed or

instrument.  U.S. Resp. to Pls.' 2d Proposed Findings ¶ 55.  In the other three instances (claims

47.K, 77, and 124 (as to section 23)), Plaintiffs provide no deed or instrument evincing Union

Pacific's ownership interest in the rail corridor.  U.S. Resp. to Pls.' 2d Proposed Findings ¶¶ 30,

53, 80.  Because Plaintiffs have not established the nature of Union Pacific's ownership interest

in these segments of the rail corridor, they cannot carry their burden of proving that the NITU

blocked extinguishment of Union Pacific's property interests.

     Plaintiffs cite a string of three cases in an apparent effort to prove that Union Pacific held

an easement by prescription limited to railroad purposes only.  Pls.' Memo. 10 (ECF No. 84)

(citing *Gates v. Colfax N. Ry. Co.*, 159 N.W. 458 (Iowa 1916), *Shimanek v. Chicago M & St. P.

Ry. Co.*, 152 N.W. 574 (Iowa 1915), and *Drake v. Chicago, Rock Island and R.R. Co.*, 19 N.W.

215 (Iowa 1884)).  This effort is unavailing.  *Drake* did not involve a claim for adverse

possession or prescriptive easement; it instead addressed a railroad's liability for failure to divert

surface waters from flooding adjoining private property.  19 N.W. at 215-16.  While *Drake*

indulged the assumption that the railroad held an easement in the absence of a deed or

instrument, *id.* at 217, the decision offers no discussion on prescriptive easements or adverse

possession.  *Shimanek* involved an oral gift to a railroad that built a spur to benefit the gift-giver.

152 N.W. at 574.  While *Shimanek* held that "an easement in the right of way may be established

by adverse possession," *id.* at 575, the case did not hold that "Iowa law is clear that the portion of

---

[2]    In support of their proposed findings relating to claims 15.B and 15.C, Plaintiffs
mistakenly proffer the deed recorded at book A, page 494.  Pls.' 2d Proposed Findings ¶¶ 5-6,
Exs. 15.B.5, 15.C.5 (ECF No. 85).  The United States responds to Plaintiffs' proposed findings
as if they would have proffered book A, page 492.  *See* U.S. Response to Pls.' 2d Proposed
Findings ¶¶ 5-6.

the railroad's right-of-way obtained through adverse possession is a prescriptive easement,"
Pls.' Memo. 10 (ECF No. 84).  And *Gates* held that a railroad can only establish prescriptive
rights by proving the elements of adverse possession, including actual notice of a hostile claim to
the landowner.  159 N.W. at 463.  Here, Plaintiffs do not identify the elements of adverse
possession/prescriptive easement, much less show that those elements have been satisfied such
that Union Pacific merely held an easement for railroad purposes.

      D.     <u>The United States' liability with respect to claim 8 is limited to the one-sixth
interest of S. Suzanne Yates</u>.

      Each claimant must prove ownership of the property rights allegedly taken when the
takings claim accrued.  *United States v. Dow*, 357 U.S. 17, 20-21 (1958).  In this case, Plaintiffs'
takings claims accrued when the STB issued its NITU on October 25, 2004.  *Caldwell v. United
States*, 391 F.3d 1226, 1235 (Fed. Cir. 2004); Pls.' Proposed Findings ¶ 152, Ex. E (ECF No.
45).  Plaintiffs identified Mary Leigh Morris as the enrolled claimant who asserted a claim based
on Dallas County Assessor parcel number 12-18-300-004.  *See* Dec. 12, 2011, Joint Status
Report, Ex. 1 (ECF No. 72) (claimant 8).  In support of this claim, Plaintiffs proffer ten deeds as
Exhibit 8.1 to their second proposed findings of fact.  But Mary Leigh Morris is not identified as
a grantee in any of the deeds that pre-date the NITU.  She first appears as a grantee in the deed
recorded at book 2005, page 15194, which is dated September 2, 2005.  Pls.' 2d Proposed
Findings ¶ 3, Ex. 8.1.  Consequently, Mary Leigh Morris is not a valid claimant.

      In their instant motion, Plaintiffs assert that John Charles Morris, Carol Sue Hilton,
Marilyn Marie Dowell, S. Suzanne Yates, and D. Merold Yates acquired Assessor parcel number
12-18-300-004 on August 5, 1980.  Pls.' 2d Proposed Findings ¶ 3 (ECF No. 85).  But only S.
Suzanne Yates and D. Merold Yates are identified as grantees on the deed proffered as Exhibit

13

8.1 and dated August 5, 1980.  *Id.*, Ex. 8.1 (Book 569, page 790-91).  Further, S. Suzanne and D.

Merold Yates were conveyed a mere one-third interest in the property.  *Id.*  While S. Suzanne

Yates is identified in Plaintiffs' opt-in list (ECF No. 29-1 (claimant 89)), Plaintiffs proffer no

evidence that D. Merold Yates enrolled in this lawsuit, timely or otherwise.

Carol Hilton, John Charles Morris, and Marilyn Marie Dowell are not identified as

grantees until June 8, 2004.  Pls.' 2d Proposed Findings ¶ 3, Ex. 8.1. (book 2004, page 8858).

They collectively received a one-sixth interest in the property from the Trust of Jean Marie

Morris.  *Id.*  Plaintiffs, however, proffer no evidence tying the Trust of Jean Marie Morris to Paul

or Floy Morris (i.e., the grantors to S. Suzanne and D. Merold Yates in the August 5, 1980,

deed).  Instead, Plaintiffs proffer a deed conveying a 39% interest from the estate of Jean Marie

Morris to the Jean Marie Morris trust (book 2003, page 9880), and another deed conveying a

39% interest in a one-sixth interest in the property to the Jean Marie Morris Trust from the Trust

of Edgar John Morris (book 2004, page 8857).

In sum, the hodgepodge of deeds Plaintiffs attach as Exhibit 8.1 evinces S. Suzanne and

D. Merold Yates' ownership of a one-third interest in the property on the date of taking.

Because S. Suzanne Yates is the only claimant identified as a grantee of Paul and Floy Yates

before the NITU who timely enrolled in this lawsuit, the United States' liability should be

limited to her one-sixth interest in the property.

E. <u>The city of Dallas Center cannot sue the United States for a taking because it is
the successor-in-interest to Union Pacific and because it worked cooperatively
with Dallas County in requesting the railbanking of the subject corridor</u>.

The city of Dallas Center joined this lawsuit during the enrollment phase.  Not. of Opt-in

List (ECF No. 29-1) (claimant 15).  Dallas Center claims that it would have acquired fee

ownership to the centerline of the portions of the rail corridor adjoining its properties and streets

14

had the STB not issued its NITU.  Pls.' Memo. Part V.A (ECF No. 84).  Some of Dallas Center's

claims fail for the reasons set forth above.  *See infra* Parts II.A.1 (identifying claim 15.D).  But in

addition, all of Dallas Center's claims fail because its status as a successor-in-interest to Union

Pacific excludes it from this Court's definition of class membership.

In the alternative, if this Court finds that Dallas Center is a proper class member, the

appraisal of just compensation must differ from the appraisals of the other claimants in this

lawsuit.  In the case of Dallas Center, the before scenario will be the value of segmented

properties to the centerline of the rail corridor in disparate parts of the city; the after scenario will

be the value to Dallas Center of a unified corridor running through its corporate limits and

connected with the other portions of the trail system in Dallas County.

        1.      <u>Dallas Center is not a proper claimant in this lawsuit because it is a</u>
<u>successor-in-interest to Union Pacific and because it is the current trail</u>
<u>operator</u>.

In its order defining the class for this lawsuit, this Court expressly excluded "railroad

companies and their successors-in-interest."  Nov. 13, 2009, Order 5 (ECF No. 23).  Union

Pacific deeded the rail corridor, including the corridor in the city of Dallas Center, to the Iowa

Natural Heritage Foundation.  U.S. 2d Proposed Findings ¶ 14, Ex. 43.  Iowa Natural Heritage

Foundation, in turn, deeded the rail corridor, including the corridor in the city of Dallas Center,

to Dallas County.  *Id.* ¶ 15, Ex. 44.  And Dallas County, in turn, deeded the rail corridor within

the corporate limits of Dallas Center to the city of Dallas Center.  *Id.* ¶ 16, Exs. 45, 46.

Accordingly, Dallas Center is a successor-in-interest to Union Pacific and is an improper

claimant under this Court's November 13, 2009, order.

Plaintiffs construct a narrative, unsupported by evidence or declaration, that Dallas

County foisted railbanking on an unwilling Dallas Center.  Pls.' Memo 29-30 (ECF No. 84).

According to Plaintiffs, Dallas Center was left with the Hobson's choice of acquiescing to the County's demands for railbanking or losing control of the trail within the city's limits.  *Id.*  First, Dallas Center is a successor-in-interest to Union Pacific whether it was a willing or unwilling participant in the railbanking process.  U.S. 2d Proposed Findings ¶¶ 14-16, Exs. 43-46.  But even setting aside that point, "unsworn attorney argument . . . is not evidence," *Gemtron Corp. v. Saint-Gobain Corp.*, 572 F.3d 1371, 1380 (Fed. Cir. 2009), and the evidence contradicts Plaintiffs' narrative.  Dallas Center "[had] as a goal the acquisition and development of this right of way into a recreation trail which will benefit the citizens of the community."  U.S. 2d Proposed Findings ¶ 18, Ex. 47 Recitals ¶ 2.  Dallas Center concluded early on that the conversion of the rail corridor into a trail within the city's corporate limits "would fit very nicely into the City of Dallas Center's Comprehensive Plan and the Dallas county 5-year REPA plan of parks and trails."  *Id.* ¶ 21, Ex. 48 p.6.  Dallas Center's embracing of the trail conversion was premised, in part, on its belief that "[t]rails . . . promote economic development for the businesses and communities along the way—while building community pride, tourism appeal and local quality of life."  *Id.* at p.7.  Accordingly, Dallas Center worked cooperatively with Dallas County and the cities of Waukee, Minburn, Perry, and Dawson, to obtain funding for the acquisition of the corridor from Union Pacific and development of that corridor into a trail.  *Id.* ¶ 19, Ex. 47 Agreement ¶ 3.  In short, Dallas Center supported the railbanking of the corridor in its corporate limits, the conversion of that rail corridor to a recreational trail, and the linking of that trail with the other communities along the former rail corridor.

16

2.    A before-and-after appraisal of Dallas Center's property interests in this
case will differ substantially from the appraisals of other class members.

Even if this Court holds that Dallas Center is a proper class member, a determination of

just compensation for Dallas Center's property interests will differ markedly from the just

compensation determination for other claimants in this lawsuit.  Where, as here, the United

States takes less than an entire parcel, "[the 'before-and-after' valuation method] is generally the

simplest and perhaps the most widely used approach" that "serves to lessen the pitfalls and

problems that arise when a series of factors affecting the value are added together to arrive at a

total severance damages determination."  *Ga. Pac. Corp. v. United States*, 640 F.2d 328, 336 (Ct.

Cl. 1980).

For the other claimants in this lawsuit that have valid takings claims, the before scenario

will be measured as unencumbered fee title of the qualifying parcel and of a portion of the rail

corridor to the centerline of the segment(s) of the rail corridor adjoining their properties.  The

"after" scenario will be the same parcel with an easement held by a third party (either Dallas

County or a local city) for interim trail use and possible future activation of rail service over the

former rail corridor.  *See Jenkins*, 102 Fed. Cl. at 619 (holding that 16 U.S.C. § 1247(d) effect a

taking of a recreational trail easement and an easement for possible reactivation of rail service).

But in the case of Dallas Center, the "after" scenario will involve the same qualifying parcel with

an easement held *by Dallas Center* for interim trail use and future railroad activation, plus an

additional easement *held by Dallas Center* for interim trail use and future railroad activation

across those segments of the rail corridor in Dallas Center that would have otherwise reverted to

the adjoining private landowners.  In other words, the "before" scenario will involve fragmented

fee title to portions of the rail corridor within the city limits to the center line of the rail corridor,

17

while the "after" scenario will involve a plenary easement for recreational trail use and possible

railroad activation across the entire, continuous former rail corridor, linked with a trail system

loop connecting, among other cites, Waukee, Dallas Center, Minburn, Perry, and Dawson.

III.    CONCLUSION

The United States is entitled to summary judgment as to those claims that adjoin

segments of the rail corridor Union Pacific owned in fee.  The United State is also entitled to

summary judgment as to those claims based on parcels that do not adjoin the rail corridor.  And

the United States is entitled to summary judgment as to those claims that adjoin segments of the

rail corridor for which Plaintiffs have not proffered evidence of Union Pacific's ownership

interest.  Moreover, the United States' liability for claim 8 should be limited to the one-sixth

interest of S. Suzanne Yates.  Finally, the United States is entitled to summary judgment as to the

claims of Dallas Center, because Dallas Center is a successor-in-interest to Union Pacific.

DATED:  July 6, 2012                        Respectfully submitted,

                                            IGNACIA S. MORENO
                                            Assistant Attorney General
                                            Environment & Natural Resources Division

                                            By   _/s/ Frank J. Singer_____
                                            FRANK J. SINGER
                                            United States Department of Justice
                                            Environment & Natural Resources Division
                                            Natural Resources Section
                                            Post Office Box 663
                                            Washington, D.C. 20044-0663
                                            Tel: (202) 616-9409
                                            Fax: (202) 305-0506
                                            E-mail: frank.singer@usdoj.gov

                                            ATTORNEY FOR THE UNITED STATES