IN THE UNITED STATES COURT OF FEDERAL CLAIMS

|  |  |  |
|---|---|---|
| STEVE JENKINS, *et al.*, for themselves and as representatives of a class of similarly situated persons, | ) ) ) ) | Case No. 09-241L |
|  | ) | Judge Nancy B. Firestone |
| Plaintiffs, | ) ) | *Electronically filed on July 30, 2012* |
| v. | ) ) | |
| UNITED STATES OF AMERICA, | ) ) | |
| Defendant. | ) ) | |
|  | ) | |

UNITED STATES' REPLY BRIEF IN SUPPORT OF
SECOND CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

## TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT ................................................................................... 1

II.    ARGUMENT ............................................................................................................... 4

     A.     Book S, page 235 conveys fee title to Union Pacific and applies to the parcels identified in the parties' stipulations and in Plaintiffs' proposed findings of fact.. 4

     B.     The United States is entitled to summary judgment as to those parcels that do not adjoin the rail corridor. ................................................................................................ 7

     C.     Plaintiffs are not entitled to a presumption that Union Pacific operated the rail corridor by an easement limited to railroad purposes only.................................... 9

     D.     The United States' liability with respect to claim 8 is limited to the one-sixth interest of S. Suzanne Yates.............................................................................. 12

     E.     The city of Dallas Center cannot sue the United States for a taking because it is the successor-in-interest to Union Pacific............................................................ 14

III.   CONCLUSION.......................................................................................................... 14

TABLE OF AUTHORITIES

FEDERAL CASES

*Cabán Hernández v. Philip Morris USA, Inc.*,
    486 F.3d 1 (1st Cir. 2007) ................................................................................. 4

*Gemtron Corp. v. Saint Gobain Corp.*,
    572 F.3d 1371 (Fed. Cir. 2009) ..................................................................... 5, 10

*Jenkins v. United States*,
    102 Fed. Cl. 598 (2011) ................................................................................. 1, 9

*Ladd v. United States*,
    630 F.3d 1015 (Fed. Cir. 2010) ......................................................................... 5

*Loesch v. United States*,
    227 Ct. Cl. 34, 645 F.2d 905 (Fed. Cir. 1981) ............................................. 5, 11

*Rhutasel v. United States*,
    Case No. 09-121L, 2012 WL 2373253 (Fed. Cl. June 22, 2012) ................. 6, 10

*United States ex rel Miller v. Bill Harbert Int'l Constr., Inc.*,
    608 F.3d 871 (D.C. Cir. 2010) .......................................................................... 4

STATE CASES

*Feilharber v. Swiler*,
    212 N.W. 417 (Iowa 1927) ............................................................................... 6

*Gates v. Colfax Northern Railway Co.*,
    159 N.W. 458 (Iowa 1916) ............................................................................. 11

*Lowers v. United States*,
    663 N.W.2d 408 (Iowa 2003) ........................................................................... 6

*Marshal Ice Co. v. La Plant*,
    111 N.W. 1016 (Iowa 1907) ............................................................................. 6

I.      PRELIMINARY STATEMENT

        This second round of summary judgment briefing focuses on contested title defects with

certain of Plaintiffs' claims.  The United States cross-moved for summary judgment as to those

parcels (1) that adjoined portions of the rail corridor that Union Pacific owned in fee, U.S. Cross-

Mot. Part II.A (ECF No. 93), (2) that did not adjoin the rail corridor, *id.* Part II.B, or (3) that

were unsupported by evidence of either timely ownership or of the nature of Union Pacific's

ownership interest in the relevant segment of the rail corridor, *id.* Part II.C-D.   In addition, the

United States contested the propriety of the city of Dallas Center's enrollment in this lawsuit

because Dallas Center is the successor grantee to Union Pacific's property interests and this

Court's definition of class membership expressly excluded Union Pacific's successors-in-

interest.  *Id.* Part II.E.

        Based on the supplemental evidence Plaintiffs supply with their response brief, the

United States agrees that all of claim 124 falls within the scope of this Court's December 20,

2011, order on summary judgment.[1]  *Jenkins v. United States*, 102 Fed. Cl. 598, 607-10 (2011).

Further, based on additional evidence the United States obtained following the filing of its cross-

motion, the United States agrees that claim 47.K falls within the scope of this Court's prior

order.  *Id.* at 603-04; U.S. Ex. 50 (attached).  Accordingly, the Court should deny the United

States' cross-motion as to claims 124 and 47.K and grant Plaintiffs' motion as to those two

claims, pursuant to this Court's prior summary judgment ruling.

        Aside from the source deed for claim 124, the remaining materials Plaintiffs attach to

their response brief are aimed at contradicting the parties' previous stipulations and, apparently,

---

[1]      The United States stated in its cross-motion that the portion of claim 124 lying in section
26 fell within the scope of this Court's December 20, 2011, order.  U.S. Cross-Mot. 2 (ECF No.
93).

Plaintiffs' own proposed findings of fact.  These materials do not create contested issues of material fact that warrant denying the United States' cross-motion for summary judgment.

Plaintiffs' legal arguments in response to the United States' cross-motion lack merit:

- The United States cross-moved for summary judgment of 14 claims adjoining segments of the rail corridor in Perry based on the parties' stipulations and Plaintiffs' uncontested proposed findings that book S, page 235 applies to these parcels.  Plaintiffs now seek to walk back from those stipulations and proposed findings without a competent evidentiary basis for doing so.

- The United States demonstrated that the depot grounds in Perry and Dallas Center conveyed fee title to the original rail corridor and the adjacent depot grounds to Union Pacific's predecessor-in-interest, thereby extinguishing previous grants of easements across the original rail corridor within the depot grounds.  Plaintiffs continue to rely on the easement conveyances, which pre-date the subsequent fee conveyances, without addressing the Iowa precedent on merger of easements cited in the United States' cross-motion.

- The United States demonstrated that nine parcels do not adjoin the rail corridor.  Plaintiffs only address three of these parcels directly and either concede that the parcel lacks adjacency or argue that the parcel is a portion of the former depot grounds, which does not address the adjacency defect.

- The United States cross-moved for summary judgment as to those parcels for which Plaintiffs have not proffered a deed or instrument evincing the nature of Union Pacific's ownership interest in the rail corridor.  Plaintiffs still do not provide such evidence, but either assert, without evidence, that public records are in error or claim an entitlement to an

assumption that Union Pacific operated an easement limited to railroad purposes.  No such entitlement exists.

- The United States cross-moved to limit its liability as to claim 8 to Suzanne Yates' timely assertion of her one-sixth interest in the property-in-question.  Plaintiffs insist, without meaningful analysis, that the collection of ten deeds they supplied establishes ownership and argue that a co-owner of a one-third interest may assert a takings claim for all interests in the property.  Plaintiffs' evidence is insufficient and their reliance on a single claimant possessing a one-sixth interest to pursue the claims of undocumented owners is without merit.

- Finally, the United States cross-moved for summary judgment as to the claims of Dallas Center on the ground that Dallas Center is a successor-in-interest to Union Pacific and, therefore, falls outside the definition of class membership.  Plaintiffs insist that Dallas Center is not a successor-in-interest to Union Pacific because Dallas Center is not running a railroad.  Plaintiffs' definition of successor-in-interest is contrary to the generally-accepted definition of the term successor-in-interest.

In sum, Plaintiffs' response allows for the resolution in Plaintiffs' favor of one additional claim—claim 124.  The United States' subsequent research allows for the resolution in Plaintiffs' favor of another claim—claim 47.K.  Subject to these two alterations, this Court should grant the United States' cross-motion for partial summary judgment.

3

II.   ARGUMENT

    A.   Book S, page 235 conveys fee title to Union Pacific and applies to the parcels identified in the parties' stipulations and in Plaintiffs' proposed findings of fact.

The United States cross-moved for summary judgment as to 14 parcels based on a fee conveyance recited in book S, page 235.  U.S. Cross-Mot. Part II.A.2 (ECF No. 93) (identifying parcels 97.A, 97.B, 97.C, 97.D, 98.A, 98.B, 99.B, 100.A, 100.B, 101.A, 101.B, 103, 104, and 107).  The parties stipulated on December 12, 2011, that book S, page 235 applied to 13 of these parcels, Dec. 12, 2011, Joint Status Report, Ex. 1 (ECF No. 72), and it is uncontested that book S, page 235 applied to all 14 parcels, *see* U.S. Resp. to Pls.' 2d Proposed Findings ¶¶ 56 (ECF No. 94).  In their reply brief, Plaintiffs now assert that "recalibration" is necessary and insist that book S, page 235 does not apply to four of the parcels—97.A, 97.B, 97.C, and 97.D.  Pls.' Resp. Br. 10 (ECF No. 97).  Plaintiffs also suggest that the earlier easement conveyance across Perry negates the later fee conveyance of the depot grounds, including the land underlying the original rail corridor.  These arguments are without merit.

First, Plaintiffs stipulated that book S, page 235 applies to parcels 97.B, 97.C, and 97.D. Dec. 12, 2011, Joint Status Repot, Ex. 1 (ECF No. 72) (claimants 97.B, 97.C, and 97.D).[2]  "Once a party has entered into a stipulation, . . . that party is not at liberty to renege unilaterally on a stipulated fact without leave of court, which ordinarily will not be granted absent a showing of good cause."  *Cabán Hernández v. Philip Morris USA, Inc.*, 486 F.3d 1, 6 (1st Cir. 2007).  "Stipulations of fact bind the court and parties."  *United States ex rel Miller v. Bill Harbert Int'l Constr., Inc.*, 608 F.3d 871, 889 (D.C. Cir. 2010).  A party to a stipulation "need offer no

---

[2]    Moreover, book S, page 235 is the only source deed Plaintiffs identify in their proposed findings of fact evincing Union Pacific's ownership interest in the relevant segment of the rail corridor.  *See* Pls.' 2d Proposed Findings ¶¶ 57-59 (ECF No. 85).

evidence to prove it and the other is not allowed to disprove it." *Id.* (internal quotations omitted). Plaintiffs insist that parcels 97.B, 97.C, and 97.D lie "in the extreme southwest corner of section 10," beyond the depot grounds described in book S, page 235. Pls.' Resp. Br. 10 (ECF No. 97). But Plaintiffs proffer only attorney argument in support of this factual assertion. "[U]nsworn attorney argument . . . is not evidence." *Gemtron Corp. v. Saint Gobain Corp.*, 572 F.3d 1371, 1380 (Fed. Cir. 2009). Plaintiffs proffer no competent evidence invalidating the parties' December 12, 2011, stipulation that book S, page 235 applies to parcels 97.B, 97.C, and 97.D.

Even if book S, page 235 does not apply to parcels 97.B, 97.C, and 97.D, Plaintiffs have not shown that Union Pacific operated the segments of the corridor adjoining these parcels by easement limited to railroad purposes only. Instead, Plaintiffs appear to suggest that this Court draw an inference that Union Pacific must have operated the relevant segment of the rail corridor by easement for railroad purposes only. But, as in all takings cases, "the burden of proof rests on plaintiffs, and not on the defendant, to establish that a taking has occurred justifying the payment of just compensation." *Loesch v. United States*, 227 Ct. Cl. 34, 44, 645 F.2d 905, 914 (Fed. Cir. 1981). Plaintiffs, therefore, must prove that the NITU blocked extinguishment of Union Pacific's property rights in the rail corridor. *Ladd v. United States*, 630 F.3d 1015, 1023 (Fed. Cir. 2010). Plaintiffs cannot meet this burden in the absence of evidence as to the nature of Union Pacific's ownership interest. Accordingly, the United States is entitled to summary judgment as to claims 97.B, 97.C, and 97.D, even if Plaintiffs are relieved from their stipulation that book S, page 235 applies.

Second, with respect to parcel 97.A, Plaintiffs state in their own proposed findings of fact "[t]he applicable conveyance deed for this parcel is Willis, Book S, Page 235." Pls.' 2d Proposed Finding ¶ 56 (ECF No. 85). That assertion is uncontested. *See* U.S. Resp. to Pls.' 2d

Proposed Findings ¶ 56 (ECF No. 95).  For the reasons set forth in the United States' cross-motion, U.S. Cross-Mot. 7 (ECF No. 93) (citing *Lowers v. United States*, 663 N.W.2d 408, 411 (Iowa 2003)), book S, page 235 conveys fee title to the railroad.  U.S. Cross-Mot. II.A.2 (ECF No. 93).  *See Rhutasel v. United States*, Case No. 09-121L, 2012 WL 2373253, at *6 (Fed. Cl. June 22, 2012) (holding that the granting of "the following described premises" to a railroad conveyed fee title under Iowa law).

Third, Plaintiffs' attempt to displace the fee deed recorded at book S, page 235 by citing to book A, page 451, Pls. Resp. Br. 9-10 (ECF No. 97), is without merit.  Plaintiffs do not address the authority cited in the United States' cross-motion that the earlier easement for the right-of-way extinguished and merged into the railroad's fee title when the later fee deed was executed.  *See* U.S. Cross-Mot. 5 (ECF No. 93) (citing *Marshal Ice Co. v. La Plant*, 111 N.W. 1016, 1019 (Iowa 1907), *quoted in Feilharber v. Swiler*, 212 N.W. 417, 418 (Iowa 1927)).  The argument and cited authorities Plaintiffs ignore in their response is fatal to their position.

In addition, Judge Baskir's recent decision in *Adkins v. United States*, Case No. 09-503 (Fed. Cl.) (attached as Ex. 49), frustrates Plaintiffs' attempt here to ignore the later fee conveyance by pointing to an earlier easement conveyance.  In *Adkins*, Plaintiffs argued that an earlier condemnation appraisal award negated a later fee conveyance.  *Adkins*, July 10, 2012, Order Part V (Ex. 49).  *Adkins* rejected this argument, finding that the later fee conveyance was a separate transaction that must be given effect.  *Id.* at 19.  Accordingly, *Adkins* granted summary judgment in the United States' favor as to the parcels adjoining segments of the rail corridor described by these later fee deeds.  *Id.*  So too here.  The fee deed recorded at book S, page 235 follows by more than one year the easement conveyed by book A, page 451.  *Compare* U.S. Proposed Findings ¶¶ 6-7, Ex. 3 (ECF No. 60) (dated Jan. 22, 1870), *with* Pls.' Proposed

6

Findings ¶ 71, Ex. 105.5 (dated Dec. 5, 1868).  Thus, book S, page 235 is a separate transaction

from the book A, page 451 easement and must be analyzed independently.  *Cf. Adkins*, July 10,

2012, Order at 19 (Ex. 49) (holding that a subsequent fee deed must be analyzed independently

of a previous condemnation award because the fee deed was a separate transaction).

        In sum, Plaintiffs are bound by their stipulations and uncontested proposed findings.

They proffer no competent evidence in support of their effort to "recalibrate" those stipulations

and uncontested proposed findings.  The deed at book S, page 235 conveys fee title to Union

Pacific's predecessor-in-interest, as do the other fee deeds identified in the United States' cross-

motion.  The fact that some of these fee deeds overlap with earlier, separate conveyances of

easements, does not demote the fee deeds to easements.  Instead, these subsequent fee deeds

extinguish the earlier easements through merger and Union Pacific owns the title to the described

lands in fee simple absolute.

        B.      The United States is entitled to summary judgment as to those parcels that do not
                adjoin the rail corridor.

        The United States cross-moved for summary judgment as to nine parcels that do not

adjoin the rail corridor.  U.S. Cross-Mot. Part II.B (ECF No. 93) (identifying claims 15.B, 26.B,

59.K., 99.B, 100.A, 100.B, 101.A, 101.B, and 107).  Plaintiffs respond to claims 59.K, 26.B, and

15.B.  Pls.' Resp. Br. 6, 8, 12 (ECF No. 97).  But their responses either affirm that each of these

three parcels do not adjoin the rail corridor or raise the tangential issue of siting of the depot

grounds.  Accordingly, the United States is entitled to summary judgment as to the parcels

identified in Part II.B of its cross-motion as it is uncontested that the parcels identified in that

section do not adjoin the rail corridor.

The United States demonstrated in its cross-motion that Dallas County Assessor parcel number 07-06-400-004 separates claim 59.K from the rail corridor.  U.S. 2d Proposed Findings ¶ 3, Ex. 32 (ECF No. 95).  Plaintiffs agree.  Pls.' Resp. Br. 6 (ECF No. 97).  Thus, the United States should be granted summary judgment as to claim 59.K.[3]

The United States demonstrated in its cross-motion that a strip of land separates claim 26.B from the rail corridor.  U.S. 2d Proposed Findings ¶ 2, Ex. 31 (ECF No. 94).  Plaintiffs argue that claim 26.B is part of the former depot grounds.  Pls.' Resp. Br. 8 (ECF No. 97).  But whether the parcel is or is not part of the former depot grounds is irrelevant to the fact that a strip of land separates claim 26.B from the rail corridor, as illustrated in Exhibit 31 to the United States' cross-motion.  Plaintiffs' argument does not create a contested issue of material fact and, therefore, the United States is entitled to summary judgment.

Finally, in light of Plaintiffs having supplemented their proposed findings to assert a separate claim for certain streets within Dallas Center, the United States cross-moved for summary judgment as to claim 15.B on adjacency grounds.  U.S. 2d Proposed Findings ¶ 1, Ex. 30 (ECF No. 94).  The United States previously stipulated that claim 15.B adjoined the rail corridor, because it has been the United States' position that the city of Dallas Center owns fee title to the streets platted in its incorporated limits.  Dec. 12, 2011, Joint Status Report, Ex. 1 (ECF No. 72) (claimant 15.B); *see* U.S. Cross-Mot. 12 (ECF No. 58).  But now that Plaintiffs

---

[3]     Although not seeking to amend their complaint, Plaintiffs insist that the intervening parcel, Dallas County Assessor parcel number 07-06-400-004, should be added to claim 59.A, which is associated with Dallas County Assessor parcel number 07-07-229-001.  Pls.' Resp. Br. 6 (ECF No. 97).  Plaintiffs assert that parcel number 07-06-400-004 is "merely the continuation" of parcel number 07-07-229-001.  *Id.*  But there is no evidence substantiating this assertion, nor is there evidence that the claimant acquired 07-07-400-004 before the NITU issued.  In short, Plaintiffs' attempt to assert liability as to a new parcel is both untimely and unsubstantiated.

supplemented their second proposed findings to assert an independent claim for certain streets in

Dallas Center, including the street separating claim 15.B from the rail corridor, Pls.' Suppl.

Proposed Findings ¶ 1 (ECF No. 92) (claim 15.F), Plaintiffs are not entitled to a finding that both

15.B and 15.F adjoin the rail corridor.  The United States, therefore, is entitled to summary

judgment for claim 15.B for lack of adjacency in light of Plaintiffs' supplemental proposed

findings of fact.  *See* U.S. Resp. to Pls.' Suppl. Proposed Findings ¶ 1 (ECF No. 96).

> C.   <u>Plaintiffs are not entitled to a presumption that Union Pacific operated the rail corridor by an easement limited to railroad purposes only</u>.

The United States cross-moved for summary judgment where Plaintiffs did not proffer

competent evidence of Union Pacific's property interest in the relevant segment of the rail

corridor.  U.S. Cross-Mot. Part II.C (ECF No. 93) (discussing claims 83.A, 47.K, 77, and 124).

In light of the additional evidence supplied with Plaintiff's response brief, the United States

agrees that claim 124 falls within the scope of this Court's December 20, 2011, order.[4]  *Jenkins*,

102 Fed. Cl. 607-10.  Further, the United States has located a condemnation report that applies to

claim 47.K, despite Plaintiffs' assurances that there is no source deed available.  *Compare* Pls.'

2d Proposed Findings ¶ 30, Ex. 47.K.1 (ECF No. 84), *and* Pls.' Resp. Br. 7 (ECF No. 97), *with*

book Misc., page 573 (attached as U.S. Ex. 50).  Accordingly, the United States agrees that claim

47.K falls within the scope of this Court's December 20, 2011, order.  *Jenkins*, 102 Fed. Cl. 603-

04.  Thus, the remaining contested issues in this category are for claim 83.A and claim 77.

---

[4]   Plaintiffs' accusation that the United States "didn't look very hard" for the source deed applicable to that portion of claim 124 lying in section 23 is specious.  Plaintiffs did not reference book A, page 452 in their proposed findings, nor did they attach that deed as an exhibit for claim 124.  *See* Pls.' 2d Proposed Findings ¶ 80, Ex. 124.5 (ECF No. 85).  The United States cannot be faulted for not considering evidence Plaintiffs failed to proffer.

With respect to claim 83.A, Plaintiffs insist that there is an error in the Dallas County Assessor parcel report. Pls.' Resp. Br. 4-5 (ECF No. 97). With respect to claim 77, Plaintiffs insist that Union Pacific held a prescriptive easement limited to railroad purposes only. *Id.* at 7-8. Plaintiffs' rebuttals are unavailing.

It was Plaintiffs who associated Dallas County Assessor parcel number 02-22-200-003 with claim 83.A. Pls.' 2d Am. Compl. ¶11 (ECF No. 25). The Assessor parcel report describes this parcel as lying in the northeast quarter of the northwest quarter of section 22, township 81, range 28. Pls.' 2d Proposed Findings ¶ 55, Ex. 83.A.2 (ECF No. 85). The source deed Plaintiffs' tender for this claim, however, describes the northeast quarter of the *northeast* quarter of section 22. *Id.*, Ex. 83.A.5. Plaintiffs now insist that this Assessor parcel report is mistaken and that Judge Loren Smith's recent decision in *Rhutasel,* 2012 WL 2373253, relieves them of having to reconcile the Assessor parcel report and the source deed. Pls.' Resp. Br. 4-5 (ECF No. 97). Each of these arguments fails. Plaintiffs offer no evidence in support of their challenge to the accuracy of the Assessor parcel report. Plaintiffs cannot negate a public record by asserting, without supporting evidence, that the record is incorrect. *Gemtron*, 572 F.3d at 1380 ("[U]nsworn attorney argument . . . is not evidence"). In addition, Plaintiffs' reliance on *Rhutasel* is misplaced. There, the United States contested adjacency of a parcel on the ground that Plaintiffs had not proffered a subdivision map illustrating the location of the land described in the Assessor parcel report. *Rhutasel*, 2012 WL 2373253, at *5-6. The United States does not contest adjacency of claim 83.A. *See* Dec. 12, 2011, Joint Status Report, Ex. 1 (ECF No. 72) (claimant 83.A). Instead, and unlike *Rhutasel*, the source deed Plaintiffs proffer describes a different area than the legal description recited in the Assessor parcel report. *Compare* Pls.' 2d Proposed Findings ¶ 55, Ex. 83.A.2, *with id.*, Ex. 83.A.5. Plaintiffs, therefore, have not tethered

the Assessor parcel alleged in their complaint with the source deed they proffer as evincing the

nature of Union Pacific's ownership in the relevant segment of the rail corridor.  Thus, the Court

should grant the United States' cross-motion as to this parcel.

With respect to claim 77, Plaintiffs insist that there is no source deed available and that

Union Pacific held a prescriptive easement limited to railroad purposes only.  Pls.' Resp. Br. 7

(ECF No. 97).  There are two problems with Plaintiffs' argument.  First, Plaintiffs presume that

their inability to find a recorded source deed means that no source deed exists.  As evinced in the

fact that Plaintiffs incorrectly asserted that no source deed existed for claim 47.K, Plaintiffs'

presumption is unwarranted.  Second, it is Plaintiffs, and not the United States, who carry the

burden of establishing that Union Pacific operated the relevant segment of the rail corridor by an

easement limited to railroad purposes only.  *Loesch*, 645 F.2d at 914.  Plaintiffs offer no deed or

instrument evincing such an easement.  And Plaintiffs make no attempt to identify the elements

of prescriptive easement, much less an attempt to show that those elements are satisfied.  *See*

Pls.' Resp. Br. 7 (ECF No. 97).  Instead, Plaintiffs insist that the mere use of the rail corridor

satisfies whatever elements for prescriptive easement might exist.  *Id.*  But that was precisely the

argument the Iowa Supreme Court rejected in *Gates v. Colfax Northern Railway Co.*, 159 N.W.

458 (Iowa 1916).  There, the open use of a rail corridor was deemed insufficient to satisfy the

elements of a possessive interest by adverse possession.  *Id*. at 463.  Because Plaintiffs proffer no

evidence of Union Pacific's ownership interest in the segment of the rail corridor adjoining claim

77, they cannot meet their burden of proof for this claim.  Thus, this Court should grant the

United States' cross-motion as to this parcel.

D.      The United States' liability with respect to claim 8 is limited to the one-sixth
        interest of S. Suzanne Yates.

The United States cross-moved to limit its liability for claim 8 to the one-sixth interest of

S. Suzanne Yates, because she was the only claimant who timely enrolled in this lawsuit and

could establish an ownership interest in the property when the NITU issued.  U.S. Cross-Mot.

Part II.D (ECF No. 93).  Plaintiffs respond that they have established the ownership interest of

all of the newly-identified owners of this parcel when the NITU issued.  Pls.' Resp. Br. 2-4 (ECF

No. 97).

Plaintiffs proffer 10 ownership deeds in support of their claim for this parcel.  Pls.' 2d

Proposed Findings ¶ 3, Ex. 8.1.  Two of these deeds post-date the issuance of the NITU and are,

therefore, irrelevant: book 2004, page 17889 and book 2005, page 15194.  *Id.*  Two of the pre-

NITU deeds do not describe the parcel in question: book 668, page 525 and book 797, page 407.

*Compare* Pls.' 2d Proposed Finding ¶ 3, Ex. 8.4 (describing parcel as lying in the southeast

quarter of the southwest quarter of section 18), *with id.* ¶ 3, Ex. 8.1 (reciting legal description for

book 668, page 525 and book 797, page 407 as lying in the southwest quarter of the southeast

quarter of section 18).

S. Suzanne Yates is described as a co-grantee of a one-third interest in the parcel from

Paul and Floy Morris.  *Id.* ¶ 3, Ex. 8.1 (book 569, page 790-91).  Plaintiffs claim that S. Suzanne

Yates can enroll in the lawsuit on behalf of all joint owners, citing the enrollment form for this

lawsuit and the provision that "[i]f you owned the land with another person or entity, it is only

necessary that one of the owners sign this form, but it is helpful if you identify all owners."  Pls.'

Resp. Br. 3-4 (ECF No. 97) (citing Oct. 2, 2009, Joint Proposal for Class Certification, Ex. C

(ECF No. 21), *entered as order by* Nov. 13, 2009, Order 6 (ECF No. 23)).  But even assuming

arguendo that S. Suzanne Yates could sign on behalf of herself and her tenant-in-common, D. Merold Yates, then they collectively own a one-third interest in the property.

The United States contested the ownership of Carol Hilton, John Charles Morris, and Marilyn Marie Dowell based on the conveyances of partial interests (e.g., a 39 % interest in a one-sixth interest conveyed to the Jean Marie Morris Trust by book 2004, page 8857) that could not be tethered back to Paul and Floy Morris (i.e., the grantors to S. Suzanne and D. Merold Yates).  U.S. Cross-Mot. 14 (ECF No. 93).  Plaintiffs make no attempt to decipher what interest Carol Hilton, John Charles Morris, and Marilyn Marie Dowell might hold in the remaining two-thirds interest in the property, nor do they attempt to associate their grantor—the Jean Marrie Morris Trust (book 2004, page 8858)—with Paul and Floy Morris or another common grantor.

The United States' position is that the conveyance to S. Suzanne Yates and D. Merold Yates of a partial interest rendered them tenants-in-common under Iowa law such that S. Suzanne Yates does not have the authority to pursue a claim for D. Merold Yates as to their collective one-third interest.  The United States also submits that Plaintiff's collection of deeds does not evince the ownership interest of Carol Hilton, John Charles Morris, and Marilyn Marie Dowell, due to the lack of a common grantor with S. Suzanne Yates and D. Merold Yates. Accordingly, the United States submits that its liability is limited to the one-sixth interest of S. Suzanne Yates.  But even giving Plaintiffs the most favorable reading of the collection of deeds they have assembled as Exhibit 8.1 to their second proposed findings, including indulging in the assumption that the Jean Marie Morris Trust held a one-sixth interest in the property as of June 8, 2004 (when book 2004, page 8858 was executed and a one-sixth interest conveyed to Carol Hilton, John Charles Morris, and Marilyn Marie Dowell), Plaintiffs deeds suggest that S. Suzanne Yates, D. Merold Yates, Carol Hilton, John Charles Morris, and Marilyn Marie Dowell

collectively owned a one-half interest (i.e., a one-third interest plus a one-sixth interest) in the property when the NITU issued.  These claimants cannot pursue a claim for the outstanding, undocumented one-half interest.

    E.    <u>The city of Dallas Center cannot sue the United States for a taking because it is the successor-in-interest to Union Pacific</u>.

The United States cross-moved for summary judgment as to the claims of Dallas Center on the grounds that Dallas Center was a successor grantee to Union Pacific and this Court's class certification order expressly excluded "railroad companies and their successors-in-interest." U.S. Cross-Mot. 15 (ECF No. 93).  The United States proffered uncontroverted evidence that Dallas Center is the successor-in-interest to Union Pacific.  Pls.' Resp. to U.S. 2d Proposed Findings ¶¶ 14-16 (ECF No. 94).

Plaintiffs insist that "the City of Dallas Center is not a 'successor-in-interest' to the railroad under any common definition of that phrase."  Pls.' Resp. Br. 11 (ECF No. 97). Tellingly, Plaintiffs cite no definition of "successor-in-interest."  Black's Law Dictionary defines "successor in interest" as "[o]ne who follows another in ownership or control of property." Black's Law Dictionary 1832 (9th ed. 2009).  Based on the quit-claim deeds from Union Pacific to Iowa Natural Heritage Foundation, from Iowa Natural Heritage Foundation to Dallas County, and from Dallas County to Dallas Center, U.S. Proposed Findings ¶¶ 14-16, Exs. 43-46 (ECF No. 94), Dallas Center is a successor-in-interest to Union Pacific.  Dallas Center is, therefore, excluded from class enrollment in this lawsuit.  Nov. 13, 2009, Order 5 (ECF No. 23).

III.    <u>CONCLUSION</u>

The United States is entitled to summary judgment as to those claims that adjoin segments of the rail corridor Union Pacific owned in fee.  The United States is also entitled to

summary judgment as to those claims based on parcels that do not adjoin the rail corridor.  And

the United States is entitled to summary judgment as to those claims that adjoin segments of the

rail corridor for which Plaintiffs have not proffered evidence of Union Pacific's ownership

interest.  Moreover, the United States' liability for claim 8 should be limited to the one-sixth

interest of S. Suzanne Yates.  Finally, the United States is entitled to summary judgment as to the

claims of Dallas Center, because Dallas Center is a successor-in-interest to Union Pacific.

Subject to the modification identified in this brief for claims 47.K and 124, this Court

should grant the United States' cross-motion for summary judgment.

DATED:  July 30, 2012                           Respectfully submitted,

                                                IGNACIA S. MORENO
                                                Assistant Attorney General
                                                Environment & Natural Resources Division

                                                By   */s/ Frank J. Singer*
                                                FRANK J. SINGER
                                                United States Department of Justice
                                                Environment & Natural Resources Division
                                                Natural Resources Section
                                                Post Office Box 7611
                                                Washington, D.C. 20044-7611
                                                Tel: (202) 616-9409
                                                Fax: (202) 305-0506
                                                E-mail: frank.singer@usdoj.gov

                                                ATTORNEY FOR THE UNITED STATES

<u>Exhibit 49</u>
to U.S. Reply Br. Supp. 2d Cross-Mot. for Summary J.

# EXHIBIT 49

to United States' Reply Brief Supporting Second Cross-Motion for Partial Summary Judgment

# In the United States Court of Federal Claims

Case No. 09-503L
(FILED: July 10, 2012)
**TO BE PUBLISHED**

*******************************************************

WILMA N. ADKINS, *et al.*,
          *Plaintiffs,*

v.

THE UNITED STATES OF AMERICA,
          *Defendant.*

*******************************************************

| |
|---|
| *   Rails-to-trails; condemnation |
| *   followed by deed; scope of the |
| *   easement; easement limited to |
| *   railroad purposes; fee simple |
| *   conveyance; unlimited easement; |
| *   adjacency requirement; extent of |
| *   takings liability. |
| * |
| * |

    **Thomas Scott Stewart,** Baker, Sterchi, et al., Kansas City, MO, attorney of record for the Plaintiff.

    **Frank James Singer,** U.S. Department of Justice, Washington, D.C., attorney of record for the Defendant.

    **Amelia Moorstein**, Law Clerk.

## OPINION

**BASKIR, Judge.**

    Plaintiffs are 55 landowners collectively owning 99 parcels of land (92 of which are at issue here) located in Polk County, Iowa. Plaintiff moves for summary judgment under Rule 56 of the Rules of the U.S. Court of Federal Claims (RCFC), alleging that the Surface Transportation Board's (STB) issuance of a Notice of Interim Trail Use (NITU) amounts to a taking of their property under the Fifth Amendment. Defendant also moves for summary judgment, disputing the application of various source deeds to the parcels at issue, the adjacency of various parcels to the land at issue, and the nature of the railroad's and plaintiffs' property interest in the land at issue.

    After reviewing the parties' submissions, we grant plaintiffs' motion in part, deny plaintiffs' motion in part, grant defendant's motion in part, and deny defendant's motion in part for the reasons discussed below. We also dismiss those claims that plaintiffs have agreed to dismiss.

**BACKGROUND**

I.    General Rails-to-Trails Background

        This is a rails-to-trails case.  The court will briefly summarize the statutory
context of this litigation.

        Congress enacted section 1247(d) of the National Trails System Act (Trails Act)
in an effort to preserve railroad corridors for possible future rail use by preempting state
abandonment law.  *Preseault v. Interstate Commerce Comm'n*, 494 U.S. 1, 7-8 (1990)
(citing National Trails System Act Amendments of 1983, Pub. L. No. 98-11, § 208(d),
97 Stat. 42, 48 (codified as amended at 16 U.S.C. § 1247(d))).

        Pursuant to its rule-making authority, the STB published regulations concerning
abandonment of and discontinuance of service over rail lines, including regulations
relating to railbanking pursuant to section 1247(d).  49 C.F.R. §§ 1152.1-1152.60.  To
pursue regulatory abandonment or discontinuance of service over a rail line, rail
operators must file an application for abandonment or discontinuance with the STB.
49 U.S.C. § 10903; 49 C.F.R. § 1152.20 (establishing the regulatory framework for
abandonment/discontinuance application).  In certain circumstances, a rail operator
may initiate proceedings for exempted abandonment or discontinuance.  49 C.F.R
§ 1152.20.

        After a railroad initiates an abandonment or exempted abandonment proceeding,
a state, political subdivision, or qualified private organization may submit a petition in
that proceeding indicating its interest in acquiring or using the subject rail corridor for
interim use and railbanking under section 1247(d).  *Id.* § 1152.29(a).  If the rail operator
agrees to negotiate an interim trail use agreement with the proposed trail operator, the
STB must issue a NITU.  *Id.* § 1152.29(d).  The NITU suspends the railroad's initial
proceedings and provides a 180-day window for the rail operator and third party to
negotiate an interim trail use agreement.  *Id.*

        If the parties enter into an interim trail use agreement, the abandonment
proceedings are suspended and rail service is discontinued.  Interim trail use under that
agreement "shall not be treated, for purposes of any law or rule of law, as an
abandonment of the use of such rights-of-way for railroad purposes."  16 U.S.C.
§ 1247(d).  If no railbanking agreement is reached, the rail operator may abandon the
rail line, subject to the satisfaction of any other conditions of abandonment.  49 C.F.R.
§ 1152.29(d)(1).

II.    Factual Background

        The following facts are taken from the parties' filings and are undisputed except
where noted.

Beginning in the late 1880's, a combination of different railroad companies obtained property rights in conjunction with their construction of segments of the railroad corridor at issue. The primary railroad constructor for the parcels in this suit was Des Moines & Minnesota Railroad Company (Des Moines Railroad). Des Moines Railroad obtained property rights through its own name as well as through Martin L. Sykes. Iowa and Minnesota Railway Company (Iowa Railway) also obtained property rights for a portion of the rail corridor. The railroads acquired the property both through condemnation and deeds.

Union Pacific Railroad Company ("Union Pacific") became the successor-in-interest to this rail line. Union Pacific filed a combined environment and historical report concerning the relevant rail corridor on June 3, 2003, and filed with the STB a petition for exemption from formal abandonment proceedings on July 16, 2003. On August 7, 2003, Iowa National Heritage Foundation filed a petition with the STB indicating that it was interested in negotiating a trail use agreement with Union Pacific and requesting that the STB issue a NITU rather than an outright abandonment authorization between milepost 10.7 near Ankeny, Iowa, to milepost 341.1 near Slater, Iowa.

On August 11, 2003, Union Pacific responded to the Iowa National Heritage Foundation's August 7 petition by stating that it had no objection to a standard public use condition and by expressing its willingness to negotiate a possible interim trail use agreement. The STB issued its NITU on September 3, 2003. The STB authorized extensions of the time afforded for negotiating an interim trail agreement. The trail use agreement and sale of the rail corridor was finalized on December 13, 2005.

Plaintiffs filed a complaint on August 3, 2009, and later filed first amended and first corrected amended complaints to include other plaintiffs. The final list of plaintiffs includes 55 landowners collectively owning 99 parcels of land located in Polk County, Iowa -- this motion is filed with respect to 92 parcels. Plaintiffs allege that the STB's issuance of a NITU amounts to a taking of their property under the Fifth Amendment.

## DISCUSSION

I.    Legal Standard

Summary judgment is appropriate where there is "no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." RCFC 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A genuine issue is one that "may reasonably be resolved in favor of either party." *Anderson,* 477 U.S. at 250. A fact is material if it "might affect the outcome of the suit." *Id.* at 248. The moving party bears the burden of establishing the absence of any material fact, and any doubt over factual issues will be resolved in favor of the non-moving party. *Mingus Construcotrs, Inc. v. Unites States,* 812 F.2d 1387, 1390 (Fed. Cir. 1987) (*citing*

- 3 -

*United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) and *SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1116 (Fed. Cir. 1985)).

Once the moving party meets its initial burden, the non-moving party may not rely merely on allegations of denials in its own pleading.  *See* RCFC 56(c)(1).  If the moving party meets its initial burden, the non-moving party, through affidavits or as otherwise provided in RCFC 56, must set forth specific facts showing a genuine issue for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (applying Fed. R. Civ. P. 56).  In evaluating motions for summary judgment, courts must draw any inferences from the underlying facts in the light most favorable to the non-moving party and may not engage in credibility determinations or weigh the evidence.  *Anderson*, 477 U.S. at 255; *Matsushita Elec. Indus Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).


II.     Rails-To-Trails Litigation History

The *Preseault* cases establish the framework for analyzing a takings claim pursuant to the Trails Act.  In *Preseault v. Interstate Commerce Comm'n*, the Supreme Court examined the history and purpose of the Trails Act, the constitutionality of the Trails Act, and the proper vehicle for property owners to receive just compensation for a taking under the Trails Act.  *Preseault v. Interstate Commerce Comm'n*, 494 U.S. 1 (1990) ("*Preseault I*").  The court held that the Tucker Act provides jurisdiction to the Court of Federal Claims and is the proper remedy to recover damages for a taking pursuant to operation of the Trails Act.  *Id.*

The court in *Preseault I* also stated that state property laws dictate whether the railroad held an easement or fee interest, and thus, dictated the nature of the property interests held by property owners.  *Id.* at 8.  Under section 8(d) of the Trails Act authorizing issuance of a NITU, Congress intentionally prevented easement property interests from reverting to adjacent property owners under state law that would occur absent the Trails Act.  *Id.*

In *Preseault v. United States*, the Federal Circuit laid the foundation and set forth the requirements for a compensable taking by operation of the Trails Act.  *Preseault v. United States,* 100 F.3d 1525 (Fed. Cir. 1996) ("*Preseault II*").  The court held that authorization of conversion of a railroad right-of-way to a public recreational trail by the Trails Act constituted a taking of the property of the owners of the underlying fee simple estate.  The court set forth a test for determining whether a plaintiff is due just compensation: First, the court must determine whether the railroad held an easement or held the land in fee simple; if the terms of the easement limited it to use for railroad purposes, the authorization for future use as a public recreational trail constituted a taking.  If the scope of the railroad's easements were broad enough to encompass trail use, a taking still occurred if the easements were abandoned prior to NITU.  *Id.* at 1533.

III.     The Court's Table

        The parties dispute certain attributes of the parcels that would be determinative as to whether the government is liable for a Fifth Amendment taking.  The claimants are laid out in numerical order in the table below.  Next to each claimant, the court has summarized each party's position and the conclusion that the court has ultimately reached for each claimant.  The reasoning for the court's decision is discussed in further detail in the following sections.  Where the defendant has asserted several theories to preclude takings liability, the court has only noted the chief argument that persuaded the court to enter judgment for defendant.

| Claimant Name and Number | Plaintiff Position | Defendant Position | Court Holding |
|---|---|---|---|
| 1. William & Paula Eichinger | When a condemnation was followed by a deed, the railroad was granted an easement limited to railroad purposes. | The condemnation is irrelevant.  The court must look at the deed only, and the John Witner deed granted the railroad fee title. | DENY plaintiffs' Motion and GRANT defendant's Motion |
| 2. Michael Staab & Deborah K. McKittrick | When a condemnation was followed by a deed, the railroad was granted an easement limited to railroad purposes. | The condemnation is irrelevant.  The court must look at the deed only, and the John Witner deed granted the railroad fee title. | DENY plaintiffs' Motion and GRANT defendant's Motion |
| 3. | Dismiss | Dismiss | Dismiss |
| 4. | Dismiss | Dismiss | Dismiss |
| 5. Charles L. & Cynthia Cannon | When a condemnation was followed by a deed, the railroad was granted an easement limited to railroad purposes. | The condemnation is irrelevant.  The court must look at the deed only, and the James Irvine deed granted the railroad fee title. | DENY plaintiffs' Motion and GRANT defendant's Motion |

| 6. Frank R., Jr. Martin | When a condemnation was followed by a deed, the railroad was granted an easement limited to railroad purposes. | The condemnation is irrelevant. The court must look at the deed only, and the James Irvine deed granted the railroad fee title. | DENY plaintiffs' Motion and GRANT defendant's Motion |
|---|---|---|---|
| 7. Robert L. & Patricia A. Peters | When a condemnation was followed by a deed, the railroad was granted an easement limited to railroad purposes. | The condemnation is irrelevant. The court must look at the deed only, and the James Irvine deed granted the railroad fee title. | DENY plaintiffs' Motion and GRANT defendant's Motion |
| 8. Todd E. & Susan L. Johnson | When a condemnation was followed by a deed, the railroad was granted an easement limited to railroad purposes. | The condemnation is irrelevant. The court must look at the deed only, and the James Irvine deed granted the railroad fee title. | DENY plaintiffs' Motion and GRANT defendant's Motion |
| 9. Hope Church of the Nazarene | When a condemnation was followed by a deed, the railroad was granted an easement limited to railroad purposes. | The condemnation is irrelevant. The court must look at the deed only, and the James Irvine deed granted the railroad fee title. | DENY plaintiffs' Motion and GRANT defendant's Motion |
| 10. Clifford & Kari Suhr | When a condemnation was followed by a deed, the railroad was granted an easement limited to railroad purposes. | The condemnation is irrelevant. The court must look at the deed only, and the James Irvine deed granted the railroad fee title. | DENY plaintiffs' Motion and GRANT defendant's Motion |
| 11. David E. & Cynthia L. Brooner | When a condemnation was followed by a deed, | The condemnation is irrelevant. The court must look at | DENY plaintiffs' Motion and GRANT |

| | the railroad was granted an easement limited to railroad purposes. | the deed only, and the James Irvine deed granted the railroad fee title. | defendant's Motion |
|---|---|---|---|
| 12. Ronald E. Pinyan & Catherine Anderson | When a condemnation was followed by a deed, the railroad was granted an easement limited to railroad purposes. | The condemnation is irrelevant. The court must look at the deed only, and the James Irvine deed granted the railroad fee title. | DENY plaintiffs' Motion and GRANT defendant's Motion |
| 13. Christopher David Feldhacker | When a condemnation was followed by a deed, the railroad was granted an easement limited to railroad purposes. | The condemnation is irrelevant. The court must look at the deed only, and the James Irvine deed granted the railroad fee title. | DENY plaintiffs' Motion and GRANT defendant's Motion |
| 14. Branko & Jadranka Todorovic | When a condemnation was followed by a deed, the railroad was granted an easement limited to railroad purposes. | The condemnation is irrelevant. The court must look at the deed only, and the James Irvine deed granted the railroad fee title. | DENY plaintiffs' Motion and GRANT defendant's Motion |
| 15. Floyd W. & Patricia A. Cooke | When a condemnation was followed by a deed, the railroad was granted an easement limited to railroad purposes. | The condemnation is irrelevant. The court must look at the deed only, and the James Irvine deed granted the railroad fee title. | DENY plaintiffs' Motion and GRANT defendant's Motion |
| 16. David M. & Christine L. Chongo | When a condemnation was followed by a deed, the railroad was granted an easement limited to railroad purposes. | The condemnation is irrelevant. The court must look at the deed only, and the James Irvine deed granted the railroad fee title. | DENY plaintiffs' Motion and GRANT defendant's Motion |
| 17. Michael R. & | When a | The condemnation | DENY plaintiffs' |

| Jane L. Nieland | condemnation was followed by a deed, the railroad was granted an easement limited to railroad purposes. | is irrelevant. The court must look at the deed only, and the James Irvine deed granted the railroad fee title. | Motion and GRANT defendant's Motion |
|---|---|---|---|
| 18. Peter R. & Renita R. DiDonato | When a condemnation was followed by a deed, the railroad was granted an easement limited to railroad purposes. | The condemnation is irrelevant. The court must look at the deed only, and the James Irvine deed granted the railroad fee title. | DENY plaintiffs' Motion and GRANT defendant's Motion |
| 19. Michael & Lisa Beving | When a condemnation was followed by a deed, the railroad was granted an easement limited to railroad purposes. | The condemnation is irrelevant. The court must look at the deed only, and the James Irvine deed granted the railroad fee title. | DENY plaintiffs' Motion and GRANT defendant's Motion |
| 20. Ronnie L. & Deborah A. Smith | When a condemnation was followed by a deed, the railroad was granted an easement limited to railroad purposes. | The condemnation is irrelevant. The court must look at the deed only, and the James Irvine deed granted the railroad fee title. | DENY plaintiffs' Motion and GRANT defendant's Motion |
| 21. Bob J. & Pamela J. Ballard | When a condemnation was followed by a deed, the railroad was granted an easement limited to railroad purposes. | The condemnation is irrelevant. The court must look at the deed only, and the James Irvine deed granted the railroad fee title. | DENY plaintiffs' Motion and GRANT defendant's Motion |
| 22. Doug Smelling | When a condemnation was followed by a deed, the railroad was granted an easement limited to railroad purposes. | The condemnation is irrelevant. The court must look at the deed only, and the James Irvine deed granted the railroad fee title. | DENY plaintiffs' Motion and GRANT defendant's Motion |

| 23. | Dismiss | Dismiss | Dismiss |
|---|---|---|---|
| 24. Boyce L. Lange Living Trust, Boyce L. Lange, Trustee | When a condemnation was followed by a deed, the railroad was granted an easement limited to railroad purposes. | The condemnation is irrelevant. The court must look at the deed only, and the James Irvine deed granted the railroad fee title. | DENY plaintiffs' Motion and GRANT defendant's Motion |
| 25. Clayton W. & Gayle L Lindstrom | When a condemnation was followed by a deed, the railroad was granted an easement limited to railroad purposes. | The condemnation is irrelevant. The court must look at the deed only, and the James Irvine deed granted the railroad fee title. | DENY plaintiffs' Motion and GRANT defendant's Motion |
| 26. Clayton W. & Gayle L. Lindstrom | When a condemnation was followed by a deed, the railroad was granted an easement limited to railroad purposes. | The condemnation is irrelevant. The court must look at the deed only, and the James Irvine deed granted the railroad fee title. | DENY plaintiffs' Motion and GRANT defendant's Motion |
| 26A. MLSK, LLC | When a condemnation was followed by a deed, the railroad was granted an easement limited to railroad purposes. | The condemnation is irrelevant. The court must look at the deed only, and the James Irvine deed granted the railroad fee title. | DENY plaintiffs' Motion and GRANT defendant's Motion |
| 26B. MLSK, LLC | When a condemnation was followed by a deed, the railroad was granted an easement limited to railroad purposes. | The condemnation is irrelevant. The court must look at the deed only, and the James Irvine deed granted the railroad fee title. | DENY plaintiffs' Motion and GRANT defendant's Motion |
| 26C. MLSK, LLC | When a condemnation was followed by a deed, the railroad was | The condemnation is irrelevant. The court must look at the deed only, and | DENY plaintiffs' Motion and GRANT defendant's Motion |

| | granted an easement limited to railroad purposes. | the James Irvine deed granted the railroad fee title. | |
|---|---|---|---|
| 27A. Dorothy Wheeler Trust & David Harmon | When a condemnation was followed by a deed, the railroad was granted an easement limited to railroad purposes. | The condemnation is irrelevant.  The court must look at the deed only, and the James Irvine deed granted the railroad fee title. | DENY plaintiffs' Motion and GRANT defendant's Motion |
| 27B. | Dismiss | Dismiss | Dismiss |
| 28. | Dismiss | Dismiss | Dismiss |
| 29. Gary L. & Melva B. Schmidt | When a condemnation was followed by a deed, the railroad was granted an easement limited to railroad purposes. | The condemnation is irrelevant.  The court must look at the deed only, and the August Matter deed granted the railroad fee title. | DENY plaintiffs' Motion and GRANT defendant's Motion |
| 30. Ronald A. & Jody L. Palmer | When a condemnation was followed by a deed, the railroad was granted an easement limited to railroad purposes. | The condemnation is irrelevant.  The court must look at the deed only, and the August Matter deed granted the railroad fee title. | DENY plaintiffs' Motion and GRANT defendant's Motion |
| 31A. W. Nevin & Bonita Jean Harmon | When a condemnation was followed by a deed, the railroad was granted an easement limited to railroad purposes. | The condemnation is irrelevant.  The court must look at the deed only, and the John Dunlap deed granted the railroad fee title. | DENY plaintiffs' Motion and GRANT defendant's Motion |
| 31B. W. Nevin & Bonita Jean Harmon | When a condemnation was followed by a deed, the railroad was granted an easement limited to railroad | The condemnation is irrelevant.  The court must look at the deed only, and the John Dunlap deed granted the | DENY plaintiffs' Motion and GRANT defendant's Motion |

| | purposes. | railroad fee title. | |
|---|---|---|---|
| 31C. W. Nevin & Bonita Jean Harmon | When a condemnation was followed by a deed, the railroad was granted an easement limited to railroad purposes. | The condemnation is irrelevant.  The court must look at the deed only, and the John Dunlap deed granted the railroad fee title. | DENY plaintiffs' Motion and GRANT defendant's Motion |
| 31D. W. Nevin & Bonita Jean Harmon and Randy C. & Paula A. Zink | | No objections. | GRANT plaintiffs' Motion and DENY defendant's Motion |
| 31E. W. Nevin & Bonita Jean Harmon and Randy C. & Paula A. Zink | | No objections. | GRANT plaintiffs' Motion and DENY defendant's Motion |
| 31F. W. Nevin & Bonita Jean Harmon and Randy C. & Paula A. Zink | | No objections. | GRANT plaintiffs' Motion and DENY defendant's Motion |
| 31G. W. Nevin & Bonita Jean Harmon and Randy C. & Paula A. Zink | | No objections. | GRANT plaintiffs' Motion and DENY defendant's Motion |
| 31H. W. Nevin & Bonita Jean Harmon and Randy C. & Paula A. Zink | | No objections. | GRANT plaintiffs' Motion and DENY defendant's Motion |
| 31I. W. Nevin & Bonita Jean Harmon and Randy C. & Paula A. Zink | | No objections. | GRANT plaintiffs' Motion and DENY defendant's Motion |
| 32. Thomas H. | | No objections. | GRANT plaintiffs' |

| Blake | | | Motion and DENY defendant's Motion |
|---|---|---|---|
| 33A. | Dismiss | Dismiss | Dismiss |
| 33B. Triple J of Ankeny, LLC | The Jacob Moeckly deed #1 granted an easement limited to railroad purposes. | The Jacob Moeckly deed #1 granted an unlimited easement. | GRANT plaintiffs' Motion and DENY defendant's Motion |
| 34A. Sharon Burt, Karen R. Huggans, Ronald Mayner, Beth Ann Roy & Steve Roy, and Charles Hale | | No objections. | GRANT plaintiffs' Motion and DENY defendant's Motion |
| 34B. Sharon Burt, Karen R. Huggans, Ronald Mayner, Beth Ann Roy & Steve Roy, and Charles Hale | | No objections. | GRANT plaintiffs' Motion and DENY defendant's Motion |
| 35. Wilma N. Adkins | Source deed located at book 94, page 555 applies; grantor held an easement and could only quit claim to the railroad the easement it held. | Chain-of-title indicates that railroad obtained fee title. | GRANT plaintiffs' Motion and DENY defendant's Motion |
| 36. Merrill U. & Linda L. Goering | Source deed located at book 94, page 555 applies; grantor held an easement and could only quit claim to the railroad the easement it held. | Chain-of-title indicates that railroad obtained fee title. | GRANT plaintiffs' Motion and DENY defendant's Motion |
| 37A. Audre M. Ferrier & B.E. Ferrier | The Jacob Moeckly deed #3 granted an easement limited to railroad purposes. | The Jacob Moeckly deed #3 granted a fee. | GRANT plaintiffs' Motion and DENY defendant's Motion |

| | | | |
|---|---|---|---|
| 37B. Audre M. Ferrier & B.E. Ferrier | The Jacob Moeckly deed #3 granted an easement limited to railroad purposes. | The Jacob Moeckly deed #3 granted a fee. | GRANT plaintiffs' Motion and DENY defendant's Motion |
| 38A. James E. & Patricia R. Brady | The Emma Mason deed granted an easement limited to railroad purposes. | The Emma Mason deed granted an unlimited easement. | GRANT plaintiffs' Motion and DENY defendant's Motion |
| 38B. James E. & Patricia R. Brady | The Emma Mason deed granted an easement limited to railroad purposes. | The Emma Mason deed granted an unlimited easement. | GRANT plaintiffs' Motion and DENY defendant's Motion |
| 39A. Gonner Farms, LLC | | No objections. | GRANT plaintiffs' Motion and DENY defendant's Motion |
| 39B. Gonner Farms, LLC | | No objections. | GRANT plaintiffs' Motion and DENY defendant's Motion |
| 39C. Gonner Farms, LLC | | No objections. | GRANT plaintiffs' Motion and DENY defendant's Motion |
| 39D. Gonner Farms, LLC | | No objections. | GRANT plaintiffs' Motion and DENY defendant's Motion |
| 39E. Gonner Farms, LLC | | No dispute. | GRANT plaintiffs' Motion and DENY defendant's Motion |
| 39F. Gonner Farms, LLC | | No objections. | GRANT plaintiffs' Motion and DENY defendant's Motion |
| 39G. Gonner Farms, LLC | Plaintiff's property is adjacent to the former railroad right-of-way. | N.W. 58th Street frustrates adjacency requirement. | DENY plaintiffs' Motion and GRANT defendant's Motion |
| 39H. Gonner Farms, LLC | Plaintiff's property is adjacent to the former railroad right- | N.W. 58th Street frustrates adjacency | DENY plaintiffs' Motion and GRANT |

- 13 -

| | of-way. | requirement. | defendant's Motion |
|---|---|---|---|
| 40. Melvin E. & Karen Flanders | Plaintiff's property is adjacent to the former railroad right-of-way. | N.W. 58th Street frustrates adjacency requirement. | DENY plaintiffs' Motion and GRANT defendant's Motion |
| 41A. Dale A. & Kathleen Barrett | The Peter Sutter deed granted an easement limited to railroad purposes. | The Peter Sutter deed granted an unlimited easement. | GRANT plaintiffs' Motion and DENY defendant's Motion |
| 41B. Dale A. & Kathleen Barrett | The Peter Sutter deed granted an easement limited to railroad purposes. | The Peter Sutter deed granted an unlimited easement. | GRANT plaintiffs' Motion and DENY defendant's Motion |
| 41C. Dale A. & Kathleen Barrett | The Peter Sutter deed granted an easement limited to railroad purposes. | The Peter Sutter deed granted an unlimited easement. | GRANT plaintiffs' Motion and DENY defendant's Motion |
| 42. Raymond J. & Diane Conway | The Peter Sutter deed granted an easement limited to railroad purposes. | The Peter Sutter deed granted an unlimited easement. | GRANT plaintiffs' Motion and DENY defendant's Motion |
| 43A. Marion Carlson & Nyra Carlson | Plaintiff's property is adjacent to the former railroad right-of-way. | N.W. 58th Street frustrates adjacency requirement. | DENY plaintiffs' Motion and GRANT defendant's Motion |
| 43B. Marion Carlson & Nyra Carlson | Plaintiff's property is adjacent to the former railroad right-of-way. | N.W. 58th Street frustrates adjacency requirement. | DENY plaintiffs' Motion and GRANT defendant's Motion |
| 43C. Marion Carlson & Nyra Carlson | | No objections. | GRANT plaintiffs' Motion and DENY defendant's Motion |
| 44A. Michael A. & Julianne K. Manock, Jennifer G. Friestad, Jill M. Friestad-Tate & Brian H. Tate | When a condemnation was followed by a deed, the railroad was granted an easement limited to railroad | The condemnation is irrelevant. The court must look at the deed only, and the B.D. & R.H Leggett deed | DENY plaintiffs' Motion and GRANT defendant's Motion |

| | purposes. | granted the railroad fee title. | |
|---|---|---|---|
| 44B. Michael A. & Julianne K. Manock, Jennifer G. Friestad, Jill M. Friestad-Tate & Brian H. Tate | When a condemnation was followed by a deed, the railroad was granted an easement limited to railroad purposes. | The condemnation is irrelevant.  The court must look at the deed only, and the B.D. & R.H Leggett deed granted the railroad fee title. | DENY plaintiffs' Motion and GRANT defendant's Motion |
| 44C. Michael A. & Julianne K. Manock, Jennifer G. Friestad, Jill M. Friestad-Tate & Brian H. Tate | When a condemnation was followed by a deed, the railroad was granted an easement limited to railroad purposes. | The condemnation is irrelevant.  The court must look at the deed only, and the B.D. & R.H Leggett deed granted the railroad fee title. | DENY plaintiffs' Motion and GRANT defendant's Motion |
| 45A. Jan-Rose Farm, Inc. | Plaintiff's property is adjacent to the former railroad right-of-way. | N.W. 58th Street frustrates adjacency requirement. | DENY plaintiffs' Motion and GRANT defendant's Motion |
| 45B. | Dismiss | Dismiss | Dismiss |
| 45C. | Dismiss | Dismiss | Dismiss |
| 45D. | Dismiss | Dismiss | Dismiss |
| 46A. Robert C. & Kathleen D. Houge | Plaintiff's property is adjacent to the former railroad right-of-way. | N.W. 58th Street frustrates adjacency requirement. | DENY plaintiffs' Motion and GRANT defendant's Motion |
| 46B. Robert C. & Kathleen D. Houge | Plaintiff's property is adjacent to the former railroad right-of-way. | N.W. 58th Street frustrates adjacency requirement. | DENY plaintiffs' Motion and GRANT defendant's Motion |
| 47. James A. Harp | Plaintiff's property is adjacent to the former railroad right-of-way. | N.W. 58th Street frustrates adjacency requirement. | DENY plaintiffs' Motion and GRANT defendant's Motion |

| 48. Young Investments, LC | Transfer deed and articles of organization support assertion that Young Investments, LC was owner of the property on the date the NITU was issued. | Plaintiff was not owner of the property on the date the NITU was issued. | DENY plaintiffs' Motion and GRANT defendant's Motion |
|---|---|---|---|
| 49. Kenneth D. & Rosalie A. Lund | Plaintiff's property is adjacent to the former railroad right-of-way. | N.W. 58th Street frustrates adjacency requirement. | DENY plaintiffs' Motion and GRANT defendant's Motion |
| 50A. Charles T. Cownie Trust | When a condemnation was followed by a deed, the railroad was granted an easement limited to railroad purposes. | The condemnation is irrelevant. The court must look at the deed only, and the Robert L. Clingen deed granted the railroad fee title. | DENY plaintiffs' Motion and GRANT defendant's Motion |
| 50B. Charles T. Cownie Trust | When a condemnation was followed by a deed, the railroad was granted an easement limited to railroad purposes. | The condemnation is irrelevant. The court must look at the deed only, and the Robert L. Clingen deed granted the railroad fee title. | DENY plaintiffs' Motion and GRANT defendant's Motion |
| 51. Kenneth D. & Rosalie A. Lund | When a condemnation was followed by a deed, the railroad was granted an easement limited to railroad purposes. | The condemnation is irrelevant. The court must look at the deed only, and the Mary J. Murry deed granted the railroad fee title. | DENY plaintiffs' Motion and GRANT defendant's Motion |
| 52A. Thomas H. & Deanna K. Jones | | No objections. | GRANT plaintiffs' Motion and DENY defendant's Motion |
| 52B. Thomas H. & Deanna K. | | No objections. | GRANT plaintiffs' Motion and DENY |

| Jones | | | defendant's Motion |
|---|---|---|---|
| 53A. Dale A. & Denise J. Petersen | The David Magraw deed granted an easement limited to railroad purposes. | The David Magraw deed granted fee title. | DENY plaintiffs' Motion and GRANT defendant's Motion |
| 53B. Dale A. & Denise J. Petersen | The David Magraw deed granted an easement limited to railroad purposes. | The David Magraw deed granted fee title. | DENY plaintiffs' Motion and GRANT defendant's Motion |
| 53C. Dale A. & Denise J. Petersen | The David Magraw deed granted an easement limited to railroad purposes. | The David Magraw deed granted fee title. | DENY plaintiffs' Motion and GRANT defendant's Motion |
| 54A. Thomas Curphey & Richard Martin Curphey | | No objections. | GRANT plaintiffs' Motion and DENY defendant's Motion |
| 54B. Thomas Curphey & Richard Martin Curphey | | No objections. | GRANT plaintiffs' Motion and DENY defendant's Motion |
| 55A. Jissom, Inc. | | No objections. | GRANT plaintiffs' Motion and DENY defendant's Motion |
| 55B. Jissom, Inc. | | No objections. | GRANT plaintiffs' Motion and DENY defendant's Motion |
| 55C. Jissom, Inc. | | No objections. | GRANT plaintiffs' Motion and DENY defendant's Motion |
| 55D. Jissom, Inc. | | No objections. | GRANT plaintiffs' Motion and DENY defendant's Motion |
| 55E. Jissom, Inc. | | No objections. | GRANT plaintiffs' Motion and DENY defendant's Motion |
| 55F. Jissom, Inc. | | No objections. | GRANT plaintiffs' |

| | | | Motion and DENY defendant's Motion |
|---|---|---|---|
| 55G. Jissom, Inc. | | No objections. | GRANT plaintiffs' Motion and DENY defendant's Motion |

IV.     Parcels that defendant stipulates to an entry of summary judgment or the plaintiff agrees to dismiss

Defendant concedes that certain parcels adjoin segments of the rail corridor that Union Pacific operated by condemned easement or by deeded easement limited to railroad purposes only.  Those claimants for whom we grant summary judgment through stipulation are: 31D, 31E, 31G, 31H, 31I, 32, 34A, 34B, 39A, 39B, 39C, 39D, 39E, 39F, 43C, 52A, 52B, 54A, 54B, 55A, 55B, 55C, 55D, 55E, 55F, and 55G.

Plaintiff has agreed to dismiss some of its claims.  We therefore dismiss claims 3, 4, 23, 27B, 28, 43C, 45B, 45C, and 45D.

V.      Parcels that defendant asserts the railroad owned in fee because a deed followed a condemnation

The parties dispute the railroad's ownership of those parcels where the railroad initially acquired its property interest through condemnation, but the owner subsequently executed a deed transferring an interest in the property to the railroad. The court finds for defendant for those properties where a deed reciting a fee simple conveyance followed a condemnation: 1, 2, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 24, 25A, 25B, 26A, 26B, 26C, 27A, 29, 30, 31A, 31B, 31C, 44A, 44B, 44C, 50A, 50B, and 51.

Under Iowa law, condemnation of land for a railroad right-of-way creates an easement for railroad purposes.  *McKinley v. Waterloo Railroad Co.*, 368 N.W.2d 131, 133-35 (Iowa 1985).  The parcels in dispute were condemned; however, the owners also executed deeds following the condemnations.  Plaintiffs characterize the deed as merely affirming the easement, while defendant characterizes the deeds as property transfers completely separate and apart from the condemnation.

The 1853 Iowa Code, ch. 31, § 4 states that if a landowner refuses to grant a right-of-way, the railroad may enter the property and construct tracks after paying the condemnation award.  Pl. Ex. G.  But this statute does not require that the parties record this transaction except for a report by disinterested parties as to the damages. *See Id.*  Yet the parcels at issue have deeds transferring a property interest in addition

- 18 -

to the Notices of Condemnation.  *See* CSUF Ex. I.1- I.7.  It seems more probable that the parties executed this deed to document a separate transaction than to cement the terms of the condemnation.  The parties did not need to execute any document aside from the Notice of Condemnation, so we will treat the extra document as a separate transaction.

In further support of defendant's argument, the consideration stated in the deeds at issue is greater than the consideration stated in each corresponding Condemnation Notice that plaintiff has provided.  *Id*.; D's Reply at 18 n.5.  There could be many explanations for the increased consideration; but at the very least the discrepancy supports the conclusion that the deeded transfer and condemnation were not the same transaction, but rather were two separate transactions.

We reject plaintiffs' assertion of the "compulsory consent" theory developed in *Preseault II*.  The court in *Preseault II* held that, under Vermont law, a railroad with eminent domain power that acquired land by "consent"– a deed purporting to convey a fee simple title – took only an easement because the process was compulsory in nature.  *Id.* at 1536.  The court in *Hash v. United States* did not accept the plaintiffs' compulsory consent argument because it had not proffered "evidence of any greater inequality between the buyer and seller" as to the deeds affiliated with condemnation proceedings versus those that were not.  *Hash v. United States*, 403 F.3d 1308, 1323 (Fed. Cir. 2005).  Plaintiffs in this case have similarly failed to proffer evidence of a greater inequality between the buyers and sellers subject to the condemnation proceedings versus those who were not.  Iowa law specifically allows railroads to acquire fee title through purchase.  *See Watkins v. Iowa Cent. R. Co.,* 98 N.W. 910, 913 (Iowa 1904).  There is no reason that we should not give effect to the separately executed deed.

We now turn our attention to the language in the deeds at issue and find they granted the railroad a fee simple interest.  The John Witner, James Irvine, August Matter, John Dunlap, B.D. and R.H. Leggett, Robert L. Clingen, and Mary J. Murry deeds all use identical language in that they "sell and convey" the "described premises." CSUF Ex. I.1 - I.7  Under Iowa law, this language conveys a fee simple interest.  *See McKinley v. Waterloo Railroad Co.*, 368 N.W.2d 131, 137 (Iowa 1985).

VI.     Parcels that defendant asserts are unlimited easements or fees based on the
        language of the deed

The parties dispute the interest conveyed by certain deeds.  Specifically, defendant asserts that certain parcels' deeds granted an unlimited easement or a fee, while plaintiffs assert these deeds granted an easement limited to railroad purposes. Plaintiffs primarily rely on three cases to support their argument: two Iowa cases and one Court of Federal Claims case.  These cases indicate that the scope of the

- 19 -

easement is determined by the language as it reveals the intent of the grantors. The cases are discussed below:

In *Macerich Real Estate Co. v. City of Ames*, the Supreme Court of Iowa held the deed at issue granted an easement limited to railroad purposes. The deed read, "[Grantors] hereby sell and convey to the Iowa and Minnesota Railway Company the right-of-way 100 feet in width for a single or double railroad tracks as the same is located through the following lands, to-wit: [legal description]." *Macerich Real Estate Co. v. City of Ames,* 433 N.W.2d 726, 728-29 (Iowa 1988).

In *Estate of Rockafellow v. Lihs,*, the Court of Appeals of Iowa found an easement limited to railroad purposes in the language "[Grantors]. . .give, remise, release, convey and quitclaim to the said Burlington, Cedar Rapids & Minnesota Railway Company for the purpose of constructing a railroad thereon and for all purposes connected with the construction and use of the said railroad the right-of-way for the said road over and through the described tract. . ." *Estate of Rockafellow v. Lihs*, 494 N.W.2d 734, 736 (Iowa App. 1992). The deed also contained a reverter provision which allowed the easement to revert to the grantor when the railroad stopped using the easement. *Id.* at 735.

Defendant argues that the deeds in this case grant unlimited easements because they do not contain reverter clauses. The Court of Federal Claims in *Jenkins v. United States* rejected a similar argument. *Jenkins v. United States*, 102 Fed. Cl. 598 (Dec. 20, 2011). The court reasoned that the Iowa court in *Estate of Rockafellow* had relied on language outside the reverter clause in holding that the deeds at issue granted an easement for railroad purposes only. It concluded that the language in the deeds in *Jenkins*, which contained language similar to the language in the deeds in the case before us, granted an easement limited to railroad purposes.

We now turn our attention to the language in the specific deeds in this case.

The Robert Channon deed, which applies to parcels 31D and 31E, reads, "[Grantor] does grant, sell and convey. . .*for the purposes of constructing a Railroad thereon*, and for *all uses and purposes connected with the use and construction of a Railroad,* the right-of-way for *a Railroad* over and through the following described tract. . .". CSUF Ex. III.1 (emphasis added). Defendant asserts this language granted an unlimited easement. However, as the emphasized portions of the language indicate, the grantor intended to grant an easement limited to railroad purposes.

The Jacob Moeckly deed #1, which applies to parcel 33B, reads, "[Grantor]. . .hereby sell and convey. . .the right-of-way one hundred feet in width *for a single or double railroad track* to the same as located through the following lands to-wit. . ." CSUF Ex. III.5 (emphasis added). Defendant asserts this language granted an unlimited easement. Not only does the emphasized language indicate an intent to

grant an easement limited to railroad purposes, but this language mirrors the language in the deed in *Macerich Real Estate Co.* that the court found to be an easement limited to railroad purposes.

The Jacob Moeckly deed # 2 located at book 77, page 473 applies to parcels 35 and 36 and reads, "[Grantor]. . .do hereby sell and convey. . .the following described *premises*. . ." (emphasis added)  Pls. Reply Br., Ex. J.  This language clearly grants fee simple.  After the Jacob Moeckly transfer, the railroad (through Martin Sykes) quit-claimed this land to Albert Keep in a deed located at book 85, page 315.  Pls. Reply Br., Ex. J.  Albert Keep platted this property as the Town of Crocker; this plat indicates that the depot grounds are 135 feet wide, that all of block 6 is "reserved for railway purposes, including as part of the Depot Grounds," and consists of "WAREHOUSE LOTS."  U.S. Ex. 73.  Albert Keep then quit-claimed the platted Town of Crocker to the Western Town Lot Company, specifying that the grantor was "excepting and reserving them from the Depot grounds of the Des Moines and Minnesota Rail Road, as stated on and shown on the recorded Plat- of the Town of Crocker; and this right-of-way for said railroad Fifty (50) feet in width on each side of the centerline as located and constructed over said land."  Pls. Reply Br., Ex. J. (book 85, page 516).  There is no indication the depot grounds, except for the 50 feet on other side of the centerline, was granted to the railroad as anything less than fee simple.  Furthermore, the language clearly states that the deed was granting a right-of-way to be used for construction of a railroad.  These two facts support plaintiffs' argument that the depot grounds were granted in fee simple and the railroad was granted a right-of-way.

Western Town Lot Company then conveyed its interest through the deed located at book 94, page 555, which states that Western Town Lot Company conveys to the railroad's "successors and assigns forever, all the rights, title, interest, claim, and demand. . .the following described lot or parcel of land. . ."  Def. Mot. Ex. 22.  This transfer of property clearly conveys fee interest, and the two transfers prior to plaintiffs' ownership are not in dispute.  Thus, the chain of title indicates that fee title, except for the right-of-way indicated in Albert Keep's quit-claim deed to the Western Town Lot Company, was ultimately transferred to the railroad.  *Id.*  Since the railroad held an easement limited to railroad purposes and claimants 35 and 36 own their properties in fee simple, the court grants summary judgment for the plaintiffs.

The Jacob Moeckly deed #3, which applies to parcels 37A and 37B, reads, "[Grantor]. . .do hereby sell and convey. . .the following described real estate situated in the County of Polk State of Iowa. . .the *right-of-way for railroad purposes*, one hundred feet (100) in width across the following described real estate to-wit. . ."  CSUF Ex. III.7 (emphasis added).  Defendant asserts that this deed conveyed fee title to the railroad.  Though this deed refers to "real estate," the subsequent language uses the same language as the Jacob Moeckly deed #1 and the *Macerich Real Estate* deed.  Given that the same grantor unequivocally granted an easement in another deed on the same date, May 20, 1880, we think the grantor had a clear intent to grant an easement limited to railroad purposes in this second deed.

The Emma Mason deed, which applies to parcels 38A and 38B, reads, "[Grantor]. . .hereby sell and convey. . .the right-of-way, one hundred feet in width *for a single or double railroad track*, as the same is located through the following lands to-wit..."CSUF Ex. III.8 (emphasis added).  Defendant asserts this language granted an unlimited easement.  However, this language mirrors the language of the deed in *Macerich Real Estate* and similarly grants an easement limited to railroad purposes.

The Peter Sutter deed, which applied to parcels 41A, 41B, 41C, and 42, reads, "[Grantor] does grant, sell, and convey. . .for the *purpose of constructing a railroad thereon* and for all uses and purposes *connected with the construction and use of the railroad*, the right-of-way *for a railroad* over and through the following described tract, piece or parcel of land. . ."  CSUF Ex. III.11 (emphasis added).  Defendant asserts this language granted an unlimited easement.  The emphasized language demonstrates that the grantor intended to limit the right-of-way's use to railroad purposes.

The David Magraw deed, which applies to parcels 53A, 53B, and 53C, reads, "[Grantor] do hereby sell and convey unto the said Des Moines and Minnesota Rail Road Company the following *described premises*, situated in the County of Polk and state of Iowa, to-wit. . ."  CSUF III.12 (emphasis added).  Defendant asserts that this language conveys fee title.  We agree that the use of "premises" in the deed indicates an intent to convey fee title and we grant summary judgment for defendant.

VII.   Parcels that defendant disputes adjacency

Iowa Code § 327G.77(1) states, "If a railroad easement is extinguished under 327G.76, the property shall pass to the owners of the adjacent property at the time of abandonment. If there are different owners on either side, each owner will take to the center of the right-of-way."  Thus, plaintiffs must establish that their property is adjacent to the parcels at issue.  If there is land separating plaintiffs' property from the railroad easement, plaintiffs must proffer evidence that they are still the owner of the underlying intervening property.  *See Notelzah v. Destival*, 537 N.W.2d 687, 692 (Iowa 1995) (holding that the holder of a permanent easement located adjacent to a railroad easement was not an "adjacent" owner entitled to reversion upon abandonment).

Defendant argues that N.W. 58th Street is owned in fee by the County and prevents reversion to claimants 39G, 39H, 40, 43A, 43B, 45A, 46A, 46B, 47, and 49.  We agree that the County owns fee title to N.W. 58th Street; because this land is adjacent to the railroad, plaintiffs are not entitled to any reversionary interest in the parcels.

The intervening highway is N.W. 58th Street; the instruments conveying land are titled "Easement for Public Highway" and the granting clause states that the grantors "do hereby sell and convey...for road purposes and for use as a public highway, the

- 22 -

following described premises..." Pl. Mem. Ex. J.  Though the deed is entitled "Easement for Public Highway," it is significant that there is no reference to a "right-of-way" in the granting clause.  Furthermore, the granting clause uses the word "premises," indicating an intent to grant fee title.  In *Lowers v. United States*, the Supreme Court of Iowa held that the deed at issue granted the railroad fee title when it was titled "Rt. Of Way Deed" and the granting clause conveyed "the following piece or tract of land."  *Lowers*, 663 N.W.2d 408, 411 (Iowa 2003).  We are faced with a similar situation here, and agree with the Supreme Court of Iowa that such language granted the County fee title to the land underlying N.W. 58th Street.


VIII.    Parcels that defendant disputes plaintiff owned on the date the NITU was issued

        Defendant objects to ownership of several plaintiffs on the date the NITU was issued; we already resolved all of those claims, except for claimant 48, on other grounds.  As for claimant 48, defendant asserts that "Young Investments, LC" did not own the property at issue on the date the NITU was issued.

        We grant summary judgment for defendant for claimant 48 because there is no evidence that "Young Investments, LC" was the owner of this property on the date of the NITU.  The applicable deed conveys the property on December 9, 2012 to "Donald C. Young, Trustee of the Donald C. Young Trust."  CSUF Ex. 48.  Though Donald C. Young is the registered agent of Young Investments, LC, *Id*., the owner of the property at the time the NITU was issued was "Donald C. Young, Trustee of the Donald C. Young Trust" and not "Young Investments, LC."


IX.    The Court rejects defendant's position regarding the nature of the taking arising from the blocked extinguishment

        For those parcels the court finds a taking occurred or to which defendant has stipulated a taking occurred, defendant contends that it is only liable for a taking of an easement for railroad purposes.  This position was recently rejected by the court in *Macy Elevator, Inc., et al. v. United States,* 09-515L (filed June 21, 2012) and we reject defendant's position for the same reasons.  The Supreme Court in *Preseault I* indicated that takings liability would be determined by "what interest petitioners would have enjoyed under [state] law, in the absence of the ICC's recent actions."  *Preseault I*, 494 U.S. at 21.  Because of the NITU, a railroad purposes easement no longer exists- the NITU replaced a railroad purposes easement with an easement authorizing interim public trail use.  But for issuance of the NITU, under Iowa law the easement would have reverted back to plaintiffs upon cessation of railroad operations, and plaintiffs would have enjoyed land unencumbered by any easement.  *See McKinley*, 368 N.W.2d 131. Plaintiffs were deprived of their reversionary rights because of government action, so the government is liable for a taking of unencumbered property.

- 23 -

**CONCLUSION**

For the reasons stated above, the court **GRANTS plaintiffs' Motion for Summary Judgment in part and DENIES plaintiffs' motion in part; and GRANTS defendant's Motion for Summary Judgment in part and DENIES defendant's motion in part** in accordance with the Court's chart in section III.  We also **DISMISS those claims that plaintiffs have agreed to dismiss.**

The parties are ordered to submit a Joint Status Report by September 5, 2012, on further proceedings.

**IT IS SO ORDERED.**


    s/ Lawrence M. Baskir
    LAWRENCE M. BASKIR
           Judge

- 24 -

Exhibit 50
to U.S. Reply Br. Supp. 2d Cross-Mot. for Summary J.

# EXHIBIT 50

to United States' Reply Brief Supporting Second Cross-Motion for Partial Summary Judgment

Appraisal No 12 1860.

Notice To the unknown non residents
owner or owners of the north East quarter of section
One (1) township Eighty Range twenty eight (28)
West in Dallas County Iowa you are hereby
Notified That the Des Moines Valley Rail Road
Company a Corporation organized under
the laws of the State of Iowa have located their
Rail Road through the above described
real estate and that unless you apply to the
Sheriff of said County of Dallas within thirty
days from the 10th day of June 1869 to have the damage
of Right of way over said land assessed as
prescribed by law said company will proceed
on Tuesday the 13th day of July A D 1869 to have
Such damages assessed by the Commissioners
appointed by said Sheriff of said County to assess
all such damages to the owners of real estate
In said County The Des Moines Valley Rail
Road Company by its Attorney
                              N V Baker
        Dated May 14th 1869

State of Iowa } This is to certify that G H Stutsman
Dallas County }  Publisher of the Dallas Gazette
          Be a weekly News paper Published
at Adel Dallas County Iowa have published in
said paper for the term of four weeks the notice
attached Commencing on the 25th day of May 1869
And Ending June 10th 1869. Making four consecutive
publications
                          G H Stutsman

Subscribed and sworn to before me this 7th day
of July 1869
                          N S Looney
                          Clerk of Dallas County

State of Iowa } ss In the matter of damages sustained by
Dallas County } the unknown non resident owner
          Be owners, of the North East quarter
of the North East quarter of Section 1 Township 80

In _____ & _____ _____ (_____) the appropriation of
certain lands by the Des Moines Valley Railroad
Company to the Sheriff of Dallas County Iowa
The undersigned duly appointed Commissioners
to assess the damages which will by sustained
by owners of land in said county by reason of the
appropriation thereof by the Des Moines Valley
Railroad Company for the purpose of the
Construction of the Railroad of said Company
respectfully report that in pursuance of
notice they met on said land on the 13th day of
July 1869 for the purpose of assessing the
damages which the unknown non resident
owner or owners of the North East quarter of
the North East quarter of Section one (1)
Township Eighty (70) Range twenty eight (28)
West would sustain by reason of the
appropriation by said company of a strip
of land through and across the following described
tract of land in said county to wit "The North
East Quarter of the North East quarter of
Section one (1) Township Eighty (70) West
Range twenty eight (28) West)
And having been duly sworn faithfully and impartially
to assess all such damages And it appearing that
the said unknown non resident owner or
owners of said real estate had been duly notified
of this proceeding according to the Statute in such
case made and provided we proceeded to inspect
said tract of land and the location of the Railroad
of said company as marked and designated by the
Engineer thereof and we find that said
Company have taken and appropriated a strip
of land one hundred feet in width for the right of
way as located through a portion of the above
described tract of land as shown by the located
line thereof and we do assess the damages
of the said unknown non resident owner or
owners of said real estate by reason
thereof at the sum of Two Dollars.
Respectfully Reported this 13" day of July 1869

O. Smalley
Sam'l Smart
Geo McLaughlin
W. G. Lewis          } Commissioners
J. Smart
Mc Elwood

State of Iowa
Dallas County     July 13" 1869.

Received of the Des Moine
Valley Railroad Company the sum of
Five Dollars, being the amount
assessed by the Commissioners for
right of way of said Railroad Company
through the North East quarter of the
North East quarter of the section one (1)
Township Eighty 80 Range Twenty
eight (28) acres will appear by report
to which this is attached    J. M. Byers

Sheriff of Dallas County

Filed for Record May 17" 1871 at 9 A.M.

J. W. Evans
Recorder

Exhibit 51
to U.S. Reply Br. Supp. 2d Cross-Mot. for Summary J.

# EXHIBIT 51

to United States' Reply Brief Supporting Second Cross-Motion for Partial Summary Judgment

## RESOLUTION NO. 2012-10

## A RESOLUTION ON THE CITY'S POSITION RELATIVE TO PLATTED ALLEYS ADJACENT TO THE FORMER RAILROAD RIGHT-OF-WAY PASSING THROUGH THE CITY OF DALLAS CENTER, IOWA

**WHEREAS**, several property owners within the City of Dallas Center, Iowa, as well as the City in its own right as a property owner, have joined as Plaintiffs in the case now pending before the United States Court of Federal Claims entitled Steve Jenkins et al v. The United States of America (Case No. 09-241-L), in which the Plaintiffs allege that the government effected a Fifth Amendment taking of certain real estate that underlies or abuts abandoned railroad right-of-way known as the Perry Subdivision by the conversion of the right-of-way to a public use trail system pursuant to the National Trails System Act; and

**WHEREAS**, the Council has examined copies of the Original Plats of the Town of Dallas Center and Huber and Vandercooks Addition to Dallas Center, and has determined that the original Plats included the platting of narrow alleys adjacent on parts of the east side and parts of the west side of the former railroad right of way between Sugar Grove Avenue (Highway 44) and the lots located immediately south of Linden Street; and

**WHEREAS**, the Council hereby renews and asserts that said narrow alleys platted adjacent to the former railroad right-of-way (except any that have been vacated by Ordinance) are owned, controlled, and possessed by the City of Dallas Center, Iowa, subject to the requirements of the Code of Ordinances of the City of Dallas Center, Iowa, that adjacent property owners maintain abutting parking, terraces, and alleys.

**NOW, THEREFORE, BE IT RESOLVED** by the City Council of the City of Dallas Center, Iowa, that the City renews and asserts its ownership, control, and possession of those certain narrow alleys in the City of Dallas Center platted adjacent to the former railroad right-of-way in the Original Plat of the Town of Dallas Center and the Original Plat of Huber and Vandercooks Addition to the Town of Dallas Center (except any alleys that have been vacated by Ordinance), subject to the requirements of the Code of Ordinances of the City of Dallas Center, Iowa, that adjacent property owners maintain abutting parking, terraces, and alleys.

2607

**PASSED, APPROVED AND ADOPTED** this 21st day of March, 2012, by the City Council of the City of Dallas Center, Iowa.

Mitch Hambleton, Mayor

ATTEST:

Cindy Riesselman, City Clerk

2

2008