# In the United States Court of Federal Claims

No. 09-241L
(Filed: December 21, 2012)
NOT FOR PUBLICATION

| | |
|---|---|
| | ) |
| STEVEN JENKINS, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| THE UNITED STATES, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## O P I N I O N

Pending before the court are the parties' second motions for partial summary

judgment in this "Rails to Trails" case arising from the creation of a recreational trail in

Dallas County, Iowa pursuant to the "railbanking" provision of the National Trails

System Act Amendments of 1983.  16 U.S.C. § 1247(d) (2006) ("Trails Act").[1]  At issue

in the pending motions are 18 parcels of land[2] for which the defendant ("government")

---

[1] The court discussed the relevant statutory and regulatory framework of the Trails Act in its
previous opinion, in which the court held that the government affected a taking of certain
reversionary interests in railroad right-of-way easements when the government approved the
conversion of the subject rail line to a recreational trail.  Jenkins v. United States, 102 Fed. Cl.
598, 600-02 (2011).

[2] The 18 parcels still in dispute are parcels 15.A, 15.B, 15.C, 15.D, 15.E, 15.F, 26.A, 27, 29, 77,
97.B, 97.C, 97.D, 98.B, 103, 104, 105, and 106.

Although the parties currently dispute liability for the 18 parcels listed above, they have
previously agreed to dismiss the following 45 parcels formerly at issue in the pending motions:
17, 22, 23, 24, 25, 26.B, 28, 30, 32, 35, 36, 47.G (northerly portion), 58, 59.B, 59.C, 59.D, 59.F,

1

disputes its takings liability on various grounds arising under Iowa state law.  For the

reasons discussed below, the defendant's cross-motion for partial summary judgment

dismissing the plaintiffs' claims is **GRANTED in part and DENIED in part**, and the

plaintiffs' cross-motion for partial summary judgment is **GRANTED in part and**

**DENIED in part**.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate only if "there is no genuine dispute as to any

material fact and the movant is entitled to a judgment as a matter of law."  Rule 56(a) of

the Rules of the Court of Federal Claims; see also Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 247-49 (1986); Casitas Mun. Water Dist. v. United States, 543 F.3d 1276, 1283

(Fed. Cir. 2008).  A material fact is one that "might affect the outcome of the suit," and

---

59.G, 59.H (southerly portion), 59.I, 59.K, 60, 61.A, 62.A, 62.B, 62.C, 62.D, 63, 65, 67, 98.A, 99.A, 99.B, 100.A, 100.B, 101.A, 101.B, 102.A, 107, 108, 109, 110, 113.B, 113.C, 113.D.

Moreover, the government conceded liability with respect to 20 parcels: 4.D, 8, 31.A, 31.B, 37, 38, 41.D, 42, 43, 47.G (southerly portion), 47.K, 59.A, 59.H (northerly portion), 59.J, 59.L, 64, 68.A, 82, 83.A, 97.A.  Parcels 47.G and 59.H are listed twice because the parties agreed on partial liability for each of these parcels, while dismissing the remaining portions of each.

The parties agree to liability with respect to claim 8.  2nd Joint Stat. Rep. at 8, ECF No. 113. The only outstanding issue was whether two plaintiffs, Harold Morris and the Estate of Edgar John Morris are proper members of the class.  The court notes that the opt-in form for this case expressly states that one owner may opt-in for all owners of a given parcel of land.  Joint Prop. Concerning Class Cert., Ex. C, ECF No. 21, entered as order by Nov. 13, 2009, Order at 6, ECF No. 23 (stating "[i]f you owned the land with another person or entity, it is only necessary that one of the owners sign this form . . . .").  Carol Sue Hilton, a part owner of the relevant parcel, timely executed the opt-in form, meaning all owners of the parcel associated with claim 8 are properly part of this suit.

Lastly, the parties have submitted additional deeds since the court held oral argument on November 14, 2012.  See generally 2nd Joint Status Report, ECF No. 113 ("2nd Joint Stat. Rep."); Def.'s Mot. Suppl. Rec., ECF No. 112.  The court grants the government's motion to supplement the record and will consider all evidence presented by either party since the oral argument.

an issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson</u>, 477 U.S. at 248.  In considering the existence of a genuine issue of material fact, a court must draw all inferences in the light most favorable to the non-moving party.  <u>Matsushita Elec. Indus. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

Once the movant has shown that no genuine issue of material fact exists, the party opposing summary judgment must demonstrate that such an issue, in fact, does exist. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986).  To establish a genuine issue of material fact, a party "must point to an evidentiary conflict created on the record; mere denials or conclusory statements are insufficient." <u>Radar Inds., Inc. v. Cleveland Die and Mfg. Co.</u>, 424 F.App'x 931, 936 (Fed. Cir. 2011) (quoting <u>SRI Int'l v. Matsushita Elec. Corp. of Am.</u>, 775 F.2d 1107, 1116 (Fed. Cir. 1985)) (internal quotation omitted).  Where there is doubt as to the existence of a genuine issue of material fact, that doubt must be resolved in favor of the nonmovant.  <u>Unigene Labs., Inc. v. Apotex, Inc.</u>, 655 F.3d 1352, 1360 (Fed. Cir. 2011) (citing <u>Ortho-McNeil Pharm., Inc. v. Myland Labs., Inc.</u>, 520 F.3d 1358, 1360-61 (Fed. Cir. 2008)).  "The fact that both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other; summary judgment in favor of either party is not proper if disputes remain as to material facts." <u>Mingus Constructors, Inc. v. United States</u>, 812 F.2d 1387, 1391 (Fed. Cir. 1987).  With respect to cross-motions for summary judgment, each motion is evaluated on its own merits and reasonable inferences are resolved against the

party whose motion is being considered.  Marriot Int'l Resorts, L.P. v. United States, 586 F.3d 962, 968-69 (Fed. Cir. 2009).

## III.   DISCUSSION

The plaintiffs in this class action are landowners who claim to own fee interest in land underlying railroad segments constructed in Dallas Center, Iowa.[3]  The fee underlying the rail corridor, which has been converted into a recreational trail pursuant to the Trails Act, runs through the towns of Perry, Minburn, and Dallas Center.  The rail segments were initially acquired by the Des Moines Valley Railroad Company and by the Chicago, Milwaukee, and St. Paul Railway Company.  Both companies were predecessors-in-interest to Union Pacific ("Railroad"), which was the last railroad to operate the rail line prior to its conversion into a recreational trail.

In order to establish takings liability in a Rails to Trails case, the plaintiffs need to make three basic showings.  First they have to establish that they owned the pertinent property on the date of the taking.[4]  See Preseault v. United States, 100 F.3d 1525, 1550-52 (Fed. Cir. 1996) ("Preseault II").  Second, they have to demonstrate that their property is adjacent to the rail corridor.  See id.  Third, they have to show that creation of the recreational trail pursuant to the Trails Act precluded reversion of their fee interest in the

---

[3] All facts are uncontested unless otherwise noted.

[4] For purposes of the Trails Act, the taking occurs on the date the Surface Transportation Board ("STB") issues the Notice of Interim Trail Use or Abandonment ("NITU").  Caldwell v. United States, 391 F.3d 1226, 1229-30, 1233 (Fed. Cir. 2004).  The NITU preserves the STB's jurisdiction over the rail corridor, allows the railroad to discontinue operations and remove track and equipment, and affords the railroad and the trail provider 180 days to negotiate a railbanking and interim Trails Act agreement.  49 C.F.R. § 1152.29(d).

rail corridor unencumbered by a rail easement[5] (i.e. the Railroad held the right-of-way as an easement limited to railroad purposes, rather than fee, that would have extinguished upon cessation of railroad use).  Caldwell, 391 F.3d at 1233.  The parties dispute three core issues with respect to the government's takings liability for the remaining eighteen parcels of land.  The first two issues center on this third basic element—namely whether the Railroad held the right-of-way in fee or merely as an easement limited to railroad purposes.  The third issue involves the parties' disagreement over whether one of the plaintiffs, the City of Dallas Center, is a proper plaintiff under the court's class definition. The court will first provide a general overview of the disputes before analyzing them in greater detail.

The first dispute involves two segments of the railroad right-of-way running through the Perry and Dallas Center train depot grounds.  The Railroad initially received easements in the rights-of-way and then subsequently acquired fee interest in the same property through separate deeds.  The government claims that later fee conveyances extinguished the previously granted easements under Iowa's law of merger.[6]  Under

---

[5] State law defines the nature of the property interests at issue.  Preseault v. Interstate Commerce Comm'n, 494 U.S. 1, 8 (1990) ("Preseault I").  The court therefore will apply, where relevant, Iowa property law in its analysis of the property disputes.

Sections 327G.76 and 327G.77 of the Iowa Code define the property interests that adjacent landowners take upon a railroad's abandonment of its right-of-way.  When a railroad's right-of-way is extinguished, those rights pass to the owners of the adjacent property upon abandonment. Iowa Code § 327G.77 (2009).  If there are different owners of land on either side of the abandoned right-of-way, then each owner takes to the center of the right-of-way.  Id.

[6] The eight parcels impacted by this issue are 98.B, 103, 104, 105, and 106 located in Perry and parcels 26.A, 27, and 29 located in Dallas Center.

Iowa's law of merger, easements are extinguished when the dominant and servient estates merge.  Gray v. Osborn, 739 N.W.2d 855, 862 (Iowa 2007).  The government contends that the easements over the rail corridor (the dominant estate) extinguished when the rail corridor segments merged with the dominant estate (the adjacent parcels).  The government contends that the Railroad held the rail corridor in fee, and that, therefore, it is not liable for a taking of any reversionary interests belonging to the plaintiffs.  The plaintiffs argue that when the railroad conveyed the adjacent parcels to the plaintiffs or their predecessors-in-interest, it conveyed to the railroad's centerline as well.  If the plaintiffs are correct, the creation of the recreational trail easement upon that land affected a taking of the plaintiffs' unencumbered fee interest.

The second dispute centers on whether, under Iowa law, railroads obtain prescriptive easements limited to railroad purposes upon establishment of adverse rights.  Specifically, the plaintiffs contend that, with respect to property for which no deed is located, the Railroad at most obtained prescriptive easements over the subject property.[7]  Since such prescriptive easements would be limited to railroad purposes, the plaintiffs contend that the issuance of the NITU blocked plaintiffs' right to an unencumbered fee title.  The government argues, in response, that under Iowa law, a railroad can obtain fee interest under Iowa's law of adverse possession.  This would require dismissal of the relevant claims.

---

[7] The relevant parcels are 77, 97.B, 97.C, and 97.D located in Perry.

The third and final dispute is over whether the City of Dallas Center should be dismissed from the action because it is not a proper member of the class.[8]  Specifically, the government contends that as the fee owner of part of the right-of-way, the City of Dallas Center is a successor-in-interest to the Railroad and is excluded from the class. The City argues that it falls within the class definition.

The court will now consider these three issues, addressing each in turn.

### A.      The Railroad acquired a fee in the Perry and Dallas Center railroad corridors.

The parties dispute the government's liability with regard to the property interests Union Pacific held in the railroad corridors in the Perry and Dallas Center Depot grounds. The government argues that the Railroad held the right-of-way in fee as a result of Iowa's law of merger and thus plaintiffs' reversionary rights were not taken by the NITU.  The plaintiffs contend that the government is liable for a taking under Iowa law regardless of whether the Railroad may have held the right-of-way in fee on the grounds that they own the rail corridor and the NITU authorized a new use.

### 1.      The depot grounds and their deeded conveyances.

Eight of the parcels currently at issue are part of the former Perry and Dallas Center depot grounds.  In each town, the disputed parcels sit adjacent to parts of the rail corridor that had initially been conveyed as easements to the Railroad and then later conveyed to the Railroad by fee deeds as part of subsequent transactions conveying the depot grounds.  That is, the depot grounds fee conveyances also included the previously

---

[8] The City of Dallas Center owns, for various municipal purposes, parcels 15.A, 15.B, 15.C, 15.D, 15.E, and 15.F.

established rail corridors.  The railroad corridor that runs through the center of the former

Perry depot grounds was initially granted as an easement to the Railroad by a deed

located at book A, page 451 in 1868.  The surrounding Perry depot grounds, including the

existing railroad right-of-way running through the center, were subsequently conveyed in

a separate transaction by a deed located at book S, page 235 in 1870 by the same grantor

as the previous 1868 easement.  The parties stipulated that this 1870 deed for the Perry

depot conveyed parcels 98.B, 103, and 104[9] and the plaintiffs conceded that it conveyed

these parcels as fee interests.

Similarly, the parties stipulated that the deed located at book A, page 422

conveyed the section of the railroad corridor adjacent to claim 29 in Dallas Center as an

easement in 1868.  The parties agree that the subsequent 1870 fee deed[10] located at book

S, page 232 is applicable to claim 29.  The parties further agree that a condemnation

easement at book A, page 492 conveyed portions of the railroad right-of-way adjacent to

---

[9] While the government initially stipulated that the deed located at book S, Page 235 did not
apply to parcels 105 and 106, Joint Stat. Rep, ECF No. 72, the government later contended that
this was a clerical error.  2nd Joint Stat. Rep. at 9.  The government subsequently provided
evidence demonstrating that the relevant deed applied to parcels 105 and 106.  Id.  The plaintiffs
state that "it is not clear" that that book S, page 235 applies but present no argument suggesting it
does not.  Id. at 4.

[10] Although the plaintiffs have not stipulated to the scope of this deed (i.e. whether it conveys fee
title or an easement) as with the Perry depot deed, the court finds that the deed located at book S,
page 232 grants fee title.  Both deeds were written on the same form deed and contain similar or
near-similar granting language.  Each deed grants "the following described" premises, compare
Def.'s Proposed Findings of Fact, Ex. 1, ECF No. 60 ("Def.'s PFOF") (the Dallas Center deed)
with Def.'s PFOF, Ex. 3 (the Perry deed), and does not mention limitations on the grant.  Under
the Iowa Supreme Court's decision in Lowers v. United States, such an unqualified conveyance
grants fee title in the grantee.  663 N.W.2d 408, 411 (Iowa 2003) (holding that a deed to a
railroad lacking qualifying language or mentioning "right-of-way" in the granting language
conveys a fee interest).

sections of the two remaining Dallas Center parcels 26.A and 27.  The government

proffers a deed from 1876 located at book 11, page 302, which it contends conveyed the

entirety of the railroad corridor adjacent to parcels 26.A and 27 in fee.[11]

> **2.     The railroad right-of-way easements have been extinguished under Iowa's law of merger and therefore issuance of the NITU did not give rise to a taking.**

The government argues that the subsequent fee deeds conveying the two depot

grounds extinguished the Railroad's easements under Iowa's law of merger and that the

relevant Iowa statutory provisions are inapplicable in cases where the Railroad holds fee

title to the right-of-way.  The government contends that, under Iowa law, a subsequent

fee conveyance for the same easement or for land surrounding the easement extinguishes

that easement, which merges into the subsequent fee resulting in fee ownership in the

underlying land originally encumbered by the easement.  Def.'s Cross-Mot. Summ. J. at 9

(citing Feilhaber v. Swiler, 212 N.W. 417, 418 (Iowa 1927) (noting that an easement is

extinguished in cases where a single owner holds title to an easement and an underlying

fee)).  Since, by virtue of Iowa's law of merger, Union Pacific owned the rights-of-way in

Perry and Dallas Center in fee, the government argues that the adjacent landowners had

no reversionary rights under Iowa Code sections 327G.76 and 327G.77 in the railroad

corridor upon issuance of the NITU.  Tr. of Oral Arg. at 36, ECF No. 111 (citing Butler

---

[11] The granting language provides:  "[Sheriff] do[es] hereby sell and convey unto [the railroad] the following described real estate . . . ."  The government contends that this deed conveyed fee title in the depot grounds in Dallas Center including the railroad corridor adjacent to parcels 26.A and 27.  Id.  Given the conveying language and its lack of limitations, the court finds here, as above, that this deed conveys a fee interest under Iowa state law.  Lowers, 663 N.W.2d at 411.  Plaintiffs again state that "it is not clear" that book 11, page 302 applies to parcels 26.A and 27, but provide no evidence to the contrary.  2nd Joint Stat. Rep. at 4.

v. Hoover Nature Trail, Inc., 530 N.W.2d 85, 89 (Iowa Ct. App. 1994) (stating that
sections 327G.76 and 327G.77 apply only when the railroad holds an easement)).

The plaintiffs argue, in response, that even if the Railroad owned both the depot
grounds and the railroad rights-of-way in fee, any conveyance by the Railroad to
subsequent landowners of parcels adjacent to the railroad right-of-way would also, under
Iowa law, grant those subsequent landowners fee ownership to the centerline of the
railroad corridor.  They contend that the right-of-way owned by the Railroad does not
need to be an easement in order to give rise to takings liability because Union Pacific's
conveyance of the adjacent parcels granted the subsequent owners the railroad right-of-
way in fee as well.  As such, plaintiffs argue, the creation of the recreational trail
easement on the right-of-way would give rise to a taking because plaintiffs have a
property right to the center line of the railroad.

After considering the parties' arguments and the relevant Iowa law, the court finds
based on the legal reasoning of the government and the cases it relies upon that the right-
of-way easements were extinguished upon the granting of subsequent fee deeds and that
therefore the Railroad held the corridor in fee.  Since the Railroad acquired fee interest in
the corridor, the government did not take property when it authorized the trail operator to
use the corridor as a recreational trail.  A review of the deeds confirms that the Railroad
reserved most of the corridor for itself, even as it conveyed interests in the depot grounds,
so that it could continue to operate trains.  Some of the deeds, however, reveal that the
Railroad may have conveyed portions of its property within its one hundred foot right-of-
way to some of the plaintiffs or their predecessors.  The claims include: 26.A, 27, 29,

98.B, and 104.  To the extent the NITU authorized a one hundred foot trail that extends into the limited fee interests of the property owners associated with the claims above, the government is liable for takings to the extent the trail has encumbered portions of the landowners' property.[12]

The government's motion as to the depot grounds is **GRANTED** as to claims 103, 105 and 106 and **DENIED** as to claims 26.A, 27, 29, 98.B, and 104.

### B. Where there are no deeds or evidence of condemnation, the Railroad obtained at most only easements for railroad purposes.

There are two segments of the railroad corridor located in Perry for which neither party could locate deeds or evidence of condemnation.  The parties dispute, however, whether the Railroad established fee title to the railroad corridor under Iowa's law of adverse possession.  The plaintiffs argue that the Railroad's use of the corridor would establish—at most—prescriptive easements limited to railroad purposes.  The government contends that the railroad would have established fee title, or possibly a general easement, in the right-of-way.

Most of the impacted parcels, 97.B, 97.C, and 97.D, are located just south of the depot grounds conveyed by deed at book S, page 235 discussed above.  These parcels are located on either side of the corridor.  The former railroad right-of-way also cuts across the northwest corner of parcel 77 with land from that parcel lying on both sides.

---

[12] The court does not resolve the precise locations or the extent of the recreational trail's burden—if any—on the land associated with the listed claims.  Nor does it make a liability finding at this time.

### 1.   Under Iowa law, railroads obtain prescriptive easements limited to railroad purposes upon the establishment of adverse rights.

The government contends that a railroad operating over private property obtains fee title over the rail corridor.  Plaintiffs who own adjacent property therefore have no reversionary interests in the corridor.  In support of its argument, the government cites Louisa County Conservation Bd. v. Malone, 778 N.W.2d 204, 206 (Iowa Ct. App. 2009), in which the Louisa County Conservation Board brought a quiet title action to establish its ownership rights, as a recreational trail operator, in a former railroad corridor.  The court found that the board, which had received a quit claim deed, acquired fee title to the recreational trail after establishing the elements of adverse possession.  Id. at 209.  The government analogizes Louisa County to this case, arguing that if the board could receive fee title in the corridor through adverse possession in a quiet title action, then the Railroad also must have received fee title to the corridor if it established adverse rights. The government argues that the case for Union Pacific's acquisition of fee title is even stronger than that of the rail operators in Louisa County since here Union Pacific more likely had exclusive use of the rail whereas the recreational trail in Louisa County was subject to public use.  As a result, the government asserts, Iowa provides for fee title in the land upon establishment of adverse rights.  Therefore, the government, through issuance of the NITU, could not have blocked plaintiffs' reversionary rights in the segments of the corridor that Union Pacific owned in fee because they had no such rights.

The government notes but does not distinguish Collins Trust v. Allamakee County, 599 N.W.2d 460 (Iowa 1999).  In Collins Trust, the Iowa Supreme Court

considered whether a county had established a prescriptive easement when it operated

and maintained a public road over the plaintiff's private land.  Id. at 463.  At issue was

whether the county could establish the elements of adverse possession for the segment of

the road that veered into the private property and what rights the county could establish.

Id. at 463-65.  The Iowa Supreme Court held that, upon establishing the elements of

adverse possession, the county had acquired a prescriptive easement over the plaintiff's

property.  Id. at 465.  As opposed to the Iowa Court of Appeals decision in Louisa

County, the Iowa Supreme Court's decision in Collins Trust counsels that under Iowa

law, the Railroad only obtained prescriptive easements limited to railroad purposes.

The plaintiffs argue based on other Iowa Supreme Court cases that Iowa law is

"clear" that a railroad right-of-way obtained through adverse possession is a prescriptive

easement rather than a fee.  Pls. Cross-Mot. Summ J. at 10 (citing, among other cases,

Drake v. Chicago, R.I. and R.R. Co., 19 N.W. 215, 217 (Iowa 1884)).  The issue in Drake

was whether the defendant railroad, which owned and maintained tracks across the

plaintiff's land, was liable for water damage to the plaintiff's property resulting from the

rail's embankment and clogged water ditch.  19 N.W. at 215-16.  The court considered

what property interest the railroad held in the corridor in the absence of evidence that the

railroad company owned the land, concluding that it held an easement.  Id. at 217.

Similarly, the Iowa Supreme Court has noted that "authorities are scarcely needed to

support the proposition that an easement in the right of way may be established by

adverse possession."  Shimanek v. Chi., M. & St. P. Ry. Co., 152 N.W. 574, 575 (Iowa

1915); see also Gates v. Colfax N. Ry. Co., 159 N.W. 456, 461-62 (Iowa 1916)

(presuming that the railroad would, upon establishment of adverse rights, be limited to an easement).  The plaintiffs therefore contend that under Iowa law, the most the Railroad could have obtained through exercise of adverse rights was an easement.

Given this precedent, the court holds that under Iowa law a railroad that establishes adverse rights acquires only an easement limited to railroad purposes.  While the law may not be as "clear" as the plaintiffs suggest, the government provides little reason to depart from the reasoning in Collins Trust and the above-cited railroad cases. As noted, the government provides only one case—the Iowa Court of Appeals' decision in Louisa County—to support its position that Union Pacific established fee title to the railroad corridor.  The Louisa County plaintiff, however, unlike Union Pacific or its predecessors-in-interest, had "appearance of title" as a result of the quit claim deed it received.  778 N.W.2d at 207.  Union Pacific's property interest claim may be distinguished in that the parties here found no deed—quit claim or otherwise—on which Union Pacific could show a fee title claim of right to the now right-of-way.  Louisa County's holding is therefore limited to the facts of that case.

The Iowa Supreme Court's holding in Collins Trust is more applicable to the case at hand.  The county's construction and maintenance of a road over the land of another private party is similar to Union Pacific's operation of the railroad corridor.  Both involve use of land for a particular purpose—whether as a road or a railroad—rather than a claim to title in the property itself.  As the Collins Trust court noted, "[t]he fundamental distinction between the two doctrines is an easement by prescription concerns the use of property, while adverse possession deals with the acquisition of title to property by

14

possession." 599 N.W.2d at 464. The Railroad's use of land for a railroad corridor is

just that—a use. As such, the court finds that under Iowa law, in the absence of deeds or

condemnation, a railroad acquires at most a railroad easement upon establishment of

adverse rights. The court therefore rejects the government's contention that Union

Pacific held fee title to the railroad corridor segments adjacent to claims 77, 97.B, 97.C,

and 97.D. Rather, Union Pacific acquired only prescriptive easements. Therefore, the

government is liable for taking the plaintiffs' reversionary rights in their fee interests

underlying the former railroad corridor.

  **C.**  **Dallas Center, as successor-in-interest to the railroad, is not a member
of the class.**

   The parties dispute whether the City of Dallas Center, as a current property owner

in the former corridor itself, may properly be included in this lawsuit pursuant to this

court's order granting the plaintiffs' motion to certify the class. <u>See</u> Order at 5, ECF No.

23 (excluding "railroad companies and their successors-in-interest" as class members).

The plaintiffs argue that the City of Dallas Center is not a successor-in-interest to Union

Pacific by "any common definition," while the government contends that it is successor-

in-interest by virtue of the Dallas Center's current property holdings in the former right-

of-way.

**1.    Dallas Center's acquisition of the former railroad right-of-way segment.**

The City of Dallas Center owns six parcels of land adjacent to the railroad corridor that runs through the city.[13]  The City has used these adjacent parcels in part to build a wastewater facility, a swimming pool, and a library.  Dallas Center, unlike the other plaintiffs, also owns property interests in the corridor itself, which it acquired after the issuance of the NITU but prior to the filing of this lawsuit.[14]  Dallas Center serves as trail operator for the segment of the former right-of-way it acquired.  On August 9, 2005, less than a year after the October 24, 2004 NITU, the City of Dallas Center submitted a grant application for $75,000 to the state of Iowa in order to purchase a 2.16 mile segment of the former rail corridor for use as a recreational trail.  The grant application noted that the "project would fit very nicely into the City of Dallas Center's Comprehensive Plan and the Dallas County 5-year REAP plan of parks and trails."  Def.'s 2nd Proposed Findings of Fact ("Def.'s 2nd PFOF"), Ex. 48, ECF No. 94.  On December 21, 2007, after multiple extensions of time to negotiate a trail use agreement, Union Pacific quitclaimed the railroad corridor to the Iowa Natural Heritage Foundation in consideration of ten dollars.  Around the same time, Dallas Center entered into an agreement with Dallas County and other nearby cities to acquire and develop the trail segments running through each city.

[13] Although the government provided a deed that it claims demonstrates that the railroad corridor segments adjacent to parcels 15.B, 15.C, 15.D, and parts of 15.F are actually held in fee, Def.'s Mot. Suppl. Rec. at 3, the court does not take that deed into consideration since it finds that Dallas Center is not a proper claimant.

[14] While the plaintiffs do not contest the facts associated with Dallas Center's acquisition of the former corridor, they argue that "[t]he City of Dallas Center was not part of the transactions leading up to and requesting a NITU and facts after issuance of the NITU are irrelevant to the taking."  Pls.' Resp. to Def.'s 2nd PFOF at 4-5, ECF No. 98.

In January 2008, the Foundation deeded the former rail corridor to Dallas County for one dollar.  That same month, in January 2008, the Foundation notified the STB that it had reached a trail use agreement.  Finally, in February 2009, Dallas County deeded the rail corridor to the City of Dallas Center in consideration of $69,287.  The plaintiffs filed their complaint two months later.

>      **2.      The City of Dallas Center is a successor-in-interest to the
>               Railroad and is therefore excluded from the class under this
>               court's prior order.**

As stated above, the class definition in this case excludes "railroad companies and their successors-in-interest" from this class action.  Order at 5, ECF No. 23.  The government argues that, based on this definition, Dallas Center is excluded from this class as successor-in-interest to Union Pacific because Dallas Center currently owns property interests in the corridor once held by the Railroad.  Def.'s Reply at 14 (citing Black's Law Dictionary 1832 (9th ed. 2009) (defining "successor-in-interest" as "[o]ne who follows another in ownership or control of property.")).  The government argues that within the context of Rails to Trails cases, the only definition of successor-in-interest that makes sense is one based on successive property ownership rather than corporate ownership.  The government argues that a corporate definition of successor-in-interest would be meaningless because Union Pacific, by definition, was no longer going to operate a railroad over the right-of-way.  The purpose of the term excluding successors-in-interest from the class, according to the government, is to prevent the situation currently before the court where a railroad company or subsequent owner of the corridor can request issuance of a NITU or actively seek property interests in the rail corridor to

secure a trail and then sue the government because it took property pursuant to that requested NITU.  As such, the government argues, the City of Dallas Center is excluded from the class by the court's definition.

The plaintiffs argue, however, that the City of Dallas Center is not a successor-in-interest to the Railroad by "any common definition of that phrase" and that Dallas Center is therefore a proper plaintiff.  Pls.' Resp. at 11, ECF No. 97.  The plaintiffs submit that a successor-in-interest is properly defined as "somebody who succeeds the railroad," rather than one who succeeds the Railroad's interest in the land.  Tr. of Oral Arg. at 32. According to the plaintiffs, Dallas Center, in any case, acquired neither ownership nor control in the corridor after Union Pacific because the City already owned[15] the rail corridor prior to the transfer from Dallas County and currently lacks control of the corridor because the corridor is subject to the Trails Act.

The plaintiffs further assert that Dallas Center faced the choice either to enter into the trail use agreement as trail operator or alternately to lose control of the trail running through its borders.  Since, as the plaintiffs contend, the City of Dallas Center was not a party to the NITU negotiations, it was "required" to sign the trail use agreement in 2009 or else lose control of the corridor.  The plaintiffs further argue, however, that regardless

---

[15] While the plaintiffs apparently claim that the City of Dallas Center "always" owned the land underlying the railroad corridor in fee, Tr. of Oral Arg. at 29, it is unclear what evidence supports this contention.  In fact, the government submitted a deed executed in 1883 that it contends conveyed the railroad corridor in fee to Union Pacific's predecessor-in-interest.  Def.'s 2nd Proposed Finding of Fact at 2, Ex. 42, ECF No. 94 (noting that the deed conveyed the "right of way" to the railroad "to have and to hold the same in fee simple absolute").  The plaintiffs argue that this is an easement, Pls. Resp. to Def.'s 2nd PFOF at 3, but do not mention an alternate deed in their briefs showing that Dallas Center already had fee title to the railroad corridor.

of whether the City of Dallas Center was "forced" into signing the trail use agreement and into serving as trail operator, the taking occurred in 2004, before the City acquired the right to build a trail.  This makes any actions taken after the issuance of the NITU irrelevant.

The court finds that the City of Dallas Center is not a proper plaintiff as a "successor-in-interest" under the class definition agreed upon by the parties.  Construing "successors-in-interest" in this context to mean anything other than successor to the property interests of the Railroad would render the phrase meaningless.  In this Trails Act case, the Railroad, by definition, has ceased railroad operations over and adjacent to the disputed parcels of land.  The only accepted definition that lends substance to the term "successor-in-interest" under these circumstances is the property interest-based definition proffered by the government.  The Black's Law Dictionary definition demonstrates an acceptance of the government's proffered meaning of the term.  The plaintiffs, in contrast, provide no authority to persuade the court to accept their definition.  Limiting the definition of successor-in-interest to active railroad operators or corporate successors—as the plaintiffs are arguing—would not make sense in the context of this litigation.  A property-based definition of successor-in-interest ensures that a party that has voluntarily purchased property in the rail corridor and was given grants to pay for that interest cannot later turn around and sue the government for a taking of that same property.

The government is entitled to summary judgment in connection with the claims associated with the parcels owned by the City of Dallas Center, 15.A, 15.B, 15.C, 15.D, 15.E, and 15.F.

## IV.     CONCLUSION

For the reasons stated above, the government's motion is **GRANTED in part and DENIED in part**.  The plaintiffs' motion is also **GRANTED in part and DENIED in part**.  The parties shall file a joint status report by no later than **January 21, 2013** setting forth a final list of the properties for which the government is liable to pay just compensation, together with a proposed schedule for completing discovery taking into account the proposed trial schedule currently set for the week of August 5, 2013.

**IT IS SO ORDERED.**

s/Nancy B. Firestone
NANCY B. FIRESTONE
Judge