IN THE UNITED STATES COURT OF FEDERAL CLAIMS

|  |  |
|---|---|
| STEVEN JENKINS, et al., for themselves and as representatives of a class of similarly situated persons, <br><br> Plaintiffs, <br><br> v. <br><br> THE UNITED STATES OF AMERICA, <br><br> Defendant. | No. 09-241L <br><br> Judge Nancy B. Firestone <br><br> *Electronically filed on January 16, 2013* |

UNITED STATES' RESPONSE TO PLAINTIFFS' MOTION FOR RECONSIDERATION

I.    PRELIMINARY STATEMENT

On December 21, 2012, this Court entered an unpublished order granting in-part and denying in-part Plaintiffs' cross-motion for summary judgment and granting in-part and denying in-part the United States' cross-motion for summary judgment. Dec. 21, 2012, Order (ECF No. 115). One of the issues addressed in that order is whether Union Pacific owned in fee portions of the rail corridor its predecessors-in-interest originally acquired by easement and then later acquired by fee deed. *Id.* at 9-11. The Court, adopting the merger of title doctrine, held "that the right-of-way easements were extinguished upon the granting of subsequent fee deeds and that therefore the Railroad held the corridor in fee." *Id.* at 10. In addition, the Court denied the United States' cross-motion as to five claims adjoining segments of the rail corridor narrower than 100 feet in width, holding, "[t]o the extent the NITU authorized a one hundred foot trail that extends into the limited fee interests of [claims 26.A, 27, 29, 98.B, and 104], the government is liable for takings to the extent the trail has encumbered portions of the landowners' property." *Id.* at 11. The Court did not make a liability finding as to these five claims. *Id.* at 11 n.12.

1

Plaintiffs seek reconsideration of these two aspects of the Court's order.  Plaintiffs assert that the Court based its merger of title holding exclusively on *Gray v. Osborn*, 739 N.W.2d 855 (Iowa 2007), and *Feilhaber v. Swiler*, 212 N.W. 417 (1927), and that these cases do not support the Court's holding.  Pls.' Mot. 2-4 (ECF No. 116).  Instead, Plaintiffs assert that *Gray* and *Feilhaber* support their view that Iowa Code § 327G.76 adopts a strip-and-gore prohibition against a railroad's fee ownership of narrow strips of land.  In addition, Plaintiffs assert that the railroad's easement is narrower than 100 feet in segments adjoining other claims, in addition to those five claims identified in the Court's order for which no liability determination was made.  *Id.* at 4-5.  Plaintiffs request that this Court also deemed these additional parcels as unresolved with respect to liability.  *Id.*

This Court should deny Plaintiffs' motion.  First, Plaintiffs do not provide a legitimate basis for reconsideration of the merger of title issue but merely seek to re-litigate an issue this Court considered and resolved in its order.  Union Pacific's sales of its fee lands on the edges of its rail corridor, unlike the sales at issue in the cases Plaintiffs cite (*Feilhaber* and *Gray*), do not sever the conveyed properties from access public streets.  Hence, unlike the cases Plaintiffs rely on in their instant motion, Union Pacific's prior grants of land on the edges of its corridor do not give rise to a companion easement by necessity, much less an implied conveyance of Union Pacific's fee title to the retained, narrowed corridor.  Second, Plaintiffs' request that this Court place additional parcels with the five parcels for which no liability determination has been made is not appropriate.  Instead, this Court should resolve whether the NITU imposes a trail easement beyond the boundaries of Union Pacific's rail corridor as it existed when the NITU issued.  The Court's concern that the NITU imposes a 100-foot wide trail easement extending beyond the boundaries of the corridor as owned and operated when the NITU issues is misplaced, because

the NITU does not impose or preserve an easement of a specified width. Instead, the NITU requires that the corridor be of sufficient width to allow reactivation of rail service. Because Union Pacific operated its railroad over the narrower segments of the rail corridor and because Union Pacific conveyed to Iowa Natural Heritage Foundation the rail corridor as it was located and operated at the time of conveyance, the NITU does not affect the land that Union Pacific was not operating for railroad purposes and already conveyed to private parties when the NITU issued.

II. ARGUMENT

    A. Plaintiffs' motion does not provide a proper basis for reconsideration.

The decision whether to grant reconsideration lies within the discretion of the trial court. *Yuba Natural Res., Inc. v. United States*, 904 F.2d 1577, 1583 (Fed. Cir. 1990). Because this case is at an interlocutory stage, RCFC 59(a) governs Plaintiffs' instant motion. *See Wolfchild v. United States*, 68 Fed. Cl. 779, 784-85 (2005). "At an interlocutory stage, the common law provides that the court has power to reconsider its prior decision on any ground consonant with application of the law of the case doctrine." *Id.* "Reasons that may warrant departure from the law of the case . . . include the discovery of new and different material evidence that was not presented in the prior action, or an intervening change of controlling legal authority, or when the prior decision is clearly incorrect and its preservation would work a manifest injustice." *Intergraph Corp. v. Intel Corp.*, 253 F.3d 695, 698 (Fed. Cir. 2001) (citations omitted), *quoted in Wolfchild*, 68 Fed. Cl. at 785.

With respect to Plaintiffs' motion for reconsideration of this Court's holding on merger of title, Plaintiffs offer no new evidence. And Plaintiffs point to no change in controlling legal authority. Instead, Plaintiffs reassert the same arguments they asserted in the prior briefing. But

"[a] motion for reconsideration is not intended to give an unhappy litigant an additional chance to sway the court." *Whispell Foreign Cars, Inc. v. United States*, 106 Fed. Cl. 777, 782 (2012) (internal quotations and citations omitted).

  B. <u>Plaintiffs' attempt to undermine the merger of title doctrine is unavailing</u>.

Plaintiffs suggest that a railroad that owns a corridor in fee implicitly conveys fee title to the center line of the corridor by conveying the outside edges of the corridor. Pls.' Mot. 3-4 (ECF No. 116). In addition, Plaintiffs argue that the Court's holding that Union Pacific owned the relevant segments of the rail corridor in fee is contrary to the strip-and-gore doctrine. *Id.* Plaintiffs' arguments misconstrue the merger of title doctrine, misapply *Feilharber* and *Osborn*, and contradict Iowa Supreme Court precedent.

Plaintiffs' objection to this Court's order on merger of title is premised on the keystone supposition that "[w]hen a railroad grants a parcel of land adjacent to the right-of-way to a landowner, they grant the underlying fee in the railroad right-of-way to the landowner to the centerline of the right-of-way." Pls.' Mot. 3 (ECF No. 116). This supposition is false. As the Iowa Supreme Court repeatedly held, "[n]o easement exists so long as there is a unity of ownership, because the owner of the whole may, at any time, rearrange the qualities of the several parts." *Marshall Ice Co. v. La Plant*, 111 N.W. 1016, 1019 (Iowa 1907) (quotations omitted), *quoted in Feilhaber v. Swiler*, 212 N.W. 417, 418 (Iowa 1927).[1] Thus, the railroad's "right-of-way" ceased to exist when the railroad later acquired fee title. *Id.* In short, Plaintiffs'

---

[1] Plaintiffs' insistence that "the *only* authority for the 'merger' concept cited by the Defendant and relied upon by the Court was [*Gray*] and [*Feilhaber*]," Pls.' Mot. 2 (ECF No. 116) (emphasis added), is incorrect. The Court adopted the merger of title doctrine "based on the legal reasoning of the government and the *cases* it relies upon," Dec. 21, 2012, Order 10 (ECF No. 115), which include *Marshall Ice* and *Feilhaber*. U.S. 2d Cross-Mot. 5 (ECF No. 93).

4

keystone supposition relies on an easement that no longer exists when the railroad later divests itself of its fee title on the periphery of its ownership.

Plaintiffs misapply *Feilhaber* and *Gray*. *Feilhaber* acknowledges the merger of title doctrine and applies it to extinguish an express easement once the same landowner acquired title to the servient and dominant estates. 212 N.W. at 418 (citing *Marshall Ice*, 111 N.W. at 1019). *Feilhaber* then holds that a further conveyance that rendered the conveyed (dominant) parcel landlocked resulted in an easement by necessity to the nearest public road over the non-conveyed (servient) parcel. 212 N.W. at 418-19. Here, however, Union Pacific's grants of the edges of its fee-owned land did not deprive the conveyed parcels of access to public roads. Hence, the justification for finding an easement by necessity in *Feilhaber* (i.e., depriving a conveyed parcel from access to a public road) does not apply to Union Pacific's pre-NITU conveyances. Consequently, *Feilhaber* offers no basis for finding an easement by necessity over the remainder of Union Pacific's retained fee lands (i.e., the narrowed, retained rail corridor). And certainly *Feilhaber* cannot be extrapolated as holding that Union Pacific's grants of fee title on the edges of its corridor somehow conveyed by implication the railroad's *fee title*, as opposed to an easement, to the retained corridor.

*Gray* holds that an illustration of a fifty-foot wide strip of land over a platted lot conveys an express easement over the lot for the benefit of an adjacent parcel of land that otherwise would have no access to a nearby public road. 739 N.W.2d at 861-62. Here, there is no writing or plat map from Union Pacific that could be construed as conveying an express easement over the retained corridor for the benefit of the conveyed edges of the corridor.

Finally, Plaintiffs' insistence that Iowa Code § 327G.76 evinces Iowa's adoption of a strip-and-gore prohibition against the railroad's fee ownership, Pls.' Mot. 3-4 (ECF No. 116), is

wrong. Plaintiffs continue to ignore that Iowa Code § 327G.76 does not apply to lands that railroads own in fee. *Butler v. Hoover Nature Trail, Inc.*, 530 N.W.2d 85, 89 (Iowa Ct. App. 1994) (citing *Notelzah, Inc. v. Destival*, 489 N.W.2d 744, 746 (Iowa 1992)). If Iowa abhorred the notion of a railroad owning narrow strips of land in fee, the Iowa Supreme Court would not have held that the railroad owned narrow strips of land in fee in, among other cases, *Lowers v. United States*, 663 N.W.2d 408, 410-11 (Iowa 2003), and *McKinley v. Waterloo Railroad Co.*, 368 N.W.2d 131, 138 (Iowa 1985).

      C.      <u>The NITU does not impose a trail easement over land the railroad did not operate its rail corridor when the NITU issued</u>.

The Court declined to resolve liability as to claims 26.A, 27, 29, 98.B, and 104, on the ground that the rail corridor at the time the NITU issued was narrower than 100 feet. Dec. 21, 2012, Order 11 n.12 (ECF No. 115). Instead, this Court stated that "*[t]o the extent* the NITU authorized a one hundred foot trail that extends into the limited fee interests of the property owners [adjoining the railroad's narrower corridor], the government is liable for takings *to the extent* the trail has encumbered portions of the landowners' property." *Id.* at 11 (emphasis added). Plaintiffs request that the Court extend this holding to several other parcels that, Plaintiffs assert, fall within a hypothetical 100-foot wide rail corridor. Pls.' Mot. 4-5 (ECF No. 116). But Plaintiffs neither point to nor proffer evidence of the width of the relevant segments of the rail corridor as to the claims Plaintiffs identify. And, more importantly, this Court should resolve its concern that the NITU imposes a 100-foot wide trail easement, extending into private property that Union Pacific did not own and over which Union Pacific did not operate its railroad when the NITU issued, before placing more claims in an unresolved liability status. The Court's concern that the NITU imposes a trail easement on adjoining property that was not a part of Union Pacific's corridor at the time the NITU issued is unwarranted.

The NITU does not prescribe a width of the railbanked corridor or related trail. Pls.' Ex. E (ECF No. 49-9) (NITU). Instead, the NITU states that the trail user must assume responsibility for and pay all taxes levied against the right-of-way Union Pacific sought to abandon, *id.* at 5 ¶ 4, not land adjoining the right-of-way. Moreover, the Surface Transportation Board (STB) explains that 16 U.S.C. § 1247(d) does not require a rail corridor of a specific width for railbanking, only a corridor of sufficient width to "be adequate for potential future rail service." *Missouri Pac. R. Co.—Abandonment Exemption—in Red River and Bowie Counties, Tex.* AB 3 (Sub-No. 137X), Oct. 6, 2011, Decision 2-3 (attached as Exhibit 1). Here, Union Pacific operated over a corridor of less than 100 feet in width in certain segments *before* the NITU issued. Pls.' Proposed Findings ¶ 148, Ex. A 2-3 (ECF No. 49-9) (describing recent use of rail corridor in exemption application, which recent use occurred after the grants of the edges of segments of the rail corridor). And Union Pacific conveyed to Iowa Natural Heritage Foundation the width of the corridor as it was operated at the time the NITU issued. *See* U.S. 2d Proposed Findings ¶ 14, Ex. 43 (legal description attached as Ex. A to deed) (ECF No. 94) (conveying "[a]ll that part of the Perry Subdivision of [Union Pacific], *as now located and operated* . . .") (emphasis added). Thus, the NITU does not affect adjoining property that the railroad neither owned nor operated for railroad purposes when the NITU issued.

Consequently, the Court should deny Plaintiffs' alternative motion for reconsideration, because the Court's concern that the NITU imposes a 100-foot wide trail easement even if the relevant segment of the rail corridor is narrower than 100 feet wide is misplaced. While the United States believes that the Court's concern should be resolved in favor of the United States for the reasons discussed in this brief, the United States recognizes that the Court may desire more direct briefing of this issue than is presented in response to a motion for reconsideration

and Plaintiffs' reply thereto. But direct briefing of that issue, if the Court desires such briefing, should be conducted and the application of the Court's concern to this case should be resolved *before* the Court's tentative concern suspends a liability determination of the claims identified in Plaintiffs' motion for reconsideration.

III.     CONCLUSION

Plaintiffs' motion for reconsideration of this Court's ruling on merger of title is simply a rehash of the arguments Plaintiffs presented in their moving papers. There is no new evidence or change in controlling law that justifies reconsideration. The Court correctly rejected Plaintiffs' flawed theory that Iowa Code § 327G.76 applies to property the railroad owns in fee. Moreover, Plaintiffs' motion to reverse the resolution of parcels purportedly adjoining narrowed segments of the rail corridor fails for lack of evidence and also because the NITU does not purport to impose a trail easement over private property that is not a part of the rail corridor at the time the NITU issues.

The United States respectfully requests that this Court deny Plaintiffs' motion.

DATED: January 16, 2013              Respectfully submitted,

                                     IGNACIA S. MORENO
                                     Assistant Attorney General
                                     Environment & Natural Resources Division

                                     By   */s/ Frank J. Singer*
                                     FRANK J. SINGER
                                     United States Department of Justice
                                     Environment & Natural Resources Division
                                     Natural Resources Section
                                     Post Office Box 7611
                                     Washington, D.C. 20044-7611
                                     Tel:  (202) 616-9409
                                     Fax:  (202) 305-0506
                                     E-mail:  frank.singer@usdoj.gov

                                     ATTORNEY FOR THE UNITED STATES

<u>Exhibit 1</u>
to U.S. Resp. to Mot. for Reconsideraiton

# EXHIBIT 1

to United States' Response to Plaintiffs' Motion for Reconsideration

41806                    SERVICE DATE – OCTOBER 6, 2011
DO

SURFACE TRANSPORTATION BOARD

DECISION

Docket No. AB 3 (Sub-No. 137X)

MISSOURI PACIFIC RAILROAD COMPANY—ABANDONMENT EXEMPTION —IN RED RIVER AND BOWIE COUNTIES, TEX.

Decided:  October 5, 2011

By decision served and published in the Federal Register (61 Fed. Reg. 66,748) on December 18, 1996, the Missouri Pacific Railroad Company (MP)[1] was granted an exemption under 49 U.S.C. § 10502 from the prior approval requirements of 49 U.S.C. § 10903 to abandon a line of railroad extending from milepost 23.0 at New Boston, in Bowie County, Tex., to the end of the track at milepost 61.5 near Clarksville, in Red River County, Tex., a distance of approximately 38.5 miles.[2]  The exemption became effective on January 17, 1997.  On December 30, 1996, Rails to Trails Conservancy (RTC) timely filed a request for issuance of a notice of interim trail use (NITU) and submitted a statement of willingness to assume financial responsibility for interim trail use and rail banking pursuant to the National Trails System Act, 16 U.S.C. § 1247(d) and 49 C.F.R. § 1152.29.  RTC also acknowledged that the use of the right-of-way as a trail is subject to future reactivation of rail service.  On January 3, 1997, UP agreed to the imposition of a trail use condition in this proceeding.

By decision and NITU served on February 14, 1997, a 180-day period was authorized for RTC to negotiate an interim trail use/rail banking agreement with MP for the right-of-way.  In a letter filed on July 16, 1997, UP notified the Board that an interim trail use agreement had been reached with RTC and the right-of-way had been conveyed to RTC for use as an interim trail, effective July 3, 1997.  The right-of-way between mileposts 23.0 and 42.59 was subsequently conveyed to Bowie County, Tex. (the County) on July 1, 2005.[3]

---

[1]  MP merged with and into Union Pacific Railroad Company (UP).  In this decision, the abandoning railroad will be referred to as either MP or UP.

[2]  In the same decision, the Board also exempted discontinuance of service on the line. See Tex. Ne. Div., Mid-Mich. R.R.—Discontinuance of Service Exemption—In Red River & Bowie Counties, Tex., AB 364 (Sub-No. 3X).

[3]  In a joint motion filed on June 15, 2005, RTC and the County requested the substitution of the County as interim trail user for that portion of the right-of-way from milepost 23.0 to milepost 42.59 at the Red River County line, including all bridges and ballast, a distance of approximately 19.59 miles.  UP consented to the substitution request and, by decision and NITU served on July 1, 2005, the request was granted.

Docket No. AB 3 (Sub-No. 137X)

The County filed a petition on April 10, 2007, to terminate trail use over a 50-foot wide portion of the 100-foot wide railroad right-of-way that it owns. According to the County, it plans to sell that 50-foot wide portion to the Texas Department of Transportation (TxDOT) to allow TxDOT to widen a segment of US Highway 82, which parallels the right-of-way. The Board, on May 16, 2007, directed the County to submit a statement demonstrating that the remaining 50 feet of right-of-way would be adequate to accommodate rail service.

The County filed a supplemental petition on July 14, 2010. That pleading failed to provide any explanation of the adequacy of the narrowed corridor as a right-of-way for potentially reactivated rail service. The Board denied the petition on November 5, 2010.

The County filed a second supplemental petition to terminate trail use over the northernmost 50 feet of the right-of-way on July 27, 2011, between mileposts 25.139 and 34.429. The County engaged an engineering firm, H.W. Lochner, Inc. (Lochner), to provide an evaluation as to whether retaining the southern 50 feet of the 100-foot corridor in that section of the right-of-way would be sufficient to permit the possible reestablishment of rail service. The County submitted a verified statement from John Goodwin, a registered professional engineer employed by Lochner. Mr. Goodwin states that a field evaluation was made of the affected mileage and says that "the study determined that rail service could be reestablished for a rail facility meeting commonly used design criteria" and that "no impediments exist along the route that would not allow for a rail facility to be built in the future."

On August 11, 2011, UP filed a response to the County's request. UP states that it concurs with the County's request. UP states that the portion of the rail corridor scheduled to be sold to TxDOT will not adversely affect nor conflict with UP's ability to operate the remaining width of the corridor as a rail line, should the need arise.[4]

The County's petition seeks to terminate interim trail use over the described northernmost 50 feet of the right-of-way by vacating the NITU for that portion. Petitioner also seeks authority to abandon the same 50-foot width of the right-of-way. Because interim trail use will continue on a portion of the right-of-way and the sale of half the width of the right-of-way will not impede the potential restoration of rail service in the corridor, the County need not seek abandonment authority in order to sell the property. Moreover, the County has now demonstrated with adequate specificity that the remaining 50-foot wide right-of-way would be adequate to permit future rail operations.

The County's petition to modify or vacate the NITU invokes 49 C.F.R. § 1152.29. The provisions in those regulations for vacating NITUs were developed to apply to situations where the length of a railbanked line would be shortened—i.e., where the abandonment would be partly consummated – not where, as here, the right-of-way will be narrowed, but will be adequate for

---

[4] On August 1, 2011, The Partnership for the Pathway filed a notice of intent to participate in the proceeding but did not submit comments.

2

Docket No. AB 3 (Sub-No. 137X)

potential future rail service.  Given the circumstances presented here, it is unnecessary to modify the NITU.  The Board will, however, clarify that the 50 feet of right-of-way transferred to TxDOT to widen US Highway 82 is no longer part of the NITU that the Board imposed in this proceeding.

This action will not significantly affect either the quality of the human environment or the conservation of energy resources.

<u>It is ordered</u>:

1. The County's petition is granted as described herein.

2. This decision is effective on its service date.

By the Board, Rachel D. Campbell, Director, Office of Proceedings.

3